UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIDAN STILES,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC.;<br>AMERICAN INTERNATIONAL<br>INDUSTRIES, INC.; and DOES 1-100,<br><br>Defendants. | No. 2:14-cv-02234-MCE-CMK<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Sharidan Stiles ("Plaintiff" or "Stiles") brings this action against Defendants Wal-Mart Stores, Inc. ("Walmart") and American International Industries ("AI") (collectively, "Defendants") alleging intellectual property and antitrust violations related to her Stiles Razor, a patented styling razor with a 1/8 inch blade and ergonomic handle allowing for safe and precise shaving. Plaintiff's First Amended Complaint was dismissed with leave to amend.

In her Second Amended Complaint ("SAC"), Plaintiff asserts the following causes of action: (1) Patent Infringement related to the '468 Patent; (2) Patent Infringement related to the '329 Patent; (3) Trade Dress Infringement in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a); (4) False Advertising/False Association in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a); (5) Violation of Section 1 of the Sherman Act,

1

15 U.S.C. § 1; (6) Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (7) Violation of the California Cartwright Antitrust Act, Bus. & Prof. Code § 16700 et seq.; and (8) Intentional Interference with Prospective Economic Advantage.

Presently before the Court are Defendant Walmart's Motion to Dismiss Plaintiff's Fifth, Sixth, and Seventh Causes of Action (ECF No. 64),[1] Defendant AI's Motion to Dismiss Plaintiff's Eighth Cause of Action (ECF No. 65), Walmart's Motion to Dismiss Plaintiff's Third and Fourth Causes of Action (ECF No. 71) ("Second Motion to Dismiss"), and Plaintiff's Motion to Strike Walmart's Second Motion to Dismiss (ECF No. 75). For the reasons set forth below, Walmart's Motion to Dismiss (ECF No. 64) is GRANTED, AI's Motion to Dismiss (ECF No. 65) is GRANTED, Plaintiff's Motion to Strike is GRANTED, and Walmart's Second Motion to Dismiss is STRICKEN.[2]

## BACKGROUND[3]

As set forth in the SAC, Plaintiff is the inventor, designer, and creator of the patented Stiles Razor, a disposable razor with a uniquely narrow blade designed for detailed shaving. Plaintiff began selling her razor in Walmart stores on a test run basis in 2006, and—after experiencing some success—began selling it in the Wet Shave Department in 2007. Stiles was told her product would continue to be sold at Walmart if she could sell two units per store per week. Despite Stiles exceeding that mark, Walmart "began actively suppressing [its] growth." Specifically, Walmart refused to lower the price of the razor in an attempt to increase sales, removed the Stiles Razor from the stores where it was performing most successfully, failed to restock the razors, and increased the units per store per week requirement from two to six. In 2009,

---

[1] AI joins in both of Walmart's Motions to Dismiss. ECF Nos. 65 and 72.

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[3] The following facts are taken from Plaintiff's SAC.

2

Walmart discontinued sales of the Stiles Razor in the Wet Shave Department. After selling the Stiles Razor in the Beauty Department from 2011 to 2012, Walmart terminated Stiles' contract in May 2012, and stopped selling the Stiles Razor in December of that year.

According to the SAC, AI had been manufacturing and selling its Ardell Brow Precision Shaper—which Plaintiff claims also infringes on the Stiles Razor—in 2008. In 2011, Walmart entered into an agreement with AI to sell the Ardell Brow Precision Shaper under Walmart's store brand, Salon Perfect. Plaintiff further alleges that in 2012 Walmart approached the Executive Vice President of Defendant AI and asked AI to create a knockoff of the Stiles Razor that would be sold under the Salon Perfect brand, and AI agreed. Walmart began selling the Salon Perfect Micro Razor in 2013. In 2014, the Vice President of AI called Plaintiff and admitted to her that Walmart had approached her in 2012, had given her the Stiles Razor, asked AI to copy it, and AI agreed.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion

couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,

4

Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

### A. Defendants' First Motions to Dismiss

By way of its first Motion to Dismiss, ECF No. 64, Walmart seeks dismissal of Plaintiff's antitrust claims (Counts Five, Six, and Seven of Plaintiff's SAC) under Federal Rule of Civil Procedure 12(b)(6) on the bases that (1) Plaintiff fails to plead a plausible antitrust claim; (2) the claims "do not make economic sense"; (3) Plaintiff's monopoly claims are based on a "shared monopoly" theory (shared as between Walmart and AI), which has been rejected by the majority of courts; (4) Plaintiff has not alleged a "horizontal agreement" and therefore has not alleged antitrust conduct that is per se illegal; and—relatedly—(5) Plaintiff has not alleged a relevant market in which Defendants had significant market power, as required when alleging antitrust conduct in the form of a "vertical agreement."  AI joins in Walmart's motion, and additionally moves under Rule 12(b)(6) to dismiss Plaintiff's Eighth Count for intentional interference with prospective economic advantage on the basis that Plaintiff fails to state a plausible claim for relief, ECF No. 65.

#### 1. Sherman Act § 1 and Cartwright Act: Per Se Violation

The Court finds Plaintiff has not alleged facts sufficient to state a claim of per se illegal antitrust conduct.  Plaintiff argues that it has adequately alleged the existence of a horizontal agreement between Walmart and AI that constitutes a per se unreasonable restraint on trade.  This allegation is premised on the contention that both Walmart and AI are suppliers because Walmart has its own store brand.  The facts alleged, however, do not support that premise, and accordingly, the conclusion that Walmart and AI have

entered into an unlawful horizontal agreement in restraint of trade is untenable. First, not all horizontal agreements in restraint of trade are unlawful per se. Only those agreements that are "so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality" are considered per se antitrust violations. Nat'l Soc'y of Prof. Eng'rs v. United States, 435 U.S. 679, 692 (1978). Second, even if all horizontal agreements were unlawful per se, the Court is not convinced that Walmart could be characterized as a supplier under the facts presented, and thus it is not possible to consider Walmart and AI to be in a horizontal relationship. Plaintiff essentially claims that Walmart is a supplier of its own brand to itself. While Walmart may actually produce some of its store branded products, saying that Walmart is a supplier of Salon Perfect Razors is not accurate. Rather, as conceded in the SAC, AI produces the razors and supplies them to Walmart in Salon Perfect packaging. AI also supplies almost identical razors to other retailers in Ardell packaging. Walmart—like Target, CVS, and Walgreens to name a few—then sells those razors to the consumer. As a result, AI is a manufacturer/supplier, and Walmart is a retailer—albeit a giant retailer that contracts directly with suppliers to create products under its store brand.

Third and finally, even if the Court assumes that Walmart may properly be characterized as a supplier of its own brand to itself, the facts alleged still do not lend themselves to the view that Walmart and AI are competitors, making it impossible for Walmart and AI to enter into a horizontal agreement. Indeed, the nature of the relationship between Walmart and AI in this particular context is not that of peers or competitors. To the contrary, AI agreed to supply its product to Walmart under Walmart's store brand name, and at the same time the parties agreed that AI would not sell its Ardell brand razors at Walmart stores. As a result, even though AI may sell Ardell razors elsewhere that compete with Walmart's Salon Perfect razors, that does not make the specific agreement alleged here a "horizontal agreement." Rather, the agreement was between AI as a supplier and Walmart as a retailer. That relationship is vertical.
///

To the extent Plaintiff attempts to allege not only a direct horizontal agreement, but also a "hub and spoke" relationship, whereby Walmart-the-retailer is the hub, and AI and Walmart-the-supplier are each a spoke, the Court is similarly unconvinced. Again assuming Walmart could be considered a supplier in any context, Plaintiff nonetheless fails to allege any agreement between the spokes. Orchard Supply Hardware LLC v. Home Depot USA, Inc., 967 F. Supp. 2d 1347, 1355 (N.D. Cal. 2013) ("A hub-and-spoke relationship can establish a horizontal arrangement, but there still must be a 'rim': an at-least-tacit understanding between the horizontal competitors that each would participate in the boycott."). In other words, the only agreement alleged in the SAC is that Walmart—as a retailer—propositioned AI—as a manufacturer/supplier— to make a knock off of the Stiles Razor to be sold at Walmart under Walmart's brand, and AI agreed. Because Plaintiff alleges no agreement between AI and Walmart-the-supplier, Plaintiff's hub and spoke argument fails.[4]

Plaintiff has consequently failed to allege facts sufficient to support her claim of a per se antitrust violation. The Court turns next to Plaintiff's allegations concerning a vertical agreement in restraint of trade.

### 2. Sherman Act § 1 and Cartwright Act: Rule of Reason

Absent facts indicating a per se unreasonable restraint on trade, agreements are analyzed under the "rule of reason." California ex rel. Brown v. Safeway, Inc., 615 F.3d 1171, 1178 (9th Cir. 2010). Under the rule of reason, the fact finder weighs all circumstances of the case to determine whether, on balance, the agreement at issue is an unreasonable restraint on competition. Leegin Creative Leather Prod., Inc. v. PSKS, Inc., 551 U.S. 877, 885 (2007). Factors to be considered include "specific information about the relevant business," "the restraint's history, nature, and effect," and whether the businesses involved have sufficient market power. Id. at 885-86 (quoting State Oil Co. v. Khan, 522 U.S. 3, 10 (1997)). "In its design and function the rule distinguishes

---

[4] To the extent Plaintiff alleges a group boycott or division of customers theory, both of those arguments fail under a per se analysis for the same reason. No matter the theory, Plaintiff has not alleged a horizontal agreement and therefore has not alleged a per se violation.

7

1  between restraints with anticompetitive effect that are harmful to the consumer and
2  restraints stimulating competition that are in the consumer's best interest." Id. The
3  application of the rule of reason, however, does not automatically guarantee that a
4  pleading survives a motion to dismiss. Though "the trier of fact must determine the
5  ultimate viability of a trade restraint under the rule of reason, that requirement does not
6  prevent the Court from determining if [Plaintiff's] claim[s] [have] met the threshold
7  pleading requirement . . . ." Clear Connection Corp. v. Comcast Cable Commc'ns
8  Mgmt., LLC, 149 F. Supp. 3d 1188, 1197 (E.D. Cal. 2015).

9  Defendants first argue Plaintiff has failed to allege a plausible relevant market in
10 which Defendants have significant market power, and that as a consequence, Plaintiff's
11 Fifth and Seventh Counts must be dismissed when evaluated under the rule of reason.
12 Plaintiff counters that the "relevant market is an issue of fact" inappropriate for a motion
13 to dismiss. Pl. Opp., ECF No. 69, at 16. In the instant case, the Court finds that
14 Plaintiff's allegation that the relevant market is "disposable personal styling razors"
15 nationwide is at least sufficient to survive a motion to dismiss. And despite Defendants'
16 arguments identifying the many potential flaws with Plaintiff's defined market, an
17 assessment of whether that market is properly defined requires an evaluation of facts
18 that is beyond the scope of a motion to dismiss. See Cargill Inc. v. Budine, No.
19 CV-F-07-349 LJO-SMS, 2007 WL 2506451, at *8 (E.D. Cal. Aug. 30, 2007).

20 Defendants next argue that Plaintiff has not plausibly alleged that Defendant(s)
21 had the market power to exclude Plaintiff from the relevant market. More specifically,
22 while Plaintiff alleges that Defendants excluded her from selling her product to Walmart,
23 Defendants claim that Plaintiff fails to allege that she was precluded from selling to any
24 other potential purchaser. Mot., ECF No. 64, at 15. As Plaintiff points out, she has
25 alleged that Walmart is the biggest retailer in the world, and that "Walmart's market
26 power is such that if a product has declined in sales or is considered to have 'failed' at
27 Walmart, no other retailer will sell the product." SAC ¶ 78. But Plaintiff fails to allege
28 facts supporting this conclusory allegation. Indeed, nothing in the SAC indicates that

Plaintiff attempted to sell her product elsewhere, and the Court struggles to fathom another way Plaintiff could support an allegation that Walmart actually has the power to exclude Plaintiff from the entire disposable personal styling razor market. Not only could Plaintiff attempt to sell her razor to other brick and mortar stores like Target, Plaintiff could, for example, offer her razor online, sell it at boutique stores, or create a club that offers periodic shipments of razors. Plaintiff has offered no facts indicating that she attempted to enter her defined market through these, or any other, channels and was denied because her product failed at Walmart.

Defendants' Motion to Dismiss Plaintiff's Fifth and Seventh Counts (to the extent Count 7 asserts an antitrust violation outside the context of monopolization under the Cartwright Act, discussed below) is therefore GRANTED. Because the Court finds an additional amendment of these claims would be futile, dismissal is without leave to amend.

### 3. Sherman Act § 2 and Cartwright Act: Monopolization

In order to assert a claim of monopolization under Section 2 of the Sherman Act and the Cartwright Act, a plaintiff must allege that defendant has monopoly power in the relevant market and an intent to acquire or maintain that power. <u>Cargill</u>, 2007 WL 2506451, at *7 (citing <u>United States v. Grinnell Corp.</u>, 384 U.S. 563, 570-71 (1966)). Similarly, an attempt to monopolize claim must allege "(1) a specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving monopoly power, and (4) antitrust injury." <u>Id.</u> (citing <u>Image Tech. Servs. v. Eastman Kodak Co.</u>, 125 F.3d 1195, 1202 (9th Cir. 1999)).

As discussed above, Plaintiff has sufficiently alleged a plausible relevant market. With respect to Plaintiff's monopolization claim, however, Defendants additionally contend that Plaintiff has failed to allege that any single entity has or is in danger of achieving monopoly power in that market. Rather, Plaintiff only states facts supporting a "shared monopoly" theory that Defendants have or intend to <u>jointly</u> monopolize the

market.  According to Defendants, this shared monopoly theory has been rejected by the Ninth Circuit.

To the contrary, it appears the Ninth Circuit has not specifically determined whether a shared monopoly theory may be viable under the Sherman Act in some circumstances.  See Harkins Amusement Enters. v. Gen. Cinema Corp., 850 F.2d 477, 490 (9th Cir. 1988); Int'l Longshore and Warehouse Union v. ICTSI Or., Inc., 863 F.3d 1178, 1195 n.14 (9th Cir. 2017).  Nonetheless, the Court finds Defendant has the better argument in this case, based on a survey of caselaw from both the Ninth Circuit and its district courts.  See Rebel Oil Co., Inc. v. Atl. Richfield Co., 51 F.3d 4121, 1442-43 (9th Cir. 1995) (noting that "one firm alone must have the power to control market output and exclude competition"); Lenhoff Enters., Inc. v. United Talent Agency, Inc., Case No. CV 15-01086-BRO (FFMx), 2015 WL 7008185, at *3 (C.D. Cal. Sept. 18, 2015) (citing Rebel Oil, and gathering district court cases rejecting shared monopoly theory).  Even assuming Walmart and AI conspired and/or intended to eliminate Stiles from the market, and even assuming Walmart had the market power to do so (which, as explained above, Plaintiff has not adequately plead), Plaintiff does not allege facts indicating that any single entity has or is in danger of achieving monopoly power.  Defendants' Motion to Dismiss is therefore GRANTED, and Counts 6 and 7 (to the extent Plaintiff intends to bring a claim of monopolization under the Cartwright Act in Count 7) are DISMISSED.  Because the Court finds an additional amendment of these claims would be futile, dismissal is without leave to amend.

    **4.**    **Intentional Interference with Prospective Economic Advantage**

Defendant AI argues that Plaintiff's Eighth Count, seeking redress for AI's intentional interference with her prospective business relationship with Walmart, should be dismissed because (1) AI's conduct as alleged in the SAC was not wrongful, and (2) even assuming all allegations are true, it is not plausible that AI's actions had any impact on Plaintiff's relationship with Walmart.

///

AI first argues that Plaintiff fails to allege that AI engaged in any independently wrongful conduct. More specifically, assuming Plaintiff's Eighth Count is predicated on Plaintiff's antitrust claims, the Eighth Count necessarily fails because Plaintiff's antitrust claims have failed. It is not entirely clear to the Court that Plaintiff's Eighth Count is predicted on her antitrust claims as opposed to Plaintiff's patent infringement or Lanham Act claims. To the extent they are, AI's argument is well received and Plaintiff's Eighth Count is dismissed. To the extent the Eighth Count is predicted on Plaintiff's claims other than antitrust, it is nevertheless dismissed for failure to plead the wrongful conduct on which the claim is predicated.

AI's second argument is also well received. Indeed, Plaintiff alleges that Walmart began "actively suppressing the growth of Stiles Razor" between 2008 and 2009, and began removing the razor from Walmart stores in 2009. SAC ¶¶ 31, 33. Also in 2009, Walmart removed the Stiles Razor from the Wet Shave Department, but in 2011 and 2012 sold the razor in the Beauty Department. Id. ¶¶ 39, 43-47. Plaintiff further alleges that Walmart and AI conspired to eliminate her razor from the market in 2012, SAC ¶ 54, but fails to allege that AI specifically took part in any activity intended to suppress Plaintiff's growth prior to 2012. Consequently, the Court is not convinced that AI's agreement with Walmart in 2012 interfered with any prospective business relationship between Plaintiff and Walmart, which relationship was already on the decline. Put differently, Plaintiff alleges no facts supporting her claim that AI's wrongful conduct <u>caused</u> the harm she experienced, and her claim must be dismissed for this additional reason.

AI's motion to dismiss Count 8 is therefore GRANTED. Because both defaults described above are curable, Plaintiff will be given one opportunity to amend to state facts supporting such a claim.

///

///

///

### B. Defendants' Second Motions to Dismiss and Plaintiff's Motion to Strike

Defendants' first motions to dismiss, addressed above, were noticed for a hearing date of September 8, 2016, and then continued by stipulation to November 3, 2016. Briefing was completed upon the filing of Defendants' reply briefs on October 7, 2016. ECF Nos. 73-74. On October 6, 2016, exactly 28 days before the November 3 hearing date, Walmart filed a second motion to dismiss challenging Plaintiff's Lanham Act claims (Counts 3 and 4), which motion is joined by AI. ECF Nos. 71-72. Walmart styles this second motion as an amended or supplemental motion to dismiss under Rule 12(b)(6), or alternatively, as a motion for judgment on the pleadings under Rule 12(c). Regardless of styling, Walmart's motion is improper.

Under Rule 12(g)(2), "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Walmart does not dispute that it could have raised its issues with Plaintiff's Lanham Act claims in its first motion to dismiss. Rather, in order to skirt this rule, Walmart calls its second motion an "amended" or "supplemental" motion to dismiss. But Walmart's second motion does not amend the first motion. And if it is taken as a "supplemental" motion, intended to be tacked on to the end of the first motion, then that combined motion far exceeds the Court's page limits as set forth in the Initial Pretrial Scheduling Order, ECF No. 54. At bottom, Walmart should not be permitted to use the extended hearing date to bootstrap a second motion to dismiss to its first, in violation of Rule 12(g)(2).

Rule 12(g)(2) does not prohibit a subsequently filed motion for judgment on the pleadings under Rule 12(c), but—as Plaintiff points out—such a motion is only proper after the pleadings have closed. See, e.g., Norcal Gold, Inc. v. Laubly, 543 F. Supp. 2d 1132, 1135 (E.D. Cal. 2008) (citing In re Villegas, 132 B.R. 742, 745 (9th Cir. BAP 1991)

///

///

("Pleadings are not closed until at least an answer has been filed . . . . Judgment on the pleadings may not be entered where no answer has been filed.")). Here, because Defendants have not filed an Answer, their motion brought under Rule 12(c) is improper.

For the reasons set forth above, and pursuant to the Court's inherent powers to maintain its docket, the Court GRANTS Plaintiff's Motion to Strike, ECF No. 75. Defendant Walmart's second motion to dismiss/motion for judgment on the pleadings, ECF No. 71, and Defendant AI's joinder in that motion, ECF No. 72, are hereby STRICKEN without prejudice to the refiling of Defendants' motion under Rule 12(c) at the appropriate time.

**CONCLUSION**

For the reasons set forth above, Walmart's Motion to Dismiss (ECF No. 64), joined by AI, is GRANTED, AI's separate Motion to Dismiss Count 8 (ECF No. 65) is GRANTED, Plaintiff's Motion to Strike (ECF No. 75) is GRANTED, and Walmart's Second Motion to Dismiss (ECF No. 71) and AI's Joinder therein (ECF No. 72) are STRICKEN.

Consequently, the Court Orders as follows:

- Plaintiff's Fifth Cause of Action against Walmart and AI is DISMISSED without leave to amend.
- Plaintiff's Sixth Cause of Action against Walmart and AI is DISMISSED without leave to amend.
- Plaintiff's Seventh Cause of Action against Walmart and AI is DISMISSED without leave to amend.
- Plaintiff's Eighth Cause of Action against AI is DISMISSED with leave to amend. Defendant will be given one opportunity to amend her complaint to allege specific wrongful conduct by AI, and a timeline supporting her

///

allegation that AI interfered with her prospective business relationship with Walmart.

- Walmart's Second Motion to Dismiss (ECF No. 71) and AI's related Joinder (ECF No. 72) are STRICKEN without prejudice to refiling at an appropriate time.

IT IS SO ORDERED.

Dated: August 29, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE