1  Joseph M. Alioto (SBN 42680)
2  Jamie L. Miller (SBN 271425)
   ALIOTO LAW FIRM
3  One Sansome Street, 35th Floor
   San Francisco, CA  94104
4  Telephone:  415-434-8900
   Facsimile:  415-434-9200
5  Email:  jmalioto@aliotolaw.com
           jmiller@aliotolaw.com
6
   *Attorneys for Plaintiffs*

7            **UNITED STATES DISTRICT COURT FOR THE**

8               **EASTERN DISTRICT OF CALIFORNIA**

9
   SHARIDAN STILES, an individual, STILES 4
10 U, INC, a California Corporation,

11                Plaintiff,

12        v.

13
   WAL-MART STORES, INC.; AMERICAN
14 INTERNATIONAL INDUSTRIES, and DOES
   1-100,
15
16                Defendants.

17 _____

18

| CASE NO.: |
| --- |
| 2:14-cv-2234-MCE-CMK |

**FOURTH AMENDED COMPLAINT FOR:**

**(1)  VIOLATION OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. §1**
**(2)  VIOLATION OF THE CALIFORNIA CARTWRIGHT ANTITRUST ACT, BUS. & PROF. CODE §16700, et seq.**
**(3)  PATENT INFRINGEMENT – '468 PATENT**
**(4)  PATENT INFRINGEMENT, '329 PATENT**
**(5) TRADE DRESS INFRINGEMENT, LANHAM ACT §43(a), 15 U.S.C. §1125(a)**
**(6)  FALSE ADVERTISING/FALSE ASSOCIATION,  LANHAM ACT §43(a), 15 U.S.C. §1125(a)**
** (7) INTENTIONAL INTERFERENCE WITH PROPSECTIVE ECONOMIC ADVANTAGE**

**JURY TRIAL DEMANDED**

- 1 –
*Fourth Amended Complaint*

Plaintiff Sharidan Stiles and Stiles 4 U, Inc. (collectively "Stiles") for its Fourth Amended Complaint ("FAC") against defendants Wal-Mart Stores, Inc. (hereinafter "Walmart") and American International Industries ("American Industries"), (collectively "Defendants"), demanding trial by jury, complain and allege as follows:

## INTRODUCTION

Plaintiff Stiles is the creator, designer, and inventor of the patented Stiles Razor.  The Stiles Razor is a unique, narrow width-blade razor for safe, detailed shaving applications for eyebrow, bikini, scalp art, mustache, ear, goatee, beard, sideburns, bikini, and nose hair removal.  Stiles was the first to create and invent the concept of detailed shaving with unique narrow blade width disposable razors.

Defendants Walmart and American Industries have harmed Stiles by copying the Stiles' Razor, and manufacturing, distributing, offering for sale, and selling a virtually identical razor, infringing Stiles' patents.  Walmart sells personal styling razors that compete with Stiles under its exclusive store brand, Salon Perfect.  American Industries is a supplier and competitor of Stiles through its brand, Ardell.  Defendants' plan to copy Stiles Razor and eliminate her as a competitor is a combination and conspiracy by Walmart and American Industries, to have retailer, Walmart, refuse to deal with their competitor, Stiles.  It is also an agreement to divide customers and a group boycott.  Defendants have combined, conspired, and entered into an unlawful agreement to restrain trade and lessen competition in the market for Disposable Personal Styling Razors.  In addition, Defendants have deliberately and willfully attempted to create a profit from creating a false association between themselves and the Stiles Razor and by copying the Stiles' razor trade dress causing confusion among

consumers.[1]

**NATURE OF THE ACTION**

1.      Stiles' patented personal styling razor, the "Stiles Razor," is unique in that it is the only patented razor for detailed shaving with a 1/8" blade and an ergonomic grip, allowing for safe and precise shaving.  A true and correct color image of the Stiles Razor is below:



2.      Walmart is the largest retailer in the United States.  Walmart sells razors, including razors for detailed shaving applications, directly to consumers nationwide under the Walmart store-brand name, Salon Perfect (hereinafter "Salon Perfect").  Walmart, through its store brand, Salon Perfect, sells products that compete with Stiles in the market for Disposable

_____

[1] In this Fourth Amended Complaint, Stiles does not re-allege the § 2 Sherman Antitrust Act claims or the Intentional Interference with Contractual Relations claims that were alleged in the Third Amended Complaint because they were ordered stricken by the Court in its June 20, 2018, Order.  Dkt. No. 141 at p. 15.  Plaintiff does re-allege and amend the § 1 Sherman Act and California Cartwright Act  rule of reason claims as permitted by the Court in its June 20, 2018, Order.  The omission of the § 2 Sherman Act claims and the Intentional Interference with Contractual Relations claim from this Fourth Amended Complaint is not a waiver of the right to appeal the dismissal of any of those claims, and Plaintiff has preserved and continues to preserve those claims for appeal, if necessary.

*Fourth Amended Complaint*

Personal Styling Razors.

3.      American Industries is a supplier and manufacturer of beauty supplies headquartered in Los Angeles, California.  American Industries is the manufacturer of personal styling razors for the Walmart brand, Salon Perfect.  American Industries is also a competitor in the market for Disposable Personal Styling Razors through its Ardell brand of personal styling razors.

4.      Walmart and American Industries entered into an unlawful agreement to copy the Stiles Razor, and to manufacture, offer for sale, and sell infringing knock-offs under the Salon Perfect brand, called the Salon Perfect Micro Razor.  A true and correct image of the infringing product, the Salon Perfect Micro Razor, is below:



5.      Defendants are using a combination of intentional, unlawful methods, including patent infringement, trade dress infringement, false association, false advertising, and anticompetitive, exclusionary behavior to suppress Stiles' success in the market, including entering into an agreement to eliminate a competitor from the market, engaging in a group boycott, and agreeing to divide customers.

6.     Stiles files this action seeking judicial relief to terminate Defendants' unlawful conduct.  If unchecked, Defendants will continue to infringe Stiles' patents, infringe Stiles' trade dress, deceive the market through false association of its own products with Stiles, false advertising, and engage in unlawful anticompetitive behavior.

7.     Stiles seeks all relief the law allows for patent infringement.  For Stiles' other claims, Stiles seeks injunctive relief and damages.

## THE PARTIES

8.     Plaintiff, Sharidan Stiles, is the creator, designer and owner of certain razors and other beauty products, doing business as Stiles Razor, with its principal place of business in Redding, California (hereinafter referred to as "Stiles").

9.     Plaintiff Stiles 4 U, Inc., is a California corporation with its principal place of business in Redding, California.

10.     Walmart is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 702 Southwest 8th Street, Bentonville, Arkansas 72716.  In its stores and online, Walmart offers a number of store brands as alternatives to name-brand products, including but not limited to:  Great Value, Equate, Mainstays, Special Kitty, and Salon Perfect, among others.

11.     American International Industries, is a California General Partnership, with its principal place of business at 2220 Gaspar Avenue, Los Angeles, CA  90040. American Industries product lines include Andrea, Ardell, Body Drench, Checi, China Glaze, clean + easy, Clubman, EzFlow, Fright Night, Gena, GiGi, ibd, 'N Rage, Naturessence, ProLinc, SuperNail, Surgi-Care, Tres Flores, Woltra, and Youthair.  American Industries is the manufacturer of disposable personal styling razors for the Walmart brand, Salon Perfect. American Industries also manufacturers, sells, and offers for sale personal styling razors under

the Ardell Brand.

12.     On information and belief, there are other individuals who make, obtain, distribute and supply and sell products in violation of the law and violate Plaintiffs' rights. Plaintiff is ignorant of their true identity or complete role in the alleged conduct and therefore sues them by the fictitious names DOES 1 to 100.  Plaintiff is informed and believes that each of the Defendants designated as DOE is liable in some manner for the acts and omissions, damages and injuries alleged in this FAC.

## **JURISDICTION**

13.     This Court has subject matter jurisdiction under the patent laws set forth in Title 35 of the United States Code and in Title 28 of the United States Code, particularly 28 U.S.C. §§ 1331 and 1338(a); Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); the Sherman Act, 15 U.S.C. §§ 1, *et seq*., Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 14, 15, and 26; and 28 U.S.C. §§ 1331 and 1337.

14.     This Court has jurisdiction over Stiles' state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Stiles patent infringement, Lanham Act claims and antitrust claims, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

15.     On information and belief, Defendants have transacted business in, contracted to supply goods or services and caused injury within the State of California (and this judicial district) and have otherwise purposely availed themselves of the privileges and benefits of the laws of the State of California, and are therefore subject to this Court's exercise of personal jurisdiction over them pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.

## **VENUE**

16.     In light of the matters set forth in paragraphs 1 through 15, inclusive, above, venue of this Action is proper in this judicial district pursuant to 28 U.S.C. §§ 1391, 1400(b)

and 15 U.S.C. § 22.

## FACTUAL ALLEGATIONS

Stiles' Patents and Trademarks

17.     Stiles is the inventor, designer, and owner of the Stiles Razor, a patented, disposable, personal styling razor with a very narrow blade width of 1/8 inch.  The Stiles Razor's innovative and proprietary design addresses the shaving needs of consumers for unique areas of the body such as eyebrows, scalp art, mustache, goatee, beard, sideburns, bikini, and nose hair removal.  Stiles design is characterized by the very narrow-width, honed razor blade, a tubular body, and an ergonomically designed grip handle, making personal razor styling safe and easy.

18.     Stiles has spent considerable time and resources to protect its intellectual property rights for its razor products and designs.  The fruits of Stiles' expenditures of resources to protect its intellectual property are a number of issued and pending patents.  Stiles is the owner of United States Patent No D542,468, U.S. Patent Pending No. 11/775,688, and foreign country patents in Brazil (Certificado de Registro de Desenho Industrial No. DI 6700151-3); Mexico (Instituto Mexicano de la Propiedad Industrial /tutyki de /registri de /dusebo Ubdystruak BI, 24665); Europe (Office for Harmonization in the Internal Market, Certificate of Registration No. 000650288-0001); and Canada (Canadian Intellectual Property Office, Industrial Design Certificate of Registration No. 119003).

19.     On May 8, 2007, United States Design Patent No. D542,468 was duly and legally issued to Sharidan Stiles as inventor.  A true and correct copy of the '468 patent is attached hereto as **Exhibit A**.

20.     On August 18, 2015, United States Utility Patent No. US 9,108,329 B2 was duly and legally issued to Sharidan Stiles as inventor.  A true and correct copy of the United States '329 patent is attached hereto as **Exhibit B**.

21.     In addition, Stiles is the owner of the STILES™ registered trademark.

Stiles' Relationship with Walmart

22.     In 2003, Stiles first contacted Walmart to discuss selling the Stiles Razor.  She was directed to Michael Grimm, the Buyer in Divisional New Products in the Wet Shave Department.  Grimm suggested to Stiles that in order to work with Walmart, she would need to be able to replenish her razors quickly.  From 2003 to 2005, Stiles established manufacturing relationships that would enable her to replenish her product quickly and redesigned her product to make it more cost-effective to produce.

23.     In 2005, Norm Nelson, the then Buyer in the Wet Shave Department at Walmart, in Bentonville, Arkansas met with Stiles.  Stiles presented the Stiles Razor prototypes to Nelson.

24.     The following year, in 2006, Nelson agreed to a test run of Stiles' products. Walmart agreed that Stiles' Two-Pack Women's Razor and the Two-Pack Men's Metro Razor would be placed in sidekick displays in the Wet Shave department in 500 Walmart stores for three and a half weeks.

25.     Sidekick displays attach to the sides of an aisle end-cap or are placed in various locations in-store and are typically used for smaller products, as in this instance for razors.

26.     Stiles' Razors performed well during the 2006-sidekick test run, selling 83% in Men's and 87% in Women's.

27.     Following the successful test run, Stiles' razors were placed in the Wet Shave Department in 1,500 to 2,000 Walmart stores in 2007.  Stiles was informed by Walmart that if she was selling 2 units per store/per week, the razors would continue to be sold by Walmart; in other words, she was "safe," and that if she was selling 4 units per store per week, that that was "great" product performance.

28.     Stiles Razor sales exceeded expectations.  In 2007, Stiles averaged 4 units per

*Fourth Amended Complaint*

week/per store per week in the Wet Shave Department in Walmart stores.

29.     Stiles began working with a new Buyer in the Wet Shave department at Walmart, Shannon Petree, in 2007.  Walmart then placed Stiles' products in approximately 3,600 Walmart stores in 2008.  Stiles' products continued to perform well and sales were growing.  Stiles' products were selling approximately six units per store/per week in 2008.

30.     In June 2008, Walmart assigned a new Buyer to begin working with Stiles in the Wet Shave Department, Heather Ronchetto.

31.     Later that year, Ronchetto met with Stiles for a line review in Arkansas.  At the height of the Stiles' Razor performance and growth at Walmart, Ronchetto informed Stiles that Walmart wanted to "sell other products" and that her razors "weren't a big seller," despite significantly exceeding the minimum expectation of 2 units per store/per week.

32.     Walmart then began actively suppressing the growth of Stiles Razor.

33.     In 2009, Stiles sent a request to buyer Heather Ronchetto at Walmart to "rollback" the retail price of her razor to below $3.00 to increase sales.  Ronchetto refused to rollback the price unless Walmart was able to maintain its "penny profit."

34.     In 2009, Walmart removed Stiles products from 1,144 stores where the Stiles Razor was performing well.  In 631 of the deleted stores, Stiles was selling more than 6 units per store/per week.   In 327 of the deleted stores, Stiles was selling between 5 and 5.9 units per store/per week.  In 186 of the deleted stores, Stiles was selling between 4 and 4.9 units per store/per week.   There was no legitimate business reason for removing Stiles Razor from stores where the product was performing well.

35.     At the same time, Walmart kept the Stiles Razor at stores that were selling fewer units per store/per week.  Walmart kept the Stiles Razor at 888 stores where the product was selling less than 4 units per store/per week; it kept the razor at 179 stores where the product was selling between 4 and 4.9 units per store/per week; it kept the razor at 115 stores

between 5 and 5.9 units per store/per week; and it kept the Stiles razor at just 110 stores selling over 6 units per store/per week (while removing the Stiles Razor from 631 where it was selling over 6 units per store/per week).

36.     As Walmart removed Stiles' product from stores where the product was the most successful, it then substantially increased the sales requirements three-fold—from 2 units per store/per week to 6 units per store/per week.

37.     In 2009, at the recommendation of Ronchetto at Walmart, Stiles hired a leading sales and marketing company, CrossMark to work with Walmart on her behalf.

38.     After being retained by Stiles, CrossMark discovered that Walmart was not properly replenishing her razors.  Walmart was not ordering enough of Stiles' product, early enough to keep units on the shelves.

39.     Walmart's failure to properly replenish Stiles' Razor stunted sales.

Walmart Terminates its Contract with Stiles

40.     After removing Stiles from the stores where her product was most successful, failing to properly replenish her product and tripling the minimum units per store/per week required to 6 units, in May of 2009, Ronchetto informed Stiles that her product was not meeting expectations.  Ronchetto informed Stiles that the Stiles Razor would be discontinued from the Walmart Wet Shave department.

41.     In an effort to keep her product on Walmart shelves, later in 2009, Stiles contacted Theresa Barrera in Supplier Diversity at Walmart who directed her to Carmen Bauza, Ronchetto's supervisor.  Carmen Bauza was the then Vice President of Beauty and Personal Care at Walmart.

42.     In August 2010, Stiles spoke with Bauza.  Bauza informed Stiles of a new "Lash and Brow Category" in the Beauty Department.  Bauza suggested that Stiles send her a presentation of a product line for the new "Lash and Brow Category" in the Beauty

*Fourth Amended Complaint*

Department at Walmart.

43.     Stiles developed a new product line of clippers, tweezers, and mirrors, in addition to 2, and 6-packs of the Men and Women's Stiles' Razor.

44.     In 2011, Stiles presented her new product line to Bauza.  Walmart agreed to sell 2-packs and 6-packs of the Stiles Razor in the Beauty Department but rejected the rest of Stiles' product line.  In 2011, Stiles' product sold 2 units per store/per week in the Beauty Department.

45.     In a 2011 line review for the year 2012, Walmart agreed to sell Stiles' 2 and 6-count Razor packs, but again rejected the rest of Stiles' line.

46.     The following year, in 2012, Esther Gifford, the then Walmart Buyer for the Beauty Department, informed Stiles that the Stiles Razors were not selling well enough to be placed in sidekick displays.   At the time, Stiles' Razors were selling an average 3 units per store/per week and exceeding Walmart's minimum expectations of 2.5 units per store/per week.

47.     In February 2012, Stiles met with Carmen Bauza and Caroline Day in Bentonville, Arkansas to go over the annual product line and review.  Bauza represented to Stiles that her product was performing well and that Walmart would continue selling Stiles' Razor.  Walmart also suggested that Stiles add a new bikini razor to her line.  Stiles agreed and promised to produce the products in time for the 2013 year.

48.     Just a few months later, in May 2012, in a teleconference between Stiles and Theresa Barrera, Carmen Bauza, and Caroline Day, Stiles was notified that Walmart was terminating her contract and that Walmart would not continue to purchase Stiles' products after December 1, 2012.

49.     There was no legitimate business reason for termination of Stiles' contract.

Walmart and American Industries Conspiracy and Unlawful Agreement

*Fourth Amended Complaint*

50.     American Industries manufactures and sells personal styling razors that infringe Stiles' patents and compete with the Stiles Razor under the Ardell brand name.  For example, American Industries manufactures and sells a product named the Ardell Brow Precision Shaper.  A true and correct color image of the Ardell Brow Precision Shaper is below:



51.     American Industries manufactures for Walmart, under the Salon Perfect store Brand, a razor that competes with the Stiles Razor called the Salon Perfect Precision Shaper. The Salon Perfect Precision Shaper sold in the Salon Perfect, Perfect Precision Shaping Combo is identical to the Ardell razor.  A true and correct color image of the Salon Perfect, Perfect Precision Shaping Combo is below:



Walmart Sells Infringing Razors Made by American Industries

52.    On or about 2008, American Industries began manufacturing, offering for sale, and selling the infringing Ardell Razor.

53.    In 2011, Walmart entered into an agreement with American Industries and began selling the infringing Ardell Razor under the Salon Perfect Brand.

54.    In 2012, Walmart approached Terri Cooper, Executive Vice President of American Industries with Stiles Razors and asked American Industries to copy and manufacture the patented Stiles Razor so that Walmart could sell a knock-off of the Stiles' Razor under the Salon Perfect brand.

55.    In 2012, representatives of Walmart and American Industries met, combined and conspired to eliminate the Stiles Razor from the market for Disposable Personal Styling Razors and entered into an unlawful agreement to do so.

56.    American Industries agreed to produce the knock-off of the Stiles Razor for

Walmart and did begin manufacturing a nearly identical copy of the Stiles Razor and Walmart began selling it in May 2013.  In September 2013, Stiles discovered that Walmart was selling the infringing product.

57.     On or about September 2013, Stiles contacted Walmart and informed Walmart that the Salon Perfect Micro Razor infringed her patent.  In a telephone conversation with Mark Kremer, counsel herein, following Stiles' notification, Kremer advised Stiles that the Micro Razor had been pulled from the shelves and the molds destroyed.

58.     On August 19, 2014, Terri Cooper, Vice President of American Industries, called Plaintiff Sharidan Stiles, unprompted and unplanned, and admitted to Stiles that Walmart had approached her, had given her the Stiles Razor, and asked American Industries to copy it.  American Industries agreed.

**Patent Infringement**

The Salon Perfect Micro Razor

59.     Walmart and American Industries copied the Stiles Razor during the course of developing the Salon Perfect Micro Razor.  Walmart has a well-publicized and documented pattern and practice of copying products, including patented products, for sale in its retail stores.  In the retail industry, these copies are known as "knock-offs."

60.     For Walmart, actions for patent infringement are a cost of doing business. Walmart has a pattern and practice of selling and offering for sale "knock-offs" by copying existing patented products.   Walmart has been accused of copying patented products in numerous other actions, including the following:  *Reel Grip, Ltd v. Wal-Mart Stores, Inc.,* United States District Court for the Northern District of Ohio, Case No.  1:14-cv-02290-DCN; *Solar Sun Rings, Inc. v. Wal-Mart Stores, Inc*., et al., United States District Court for the Central District of California, Case No. 2:11-cv-06990-PSG-SP; *Nike, Inc., v. Wal-Mart Stores, Inc.,* United States District Court for the Northern District of Illinois, Case No.  1:08-

*Fourth Amended Complaint*

cv-05840; and *Golight, Inc., v. Wal-Mart Stores, Inc.*, United States District Court for the District of Colorado, Case No. 1:00-cv-00331-ZLW-MJW.

61.     Once Walmart and American Industries had made a personal styling razor incorporating much of the design disclosed in Stiles' patents, Walmart began selling the Salon Perfect Micro Razor in 2013.

62.     The Salon Perfect Micro Razor infringes Stiles' patents.  Like the Stiles' Razor, the Salon Perfect Micro Razor has a very narrow, approximately 1/8" blade.  The narrow blade allows for safe, detailed and precise shaving that other grooming razors do not offer.  Also like the Stiles Razor, the narrow blade is positioned horizontally and is non-removable and covered by a protective plastic covering.  The Salon Perfect Micro Razor utilizes an ergonomically designed grip like the Stiles Razor with a long shaft and the grip positioned near the center.  These features are disclosed and claimed in Stiles' patents.

The Salon Perfect Precision Shaper

63.     The Salon Perfect "Precision Shaper" also infringes Stiles' patents.  Like the Stiles' Razor, the Precision Shaper has a narrow blade.  Also like the Stiles Razor, the narrow blade is positioned horizontally and is non-removable and covered by a protective plastic covering.  The Salon Perfect Precision Shaper utilizes a grip and a long shaft, like the Stiles Razor.  These features are disclosed and claimed in Stiles patents.

The Ardell Brow Precision Shaper

64.     The Ardell Brow Precision Shaper also infringes Stiles' patents.  Like the Stiles' Razor, the Precision Shaper has a narrow blade.  Also like the Stiles Razor, the narrow blade is positioned horizontally and is non-removable and covered by a protective plastic covering.  The Ardell Precision Shaper utilizes a grip and a long shaft, like the Stiles Razor.  These features are disclosed and claimed in Stiles patents.

65.     As Defendants sell infringing razors and engage in other illegal activities, Stiles

- 15 –
*Fourth Amended Complaint*

is losing the value of its asset, which is the remaining term of its patents. Stiles' patents are assets with definite expiration dates. Once Stiles' patents expire, its lost opportunity in the marketplace cannot be fully reclaimed.

66. Defendants' infringement of Stiles' patents, together with their unlawful exclusion of Stiles from the markets is greatly damaging Stiles and consumers. Through Defendants' infringing manufacture and sale of its Salon Perfect Micro Razor, the Salon Perfect Precision Shaper, and the Ardell Precision Shaper, Defendants can control the demand for personal styling razors, by eliminating their competition, the Stiles Razor, from the market. Defendants' actions have caused and will continue to cause irreparable harm to Stiles and to consumers.

**Trade Dress Infringement**

67. The distinctive trade dress of the Stiles Razor product includes, but is not limited to a razor with a tube shaped body with the razor blade on top, a grip in the center of the handle, packaging with each product individually viewable encased in clear plastic, and similar colorations and decorations of the product, including the Stiles' signature pink-colored razor, pink packaging, packaging that displays the curvature of a woman's left eye, and vertically packaged razors, packaged at progressively uneven heights.

68. The Stiles Razor Trade Dress is not functional and is not essential to the use or purpose of the Stiles Razor product and it does not affect the cost of quality of the product. The Stiles Razor Trade Dress is not essential to the use or purpose of the Stiles Razor product. Stiles' use of the Stiles Razor Trade Dress does not put its competitors at a significant non-reputation-related disadvantage

69. The Stiles Razor Trade Dress has acquired a secondary meaning. Plaintiff exclusively used the design from 2006 to 2008 when the Ardell Razor was first introduced. The nearly identical knock-off product was not sold until May 2013, when Walmart first

began selling the Salon Perfect Micro Razor.  In addition, the Stiles Razor was copied by American Industries at Walmart's request in 2012.  The resulting product, the Salon Perfect Micro Razor, is a nearly identical knock off that was first sold in Walmart stores in May 2013.

70.     Stiles has discovered that Defendants have copied the Stiles Razor product and are using in commerce a confusingly similar trade dress in connection with the sale of the Salon Perfect Micro Razor, the Salon Perfect Precision Shaper, and the Ardell Precision Shaper.

71.     In the manufacture and sale of the Salon Perfect Micro Razor, the Salon Perfect Precision Shaper, and the Ardell Precision Shaper, Defendants copy distinctive and non-functional elements of the Stiles Razor Trade Dress, including but not limited to the tube shape with a grip in the middle and packaging with the woman's left eye, the same decorative razor colors, including the same Stiles Razor signature pink color, and vertically packaged razors at progressively uneven heights.

72.     Defendants' adoption of Stiles trade dress is greatly damaging Stiles and consumers.  By reason of Defendants' adoption of Stiles' trade dress, Stiles' continues to suffer damage to its operation, reputation, and goodwill and will suffer loss of sales and profits that Stiles would have made but for Defendants' acts.

**False Association /False Advertising**

73.     Defendants' Salon Perfect Micro Razor infringes Stiles' patent and utilizes Stiles Trade Dress in such a way as to draw a false association between Defendants' product and the Stiles Razor.

74.     Defendants' misleadingly advertised the Salon Perfect Micro Razor on the Walmart.com website.  When a search was conducted on the Walmart.com website for "Stiles Razor," the "Salon Perfect Micro Razor" showed up in the search results.  In addition, the Stiles Razor is listed on the Walmart.com website and was listed as "out of stock."  This

advertising is both false and misleading because it leads a consumer to believe that Walmart will replenish the supply of the Stiles Razor, when in fact, it terminated Stiles contract in bad faith and then illegally copied her patented product.  After the filing FAC alleging false association/false advertising, Walmart modified its website to say, "The item is no longer available."

75.    Following Stiles' exclusion from Walmart, numerous consumers have contacted and emailed her and expressing frustration that they can no longer find her product in Walmart stores.  By way of example, an email to Stiles dated January 14, 2014, stated: "Hello, I was wondering if you knew when more of your eyebrow shapers were going to be shipped to the Macedon Walmart in Macedon, NY I Love these razors these are the ABSOLUTE BEST for having perfectly shaped eyebrows and they have been out of stock for sometime now... I miss them SO SO SO MUCH!!! Thank you!!"

76.    Defendants have made false or misleading descriptions or representations of fact in commercial advertising and promotion which represent the nature, characteristics, or qualities of another person's goods, services or commercial activities in violation of 15 U.S.C. § 1125(a).

77.    Defendants' false association/false advertising of Stiles Razor is greatly damaging Stiles and consumers.  By reason of Defendants' false advertising/false association, Stiles' continues to suffer damage to its operation, reputation, and goodwill and will suffer loss of sales and profits that Stiles would have made but for Defendants' acts.

**Antitrust Violations**

A.    Relevant Market and Market Power

78.    Defendants' conduct alleged in this Complaint affects interstate trade and commerce.  Walmart's annual revenues are measured in billions of dollars. Defendants' products are manufactured and sold throughout the United States, including in

California.  Defendants' conduct was intended to maintain and extend its market power in the nationwide market for Disposable Personal Styling Razors.

79.     The relevant product market impacted by Defendants' antitrust violations is the nationwide markets for the manufacture and sale of Disposable Personal Styling Razors. A monopolist in this market would be able to maintain the price of Disposable Personal Styling Razors above a competitive level without losing so many customers as to make the maintenance unprofitable.  Defendants' violations of the antitrust laws have foreclosed and continue to foreclose Stiles from the market for Disposable Personal Styling Razors.

80.     Disposable Personal Styling Razors constitute a distinct market from the general disposable razor market or from battery-operated razors or from a single type use razor, such as an eyebrow only, side shaving razor.  The relevant market for the manufacture and sale of Disposable Personal Styling Razors is a distinct market because both suppliers and purchasers view Disposable Personal Styling Razors as distinct products.  Consumers distinguish between Disposable Personal Styling Razors and their counterpart larger disposable razors (or battery-operated razors) because of user preference for a smaller blade to avoid the risk of injury when performing detailed shaving applications for bikini, eyebrow, hair, goatee, ear, and others.  Thus, end users do not consider conventional disposable razor products and battery-operated razors to be substitutes for Disposable Personal Styling Razors because they cannot perform the same detailed shaving functions.

81.     Furthermore, manufacturers of conventional razor products cannot easily switch to manufacturing Disposable Personal Styling Razors because the two products require different patents and capital equipment, including molds and assembly unique to each product. Thus, a manufacturer of conventional razor products would not be in a position to manufacture Disposable Personal Styling Razors without additional significant expense and resources.

82.     Disposable razors for conventional uses and Disposable Personal Styling

Razors each constitute a distinct relevant market because each product cannot properly be substituted for another for the same uses.  A consumer cannot use a full-sized disposable razor to perform detailed eyebrow shaving, for example.  Consumers do not consider these razor products to be substitutes for one another.  Further, there are substantial barriers to entry facing any potential manufacturer of Disposable Personal Styling Razors.  A potential entrant must have a patent of its own technology or license to use someone else's.  In addition, there are high capital costs involved in designing a manufacturing a new product that present barriers to entry.

83.     The relevant geographic market for the commerce at issue here is the United States.  Patent laws vary from country to country, making the United States a distinct geographic market.

84.     Walmart is the largest retailer in the world with unmatched scale of operations and strong market power over suppliers and competitors.  It is the largest company in the world by revenue.  It is also the world's largest private employer, with 2.3 million staff.  The company is a retail market leader in the U.S. and is a major competitor in all geographic markets in which it operates.  In fiscal year 2016, its revenue reached $482 billion, more than the three next largest retailers in the world combined.  As of 2016, Walmart employed twice as many people and owned about five times more retail space than its top 3 rivals.  Forbes listed Walmart as the 20th most valuable brand in the world in 2016, worth U.S. $24.7 billion.  No other direct competitor, except Amazon, has made it to the Forbes list of the most valuable brands.  Walmart's market power is such that if a product has declined in sales or is considered to have "failed" at Walmart, no other retailer will sell the product.  Defendants have market power by virtue of Walmart's position as the largest retailer in the United States and in the world.

85.     Walmart has the power to set prices and exclude competitors in the Disposable

*Fourth Amended Complaint*

Personal Styling Razor market.

86.     Walmart's market power over suppliers is so well-known throughout the retail industry, it has been called "one of the best illustrations of monopsony pricing power in economic history."

87.     While "Walmart has been touted as an innovator in supply-chain management [some] think it's more accurate to say it uses its sheer size and market power to manipulate the supply chain."

88.     Walmart has been described as having the power to "bend everyone else to its will."

89.     In the case of Walmart, "no one can deny that every single firm that supplies the retailer is, technically, free not to" buy from or sell to a variety of actors.

90.     On Walmart's market power, a 2009 study of Walmart found that, "Initial results indicate that gross margin is significantly less for Wal-Mart suppliers than non-suppliers indicating pricing concessions [by suppliers] and a dependency model of market power."

91.     Walmart's market power is such that it can not only extract any concession from a supplier, but also, if a product fails at Walmart, no other retailer will sell the product.

92.     Walmart's market power over suppliers extends to suppliers in the Disposable Personal Styling Razor market in which it participates and is a dominant buyer.

93.     For a number of years, Defendants have maintained dominance in the market for Disposable Personal Styling Razors.

94.     Defendants control the Disposable Personal Styling Razor market with overall monopoly power.

95.     Defendants have monopoly power in the market for Disposable Personal Styling Razors.  Walmart, through its Salon Perfect store brand, controls approximately 25%

of the Disposable Personal Styling Razor market in the United States.  American Industries controls approximately 73% of the Disposable Personal Styling Razor market in the United States through its Ardell brand.  Together, Defendants control 98% of the Disposable Personal Styling Razor market in the United States.  As a result, Defendants have a strong economic incentive to keep Stiles out of the market for Disposable Personal Styling Razors so it can maintain its monopoly power.

96.     Walmart and American Industries violations of the antitrust laws have foreclosed and continue to foreclose Stiles from the market for Disposable Personal Styling razors.

97.     Stiles has attempted to sell her razors to numerous other retailers.  From 2011 through the beginning of 2014, Stiles or sales representatives working on its behalf made efforts to get Stiles into many retailers, including, but not limited to the following:  Dollar General, Kroger, Ulta, Target, Walgreens, CVS, Rite Aid, Bed Bath and Beyond, Stop&Shop, Raleys, Costco, Publix, Ahold USA/Royal, HEB, Dollar Tree, Family Dollar, Meijer, Ace Hardware, Whole Foods, QVC, Winco Foods, and Save Mart.  Stiles was turned away each time.

98.     The application process to become a supplier at other retailers requires potential suppliers to provide sales data, often by retailer.  Stiles submitted this information, including the information of her decreased sales and termination from Walmart each time she applied to supply another retailer.  She was rejected each time.

99.     In a 2008 conversation with her then Crossmark sales representative working with Walmart, Kristi Glass, Ms. Glass informed Stiles that if she lost the Walmart account that it would be impossible to explain that to other future retailers.

100.     In a March 23, 2012, email from the Walmart Vice President of the Beauty and Personal Care Department, Carmen Bauza, Bauza asked about Stiles' "progress" in getting

appointments with "Ulta, Target, Walgreens, CVS, Rite Aid, Bed Bath and Beyond."  On the same date, Stiles responded to Bauza: "In our meeting I mentioned that the other retailers have declined, until I at least regain my prior position in sales to make a better presentation.  Their concerns were why we were deleted and moved [at Walmart]…"

101.    In a March 28, 2012, email follow up from Stiles to Bauza, Stiles informed Bauza that, "DG [Dollar General] has declined.  Reasons are…our situation has not improved with Wal-Mart."

102.    In an October 2012 conversation with Kroger Corporate Supplier Diversity Manager, Elizabeth Drake, Ms. Drake informed Stiles that she did not understand why Walmart had referred her to Kroger if Walmart knew Stiles was going to be terminated from Walmart.

103.    Based upon Stiles' knowledge, experience and understanding of the industry, it was clear to her that Kroger would never take a product that had been terminated at Walmart and that Walmart knew this.

104.    In 2013, Nancy Poltz, a sales representative from merchandiser Acosta (a merchandiser for Walmart and other stores) approached Stiles following a meeting with Kroger and expressed interest in Stiles Razor.  When Stiles followed up with Poltz per her request, Poltz informed Stiles that if they were in contact again, that she (Poltz) would be fired.

105.    Based upon Stiles' knowledge, experience and understanding of the industry, it was clear that because of her termination from Walmart, that Stiles had been blacklisted, and for that reason, Acosta would not do business with her.

106.    In a conversation held on August 19, 2014, between Defendant American International Industries' Executive Vice President Terri Cooper and Plaintiff Sharidan Stiles, Ms. Cooper asked, "Don't you want to move on with your life and save your business so you

- 23 –

won't get blacklisted [by other retailers]?"  Ms. Stiles replied, "I already am."

B.    Defendants Unlawful Agreement and Anticompetitive, Exclusionary Behavior

107.    Prior to 2009, Stiles' personal styling razor business was growing rapidly.  In 2008, sales of the Stiles' Razor totaled approximately $1.7 million.

108.    Defendants named herein combined and conspired together and entered into a combination, agreement, illegal trust and understanding, the terms of which are as follows:

a.    That the Defendants, both competitors in the market for Disposable Personal Styling Razors, Walmart through its store brand, Salon Perfect, and American Industries through its brand, Ardell, would eliminate Stiles as a competitor in the market;

b.    No other razor existed that could perform the multiple detailed shaving functions of the patented Stiles Razor.  Thus, Walmart would create a new, infringing knock-off to be sold exclusively at Walmart under the "Salon Perfect" brand.  The product was called the Salon Perfect Micro Razor.  American Industries agreed to copy and manufacture the "knock off" of the Stiles Razor for Walmart.  The Salon Perfect Micro Razor did not exist before the unlawful agreement;

c.    That the Defendants would sell infringing American Industries manufactured Disposable Personal Styling Razors, including the Salon Perfect Precision Shaper, the Ardell Precision Shaper, and the Walmart-branded Salon Perfect Micro Razor;

d.    Walmart agreed to sell infringing Disposable Personal Styling Razors manufactured by American Industries, including the Salon Perfect Micro Razor and the Salon Perfect Precision Shaper;

e.    That Walmart would suppress the growth of the Stiles Razor and eventually terminate its relationship with Stiles' in order to buy time to switch the market from Stiles' Razors to the lower quality Salon Perfect Micro Razor and the Salon Perfect Precision Shaper;

f.    That Walmart and American Industries would divide customers in that the

*Fourth Amended Complaint*

American Industries' Ardell Product would be sold in Target and other retailers, but not Walmart, and that the identical product would be sold at Walmart under the exclusive Walmart brand, Salon Perfect; and

g.   That as sales of the Salon Perfect Micro Razor increased, Defendants agreed that the Salon Perfect Precision Brow Shaper manufactured by American Industries for Walmart would be phased out.  Defendants sought to monopolize the market, fix prices, boycott, and eliminate Stiles from the Disposable Personal Styling Razor market.

109.   Beginning in 2012, in order to maintain their illegal trust and maintain their monopoly power and illegal pricing power over the Disposable Personal Styling Razor market, to maintain their ability to exclude actual and future competition and in order to enjoy the monopoly profits derived therefrom, Defendants and each of them, combined and conspired to eliminate Stiles products, the Stiles Razor from the relevant market.

110.   Defendants' unlawful agreement is an agreement to restrain trade in the market for Disposable Personal Styling Razors.

111.   Defendants' agreement is an unlawful group boycott.

112.   Defendants' agreement is unlawful agreement to divide customers.

113.   Defendants exert monopoly power and control over the Disposable Personal Styling Razor marketplace in the United States and have a direct effect on the Disposable Personal Styling Razor market.  Defendants are able to exercise monopoly power over the Disposable Personal Styling Razor by reason of the fact that Walmart is the largest retailer in the United States and the world.  Walmart, through sale of its store-branded "Salon Perfect" products also competes in the market for Disposable Personal Styling Razors.  American Industries is the largest manufacturer of personal styling razors, manufacturing Ardell-branded personal styling razors and manufacturing the Salon Perfect razors for Walmart.  Defendants, by virtue of said power, are able to fix prices and eliminate competition in the Disposable

*Fourth Amended Complaint*

Personal Styling Razor marketplace.

114.   Defendants and Walmart have engaged in product suppression of the Stiles Razor, by removing it from successful stores at the height of its growth, by failing to replenish it, and then by ultimately, terminating Stiles' contract in order to conspire with American Industries to sell a knock-off of Stiles' patented product.

115.   As part of its role in the combination and conspiracy, Defendant American Industries agreed to copy and manufacture the knock-off of the patented Stiles Razor.

116.   In turn, Walmart agreed to sell only Walmart-branded Disposable Personal Styling Razors, foreclosing any competition from Stiles or any other competitors in the market for Disposable Personal Styling Razors.

117.   American Industries agreed to sell its competing product, the Ardell Precision Shaper, at Target and other retailers, but not at Walmart.

118.   In addition, Defendants agreed to begin phasing out the Salon Perfect Precision Shaper product manufactured by American Industries while sales of the knock-off product, the Salon Perfect Micro Razor, grew.

119.   As part of the unlawful combination and conspiracy, Defendant Walmart removed the Stiles Razor for sale at Walmart in order to replace it with the Salon Perfect store brand. Such conduct is directly injurious to Stiles not only in terms of loss of sales by Walmart's exclusion of Stiles from the market, but in that other retailers refuse to sell any product which has allegedly "failed" at Walmart.

120.   Stiles must have access to retailers in order to grow and sell its products.

121.   Defendants' ongoing unlawful combination and conspiracy is directed at Stiles and eliminating competition in the market for Disposable Personal Styling Razors.  Such anticompetitive behavior has the purpose and effect of excluding and preventing Stiles from doing business in the Disposable Personal Styling Razor business in the United States.  Such

an agreement was perpetrated without any stated reason or cause and was unlawful, anticompetitive.

122.    Stiles further alleges that in furtherance of their combination and conspiracy, Defendants undertook a plan to suppress Plaintiffs' products, including removing Stiles' products from stores where the product was performing well, failing to replenish products, and moving Stiles to a less-frequently trafficked department.  Having suppressed the growth and success of the Stiles Razor in order to buy time to switch the market to its own store-branded razor, Defendant relied on the wholly bogus, made-up claim that Stiles Razor was not performing well enough for Walmart.

123.    On May 30, 2012, Defendant Walmart sent written notification to Stiles of Walmart's decision to terminate its Supplier Agreement with Stiles.  There was no legitimate business reason for the termination.  The purpose and effect of the actions of Defendants was to injure, damage and ultimately force Stiles from the Disposable Personal Styling Razor marketplace and drive Stiles out of business as a viable competitor in the market for Disposable Personal Styling Razors.

124.    Defendants did in fact accomplish what they combined and conspired to do.

125.    Defendants knew and intended that the direct result of the combination and conspiracy would be to force Stiles out of business.  As the direct and proximate cause and as a result of the combination and conspiracy, Stiles did in fact suffer lost profits, lost value of its business and goodwill, incur expenses and debts, none of which would have occurred in the absence of the unlawful conduct on the part of the Defendants.

126.    Defendants employed various forms of exclusionary practices in order to frustrate, impair, and substantially foreclose competition from Stiles, including suppressing the success of Stiles products at Walmart:  by removing the Stiles Razor from stores where the product was performing successfully at the height of the Stiles' razor's growth and sales, by

*Fourth Amended Complaint*

moving the Stiles Razor to a less-frequently trafficked department, by failing to adequately replenish the product, and then by terminating the contract in bad faith with Stiles in order to sell an infringing knock-off product in combination with American Industries.

**Intentional Interference with Prospective Economic Advantage**

127.    Stiles began entering into supplier agreements with Walmart in 2006 to supply the Stiles Razor to Walmart retail stores.  The last Supplier Agreement between Stiles and Walmart was entered into on or about September 30, 2011, for a term of one year, but the supplier agreement could be "renewed or extended" as many of their other agreements had been in the past.

128.    American Industries was aware of Stiles' existing contractual relationship with Walmart in that American Industries was a supplier of the Salon Perfect Precision Shaper and other products to Walmart in the same department as Stiles, the beauty department.  Stiles and American Industries products were generally sold in close proximity to one another in Walmart stores and were visible on store layouts presented to American Industries or by physically viewing any in-store display.  In addition, American Industries knew of Stiles relationship with Walmart because Stiles and American Industries are competitors.  A true and correct color photo of an in-store Walmart display is below:



129.    Upon information and belief, beginning in 2012, but before May 30, 2012, American Industries began discussing the creation of the Salon Perfect Micro Razor with Walmart.

130.    Following initial discussions, Walmart handed American Industries Terri Cooper a copy of the Stiles Razor and asked AI to make an infringing knock off to be sold under the Walmart store brand, Salon Perfect.  American Industries agreed and began developing the Salon Perfect Micro Razor.

131.    American Industries' conduct in agreeing to create, manufacture, and distribute a knock off of Stiles patented product for Walmart is wrongful.

132.    American Industries is and was a member of various industry trade associations, including the Professional Beauty Association ("PAB") and the Independent Cosmetic Manufacturers and Distributors Association ("ICMAD").

133.    PAB and ICMAD promulgate certain rules as a condition of membership in their trade associations.

134.     In its Code of Ethics, PAB requires its member distributors and manufacturers, like American Industries, to "Subscribe to and follow fair and ethical business practices in dealings with customers and other members of the professional beauty industry."

135.     In its Code of Ethics, ICMAD requires its members to, "Use only legal and ethical means in all business activities."  ICMAD's membership application requires applicants to "agree to abide" by its Code of Ethics.

136.     ICMAD membership is terminated if the board of directors concludes that a ICMAD member has violated its Code of Ethics or its bylaws.

137.     Upon information and belief, if a member of PAB violates its Code of Ethics or bylaws its membership may be terminated by the PAB board of directors or other committee.

138.     By accepting Walmart's invitation to create the infringing knock off of the Stiles Razor and manufacturing the product, American Industries knew, or was substantially certain, that Stiles would be eliminated as a Walmart supplier and that it was interfering with Stiles' future economic relations with Walmart.

139.     By accepting Walmart's invitation to create the infringing knock off of the Stiles Razor and by manufacturing the product, American Industries' conduct was wrongful in that it violated PAB's and ICMAD's Code of Ethics.

140.     Upon information and belief, on May 30, 2012, American Industries' agreement to create the infringing knock off for Walmart caused Walmart to notify Stiles that it was terminating its existing Supplier Agreement with Stiles, effective December 2012, and that the supplier agreement would not be renewed or extended in the future.

141.     Stiles was eliminated from Walmart stores in December 2012.

142.     Stiles was injured and continues to be injured by American Industries' interference with Stiles' prospective economic relations with Walmart, suffering damage to its operation, reputation, and goodwill, suffering the loss of sales and profits that Stiles would

*Fourth Amended Complaint*

have made but for American Industries' acts, in an amount to be proven at trial.

143.     Further, American Industries' interference with Stiles' prospective economic relations with Walmart caused Stiles damage in that Stiles was charged to buy back substantial amounts of the product and charged associated fees for the return and transportation of the merchandise, which were returned to Stiles in damaged condition.  Stiles would not otherwise have incurred these charges but for American Industries' interference with Stiles' relationship with Walmart.

## FIRST CLAIM FOR RELIEF

**(Violation of the Sherman Act, 15 U.S.C. § 1 against Walmart and American Industries)**

144.     All preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth at length.

145.     The relevant geographic market is the United States.  As pleaded above, the relevant product market is the market for Disposable Personal Styling Razors.  Defendants have market power in these relevant markets.

146.     The exact date being unknowing to Plaintiff and continuing to today, Defendants have specifically intended and continue to intend, through its conduct alleged in this Complaint to willfully to maintain its market power, control prices, exclude competitors, boycott Stiles, harm consumers, and destroy competition in the relevant market.

147.     There is no legitimate business justification for Defendants' anticompetitive, exclusionary conduct.

148.     As a direct and proximate result of Defendants' unlawful actions alleged herein, Stiles has suffered injury to its business and property.  If Defendants' unlawful conduct is not enjoined, Stiles will suffer irreparable harm, and the market for Disposable Personal Styling Razors will remain distorted and substantially foreclosed to the detriment of consumers in the market.

149.    Defendants' unlawful agreement violates Section 1 of the Sherman Act because it has foreclosed Stiles and other competitors from substantial portions of the market for Disposable Personal Styling Razors.

150.    Defendants' willful taking of Stiles' patented design, resulting in the tort of patent infringement, constitutes an illegal act that substantially lessens competition and tends to maintain Defendants' dominance in the market for Personal Styling Razors.

151.    Defendants' infringement of Stiles' patents constitutes an act in furtherance of Defendants' combination or conspiracy in violation of § 1 of the Sherman Act.

152.    Defendants' false association and false advertising of its Salon Perfect Micro Razor constitute illegal acts that substantially lessen competition and tend to maintain Defendant's dominance over the market for Disposable Personal Styling Razors.

153.    Stiles has been directly and proximately damaged by the losses of sales and profits resulting from Defendants' boycott, patent infringement, false association, and other unlawful anticompetitive practices.  Stiles seeks damages, treble damages, and all other relief available to it under the antitrust laws.  Stiles will be irreparably harmed if Defendants' exclusive dealing, group boycott, patent infringement, and false association/false advertising and other anticompetitive activities are not enjoined.

154.    Defendants have specifically intended and continue to intend, for its conduct alleged in this Complaint to control prices, exclude competitors, and destroy competition in the relevant markets for Disposable Personal Styling Razors.   Defendants already have market power in the relevant market, which contains high barriers to entry in the form of capital costs, intellectual property requirements and costs, and other burdens as a direct and proximate result of Defendants anticompetitive conduct alleged herein, Stiles has been injured in its business and property and suffered substantial lost profits and will suffer irreparable harm if Defendants are not enjoined from continuing its illegal course of conduct.

## SECOND CLAIM FOR RELIEF

### (California Cartwright Antitrust Act against Walmart and American Industries)

155.    All preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth at length.

156.    By reason of the facts alleged, Defendants have combined to form an illegal trust and conspired among themselves to restrain trade and eliminate competition in the market for Disposable Personal Styling Razors by taking overt acts to suppress Stiles' Razor product and by prohibiting Stiles from participating in the Disposable Personal Styling Razor market, all in violation of California Business and Professions Code Section 16700, et seq. (The Cartwright Act).

157.    In furtherance of aforesaid conspiracy, Defendants have combined and conspired to boycott Stiles, to suppress the growth of the Stiles Razor, and to eliminate Stiles from the market for Disposable Personal Styling Razors.

158.    In furtherance of the aforesaid conspiracy, Defendants have engaged in various unlawful acts to injure Stiles all for the purpose of eliminating Stiles from the market for Disposable Personal Styling Razors, including infringement Stiles' patents.  Such an agreement restraining trade continues in order to perpetrate Defendants' continuing illegal and anticompetitive monopoly over the Disposable Personal Styling Razor market in California.

159.    Stiles has suffered and continues to suffer direct monetary injury to her business and property by reason of the illegal acts of Defendants in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (Patent Infringement of the '468 Patent against Walmart and American Industries)

160.    All the preceding paragraphs are incorporated herein by reference as if fully set forth herein.

161.    Plaintiff Stiles is the owner of and has the right to sue in its own name on United States Patent No. US Patent No D542,468, issued, May 8, 2007, a copy of which is attached as **Exhibit A**.  The maintenance fees for the '468 patent have been timely paid, and the '468 patent has not been invalidated or found to be unenforceable in any prior litigation.

162.    At all times relevant to this action, Stiles has complied with the notice provisions of 35 U.S.C. §287 as it concerns the '468 patent.

163.    Defendants have directly, indirectly and/or contributorily infringed the '468 Patent by manufacturing, using, selling, offering for sale and/or importing into the United States disposable personal styling razors covered by the '468 patent, and has induced and/or contributed to the infringement of the '468 Patent by others in the United States and within this District, and will continue to do so unless enjoined by this Court.

164.    No right or license to practice the invention claimed in the '468 patent has been granted to Defendants.

165.    Stiles has been damaged by Defendants infringement and will be irreparably injured unless the infringement is enjoined by this Court as provided by 35 U.S. §283.

## FOURTH CLAIM FOR RELIEF

**(Patent Infringement of the '329 Patent against Walmart and American Industries)**

166.    All the preceding paragraphs are incorporated herein by reference as if fully set forth herein.

167.    Plaintiff Stiles is the owner of and has the right to sue in its own name on United States Patent No. US Patent No U.S. 9,108,329 B2, issued, August 18, 2015, a copy of which is attached as **Exhibit B**.  The maintenance fees for the '329 patent have been timely paid, and the '329 patent has not been invalidated or found to be unenforceable in any prior litigation

168.    At all times relevant to this action, Stiles has complied with the notice

*Fourth Amended Complaint*

provisions of 35 U.S.C. §287 as it concerns the '329 patent.

169.    Defendants have directly, indirectly and/or contributorily infringed the '329 Patent by manufacturing, using, selling, offering for sale and/or importing into the United States disposable personal styling razors covered by the '329 patent, and has induced and/or contributed to the infringement of the '329 Patent by others in the United States and within this District, and will continue to do so unless enjoined by this Court.

170.    No right or license to practice the invention claimed in the '329 patent has been granted to Defendants.

171.    Stiles has been damaged by Defendants infringement and will be irreparably injured unless the infringement is enjoined by this Court as provided by 35 U.S. §283.

**WILLFUL INFRINGEMENT**

172.    Defendants acts of infringement have been willful and in deliberate disregard of the '468 Patent, and this is an exceptional case under 35 U.S.C. §285.

173.    Defendant Walmart's sale of the patented Stiles Razor for six years before it terminated Stiles' contract and then copied her product for sale under the store brand Salon Perfect name evidences Defendant's willful intent, namely, to copy and use Stiles' technology for itself.

174.    Defendant American Industries copying of the Stiles Razor evidences Defendant's willful intent.

175.    Defendants had full knowledge of the patent-in-suit and decided to copy Stiles' Razor to replace Stiles' patented personal styling razor with Walmart's nearly identical, infringing, store-branded product, the Salon Perfect Micro Razor.

**<u>FIFTH CLAIM FOR RELIEF</u>**

**(Trade Dress Infringement in
Violation of Section 43(a) of the Lanham Act against Walmart and American Industries)**

176.    All preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth at length.

177.    Upon information and belief, Defendants adopted the trade dress for their Salon Perfect Micro Razor with knowledge of Stiles Trade Dress.

178.    Defendants misleadingly use a confusingly similar trade dress to the Stiles Razor that is likely to cause confusion, to cause mistake, and to deceive as to Defendants' affiliation, connection, association or sponsorship with Stiles.

179.    Defendants' acts are calculated to deceive, or are likely to deceive, the public, which recognizes and associates the Stiles Razor Trade Dress with the Stiles Razor. Moreover, Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive the public as to the source of Defendants' products, or as to a possible affiliation, connection with, or sponsorship by Stiles.

180.    Defendants' acts have caused, and continue to cause, irreparable harm to Stiles. Unless this Court enjoins Defendants from continuing their unauthorized acts, Stiles will continue to suffer irreparable harm.  As a result of Defendants' wrongful conduct, Stiles is entitled to injunctive, Defendants' profits, damages, and attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF

### (False Advertising and False Association
### in Violation of Section 43(a) of the Lanham Act against Walmart)

181.    All preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth at length.

182.    Defendants copied Stiles' patented razor in such a way as to unfairly compete in the marketplace by drawing a false association between Defendants' product and Stiles.

183.    Defendants falsely and misleadingly advertised on the Walmart.com website, having the "Salon Perfect Micro Razor" appear in search results when the Stiles Razor was

searched for on the website.  In addition, Defendants falsely advertised that the Stiles Razor is "out of stock," leading consumers to believe it will be replenished, when in fact, Walmart terminated her contract in order to copy the Stiles Razor and market and sell their own store-branded product.

184.    Defendants have made false associations and false or misleading descriptions or representations of fact in commercial advertising or promotion which represent the nature, characteristics, qualities, sponsorship or association with another person's goods, services, or commercial activities in violation of 15 U.SC. §1125(a).

185.    Defendants have violated and, upon information and belief, intend to continue to willfully, knowingly, and intentionally violation 15 U.S.C. § 1125(a) by their unlawful acts in a manner that is likely to cause confusion, mistake, or deceive as to the nature, characteristics, or qualities of their goods, services, or commercial activities.

186.    Defendants conduct has caused Stiles to suffer irreparable harm and, unless enjoined by the Court, will cause Stiles to continue to suffer damage to its operation, reputation, and goodwill, and will suffer the loss of sales and profits that Stiles would have made but for Defendants' acts.  Defendants have been, and will continue to be, unjustly enriched by their unlawful acts.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage against American Industries)

187.    All preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth at length.

188.    This claim is filed against Defendant American Industries to recover damages sustained by Stiles by reason of American Industries' tortious interference with Stiles' prospective business relationship with Walmart and to obtain injunctive relief to prevent

threatened loss or damage from further interference and disruption.  Stiles had, during the period covered by this Complaint, reasonable and valuable expectations of a prospective business relationship with Walmart.  American Industries was fully aware of the existence of that prospective relationship.

189.    Defendant American Industries' conduct is not privileged or excused and is without any legitimate business justification.  American Industries has knowingly engaged in such conduct for the purpose of excluding competition and to deprive consumers of the benefits of free and open competition.

190.    Defendant American Industries with the full intention to do so, disrupted and interfered with Stiles' prospective business and economic relationships with Walmart as alleged above.  As a proximate result of Defendant's wrongful conduct, Plaintiff Stiles has been prevented from consummating prospective business transactions with Walmart and will be similarly precluded in future years.

191.    Accordingly, Stiles has been and will continue to be deprived of substantial profit and the enhancement and maintenance of its going concern value.  As a proximate result of the above-described wrongful conduct, Stiles has suffered actual damages in an amount to be proven at trial.

192.    In intentionally disrupting and interfering with Plaintiff's prospective business and economic relationships as alleged herein, Defendant's conduct has been willful, oppressive, malicious, and despicable.  By reason thereof, Stiles is entitled to exemplary punitive damages in an amount sufficient to punish or deter American Industries.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stiles prays that Defendants Walmart and American Industries will be cited to appear and answer herein and for Judgment of this Honorable Court as follows:

(a)      Judge and decree that Defendants have violated Section 1 of the Sherman Act, (Count One) and the Cartwright Act (Count Two), Bus. § Prof. Code § 16700, *et seq*., and that judgment be entered against Defendants for treble the amount of actual damages suffered by Stiles and that it be awarded reasonable attorneys' fees and recover its costs of suit, as required by Section 4 of the Clayton Act (15 U.S.C. §16) and by Section 16720 of the Bus. & Prof. Code;

(b)      Defendants be adjudged and decreed to have willfully and knowingly, directly, indirectly, and/or contributorily infringed the '468 Patent (Count Three);

(c)      Defendants be ordered to pay actual damages to Stiles, but not less than a reasonable royalty, by reason of Defendants infringement of the '468 Patent together with prejudgment interest, costs, and increased damages pursuant to 35 U.S.C. §284;

(d)      A permanent injunction be entered against Defendants, their officers, agents, servants, and employees, and all entities and individuals acting in concert with them to permanently restrain any further infringement of the '468 Patent;

(e)      Defendants be adjudged and decreed to have willfully and knowingly, directly, indirectly, and/or contributorily infringed the '329 Patent (Count Four);

(f)      Defendants be ordered to pay actual damages to Stiles, but not less than a reasonable royalty, by reason of Defendants infringement of the '329 Patent together with prejudgment interest, costs, and increased damages pursuant to 35 U.S.C. §284;

(g)      A permanent injunction be entered against Defendants, their officers, agents, servants, and employees, and all entities and individuals acting in concert with them to permanently restrain any further infringement of the '329 Patent;

(h)      This case be declared an "exceptional case" within the meaning of 35 U.S.C. §285 and reasonable attorneys' fees, costs and treble damages be awarded to Stiles;

(i)      Judge and decree that Defendants willfully and knowingly infringed the Stiles

Razor Trade Dress (Count Five);

(j)      Order injunctive relief prohibiting Defendants from using any trade dress which is likely to be confused with the Stiles Razor and award Stiles damages for trade dress infringement, including prejudgment interest and costs against Defendants under 15 U.S.C. §1117;

(k)      Judge and decree that Defendants have falsely advertised and falsely associated their products with Stiles in violation of Lanham Act §43(a) (Count Six);

(l)      Award Stiles three times its damages, reasonable attorneys' fees, and statutory damages under 25 U.S.C. §1117;

(m)      Judge and decree that American Industries has tortuously interfered with Stiles' prospective economic relationships as set forth in Count Seven and that judgment be entered against American Industries for tortious interference with prospective business relationships for actual damages suffered and for exemplary and punitive damages for such tortious interference;

(n)      Awarding Stiles all reasonable attorneys' fees allowed by statute, expert fees, costs, pre-judgment interest, and post-judgment interest; and

(o)      Granting such other and further relief, at law and equity, to which Stiles is entitled.

## <u>JURY TRIAL DEMANDED</u>

Stiles demands a trial by jury as its right under the Seventh Amendment to the Constitution of the United States or as given by statute.  Fed. R. Civ. P. 38.

//

//

//

//

Respectfully submitted:

Dated: July 10, 2018

*/s/ Jamie L. Miller*
Jamie L. Miller
Joseph M. Alioto
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone:  415-434-8900
Facsimile:  415-434-9200
Email:  jmalioto@aliotolaw.com
          jmiller@aliotolaw.com

*Attorneys for Plaintiffs*