Bryan A. Merryman (SBN 134357)
bmerryman@whitecase.com
Catherine S. Simonsen (SBN 307325)
catherine.simonsen@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA 90071-2433
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

Bijal V. Vakil (SBN 192878)
bvakil@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Attorneys for Defendant
WALMART INC.

Mark D. Kremer (SBN 100978)
m.kremer@conklelaw.com
Zachary Page (SBN 293885)
z.page@conklelaw.com
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100
Fax: (310) 998-9109

Attorneys for Defendant
AMERICAN INTERNATIONAL INDUSTRIES

Joseph M. Alioto (SBN 42680)
Email: jmalioto@aliotolaw.com
Jamie L. Miller (SBN 271452)
Email: jmiller@aliotolaw.com
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: 415-434-8900
Facsimile: 415-434-9200

Attorneys for Plaintiffs
SHARIDAN STILES AND STILES 4 U, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SHARIDAN STILES, an individual; STILES 4 U, INC., a California corporation,

Plaintiffs,

v.

WALMART INC., f/k/a WAL-MART STORES, INC.; AMERICAN INTERNATIONAL INDUSTRIES,

Defendants.

Case No. 2:14-cv-02234-MCE-CMK

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Judge: The Honorable Morrison C. England, Jr.

Magistrate Judge: The Honorable Dennis M. Cota

This Order will govern the production of discoverable documents originating from hard copy sources and as electronically stored information ("ESI") as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of California, and any other applicable order and rules.

**Cooperation**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

**General Provisions**

1. As used herein, "Requesting Party" means the party requesting production of documents. As used herein, "Producing Party" means the party that may be producing documents in response to the request of requesting party. As used herein, the words "Party" or "Parties" include the Requesting Party and the Producing Party.

2. Nothing in this Order shall be deemed to prevent the Parties from agreeing to terms different than or inconsistent with the terms of this Order.

3. Nothing in this Order shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

4. Nothing in this Order limits or expands a Requesting Party's right to obtain relevant discovery as defined in Fed. R. Civ. P. 26(b)(1).

**Documents from Hard Copy Sources**

The parties will produce documents originating from hard copy sources ("Hard Copy Documents") and attachments in Group IV single-page TIFF format (black and white, 300 dpi) with corresponding searchable OCR text, along with the below-listed metadata fields when available. The parties will provide a standardized load file compatible with Concordance and with a Bates number field included in the load file to match text and metadata with TIFF images. With respect to Hard Copy Documents, data on the load file will include:

a. Beginning Document Bates Number

b. Ending Document Bates Number

c. Beginning Family Bates Number (begins with 1st page of parent)

d. Ending Family Bates Number

e. Custodian or Source

f. Confidentiality Designation

g. Page Count

h. Redaction (Y/N)

i. Text File Path, including filename and extension

**Electronically Stored Information**

Discovery of ESI shall proceed as follows:

1. The parties agree that in responding to Fed. R. Civ. P. 34 Requests, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

2. Except for those documents noted in Paragraphs 5-7, the parties will produce documents originating as ESI in TIFF format with extracted text, along with the below-listed metadata fields when available. The parties will provide a standardized load file compatible with Concordance and with a Bates number field included on the load file to match text and metadata with TIFF images. With respect to ESI, data on the load file will include:

a. Beginning Document Bates Number

b. Ending Document Bates Number

c. Beginning Family Bates Number (begins with 1st page of parent)

d. Ending Family Bates Number

e. Custodian or Source

f. Duplicate Custodians (to the extent de-duplication is used and the metadata is readily available)

g. Confidentiality Designation

h. Page Count

i. Redaction (Y/N)

j. Document Date (if available)

k. File Name (including extension)

l. File Extension

m. Document Type

n. From

o. To

p. CC

q. BCC

r. Subject

s. Email Date Received (Local Time Zone)

t. Email Time Received (Local Time Zone)

u. Email Date Sent (Local Time Zone)

v. Email Time Sent (Local Time Zone)

w. Text File Path, including filename and extension

x. Native Link

y. MD5 Hash Values (or SHA-1 or alternatively agreed upon Hash Standard)

3. The parties may redact (1) information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (2) information subject to non-disclosure obligations imposed by governmental authorities, law or regulation (e.g., protected personal information); (3) sensitive, non-relevant information, including but not limited to personally identifiable information, trade secrets, or information not related to the products alleged in the operative complaint of this action. The parties will produce redacted documents in TIFF format with corresponding searchable OCR text and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure.

4. For any documents that contain an attachment (for example, email), to the extent available, the fields listed in Paragraph 2 should be produced as part of the metadata load file for both the parent and child documents.

To the extent a document is part of a "document family" with a combination of responsive, privileged, and/or non-responsive documents: (i) the privileged documents will be represented in the production with a placeholder TIFF image that bears the legend "Documents

Withheld as Privileged"; and (ii) the non-responsive documents may be withheld and represented in the production with a placeholder TIFF image that bears the legend 'Non-Responsive Document." The TIFF image(s) shall be endorsed with a sequential Bates number. The parties will not produce non-relevant Excel spreadsheets attached to relevant emails.

5. The parties will produce relevant spreadsheets (e.g. Microsoft Excel) not requiring redaction in native format. Spreadsheets requiring redaction will be converted to TIFF images. The parties agree to meet and confer about native redaction if TIFF redaction would be too burdensome or would render the document not reasonable useable. At any time the parties may consider whether the information contained in Excel spreadsheet is available and should be produced from a structured data source from which the Excel spreadsheets are generated.

6. The parties will produce slide shows (e.g. Microsoft PowerPoint presentations) not requiring redaction in native format. To the extent PowerPoint files contain information subject to a claim of privilege, PowerPoint files shall be imaged, with speaker notes showing in the image, as well as any hidden content displayed in the image. If the PowerPoint contains animation, then the file should be produced in native format with a TIFF placeholder bearing the legend "Produced in Native File Format." The TIFF image shall be endorsed with a sequential Bates number and the produced native file named to match this Bates number. The metadata load file shall contain a link to the produced native file via data values called "Native Link." The Native Link values should contain the full directory path and file name of the native file as contained in the produced media.

7. The parties will produce in native format those documents and ESI that do not convert well to TIFF images (e.g. oversized drawings, picture files, audio and video files), but where not practicable the parties will meet and confer no later than five business days after the producing party has confirmed the impossibility of producing the data in either TIFF or native format. The purpose of any such meet-and-confer shall be to ascertain how the producing party can produce the data in question in another computer-searchable format, whereupon the parties shall agree on a format for the production. The parties will produce picture files in native format, color TIFF, color PDF, or JPEG format when color images are available. The file name for the

documents produced in native format will consist of a Bates number and a confidentiality designation if available. The parties will provide a corresponding placeholder TIFF image, bearing the legend "Produced in Native File Format" for native files included in a production. The TIFF image shall be endorsed with a sequential Bates number and the produced native file named to match this Bates number. Bates numbers shall be unique across the entire document production and sequential within a given document. The parties will use the following Bates numbering convention:

(a) STILES 000001

(b) WM-STILES-0000001

(c) AII_00000001

The metadata load file shall contain a link to the produced native file via data values called "Native Link." The Native Link values should contain the full directory path and file name of the native file as contained in the produced media.

8. For all documents withheld on the basis of a legal privilege or immunity, the parties agree to furnish a privilege log in Microsoft Excel within 21 days of the conclusion of each document production which comply with the legal requirements under federal law, but at a minimum will include the following information: the Bates number(s) for the withheld document; a separate privilege log number for each withheld document; the custodian of the document; the author and all recipients of any e-mail or other communication, including any recipient who received an electronic copy or electronic blind copy; the date when the document was created or first sent; a general description of the document sufficient to disclose the asserted basis for the privilege or immunity; and the privilege or immunity invoked, using the following codes: "A/C" for attorney-client privilege; "WP" for attorney's work-product; "CT" for the common-interest privilege; and other for any other privilege or immunity, with a shorthand title for the privilege invoked. Communications exclusively between a party or its representatives and its trial counsel that post-date the filing of the complaint need not be placed on a privilege log. The parties may agree to extend the deadline for furnishing the privilege log after the conclusion of each document production depending on the volume and circumstance of the production. The

parties shall meet and confer in good faith to discuss a limited, non-burdensome approach to address any dispute relating to a privilege log or documents withheld on the basis of a legal privilege or immunity.

Inadvertent failure to log privileged documents or metadata will not result in the waiver of privilege, provided that upon discovering the inadvertent omission, the Producing Party sends to the Requesting Party an addendum to the appropriate privilege log explaining the reason for the omission and providing the required privilege log entries for the document(s).

9. The parties may perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values, and may produce only a single copy of identical ESI. Entire document families may constitute duplicate ESI. De-duplication shall not break up document families. To the extent de-duplication is used, all custodians of a de-duplicated document must be identified in the “Duplicate Custodians” metadata field specified in Paragraph 2. If the parties de-duplicate ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information for the duplicate custodians. An overlay data file shall be produced after every rolling production to account for updated duplicate custodian information in the Custodian field.

If there are any handwritten notes, or any other markings, on a document, it shall not be considered a duplicate. Any document that contains an alteration, marking on, on addition to the original document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting or redlining. If such markings/alterations are made in color, the documents must be produced in color.

If the producing party becomes aware of any file that was incorrectly filtered during the de-duplication process, the producing party shall promptly notify the other party and produce the incorrectly filtered file.

10. Parties shall preserve parent-child relationships (the association between an attachment and its parent document). The parties will provide a Beginning Family Bates Number and Ending Family Bates Number for each produced attachment in the data load file.

11. When a party propounds discovery requests under Fed. R. Civ. P. 34, the parties agree to make the productions in phases and prioritize the order of production. The parties understand that this protocol contemplates rolling productions of documents, and they acknowledge that nothing in this Order waives, restricts or eliminates the parties' respective rolling production obligations, the parties' respective supplementation obligations or the parties' "claw-back" rights and obligations pursuant to the Stipulated Protective Order in this case.

12. If the forms of production allowed by this Order present an undue burden or cost for a Producing Party, the parties shall meet and confer to try to agree on a reasonable, alternative form of production. Nothing in this Order prohibits a party from seeking relief from this protocol pursuant to the applicable United States District Court for the Eastern District of California and/or Federal Rules of Civil Procedure discovery rule(s).

13. When documents produced in accordance with this Order are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents as described in Paragraph 3 shall be the copy used. Extracted text files shall not be used in any proceeding as a substitute for the image of any document. This paragraph does not apply to any summary exhibits or demonstratives.

14. Each party will bear the costs to process and review its own documents according to this Order. Notwithstanding this paragraph, nothing in this Order limits or prohibits a prevailing party from seeking recovery of all allowable fees and costs, including attorney fees and costs, as may be permitted under applicable law and as provided by applicable local rules.

15. Nothing in this Order shall be construed to affect, modify or amend the Protective Order entered in this case.

16. Nothing in this Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time in accordance with the applicable United States District Court for the Eastern District of California and/or Federal Rules of Civil Procedure discovery rules.

**Production of Databases and Other Structured Data**

1. Generally, relevant ESI stored in databases should be produced in a mutually agreeable data exchange format.

2. The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured data source. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable TIFF-image format. If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable report form.

3. Nothing herein shall obligate a Producing Party to custom reporting. The Parties shall meet and confer to discuss the associated cost and proportionality of any custom reporting.

**Other Data Sources**

The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production, and will seek Court intervention if necessary.

**Deficiency Procedure**

If the Requesting Party has cause to believe that a Producing Party's discovery efforts have been deficient, the Parties will follow the procedures set forth in the Federal Rule of Civil Procedure and United States District Court for the Eastern District of California Local Rule 251 for resolving the dispute.

**Clawback Provision**

1. The production of privileged or work-product protected documents, ESI or other information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other proceeding.

2. This ESI Protocol shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502 and shall be enforceable and granted full faith and credit in all

other state and federal proceedings by 28 U.S. Code § 1738. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

3. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

**Disposition of Data and Documents**

The parties agree to provide adequate security to protect data provided by the other party or by non-parties. This includes secure data storage systems, established security policies, and security training for employees, contractors and experts. Adequate security also includes such measures as data encryption in transit, data encryption at rest, data access controls, and physical security. Upon dismissal or entry of a final judgment not subject to further appeal, the parties agree to follow the procedures set forth in the Protective Order in this case with regard to the destruction of materials produced in discovery.

**Modification**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

Dated: January 25, 2019

WHITE & CASE LLP

By: *_/s/ Stefan Mentzer_*
Stefan Mentzer

Attorneys for Defendant
WAL-MART STORES, INC.

Dated: January 25, 2019

CONKLE, KREMER & ENGEL

By: *_/s/ Zachary Page_*
Zachary Page

Attorneys for Defendant
AMERICAN INTERNATIONAL INDUSTRIES

Dated: January 25, 2019

ALIOTO LAW FIRM

By: */s/ Jamie L. Miller*
Jamie L. Miller

Attorneys for Plaintiffs
SHARIDAN STILES and STILES 4 U, INC.

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

**Dated: January 30, 2019**

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE