UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIDAN STILES,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC.;<br>AMERICAN INTERNATIONAL<br>INDUSTRIES, INC.; and DOES 1-100,<br><br>Defendants. | No. 2:14-cv-02234-MCE-DMC<br><br>**MEMORANDUM AND ORDER** |

Sharidan Stiles ("Plaintiff") brings this action against Wal-Mart Stores, Inc. ("Walmart" or "Defendant") and American International Industries ("AI") (collectively "Defendants") alleging intellectual property and antitrust violations related to the so-called Stiles Razor, a styling razor patented by Plaintiff. Plaintiff's Fourth Amended Complaint ("FAC") brings seven claims for relief; at issue here are her First and Second Claims for violations of 15 U.S.C. § 1 (the "Sherman Act") and Cal. Bus. & Prof. Code § 16700 et seq. (the "Cartwright Act"), respectfully. FAC, ECF No. 142. Presently before the Court is Walmart's Motion to Dismiss Plaintiff's First and Second Claims. Def.'s Mot., ECF No. 147. AI has joined the Motion. ECF No. 150. For the reasons below, Defendants' Motion is DENIED.

1

# BACKGROUND[1]

Plaintiff is the inventor of a disposable personal styling razor with a narrow 1/8-inch blade and ergonomic handle designed for detailed shaving of unique areas of the body like eyebrows, scalp art, and sideburns. Plaintiff began selling her razor in Walmart stores on a test run basis in 2006, and then in the Wet Shave Department in 2007. Stiles was told her product would continue to be sold at Walmart if she could sell two units per store per week—four units was considered a "great product performance." In 2008, Plaintiff sold six units per store, per week, which constituted approximately $1.7 million in annual sales.

Despite exceeding sales minimums, Walmart supposedly began suppressing the growth of Plaintiff's product. According to Plaintiff, Walmart removed the Stiles Razor from high sales stores, including 631 stores selling at least six units weekly. Plaintiff also alleges Walmart did not restock the razors where it sold well and tripled the minimum sales requirement in stores where the razor had its lowest performance. Walmart also apparently refused to "rollback" the price of the razor to increase sales. At the same time, Walmart kept the razor in stock at stores with lower sales. In 2009, Walmart discontinued sales of the Stiles Razor in the Wet Shave Department, and after selling it in the Beauty Department from 2011 to 2012, Walmart ended Plaintiff's contract in May 2012.

Defendant AI has manufactured and sold its Ardell Brow Precision Shaper since 2008. Plaintiff claims this product infringes on the Stiles Razor. In 2011, Walmart entered into an agreement with AI to sell their Ardell Brow Precision Shaper under Walmart's store brand, Salon Perfect. Walmart began selling the Salon Perfect Micro Razor in 2013. In 2014, the Executive Vice President of AI allegedly confessed to Plaintiff that Walmart approached AI in 2012 to create a "knockoff" Stiles Razor (i.e., the

///

---

[1] The following facts are taken from Plaintiff's FAC.

Micro Razor) to be sold under Walmart's Salon Perfect brand. AI allegedly accommodated Defendant's request, and in return Walmart agreed to sell AI's razor.

After Defendant terminated Plaintiff's contract, she claims she pitched Stiles Razors to at least twenty-two other retailers but was rejected by each due to her product being dropped at Walmart. The application process to become a supplier at a retail store requires submission of the former retailer's sales data, and Plaintiff claims that a Walmart sales representative warned that if the Stiles Razor was dropped at Walmart, "it would be impossible to explain that to other future retailers." FAC ¶ 99. Additionally, an email exchange between Plaintiff and Walmart's Vice President of the Beauty and Personal Care Department discusses that many other retailers expressed concern that Plaintiff's product was "deleted and moved" by Walmart. Plaintiff contends that due to Defendants' actions, she has effectively been "blacklisted" within the market.

Plaintiff claims that Defendant is the dominant buyer in disposable personal styling razors market, and that AI is the largest manufacturer of personal styling razors, manufacturing Ardell-branded and Salon Perfect razors for Walmart. Together, Defendants Walmart and AI control 98% of the disposable styling razor market. Plaintiff alleges Walmart sought to suppress the growth of the Stiles Razor and eventually end its relationship with Plaintiff to "buy time to switch the market from Stiles' Razors to the lower quality Salon Perfect Micro Razor and the Salon Perfect Precision Shaper . . . ." FAC ¶ 108(e). Walmart and AI, with their combined market share, allegedly worked to divide customers since AI's Ardell product would be sold at Target and other retailers, while the AI-manufactured Salon Perfect Micro Razor would be sold at Walmart.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins.

3

Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no

4

"undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

In a prior Order, the Court dismissed Plaintiff's antitrust claims on grounds that she failed to allege that Defendants precluded her from selling Stiles Razors to other retailers. ECF No. 101 at 8:24–9:8. After this ruling, Plaintiff submitted new evidence in support of a Motion for Reconsideration, asking this Court to reverse its decision dismissing her so-called "rule of reason" claims under the Sherman Act and Cartwright Act. ECF No. 141 at 7–8. This new evidence tended to show that Plaintiff had "attempted to enter the market through other retailers and was rejected because her product 'failed' at Walmart." Id. at 8:17–19. Based on this added information, the Court was convinced that reconsideration was called for and granted Plaintiff leave to file a FAC reasserting her rule of reason antitrust claims. Id. at 9. Nonetheless, upon the filing of her FAC, Defendants now once again seek dismissal of the same Sherman Act and Cartwright Act rule of reason claims.

### A. Defendant's Motion to Dismiss Plaintiff's First Claim for Violation of Section 1 of the Sherman Act

The Court finds that Plaintiff has alleged sufficient facts to state a claim for antitrust conduct under the rule of reason. Absent facts indicating a per se unreasonable restraint on trade, agreements are analyzed under the "rule of reason." California ex rel. Brown v. Safeway, Inc., 615 F.3d 1171, 1178 (9th Cir. 2010). Under the rule of reason, the fact finder weighs all circumstances of the case to determine whether, on balance, the agreement at issue is an unreasonable restraint on competition. Leegin Creative Leather Prod., Inc. v. PSKS, Inc., 551 U.S. 877, 885 (2007). Factors to be considered include "specific information about the relevant business," "the restraint's history, nature, and effect," and whether the businesses involved have sufficient market power. Id. at 885-86 (quoting State Oil Co. v. Khan, 522 U.S. 3, 10 (1997)). "In its design and function the rule distinguishes between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." Id.

Application of the rule of reason does not automatically guarantee that a pleading survives a motion to dismiss. Though "the trier of fact must determine the ultimate viability of a trade restraint under the rule of reason, that requirement does not prevent the Court from determining if [Plaintiff's] claim[s] [have] met the threshold pleading requirement . . . ." Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC, 149 F. Supp. 3d 1188, 1197 (E.D. Cal. 2015). To state a claim under Section 1 of the Sherman Act, a plaintiff must show an unlawful agreement constituting a restraint of trade. Under the rule of reason, the antitrust plaintiff bears the initial burden of demonstrating that a defendant's conduct or policy had a substantially harmful effect on competition. Safeway, Inc., 615 F.3d at 1178. A plaintiff may satisfy this burden by offering "proof of actual detrimental effects, such as a reduction of output." FTC v. Ind. Fed'n of Dentists, 476 U.S. 447, 460 (1986). After a plaintiff meets this burden, "the fact finder weighs all circumstances of the case to determine whether, on balance, the

agreement at issue is an unreasonable restraint on competition." Leegin Creative Leather Prod., 551 U.S. at 885.

Here, Plaintiff's FAC contains allegations that Defendants exercised market control by entering into an illicit agreement to push Plaintiff out of the disposable personal styling razor market. These allegations include details on how Defendants kept Plaintiff out of the market, such as Walmart's intentional tripling of sales-minimums at poorly performing locations, while stopping sales in high performing locations. Relying on an out-of-circuit case, Defendants nonetheless argue that their alleged agreement to infringe on Plaintiff's patent is not enough to show a restriction of trade or commerce. ECF No. 147 at 9-11 (citing Retractable Techs., Inc. v. Becton Dickinson & Co., 842 F.3d 883, 893 (5th Cir. 2016)). However, Plaintiff's allegations suggest a three-part agreement amongst Defendants: first, Defendants agreed that AI would produce a "knockoff" Stiles Razor for sale under the Salon Perfect brand; second, Walmart would in turn sell AI's Ardell branded razor; and finally, once the Salon Perfect razor was produced, Defendants would split the market with the Salon Perfect razor being sold at Walmart, and the Ardell at other retailers. Plaintiff contends that because Walmart controlled so much of the market, Defendants had enough market power to exclude her from substantial portions of the disposable styling razor market. According to Plaintiff, because the Stiles Razor falls into a smaller, unique market on account of its detailed shaving functions and grip to prevent risk of injury, and given Walmart's status as the largest retailer in the world in this niche market, it accordingly had the power to set prices and exclude competitors. The Court believes these contentions are sufficient to survive Defendants' pleading challenge.

Plaintiff's allegations, if true, support that Walmart could, and in fact did, leverage its ability to set the prices of products, manipulate sales and product output by selectively stocking and/or removing Stiles Razors inapposite to sales performance data. Plaintiff claims that she tried to sell Stiles Razors elsewhere, but since her product "failed" at Walmart, these other retailers refused to stock it. Defendants' apparent success in

pushing Plaintiff's razor out of the disposable styling razor market undermines contentions that Walmart does not compete in the relevant market. As the Court held in its prior Order, "[t]hat is not to say this evidence is dispositive of any antitrust behavior, nor is it even dispositive of Walmart's market power. Walmart's arguments to the contrary are well understood. It is, however, enough to sufficiently allege market power in order to survive a motion to dismiss." ECF No. 141 at 9:2-5.

As Plaintiff has alleged enough facts to state viable antitrust claims, Defendants' Motion to Dismiss Plaintiff's First Claim for violations of Section 1 of the Sherman Act is DENIED.

### B. Defendant's Motion to Dismiss Plaintiff's Second Claim for Violation of the Cartwright Act

California's Cartwright Act prohibits combinations of two or more persons' capital, skill, or acts to restrict trade or commerce. Cal. Bus. & Prof. Code § 16720(a). To sustain a claim for violation of the Cartwright Act under the rule of reason, Plaintiff must show that "the purpose of the effect of the conspiracy is an illegal restraint of trade." Dimidowich v. Bell & Howell, 803 F.2d 1473, 1483 (9th Cir. 1986). "The question in a rule of reason case is whether the anticompetitive effects of the restraint outweigh the procompetitive effects." Id. at 1484.

Here, for the same reasons that Plaintiff's Sherman Act claim survives, so does her Cartwright Act claim. See Id. at 1476–77 ("The antitrust provisions of the Cartwright Act were patterned after section 1 of the Sherman Act," indeed, "[t]he California Supreme Court has said that the Cartwright Act 'is similar in spirit and substance' to the Sherman Act). Therefore, Defendants' Motion to Dismiss Plaintiff's Second Claim for violations of the Cartwright Act is DENIED.[2]

///

///

///

---

[2] Plaintiff's Motion to File a Sur-Reply, ECF No. 164, is DENIED as moot.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss the First and Second Claims of Plaintiff's FAC, ECF No. 147, is DENIED.

IT IS SO ORDERED.

Dated: March 28, 2019

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE