Joseph M. Alioto (SBN 42680)
Jamie L. Miller (SBN 271452)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone:  415-434-8900
Facsimile:  415-434-9200
Email: jmiller@aliotolaw.com
Email:  jmalioto@aliotolaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIDAN STILES, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> WALMART INC. f/ka, WAL-MART STORES, INC., *et al.*, <br><br> Defendants. <br> _____ | **CASE NO.:** <br><br> **2:14-cv-2234-MCE-DMC** <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS** |

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

ARGUMENT ...............................................................................................................1

    I.     LEGAL STANDARDS .................................................................1

         A.     MOTIONS FOR RECONSIDERATION.......................................1

         B.     MOTION FOR JUDGMENT ON THE PLEADINGS ..................2

    II.    DEFENDANTS HAVE NOT CLEARED THE HIGH HURDLE
         TO JUSTIFY GRANTING THE EXTRAORDINARY RELIEF OF
         RECONSIDERATION....................................................................3

    III.   DEFENDANTS' MOTION MISCHARACTERIZES THE
         COURT'S ORDER AND THE ALLEGATIONS IN PLAINTIFFS'
         COMPLAINT..................................................................................4

         A.     Defendants' Arguments are Inapposite Because This is Not A
             Horizontal Market Division Case ...................................................4

         B.     *Retractable* and *Masimo* are not Binding Authority on this Court and
             Do Not Mandate Reconsideration of this Court's Order................7

         C.     Defendants' Statute of Limitations Argument Misstates the Law and
             Ignores the Allegations of the FAC ...............................................9

         D.     Reconsideration is Not Warranted Where Defendants Have Reiterated
             The Exact Same Arguments Advanced In Their Motion
             to Dismiss .....................................................................................10

    IV.   DEFENDANTS' SUBSTANTIAL FORECLOSURE ARGUMENTS
         DO NOT MANDATE RECONSIDERATION OF THIS COURT'S
         MARCH 29 ORDER ....................................................................11

    V.    THE COURT DID NOT FAIL TO CONSIDER PLAINTIFFS'
         ANTITRUST INJURY CLAIMS...............................................16

    VI.   DEFENDANTS' RULE 12(C) MOTION IS BARRED BY THE
         DOCTRINE OF THE LAW OF THE CASE............................19

    VII.  IN THE EVENT THIS COURT IDENTIFIES ANY DEFECT IN THE
         FAC, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND......20

CONCLUSION ...........................................................................................................20

## TABLE OF AUTHORITIES

**CASES**

*American Ad Management v. General Telephone Co. of California*,
    190 F.3d 1051 (9th Cir. 1999) ........................................................... 17

*Andrx Pharmaceuticals, Inc. v. Biovail Corp. Intern.*,
    256 F.3d 799 (D.C. Cir. 2001) ........................................................... 16

*Angelico v. Lehigh Valley Hosp., Inc.*,
    184 F.3d 268 (3d Cir. 1999) .............................................................. 16

*Aya Healthcare Services v. AMN Healthcare*,
    2017 WL 6059145 (S.D. Cal. December 6, 2017) ............................... 18

*Banxcorp. v. Bankrate Inc*,
    2012 WL 3988182 (D.N.J. Sept. 11, 2012) ...................................... 6,7

*Brantley v. NBC Universal*,
    675 F.3d 1192 (9th Cir. 2010) ........................................................... 19

*Campion v. Old Repub. Home Prot. Co., Inc.*,
    No. 09-748, 2011 WL 1935967 (S.D. Cal. May 20, 2011) ................ 1, 3

*Camreta v. Greene*,
    563 U.S. 692 (2011) ............................................................................ 8

*Carsten v. UPS*,
    1996 WL 335421 (E.D. Cal. Mar. 19, 1996) ..................................... 18

*Chae v. SLM Corporation*,
    2008 WL 11342464 (Jan. 17, 2008) .............................................. 1, 20

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ............................................................................ 2

*Colonial Med. Group v. Catholic Healthcare West*,
    2010 WL 2108123 (N.D. Cal. May 25, 2010) ............................... 13, 14

*Continental T.V., Inc. v. G.T.E. Sylvania, Inc.*,
    433 U.S. 36 (1977) .............................................................................. 7

*Davis v. Nucci*,
    2011 WL 6000378 (E.D. Cal. Nov. 29, 2011) ..................................... 7

*Doleman v. Meiji Mut. Life Ins. Co.*,
    727 F.2d 1480 (9th Cir.1984) ............................................................. 3

*Dworkin v. Hustler Magazine, Inc,*
  867 F.2d 1188 (9th Cir.1989) ....................................................................... 2

*Eastman v. Quest Diag. Inc.,*
  2015 WL 7566805 (N.D. Cal. Nov. 25, 2015) ...................................... 14

*Feitelson v. Google, Inc.,*
  80 F. Supp. 3d 1019 (N.D. Cal. 2015) .................................................. 14

*First Med Representatives, LLC. v. Futura Medical Corp.,*
  195 F. Supp. 2d 917 (E.D. Mich. 2002) ................................................ 17

*Fleming v. Pickard,*
  581 F.3d 922 (9th Cir. 2009) .................................................................... 2

*Freeman v. San Diego Assoc. of Realtors,*
  77 Cal. App.4th 171 (1999) ..................................................................... 15

*Garcia v. Biter,*
  195 F.Supp.3d 1131 (E.D. Cal. 2016) ..................................................... 1

*Gill v. Delaware Park*, LLC,
  294 F. Supp. 2d 638 (D. Del. 2003) ...................................................... 17

*Gorlick Dist. Cntrs v. Car Sound Exh. Sys.,*
  723 F.3d 1019 (9th Cir. 2013) ................................................................ 18

*GSI Tech v. United Memories, Inc.,*
  2014 WL 1572358 (N.D. Cal. April 18, 2014) ...................................... 7

*Guild Wineries & Distilleries v. J. Sosnick & Son,*
  102 Cal.App.3d 627 (1980) ...................................................................... 7

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
  896 F.2d 1542 (9th Cir. 1990) .................................................................. 3

*Hip Hop Bev. Corp. v. Monster Energy Co.,*
  733 F. App'x 380 (9th Cir. 2018) .......................................................... 14

*Ismail v. Wells Fargo Bank, N.A.,*
  2013 WL 4516122 (E.D. Cal. Aug. 23, 2013) ........................................ 3

*In OJMAR US, LLC v. Sec. People, Inc.,*
  2017 WL 3301214 (N.D. Cal. Aug. 2, 2017) ........................................ 14

*In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig.,*
  2013 WL 812143 (D.N.J. Mar. 5, 2013) ................................................ 13

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
   2017 WL 6524839 (D. Kan. Dec. 21, 2017) ........................................ 13

*Intri-Plex Techs. v. Crest Group, Inc.*,
   499 F.3d 1048 (9th Cir. 2007) ............................................................ 20

*Klehr v. A.O. Smith Corporation*,
   521 U.S. 179 (1997) ............................................................................ 10

*Krehl v. Baskin-Robbins Ice Cream Co.*,
   664 F.2d 1348 (9th Cir. 1982) .............................................................. 6

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Assoc.*,
   884 F.2d 504 (9th Cir. 1989) .............................................................. 16

*Lone Star Milk Producers, Inc. v. Dairy Farmers of America, Inc.*,
   2001-2 Trade Cas. (CCH) ¶ 73509, 2001 WL 1701532 (E.D. Tex. 2001) ........... 17

*Macquarie Grp. Ltd. v. Pacific Corp. Grp*, LLC,
   2009 WL 539928 (S.D. Cal. March 2, 2009) ............................... 12, 15

*Maraziti v. Thorpe*,
   52 F.3d 252 (9th Cir. 1995) .................................................................. 2

*Marlyn Nutra., Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) ........................................................... 2, 4

*Masimo Corp. v. Tyco Health Care Group, L.P.*,
   2004 WL 7094930 (C.D. Cal. May 28, 2004) ...................................... 9

*Marsh v. Anesthesia Services Medical Group, Inc.*,
   200 Cal.App.4th 480 (2011) .............................................................. 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................. 6

*McDowell v. Calderon*,
   197 F.3d 1253 (9th Cir. 1999) .............................................................. 3

*Metronet Services Corp., v. Qwest Corp.*,
   2001 WL 765167 (W.D. Wash. Apr. 16, 2001) ................................... 17

*Meyers v. Protective Insurance Agency*,
   2018 WL 1899285 (M.D. Pa. April 20, 2018) .................................... 20

*Moccio v. Cablevision Sys. Corp.*,
   208 F. Supp. 2d 361 (E.D.N.Y. 2002) ............................................... 12

*Morales-Villalobos v. Garcia-Llorens*,
    316 F.3d 51 (1st Cir. 2003) ...................................................................16

*Orchard Supply Hardware v. Home Depot*,
    967 F.Supp.2d 1347 (N.D. Cal. 2013)................................................18, 19

*Pecover v. Electronic Arts, Inc.*,
    633 F.Supp.2d 976 (N.D. Cal. 2009)...................................................14

*POURfect Prods. v. Kitchenaid*,
    2010 WL 1769413 (D. Ariz. May 3, 2010) ........................................18

*PNY Techs., Inc. v. Sandisk Corp.*,
    2014 WL 1677521 (N.D. Cal. April 25, 2014) ...................................14

*Rebel Oil Co. v. Atlantic Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995).................................................................17

*Retractable Techs., v. Becton Dickinson*,
    842 F.3d 883 (5th Cir. 2016) ..................................................................9

*Richardson v. U.S.*,
    841 F.2d 993 (9th Cir. 1988) ................................................................19

*Shai Alkebu-Lan v. Dickinson*,
    2014 WL 1286069 (E.D. Cal. Mar. 31, 2014).......................................4

*SmileCare Dental Grp. v. Delta Dental Plan*,
    88 F.3d 780 (9th Cir. 1996) ..................................................................16

*Snipes v. Dollar Tree Distribution, Inc.*,
    2018 WL 4409429 (E.D. Cal. Sept. 17, 2018) ......................................2

*Thomas v. Bible*,
    983 F.2d 152 (9th Cir. 1993) ................................................................19

*Twentieth Century-Fox Film Corp. v. Dunnahoo*,
    637 F.2d 1338 (9th Cir. 1981)................................................................2

*United States v. Navarro*,
    972 F.Supp. 1296 (E.D. Cal. 1997) .......................................................4

*United States v. Navarro*,
    160 F.3d 1254 (9th Cir. 1998) ...............................................................4

*Vangala v. St. Mary's Regional Med'l Ctr.*,
    31 F. App'x 537 (9th Cir. 2002)...........................................................18

*Woodson v. State of California*,
2016 WL 524870 (E.D. Cal. Feb. 10, 2016) .......................................................... 20

*Xerox v. Media Scis. Int'l., Inc.*,
511 F. Supp. 2d 372 (S.D.N.Y. 2007) ................................................................... 14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1971) ............................................................................................. 10

**STATUTES AND RULES**

E.D. Cal. Local Rule 230(j) ............................................................................. 2, 11

Fed. R. Civ. P. 12(b)(6) ...............................................................................passim

Fed. R. Civ. P. Rule 12(c) ...........................................................................passim

**OTHER AUTHORITY**

Areeda and Hovenkamp, Antitrust Law, ¶ 402 ............................................... 17

*Plaintiffs' Opposition to Defendants' Motion for Reconsideration*

Plaintiffs Sharidan Stiles and Stiles 4 U, Inc. hereby oppose Defendants' Walmart Inc. and American International Industries' Joint Motion for Reconsideration, or in the Alternative, For Judgment on the Pleadings (Dkt. No. 193), as follows:

## INTRODUCTION

As this Court has made clear, "A motion for reconsideration may not be used to get a second bite at the apple." *Garcia v. Biter,* 195 F.Supp.3d 1131 (E.D. Cal. 2016) (England, D.J), citing *Campion v. Old Repub. Home Protection Co., Inc.,* 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011).   Here, after five years and numerous 12(b)(6) motions, more accurately, Defendants seek a sixth or seventh bite at the apple.  Defendants' Motion relies on the same arguments advanced in their previous Motion to Dismiss.  These are not proper or sufficient grounds for granting reconsideration of this Court's March 29, 2019, Order.  (Dkt. No. 188). Even if Defendants had presented proper grounds for reconsideration, their arguments otherwise fail on the merits, particularly because they are based upon mischaracterizations of the Fourth Amended Complaint's allegations and of this Court's Order.  Further, by labelling their Motion, in the alternative, as a Rule 12(c) Motion, Defendants cannot revive arguments previously made and decided by this Court.  These arguments are barred by the doctrine of the law of the case.  *See Chae v. SLM Corporation*, 2008 WL 11342464 (C.D. Cal. Jan. 17, 2008). As Plaintiffs earlier noted, at some point, litigation must move beyond the pleading stage. Accordingly, Plaintiffs respectfully request that this Court deny Defendants' Motion in its entirety.[1]

## ARGUMENT

## I.      LEGAL STANDARDS

## A.      MOTIONS FOR RECONSIDERATION

---

[1] Plaintiffs incorporate, as if fully set forth herein, their Opposition to Defendants' Motion to Dismiss.  (Dkt. No. 159).

A court should not revisit its own decisions unless extraordinary circumstances show that its prior decision was wrong. *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 816 (1988). The law of the case doctrine counsels against reopening questions once resolved in ongoing litigation. *Snipes v. Dollar Tree Distribution, Inc.,* 2018 WL 4409429, *1 (E.D. Cal. Sept. 17, 2018) (England, D.J.) Under Local Rule 230(j), a party seeking reconsideration must: "set[ ] forth the material facts and circumstances surrounding [the] motion ... including: what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutra., Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 880 (9th Cir. 2009). Motions for reconsideration "'*may not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised in earlier litigation. (citations omitted).'" *Id*. [emphasis in original]. Dissatisfaction with the court's order, or belief that the court is wrong in its decision, is not grounds for relief through reconsideration. *See, e.g., Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981). A district court may properly deny a motion for reconsideration that simply reiterates an argument already presented by the petitioner. *Maraziti v. Thorpe*, 52 F.3d 252, 255 (9th Cir. 1995).

## B.     MOTION FOR JUDGMENT ON THE PLEADINGS

A motion pursuant to Rule 12(c) is "functionally identical" to a motion under Rule 12(b). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989). Consequently, when considering a motion to dismiss under Rule 12(c), the court "must accept all factual allegations in the [pleadings] as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). To prevail on a Rule

12(c) motion, the moving party bears the burden to demonstrate that (1) "no material issue of fact remains to be resolved" and (2) "he is entitled to judgment as a matter of law." *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.1984). Judgment on the pleadings is improper if the Court is required to go "beyond the pleadings to resolve an issue." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

## II.     DEFENDANTS HAVE NOT CLEARED THE HIGH HURDLE TO JUSTIFY GRANTING THE EXTRAORDINARY RELIEF OF RECONSIDERATION

Apparently dissatisfied with their briefing on the Motion to Dismiss, Defendants' Motion seeks reconsideration on the grounds that the Court "overlooked precedent" and "did not acknowledge" Defendants' argument regarding "substantial foreclosure and antitrust injury." (Dkt. No. 193 at 1). Defendants have done nothing more than re-hash the same arguments made in their Motion to Dismiss. On reconsideration, Defendants do not bring new evidence to the Court's attention or an intervening change in case law—instead they argue "clear error."[2] The absence of acknowledgement of Defendants' argument is not "clear error." And the so-called "precedent" the Court purportedly overlooked is a non-binding ruling from the United States District Court for the Central District of California on a motion *in limine*.

Defendants cite four cases for the proposition that the Court's purported "clear error" is grounds for granting reconsideration. (Dkt. No. 193 at 2). Each case is readily distinguishable from the circumstances presented here. In *Ismail v. Wells Fargo Bank, N.A.*, 2013 WL 4516122 (E.D. Cal. Aug. 23, 2013), the Court granted reconsideration on the basis of a misapprehension of factual circumstance.[3] Likewise, in *Shai Alkebu-Lan v. Dickinson*, 2014

---

[2] It is not an abuse of discretion to deny a motion for reconsideration where the underlying order is merely "erroneous," rather than "clearly erroneous." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.4 (9th Cir. 1999). "Mere doubts or disagreement about the wisdom of a prior decision ... will not suffice .... *To be clearly erroneous, a decision must ... [be] more than just maybe or probably wrong; it must be dead wrong*." *Campion v. Old Repub. Home Prot. Co., Inc.*, No. 09-748, 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011) [emphasis added].

[3] *United States v. Navarro*, 972 F.Supp. 1296, 1302 (E.D. Cal. 1997), cited by Defendants was reversed. *See, United States v. Navarro*, 160 F.3d 1254 (9th Cir. 1998).

WL 1286069 (E.D. Cal. Mar. 31, 2014), the court's decision to grant reconsideration turned on its misapprehension of a fact – namely, that the prisoner seeking relief was not in "imminent danger of physical injury." *Id*. at *1-2.  Defendants' arguments are not grounded in this Court's misapprehension of any undisputed fact in this case.  Defendants fare no better in their citation to *Davis v. Nucci*, 2011 WL 6000378 (E.D. Cal. Nov. 29, 2011).  In *Davis* on reconsideration, just as the Defendants do here, the plaintiff claimed that "the Court was unaware of eight objections which he lists in the Objection." Id. at *1.  The court disagreed, holding that, "The essence of Plaintiff's Objection is that he disagrees with the Court's [] Order." *Id*.  While the Defendants are free to disagree with the Court's Order, disagreement is not sufficient to justify granting the extraordinary relief of reconsideration that Defendants request here.

### III.   DEFENDANTS' MOTION MISCHARACTERIZES THE COURT'S ORDER AND THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT

#### A.   Defendants' Arguments are Inapposite Because This is Not A Horizontal Market Division Case

Defendants' first argument in support of reconsideration is a new one— that reconsideration should be granted because Plaintiffs "do not have standing to challenge [] an alleged agreement to 'split the market.'"  (Dkt. No. 193 at 3).[4]  *First*, this argument was never raised in any previous motion by Defendants.  It is established that motions for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised in earlier litigation." *Marlyn,* 571 F.3d at 880.  After five years of

---

[4] Preliminarily, Defendants argue that the Court's August 31, 2017, Order held that the "only agreement alleged in the [complaint] is that Walmart—as a retailer—propositioned AI—as a manufacturer/supplier—to make a knock off of the Stiles Razor to be sold at Walmart under Walmart's brand, and AI agreed." (Dkt. No. 193 at 3).  But this quote is taken entirely out of context.  Rather, the Court was analyzing the *per se* allegations in Plaintiffs' Complaint.  In the following sentence, which is omitted by Defendants, this Court goes on to explain that, "Because Plaintiff alleges no agreement between AI and Walmart-the-supplier, Plaintiff's hub and spoke argument fails." (Dkt. No. 101 at 7).

litigating the pleadings and six sets of motions to dismiss, this argument "could have been raised earlier in the litigation," and Defendants offer no justification for the inexcusable delay.

*Second,* Defendants' argument fails on its merits because the authority they invoke simply does not apply to the facts of this case.  Defendants misstate and mischaracterize the Court's Order and the allegations in Plaintiffs' Fourth Amended Complaint ("FAC") and then, incredibly, declare that authority that applies to competitors who benefit from <u>horizontal market division</u> agreements is in some way applicable here.  As this Court has ruled and as Defendants argued, this is not a horizontal case.

*Third*, Plaintiffs pled in the FAC (and every prior version of the Complaint in which antitrust claims were pled, Dkt. No. 16, ¶¶ 5, 53 "On or about 2012, representatives of Walmart and American International Industries met and conspired to eliminate the Stiles Razor from the market for Disposable Personal Styling and entered into an unlawful agreement to do so," 82, 83, 124, 132, 134; *see* similar allegations in Dkt. Nos. 56, 117, 142), and argued in Opposition to Defendants' Motion to Dismiss (and in every prior opposition to a motion to dismiss Plaintiffs' antitrust claims, *see* Dkt. No. 28 at 17-19; Dkt. No. 69 at 11-12), that *<u>Defendants' agreement was an agreement to exclude Stiles from the market</u>*.  (Dkt. No. 159 at p. 7-11).  And that was the agreement that the Court recognized in its Order when it held that:

> Plaintiff's FAC contains allegations that Defendants exercised market control by entering into an illicit agreement <u>to push Plaintiff out of the disposable personal styling razor market</u>. These allegations include details on how Defendants kept Plaintiff out of the market…" and "Plaintiff contends that because Walmart controlled so much of the market, Defendants had enough market power to exclude her from substantial portions of the disposable styling razor market.

(Dkt. No. 188:3-6) [emphasis added].  In other words, the Court held that the agreement was a vertical agreement to exclude Stiles from the market.[5]  The fact that this Court held that one

---

[5] Defendants have never before argued that the agreement alleged by Plaintiffs was a market division agreement. In their first motion to dismiss, Defendants contended that the agreement was an exclusive dealing agreement. (Dkt. No. 24 at p. 21).  In their second and most recent motions to dismiss, Defendants acknowledged that Plaintiffs pled an agreement to exclude Stiles from the market.  (Dkt. No. 64 at 8 and Dkt. No. 147 at 14).

component of the agreement alleged by Plaintiffs was that "once the Salon Perfect razor was produced, Defendants would split the market with the Salon Perfect razor being sold at Walmart, and the Ardell at other retailers" does not transmute the nature of the vertical agreement between AI and Walmart into a horizontal market division agreement.

Defendants cite to *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 583 (1986) in support of their new argument.  Preliminarily, *Matsushita* is distinguishable on the grounds that it was a decision on summary judgment after "years of detailed discovery."  *Id*. at 578.  The court did not assess pleading standards under Fed. R. Civ. P. 12(b)(6) or Rule 12(c). Further, *Matsushita* does nothing more than state the obvious – that a competitor cannot recover damages when it has not sustained an injury.  As distinguished from the facts here, *Matsushita* involved a horizonal agreement, not a vertical one.  *Id*. at 577-578.  And this is an important distinction.  The *Matsushita* Court noted that a competitor could not recover damages for a horizontal conspiracy to fix prices when it stood to benefit from those higher fixed prices. *Id.* at 582-583.  Here, under no conceivable theory did Stiles stand to gain from the alleged unlawful agreement by Defendants.  Nor do Defendants argue as much.

Next, Defendants cite to *Banxcorp. v. Bankrate Inc,* 2012 WL 3988182 (D.N.J. Sept. 11, 2012) for the proposition that, "courts routinely dismiss competitor complaints alleging market-division agreements."  (Dkt. No. 193 at 3).  To understand why this rule does not apply here, it is important to understand the rationale underpinning this rule.  "The hallmark of a horizontal market allocation is collusion among competitors to confer upon each a monopoly in a specific area."  *Krehl v. Baskin-Robbins Ice Cream Co*., 664 F.2d 1348 (9th Cir. 1982).  The rule bars a competitor who reaped the benefits of the monopoly conferred on them by a horizontal market allocation agreement from coming to Court and claiming injury.  As the *Banxcorp* court explains, "the courts *have* created a distinction between competitors and customers asserting [horizontal] market division/customer allocation claims in an environment

in which prices rose as a result of the anticompetitive conduct." *Id*. at *3 (emphasis in original and added). Thus, in order for *Banxcorp* to apply, Plaintiffs must have stood to gain from anticompetitive price increases. Defendants expressly concede that, "Plaintiff does not allege that prices in the relevant market increased." (Dkt. No. 147 at 19:2-3). Further, the agreement at issue here is distinguishable on the grounds that it is vertical, not horizontal. No monopoly was conferred on Stiles by virtue of a horizontal market allocation agreement. Plaintiff could not and did not stand to gain from an agreement to effectively eliminate her from the market. *Banxcorp*. is entirely inapposite. *GSI Tech v. United Memories, Inc*., 2014 WL 1572358 (N.D. Cal. April 18, 2014) is similarly distinguishable. *GSI Tech* does not allege an agreement to exclude a competitor from the market, as does Plaintiff here. The agreement in *GSI* was a horizontal market allocation agreement. *Id.* at *3.

Further, *Guild Wineries & Distilleries v. J. Sosnick & Son*, 102 Cal.App.3d 627 (1980) is instructive on this issue as to California law. In *Guild Wineries,* Sosnick, a competitor, had standing to sue *Guild*. And importantly, just because the *Guild* case contained a market division component, the entire agreement was not characterized or analyzed as a market division agreement. Nor was Sosnick barred from pursuing claims for its exclusion from the market even though it was a competitor in the allocated markets.[6]

### B.   *Retractable* and *Masimo* are not Binding Authority on this Court and Do Not Mandate Reconsideration of this Court's Order

Defendants argue that the extraordinary relief of reconsideration should be granted because they cited "uncontroverted" case law holding that, "no legal authority supports basing a patentee's antitrust case on a finding of patent infringement." (Dkt. No. 193 at 5). In its Order, this Court referred to the authority cited by Defendants as, "out-of-circuit." (Dkt. No.

---

[6] Defendants also suggest that "by virtue of their vertical relationship as supplier and retailer, AI and Walmart could not have entered into an agreement to 'split the market.'" (Dkt. No. 193 at 4). This argument is nonsensical. In so doing, Defendants ignore the entire body of law assessing vertical restraints. *See Continental T.V., Inc. v. G.T.E. Sylvania, Inc*., 433 U.S. 36 (1977).

188 at 7).  Defendants take issue with this characterization on the grounds that they cited a case from the United States District Court for the Central District of California.  To be clear, out-of-circuit or not, Defendants have cited no authority that is binding on this Court.  *See Camreta v. Greene*, 563 U.S. 692, 730, n.7 (2011) (holding that, "'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'")  Nor do they claim as much.

As Plaintiff explained in the Opposition to the Motion to Dismiss, Plaintiffs' antitrust claim is not predicated on a finding of patent infringement.[7]  Rather, it is an agreement to exclude Plaintiff from the market.  (Dkt. No. 159 at 7-12; Dkt. No. 142, ¶¶ 22 – 49, 52 – 58, and 78 – 126).  Nevertheless, Defendants continue to erroneously frame the allegations in the FAC.  These mischaracterizations were rejected by this Court: "Plaintiff's FAC contains allegations that Defendants exercised market control by entering into an illicit agreement to push Plaintiff out of the disposable personal styling razor market."  (Dkt. No. 188:3-5).

Further, as Plaintiffs also set out in the Opposition to the Motion to Dismiss, the authority cited by Defendants is readily distinguishable.  In both cases cited by Defendants, *Masimo* and *Retractable*, the defendants had already been found to infringe plaintiffs' patents.  (Dkt. No. 159 at 12-13).  There is no such finding here.  Indeed, Defendants have asserted claims for declaratory relief for invalidity and noninfringement of Plaintiffs' patents.  (Dkt. No. 189 and 190).  An antitrust claim cannot be predicated on a finding of patent infringement—without such a finding.  It would be fundamentally unfair to dismiss Plaintiffs' claims on these grounds, particularly when Defendants have existing claims for noninfringement and invalidity.

---

[7] Defendants cite to one sentence of Plaintiffs' nearly 200 paragraph, 41-page complaint, that states that, "the tort of patent infringement, constitutes an illegal act that substantially lessens competition."  (Dkt. No. 193 at 5).  As explained above, Plaintiffs antitrust claims do not hinge on a finding of patent infringement.  Rather, as Plaintiff has consistently argued throughout these proceedings, the agreement is an unlawful agreement to exclude her from the market, the essential factual allegations of which do not hinge on a finding of patent infringement.  If the Court were to find it necessary, the complaint could be amended to remove the sentence.

Also as noted in Plaintiffs' Opposition to the Motion to Dismiss, these cases are distinguishable for other reasons. (Dkt. No. 159 at 13-14). The only antitrust claim at issue in *Retractable* was a § 2 claim, and the court reasoned that the jury based the § 2 violation on three different types of unilateral conduct, including patent infringement. *Retractable Techs., v. Becton Dickinson*, 842 F.3d 883, 892 (5th Cir. 2016). No § 1 claim was before the *Retractable* court and the court made that point clear.

*Masimo Corp. v. Tyco Health Care Group, L.P.*, 2004 WL 7094930, *1 (C.D. Cal. May 28, 2004) involved a decision on a motion *in limine* before a trial on antitrust claims. The court did not dismiss the plaintiffs' antitrust claims, as defendants ask this court to do. Instead, it prohibited the parties from 'discuss[ing] the patent jury's verdict, the patent trial, or the issues of patent infringement and/or validity. (*See* Dkt. No. 159 at 14). Nothing in either of these cases requires this Court to dismiss Plaintiffs' antitrust claims. Nor do they require this Court to grant reconsideration of its March 29 Order.[8]

### C.    Defendants' Statute of Limitations Argument Misstates the Law and Ignores the Allegations of the FAC

Defendants next argument is also a new one – that the Court's Order credits conduct that is barred by the statute of limitations. (Dkt. No. 193 at 7). In other words, Defendants argue that this Court cannot consider any conduct by Defendants before January 11, 2010. Once again, a motion for reconsideration is not the place to advance new arguments, particularly given the extensive Rule 12 practice in this case. Nevertheless, Defendants' argument is meritless. The Court's Order explained that, "Plaintiff's FAC contains allegations that Defendants exercised market control by entering into an illicit agreement to push Plaintiff out of the disposable personal styling razor market. These allegations include details on how

---

[8] Defendants cite a litany of cases (Dkt. No. 193 at p. 6, fn.2). As explained above, and confirmed by the Court, Plaintiffs' allegations do not rest on a finding of patent infringement. These cases, which Defendants claim purportedly warn of transforming business torts into treble damages cases, do no such thing. Rather, they reinforce the elements of antitrust claims.

Defendants kept Plaintiff out of the market, such as Walmart's intentional tripling of sales-minimums at poorly performing locations, while stopping sales in high performing locations." (Dkt. No. 188 at 7:3-7).  The Court cited just one example, but the type of conduct cited by the Court continued through Stiles' termination in 2012.  Defendants ignore the FAC's other allegations that, Walmart "failed to replenish" Stiles' razor and moved her to the less-trafficked beauty department, thereby stunting her sales. (FAC ¶¶ 38, 39, 40, 42, 43, 44, 122, 126).  Further, the tripling of sales requirements in the wet shave department barred Stiles from selling in that department, even after she repeatedly made efforts to reenter in 2010, 2011, 2012. (Stiles Decl. ¶ 2, 3).[9]  Thus, these acts were not limited to 2009, as Defendants claim.

But even so, Defendants' argument demonstrates a serious misunderstanding of the application of the statute of limitations in antitrust cases.  In *Klehr v. A.O. Smith Corporation*, 521 U.S. 179 (1997), the Supreme explained that , "in the case of a 'continuing violation,'…'each overt act that is part of the violation and that injures the plaintiff,'… [that] "starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times."  *Klehr*, 521 U.S. at 189.  In *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971), the Supreme Court specifically examined "whether Zenith [could] recover in its 1963 suit for damages suffered after June 1, 1959, *as the consequence of pre-1954 conspiratorial conduct*." *Zenith,* 401 U.S. at 338. [emphasis added].  Ultimately, the *Zenith* Court held that a plaintiff in an antitrust action may recover damages occurring within the statutory limitation period that <u>*are the result of conduct occurring prior to that period*</u>.  *Id*. at 341-342.

> **D.   Reconsideration is Not Warranted Where Defendants Have Reiterated the Exact Same Arguments Advanced In Their Motion to Dismiss**

---

[9] While Plaintiff acknowledges that typically courts do not look outside the pleadings on Rule 12(c) motions, Plaintiffs believe this Motion is more properly a motion for reconsideration.  To the extent the Court may be inclined to view it as a Rule 12(c) motion, Courts have discretion to grant leave to amend.  Plaintiff submits additional facts to show that if the Court found it necessary, the Complaint could be amended.

Defendants' next argument for reconsideration is that, "for the reasons discussed in defendants' motion to dismiss" Plaintiffs otherwise did not plausibly allege a "meeting of the minds" with respect to any other "agreement."  (Dkt. No. 193 at 7).  Defendants do nothing more than re-state the argument they made in their Motion to Dismiss. They do not show any, "new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion" as required by Local Rule 230(j).  This argument was specifically rejected by the Court in its March 29 Order.  (Dkt. No. 188:11-23).

Further, Defendants misrepresent the agreement alleged by Plaintiffs[10] and of the rulings by this Court.[11] By way of example, Defendants incorrectly claim that Plaintiffs argued in their opposition that  "the sole basis on which the Court could 'infer' a larger conspiracy" was that Walmart gave AI a copy of the razor and asked AI to copy it.  (Dkt. No. 193 at 5).  This is not so.  Plaintiffs' Opposition set forth the facts alleged in the FAC that, when taken together as a whole, are more than sufficient to show concerted action under § 1.  (*see* arguments at Dkt. No. 159 at 8-11 which cite to specific factual allegations in the FAC).  Defendants' characterization of this as nothing more than a run-of-the-mill supplier -retailer agreement is a tortured denial of the record in this case.

IV.    **DEFENDANTS' SUBSTANTIAL FORECLOSURE ARGUMENTS DO NOT MANDATE RECONSIDERATION OF THIS COURT'S MARCH 29 ORDER**

---

[10] Defendants argue that "commerce would come to a grinding halt if" regular agreements between manufacturers would subject them to antitrust liability.  (Dkt. No. 193 at 5).  Defendants have attempted to persuade this Court from this case's inception that Walmart simply elected to buy a product from a different supplier.  But the Salon Perfect Micro Razor *never existed* before Defendants' unlawful agreement.  As explained above, the agreement Plaintiffs have alleged, taken as a whole, and not parsing allegations as Defendants do, is an agreement to exclude Stiles from the market.  Further, the authority cited by Defendants is distinguishable on the grounds that none of those cases alleged an agreement to eliminate a competitor from the market, similar to the one at issue here.  (*See* cases cited at Dkt. No. 193 at 5:3-10).

[11]Throughout Defendants' Motion, they cite to a quote from the Court's August 31, 2017, Motion that was taken entirely out of context.  (*See*, footnote 1).

Defendants next contend that reconsideration should be granted because this Court did not "consider defendants' argument that…plaintiffs failed to plausibly allege substantial foreclosure…" (Dkt. No. 193 at 8). To the contrary, the Court specifically held that:

> Plaintiff contends that because Walmart controlled so much of the market, *Defendants had enough market power to exclude her from substantial portions of the disposable styling razor market*. According to Plaintiff, because the Stiles Razor falls into a smaller, unique market on account of its detailed shaving functions and grip to prevent risk of injury, and given Walmart's status as the largest retailer in the world in this niche market, it accordingly had the power to set prices and exclude competitors. The Court believes these contentions are sufficient to survive Defendants' pleading challenge.

(Dkt. No. 188, at 7:16-23) [emphasis added]. The Court's March 29, Order rejected Defendants' arguments. Yet again, Defendants simply re-hash arguments made in their Motion to Dismiss. This is not a proper basis for reconsideration.

But even if it were, Defendants' argument still fails. Defendants' argument is premised on a characterization of the antitrust claims in Plaintiffs' complaint as exclusive dealing. And while the Complaint does also refer to the agreement as giving rise to an exclusive dealing claim, it also refers to it as a boycott and an agreement to exclude Stiles from the market--a concerted refusal to deal. (Dkt. No. 159 at 7-12; Dkt. No. 142, ¶¶ 22 – 49, 52 – 58, and 78 – 126). Vertical refusals to deal are agreements among persons or organizations at different levels of the market structure not to deal with other market participants. *Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 378 (E.D.N.Y. 2002). The allegations in the FAC demonstrate just such an agreement.

As Plaintiffs explained in their Opposition to the Motion to Dismiss, in *Macquarie*, the court held that a vertical refusal to deal was sufficiently alleged by showing market power to exclude plaintiffs from the market. *Macquarie Grp. Ltd. v. Pacific Corp. Grp*, LLC, 2009 WL 539928 (S.D. Cal. March 2, 2009) (*See* Opp. to MTD, Dkt. No. 159 at 14-15).[12] The very

---

[12] Defendants also argue that a vertical boycott is indistinguishable from exclusive dealing where the "defendant

*Plaintiffs' Opposition to Defendants' Motion for Reconsideration*

specific kind of substantial foreclosure analysis Defendants cited generally applies to exclusive

dealing arrangements, not concerted refusals to deal.  And even in the exclusive dealing

context, Plaintiffs submit that Defendants' substantial foreclosure analysis is erroneous.  This

Court held that Plaintiffs have sufficiently alleged market power.  (Dkt. No. 188 at 7:26-8:6).

Defendants do not seek reconsideration of that portion of the Court's ruling.  This Court held

that the FAC sufficiently pled that Defendants possessed sufficient market power to, "push[]

Plaintiff's razor out of the disposable styling razor market." *Id*.  In context, Defendants'

argument is nonsensical.  If Defendants possessed enough market power to push Stiles out of

the market for disposable personal styling razors and did so—that constitutes substantial

foreclosure.  *See Colonial Med. Group v. Catholic Healthcare West*, 2010 WL 2108123, *6

(N.D. Cal. May 25, 2010) (holding that "an allegation regarding [defendants'] power or share in

the [relevant] market…[would have been a]….basis for concluding that [the] agreements at

issue ... [were] likely to foreclose a significant share of the relevant [product] markets')

(citations omitted).")

     Further, Courts have routinely held that an exclusive dealing claim should *not* be

dismissed at the pleading stage for failure to plead substantial foreclosure.  See *In re EpiPen

(Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2017 WL 6524839, at

*10 (D. Kan. Dec. 21, 2017) ("recognizing that *Tampa Electric* provides a number of other

factors which may be relevant to a rule of reason analysis in an exclusive dealing

claim…[we] refuse[ ] to decide at the pleading stage that plaintiff had failed to plead adequate

foreclosure levels to state an exclusive dealing claim"); *In re Ductile Iron Pipe Fittings Direct

Purchaser Antitrust Litig.*, 2013 WL 812143, at *19 (D.N.J. Mar. 5, 2013) ("The question of

whether the alleged exclusive dealing arrangements foreclosed a substantial share of the line of

---

supplier entered into an agreement with one or more retailers in which the retailer agreed to resell only the
defendants' supplier's products."  (Dkt. No. 193 at 10).  The key distinction here is that the Salon Perfect Micro
Razor did not exist before the unlawful agreement.  There was no existing product to switch to or to agree to resell.

commerce is a merits question not proper for the pleading stage;" *Xerox v. Media Scis. Int'l., Inc.*, 511 F. Supp. 2d 372, 390 (S.D.N.Y. 2007) (holding that plaintiff's allegations that it was "exclud[ed] from much of the market" was sufficient to allege substantial foreclosure and survive defendant's motion to dismiss). This is because, "rule of reason analysis requires a factual analysis of the line of commerce, the market area and the affected share of the relevant market. (citation omitted). Such a factual inquiry is improper at this stage in the proceedings." *Pecover v. Electronic Arts, Inc.*, 633 F.Supp.2d 976, 983 (N.D. Cal. 2009).[13]

Nevertheless, Plaintiffs have sufficiently alleged substantial foreclosure in that Defendants collectively controlled 98% of the market and that Stiles was eliminated from and "frozen out of the market." This is well beyond the percentages claimed by Defendants. (*See* Opp. to Motion to Dismiss, Dkt. No. 159 at 14-15).[14]

Defendants next argue that the portion of the market foreclosed, "is the covered portion of the relevant market during the term of the agreement." (Dkt. No. 193 at 9). They also contend that Plaintiffs' allegations that she had tried to enter other retailers and was rejected because she was deleted and moved at Walmart are irrelevant. (Dkt. No. 193 at 11). But this is not so. In *Feitelson v. Google, Inc.*, 80 F. Supp. 3d 1019 (N.D. Cal. 2015), which was cited by Defendants, the plaintiffs there argued that alternative distribution methods were not effective. *Id.* at 1031. The court agreed noting that, "that alternative [] channels must 'pose[] a real

---

[13] Defendants cite a number of cases claiming that Courts often dismiss on substantial foreclosure alone. These cases are all distinguishable. *Hip Hop Bev. Corp. v. Monster Energy Co.*, 733 F. App'x 380, 381 (9th Cir. 2018) was dismissed for numerous reasons, including failure to allege injury to competition and market power. *In OJMAR US, LLC v. Sec. People, Inc.*, 2017 WL 3301214 (N.D. Cal. Aug. 2, 2017) was dismissed for failure to allege injury to competition and relevant market. In *PNY Techs., Inc. v. Sandisk Corp.*, 2014 WL 1677521 (N.D. Cal. April 25, 2014), the court held that the plaintiff failed to plead lack of alternate channels of distribution. Here, Plaintiffs have done that. (Dkt. No. 188 at 7:26-28). In *Colonial Medical Group v. Catholic Healthcare West*, 2010 WL 2108123 (N.D. Cal. May 25, 2010), the court found the plaintiff had not sufficiently alleged a relevant market. But the court went on to note that, "'an allegation regarding [defendants'] power or share in the [relevant] market…[would have been a]….basis for concluding that [the] agreements at issue ... [were] likely to foreclose a significant share of the relevant [product] markets') (citations omitted)." *Id.* at *6. As this Court has noted, Plaintiffs have sufficiently alleged market power. (Dkt. No. 188 at 8:5-6). *Eastman v. Quest Diag. Inc.*, 2015 WL 7566805 (N.D. Cal. Nov. 25, 2015) is not even a § 1 exclusive dealing case- it is a § 2 monopolization case.

[14] Defendants argue in their Motion for Reconsideration that the share of the foreclosed market must be 40% to 50%. (Dkt. No. 193 at 9). By contrast, they argued in their Motion to Dismiss that it must be 30% to 40%. (Dkt. No. 147 at 16).

*Plaintiffs' Opposition to Defendants' Motion for Reconsideration*

threat' of competition." *Id*.  Because, as alleged in the FAC, those alternative channels were unavailable to Stiles (FAC, ¶¶ 84, 91, 97 through 106), as Defendants were well aware, they posed no threat of future competition.

Defendants' next contention is that the same analysis applies to *Macquarie, Toscano, and Marsh*—but these cases, refusal to deal cases, do not undertake the same kind of convoluted substantial foreclosure analysis that Defendants are advocating here.[15]  In *Macquarie Group Ltd. v. Pacific Corporate Group*, LLC, 2009 WL 539928, *8 (S.D. Cal. March 2, 2009), the injurious exercise of market power was sufficient.  Defendants argue that in *Marsh*, the court affirmed dismissal of a vertical boycott claim for failure to allege substantial foreclosure.  (Dkt. No. 193 at 10).  But this misstates the court's holding.  In *Marsh,* the plaintiff alleged that she had been "wholly excluded from practice in the relevant market area," and the court simply noted that that was not true because she had, "been able to retain privileges to practice at other outpatient facilities." *Marsh v. Anesthesia Services Medical Group, Inc*., 200 Cal.App.4th 480, 499-500 (2011).  The court ultimately affirmed because the complaint did not sufficiently allege injury to competition. *Id*.

Defendants' final argument is that Plaintiffs have alleged no facts "negating the short duration and easy terminability" of the alleged agreement.  (Dkt. No. 193 at 12).  As Plaintiffs pointed out in briefing on the Motion to Dismiss, Walmart supplier agreements can be "renewed or extended." (Dkt. No. 142, ¶ 127).  AI had, and continues to this day to have, a supplier relationship with Walmart. (Dkt. No. 142, ¶ 4).  Even if facially terminable on short notice, due to the significant length of AI's relationship with Walmart and its role in Walmart's exclusive store brand, Salon Perfect, in practice—it is not.

---

[15] Defendants argue that *Marsh* and *Freeman v. San Diego Assoc. of Realtors*, 77 Cal. App. 4th 171, 195-196 (1999) require coercion.  (Dkt. No. 193 at 10, fn.6).  Coercion is not required when there is an actual agreement. *See* California Civil Jury Instructions 3404 and 3405.

*Plaintiffs' Opposition to Defendants' Motion for Reconsideration*

## V.   THE COURT DID NOT FAIL TO CONSIDER PLAINTIFFS' ANTITRUST INJURY CLAIMS

Defendants further claim that the "court did not consider defendants' arguments that plaintiffs failed to allege antitrust injury." (Dkt. No. 193 at 12).  This argument is equally unpersuasive.  The Court specifically noted that harm to competition can be shown by "proof of actual detrimental effects."  (Dkt. No. 188 at 6).  The Court went on to explain that "Plaintiff's allegations, if true, support that Walmart could, and in fact did, leverage its ability to set the prices of products, manipulate sales and product output by selectively stocking and/or removing Stiles Razors inapposite to sales performance data" to "push[] Plaintiff's razor out of the disposable styling razor market."  (*Id.*  at 7-8).

Exclusion from a market is a well-recognized, established, and *conventional* type of antitrust injury.[16]  *See Morales-Villalobos v. Garcia-Llorens*, 316 F.3d 51 (1st Cir. 2003) (indicating that plaintiff's exclusion from market would constitute antitrust injury and that this was a different question from whether there were legitimate concerns justifying the exclusion); *Andrx Pharmaceuticals, Inc. v. Biovail Corp. Intern.*, 256 F.3d 799, 805, 816–17 (D.C. Cir. 2001) ("When competitors violate the antitrust laws and another competitor is forced from a market, the latter suffers an injury-in-fact."; "Irrespective of consumer injury, an excluded competitor… suffers a distinct injury if it is prevented from selling its product. '[A] rival has clear standing to challenge the conduct of rival(s) that is illegal precisely because it tends to exclude competitors from the market.' "); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268 (3d Cir. 1999) ("the injury [plaintiff] suffered, when shut out of competition for anticompetitive reasons, is indeed among those that the antitrust laws are designed to

---

[16] Defendants citation to *SmileCare Dental Grp. v. Delta Dental Plan*, 88 F.3d 780 (9th Cir. 1996) is inapposite. In *SmileCare*, the court held that on the basis of previous decisions, the agreement alleged was "concededly legitimate" and affirmed the district court.  *Id.* at 786.  Defendants' citation to *Les Shockley Racing, Inc. v. Nat'l Hot Rod Assoc.*, 884 F.2d 504, 508-509 (9th Cir. 1989) actually supports Plaintiffs' allegations.  In *Les Shockley*, the Court noted that, "Of course, convergence of injury to a market competitor and injury to competition is possible when the relevant market is both narrow and discrete and the market participants are few."  *Id.*  This is precisely what Plaintiffs have alleged here.

prevent"); *Gill v. Delaware Park,* LLC, 294 F. Supp. 2d 638, 644 (D. Del. 2003) ("the Third Circuit has held that the antitrust injury requirement is sufficiently pled where plaintiff alleges that he was excluded from participation in a particular market, and the result was a decrease in competition in that market"); *First Med Representatives, LLC. v. Futura Medical Corp.*, 195 F. Supp. 2d 917 (E.D. Mich. 2002) (plaintiff's elimination from the market constituted antitrust injury); *Lone Star Milk Producers, Inc. v. Dairy Farmers of America, Inc.*, 2001-2 Trade Cas. (CCH) ¶ 73509, 2001 WL 1701532 (E.D. Tex. 2001) (allegation that defendant foreclosed plaintiff from the market constituted antitrust injury).

Defendants argue that Plaintiffs have not plausibly alleged harm to both "allocative efficiency and an impact on price or quality." (Dkt. No. 193 at 12). *First*, the cases Defendants cite for this proposition, *Rebel Oil Co. v. Atlantic Richfield Co.* ("ARCO"), 51 F.3d 1421, 1433 (9th Cir. 1995) and *Metronet Services Corp., v. Qwest Corp.*, 2001 WL 765167 (W.D. Wash. Apr. 16, 2001) are summary judgment decisions, not 12(b)(6) rulings. *Second*, *ARCO* and *Metronet* discussed allocative efficiency in relation to § 2 claims of monopolization, not vertical agreements under § 1. *Third*, even if Plaintiffs were required to show a decrease in allocative efficiency,[17] "The key conditions creating optimal allocative efficiency are a sufficiently large number of sellers and buyers in each market and resource mobility." Areeda and Hovenkamp, Antitrust Law, ¶ 402. Plaintiff has alleged that she was excluded from the market for disposable personal styling razors—thereby decreasing the number of sellers and allocative efficiency. Defendants argue that "after the alleged agreement, consumers allegedly had the same number of options." (Dkt. No. 193 at 13). But this isn't so. Before the agreement, consumers had a choice of two products, the Stiles Razor and the Salon Perfect Precision Shaper/Ardell Razor, by two manufacturers, Stiles and American International

---

[17] Plaintiffs note that pleading allocative efficiency is not a required element of antitrust injury as outlined by the Ninth Circuit in *American Ad Management v. General Telephone Co. of California*, 190 F.3d 1051 (9th Cir. 1999).

Industries.  After the agreement, consumers only had one option, the Salon Perfect Precision Shaper/Ardell Razor, by one company, American International Industries.  This is so because Stiles was eliminated from the market and American International Industries stopped selling the Salon Perfect Micro Razor.  (Dkt. No. 147, ¶ 52).  Allocative efficiency decreased in that there were fewer competing products and sellers.

Next, Defendants claim that, Plaintiffs have not plausibly alleged that the agreement raised prices or diminished their quality.  But in addition to alleging that the Defendants excluded a competitor from the market, Plaintiff alleges that the agreement diminished quality. (Dkt. No. 142, ¶ 108; Stiles Decl. ¶ 4).[18]

As noted in the briefing on the Motion to Dismiss, the court's decision in *Orchard Supply Hardware v. Home Depot,* 967 F.Supp.2d 1347, 1359 (N.D. Cal. 2013) is instructive. In *OSH*, the court noted that, "Part of the difficulty with this area of analysis is that 'injury to competition' and 'injury to the plaintiff's business' are distinct but also significantly overlapping categories." Relying on the Ninth Circuit decision in *Gorlick Dist. Cntrs v. Car Sound Exh. Sys.,*723 F.3d 1019 (9th Cir. 2013), the *OSH* court explained that allegations that an agreement was made with a manufacturer of a dominant brand in a limited market, was sufficient to show that the agreement shut competitors out of the market. *Id*. at 1359. The court went on to conclude that because the complaint alleged that, "the agreements completely foreclosed previously existing competition…the Court can plausibly infer harm to competition without requiring [plaintiff] to plead the specific percentage of market power …The Court can

---

[18] Defendants citation to *Carsten v. UPS*, 1996 WL 335421 (E.D. Cal. Mar. 19, 1996) is inapposite.  In *Carsten*, the plaintiff alleged harm in that she was forced to lower her prices.  There is no similar claim here.  In *Vangala v. St. Mary's Regional Med'l Ctr*., 31 F. App'x 537 (9th Cir. 2002), the court affirmed dismissal because, the plaintiff did not "sketch the outline of the antitrust violation with allegations of supporting factual detail."  *Id*. at 538. In other words, the *violation* was not sufficiently pled from which the court could infer any injury.  As to *POURfect Prods. v. Kitchenaid*, 2010 WL 1769413 (D. Ariz. May 3, 2010), the portion of the opinion Defendants cited does not even relate to antitrust injury analysis.  *Aya Healthcare Services v. AMN Healthcare*, 2017 WL 6059145 (S.D. Cal. December 6, 2017) is also inapposite.  In *Aya*, the defendants argued that the plaintiff actually stood to benefit from the anticompetitive conduct alleged in the company and that there was no injury.  *Id*. at *6. There is no similar claim here.

also infer that [plaintiff] has lost profits and suffered damages… sufficient to allege antitrust injury. (citation omitted)." *Id*. at. 1360; *Brantley v. NBC Universal,* 675 F.3d 1192, 1198 (9th Cir. 2010) ("Vertical agreements that foreclose competitors from entering or competing in a market can injure competition by reducing the competitive threat those competitors would pose.")

The FAC alleges that AI controls well over 70% of the market, and accounting for Walmart's exclusive store brand, then 98%. (Dkt. No. 142, ¶ 95). Also as argued above, the agreement foreclosed Stiles, an existing competitor, from the market.  The elimination of Stiles reduced competition in the market for disposable personal styling razors. As in *OSH,* Stiles has sufficiently alleged antitrust injury. To the extent Defendants also argue that Stiles is required to allege increases in price or restriction in output to sufficiently plead antitrust injury, that argument was also rejected by the Court in *OSH*, noting that price increases and reduction in output are not, "always necessary to prove harm to competition." *OSH*, 967 F.Supp.2d at 1359. The court noted that, "[A]n agreement limiting consumer choice by impeding the ordinary give and take of the market place cannot be sustained under the Rule of Reason." *Id*. at 160.

## VI.     DEFENDANTS' RULE 12(C) MOTION IS BARRED BY THE DOCTRINE OF THE LAW OF THE CASE

Defendants concede that their Rule 12(c) Motion is based on the "same grounds as those set forth in their motion to dismiss."  (Dkt. No. 193 at 15).  Under the doctrine of the law of the case, "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. U.S*., 841 F.2d 993, 996 (9th Cir. 1988). "For the doctrine to apply, the issue in question must have been 'decided either expressly or by necessary implication in [the] previous disposition.'" *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).  In its March 29, Order, this Court denied Defendants' Motion to Dismiss, which raised the identical arguments and issues Defendants now present to the Court.

The Court considered those arguments and rejected them.   (Dkt. No. 188 at 8).   Because

Defendants' Rule 12(c) Motion re-asserts the same arguments made in Defendants' prior

motion, the law of the case doctrine bars this Court from re-examining those issues.  *See Chae*

*v. SLM Corporation*, 2008 WL 11342464 (C.D. Cal. Jan. 17, 2008) (denying Rule 12(c) motion

asserting same arguments in Rule 12(b)(6) motion under the law of the case); *Meyers v.*

*Protective Insurance Agency*, 2018 WL 1899285 (M.D. Pa. April 20, 2018) (denying Rule

12(c) motion because "the operative facts" were no different than when the Rule 12(b)(6)

motion was decided).

## VII.   IN THE EVENT THIS COURT IDENTIFIES ANY DEFECT IN THE FAC, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND

Although Rule 12(c) does not mention leave to amend, courts have discretion in

appropriate cases to grant a Rule 12(c) motion with leave to amend.  *Woodson v. State of*

*California,* 2016 WL 524870 (E.D. Cal. Feb. 10, 2016) (England, D.J).  Dismissal without

leave to amend is proper only if it is clear that "the complaint could not be saved by

any amendment." *Intri-Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

Defendants have not raised any potential defect that could not be cured by amendment.  Thus,

if this Court finds it necessary, leave should be granted to amend the Complaint.

## CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that this Court deny Defendants'

Motion for Reconsideration, or in the Alternative, Motion for Judgment on the Pleadings.

//

//

//

Respectfully submitted:

Dated:  May 10, 2019          **ALIOTO LAW FIRM**

*/s Jamie L. Miller*
Jamie L. Miller (SBN 271452)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA  94104
Email: jmalioto@aliotolaw.com

*Attorneys for Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.*