1

**Pierce Bainbridge Beck Price & Hecht LLP**
Brian J. Dunne (SBN 275689)
2
*bdunne@piercebainbridge.com*
Yavar Bathaee (SBN 282388)
3
*yavar@piercebainbridge.com*
David L. Hecht (*pro hac vice*)
4
*dhecht@piercebainbridge.com*
355 South Grand Avenue, 44th Floor
5
Los Angeles, California 90071
(213) 262-9333
6

**Dhillon Law Group Inc.**
7
Harmeet K. Dhillon (SBN 207873)
*harmeet@dhillonlaw.com*
8
Nitoj Singh (SBN 265005)
*nsingh@dhillonlaw.com*
9
177 Post Street, Suite 700
San Francisco, CA 94108
10
(415) 433-1700

11   *Attorneys for Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.*

12                    UNITED STATES DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

14

15 | SHARIDAN STILES, an individual, STILES 4 U, INC., a California corporation | Case No. 2:14-cv-02234-MCE-CMK

16

17                    Plaintiffs,

18         v.

19 | WALMART INC., and AMERICAN INTERNATIONAL INDUSTRIES,

20                    Defendants.

**Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.'s**

**(1)  Notice of Motion and Motion Seeking Leave to Join Additional Defendants**

**(2)  Memorandum of Points and Authorities**

**Hon. Morrison C. England, Jr.**
**Hearing date: August 8, 2019**
**Courtroom: 7**
**Time: 2:00 P.M.**

21

22

23

24

25

26

27

28

1
2

**NOTICE OF MOTION AND MOTION FOR ORDER**
**GRANTING PLAINTIFFS LEAVE TO JOIN ADDITIONAL DEFENDANTS**

3

**PLEASE TAKE NOTICE THAT** on August 8, 2019, at 2:00 p.m., or as soon

4

thereafter as the matter may be heard, in Courtroom 7 of the United States District

5

Court for the Eastern District of California, located at 501 I Street, Sacramento, CA

6

95814, before the Honorable Morrison C. England, Jr., Plaintiffs Sharidan Stiles and

7

Stiles 4U, Inc. ("Plaintiffs" or "Stiles") will, and hereby do, move the Court for an order

8

granting Plaintiffs leave to join additional defendants (the "Motion").  This Motion is

9

made pursuant to Local Rule 220 and Federal Rules of Civil Procedure 15, 19, and

10

20.  This Motion is based upon this Notice of Motion and Motion, the accompanying

11

Memorandum of Points and Authorities, the Declaration of Brian Dunne and the ex-

12

hibits attached thereto, the pleadings on file in this action, and upon all other matters

13

presented to the Court at the time of the hearing.

14

Dated: June 28, 2019                      Respectfully submitted,

15

                                          **Pierce Bainbridge Beck Price & Hecht**
16                                          **LLP**

17

18                                         By:    /s/ Brian J. Dunne_____
                                                  Brian Dunne
19                                                *Attorneys for Plaintiffs Sharidan*
                                                  *Stiles and Stiles 4 U, Inc.*
20

21

22

23

24

25

26

27

28

1

## **<u>TABLE OF CONTENTS</u>**

Page

INTRODUCTION……………………………………………………………1

BACKGROUND…………………………………………………………...2

    A.  Procedural History……………………………………………………2

    B.  Walmart, AI, Coty, PWC, and P&G Openly Shared Price Information, Fixed Prices, and Controlled Walmart's Shelves……………………4

    C.  Stiles's Competitors Used their Brazen Price-Fixing Scheme to "Delete" Stiles from Walmart's Shelves and to Clone Stiles' Product…………………………………………………………....7

    D.  Stiles Is "Blackballed" From the Retail Market………………….……14

ARGUMENT………………………………………………………………14

CONCLUSION……………………………………………………………17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITES

2

**Cases**                                                                 **Page(s)**

3
*Fifty-Six Hope Rd. v. Jammin Java Corp.,*
    2016 U.S. Dist. LEXIS 189119 (C.D. Cal. 2016)……………………………15
4

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.,*
5
    2006 U.S. Dist. LEXIS 94421 (E.D. Cal. 2006)………………………………16

6
*Macias v. City of Clovis,*
    2016 U.S. Dist. LEXIS 38964 (E.D. Cal. 2016)………………………………16
7

*Oracle Am., Inc. v. Micron Tech., Inc.,*
8
    817 F. Supp. 2d 1128 (N.D. Cal. 2011)……………………………………...15

9
*Owens v. Kaiser Found. Health Plan, Inc.,*
    244 F.3d 708 (9th Cir. 2001)…………………………………………………16
10

11
RULES AND REGULATIONS

12
FED. R. CIV. P. 20(a)……………………………………………………………2, 15

13
FED. R. CIV. P. 19(a) )……………………………………………………………2, 15

14
FED. R. CIV. P. 15………………………………………………………………2, 16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Pursuant to Federal Rules of Civil Procedure 15, 19 and 20, Plaintiffs Sharidan Stiles and Stiles 4 U, Inc. ("Plaintiffs" or "Stiles"), by and through the undersigned counsel, respectfully submit this brief in support of Plaintiffs' Motion Seeking Leave to Join Additional Defendants (the "Motion").

## INTRODUCTION

Plaintiffs submit this Motion to alert the Court to alarming revelations from documents recently produced in discovery, and to request leave to join additional defendants in the action.  Specifically, documents produced by current Defendants and third parties reveal a multi-year price and output fixing scheme of unprecedented scale: Defendants Walmart, Inc. ("Walmart") and American Industries ("AI") (collectively "Defendants"); and proposed defendants Coty Inc. ("Coty"), Pacific World Corporation ("PWC") and Procter & Gamble Co. ("P&G") (the "Proposed Defendants") brazenly exchanged price and sales information while simultaneously dividing up shelf space at Walmart's stores throughout the United States.  (*See*, *e.g.*, Declaration of Brian Dunne ("Dunne Decl." or "Ex."), Ex. 1 (November 10, 2014 Email chain between PWC's Rachel Brown, AI employees, and Walmart employees) (Doc ID 6899);[1] *see also* pp. 3–13, *infra*.)  This multi-year price fixing scheme was among ***direct horizontal competitors***, and Walmart served as both a co-conspirator and a platform for the conspiracy.  (*See* pp. 3–13 *infra*.)

Unbeknownst to Stiles until documents were recently produced in discovery, it was this scheme among competitors, who together controlled virtually all of the beauty accessories sold in the United States, that resulted in the exclusion of Stiles's products from not only Walmart's shelves but from retail shelves throughout the country.  The Defendants already in this action and the Proposed Defendants worked together to

---

[1] This document was first produced to Plaintiff on or about May 6, 2019.

1   clone Stiles's leading product and to ███████ Plaintiffs' Stiles Razor from Walmart's

2   shelves.  (Ex. 2 (July 28, 2014 Email from AI) (AII_00001592).)

3        Horizontal price fixing is a serious offense under the antitrust laws, and we do

4   not make the accusation lightly.  This motion, therefore, sets out a full description of

5   the scheme and refers extensively to the documents recently produced in discovery.

6   (*See* pp. 5–13, *infra*.)

7        Stiles seeks leave to join the Proposed Defendants in the action, as the existing

8   Defendants constitute only part of the unlawful conspiracy that injured Plaintiffs and

9   harmed competition.  As set forth below, joinder of these additional parties is appro-

10   priate under Federal Rules of Civil Procedure 19 and 20 because (1) the court cannot

11   accord complete relief among existing parties, *see* FED. R. CIV. P. 19(a)(1)(A); and (2)

12   the claims to be asserted against the existing Defendants and the Proposed Defend-

13   ants arise out of "the same transaction, occurrence, or series of transactions or occur-

14   rences," and the question of liability under the Sherman Act would be "common to all

15   defendants" after the Proposed Defendants are joined, *see* FED. R. CIV. P. 20(a)(2).

16   Moreover, the revelation of new information in discovery is indisputably good cause to

17   join new parties and to amend an existing Complaint under Federal Rule of Civil Pro-

18   cedure 15.  (*See* p. 14, *infra*.)

19        Stiles proposes to meet and confer with all defendants after the Proposed De-

20   fendants are joined in the action to set a date by which an amended complaint against

21   all of the parties, encompassing the full scope of the unlawful scheme, shall be filed.

22                                **BACKGROUND**

23   **A.**     **Procedural History**

24        Sharidan Stiles is the inventor and manufacturer of the Stiles Razor, a narrow-

25   width-blade razor used for detailed shaving applications.  Stiles commenced this ac-

26   tion with a *pro se* complaint on behalf of herself and her company, Stiles 4 U, Inc., on

27   September 25, 2014, after her patented product was pushed off the shelves at

28

1   Walmart (and other retail stores throughout the U.S.) and simultaneously cloned by

2   Walmart and one of its most important suppliers, AI.

3        In her first complaint, Stiles asserted patent and trade secret claims against

4   Walmart and AI (Dkt. No. 1 at p. 4), but amended her Complaint on March 27, 2015,

5   to assert, among other causes of action, antitrust claims under Sections 1 and 2 of the

6   Sherman Act and under California's Cartwright Antitrust Act (Dkt. No. 16, at pp. 26–

7   28).[2]

8        Stiles retained counsel for the first time—the Alioto Law Firm ("Alioto")—on

9   March 11, 2016, after motions to dismiss the original complaint had been briefed and

10  argued.  (Dkt. Nos. 46–47.).  Alioto amended the operative complaint on behalf of

11  Stiles several times (Dkt. Nos. 56 & 117), and, after motions to dismiss and motions

12  for reconsideration, filed the operative Fourth Amended Complaint (Dkt. No. 142),

13  which survived another Rule 12 challenge by Defendants.  Unsatisfied with the Court's

14  latest ruling, Defendants filed a motion for reconsideration on April 18, 2019.  (Dkt. No.

15  193.)

16       While briefing on Defendants' motion for reconsideration continued, Stiles re-

17  placed the Alioto firm with the undersigned counsel on May 21, 2019, and the Court

18  allowed the substitution of counsel on June 3, 2019.  (Dkt. No. 221.)  New counsel

19  immediately obtained and reviewed documents produced by Defendants and third

20  parties in response to discovery requests.

21       The heavily redacted documents told an alarming story—and finally explained

22  why Walmart and AI appeared to have abruptly shut Stiles out of Walmart's stores,

23  and eventually the entire retail market:  From at least 2008 through the period Plain-

24  tiffs' products were "deleted" from Walmart shelves, Walmart, AI and three of Stiles's

25

26  [2] Stiles, proceeding *pro se*, also filed several complaints against several defendants,
    including some of the Proposed Defendants—namely, Coty and PWC.  (*See, e.g.*,
27  Complaint, 2:14-cv-01637 (July 11, 2014).)  Although Stiles suspected that Coty and
    PWC were involved in her ouster from Walmart's shelves, she was persuaded by
28  Walmart's counsel that she lacked the factual basis to press claims against them, and
    she voluntarily dismissed those actions without prejudice.

1  other direct competitors, Coty, PWC and P&G, were routinely and brazenly sharing

2  and fixing prices and had openly conspired—using price, output and cost data they

3  shared—to exclude Stiles's products from Walmart shelves and from the shelves of

4  other major retailers.  The same information was used by Walmart and Stiles's direct

5  competitors, particularly AI, to clone Stiles's lead product and to undercut Stiles's pro-

6  duction costs by a mere penny.

7  **B.     Walmart, AI, Coty, PWC, and P&G Openly Shared Price Infor-
         mation, Fixed Prices, and Controlled Walmart's Shelves.**

8  Shelf space at Walmart's stores can mean life or death for a retail product.

9  Obtaining shelf space at Walmart means selling at thousands of stores throughout the

10  United States, and, as Stiles learned, being "deleted" from the shelves at Walmart

11  means exclusion from not only Walmart's shelves, but those of other major retailers.

12  In order to make shelving decisions—not just which products get on its shelves,

13  but where on the shelves they are placed, in how many stores, and at what price—

14  Walmart invites select major suppliers to join the decision-making process.  (Ex. 3

15  (February 16, 2015 Email from Walmart's Melanie Patrick) (Doc. ID 12908).) ███

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ████████████████████████████████████████████████

23  ██████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████████████████

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1    There were no constraints on communications among competitors in a partic-

2   ular category. 

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                      Ex. 15 (October 7, 2011 Email from Coty)

28   (WM-STILES-0001954-0001955);   Ex.   28   (March   2,   2011   Email   from   AI)

1  (All_00000018–00000027); Ex. 31 (October 14, 2011 Email from Coty) (WM-STILES-

2  0001961-0001962); Ex. 32 (October 14, 2011 Email from Coty) (WM-STILES-

3  0001963).)  The degree of information sharing and coordination among these horizon-

4  tal competitors—based on competitor price and output information—is alarming. ▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮  (Ex. 15 (October 7, 2011 Email from Coty) (WM-STILES-0001954-

9  0001955); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 33 (October

12  17, 2011 Email from Coty) (WM-STILES-0001957-0001959).)

13  **C.**      **Stiles's Competitors Used their Brazen Price-Fixing Scheme to**
              **"Delete" Stiles from Walmart's Shelves and to Clone Stiles'**
14              **Product.**

15      Walmart and its suppliers not only brazenly exchanged competitor price and

16  output information, they weaponized it.  By 2008, Stiles's products were performing

17  well, selling approximately six units per store/per week in 2008.  (*See* Fourth Amended

18  Complaint (Dkt. No. 142) ("Compl.") ¶ 29.)  When Heather Ronchetto took over as

19  Stiles's contact at Walmart in June 2008 (*Id.* ¶ 30), Stiles Razor sales were suddenly

20  and—from Stiles's external perspective, inexplicably—hampered by Walmart, with

21  Stiles's products being removed from stores where the products performed best.  (*Id.*

22  ¶ 34).  Unbeknownst to Stiles, however, Heather Ronchetto was coordinating with one

23  of Stiles's competitors, P&G, which manufactured and sold disposable razor products,

24  to remove Stiles' products from Walmart shelves.

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  (Ex. 18 (November 16, 2009 Email from P&G) (WM-STILES-0002185).)

21  (Ex. 19 (November 16, 2009

22  Email from P&G) (WM-STILES-0002186)),

23

24

25

26

27

28

1   (Ex. 20 (November 16, 2009 Email from P&G) (WM-STILES-0002189).) ████████

2   ████████████ (Ex. 21 (November 17, 2009 Email from Walmart) (WM-

3   STILES-0002197)), and the Stiles Razor was removed from 26 stores in 2010 as a

4   result.

5   ████████████████████████████████████████

6   ████████████████████████████████████████

7   ████████████████████████████████████████

8   ████████████████████████████████████████

9   ████████ (Ex. 22 (March 10, 2010 Email from P&G) (WM-STILES-0002236).)

10   ████████████████████████████████████████

11   ████████████████████████████████████████

12   ████████████████████

13   ████████████████████████████████

14   ████

15

16   (Ex. 23 (March 10, 2010 Email from Walmart) (WM-STILES-0002237).) ████

17   ████

18   ████████████████████████████████

19   

20   (Ex. 24 (March 10, 2010 Email from P&G) (WM-STILES-0002239).)  There was no

21   indication that the decision—***made among horizontal competitors***—had anything to

22   do with Stiles's product sales. ████████████████████████

23   ████████████████████████████████████████

24   ████████████████████████████████████████

25   ████

26

27

28



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20 In 2010, after being removed from the Wet Shave market, Stiles prepared a

21 detailed complaint to Walmart's supplier diversity department regarding her inexplica-

22 ble exclusion from the Wet Shave category, and Walmart, in response, added Stiles'

23 product to its Beauty category.  (Compl. ¶¶ 41–45.)  That category, however, was run

24 by *three* of Stiles' *direct competitors*, which served as Category Advisors:  AI, Coty,

25 and PWC.  Although the addition to the Beauty category was an apparent victory for

26 Stiles, it would be short lived.  Documents produced in discovery now make clear why:

27

28



(Ex. 35 (February 18, 2011 Email from AI) (AII_00000619–00000620).)

(Ex. 26 (February 24, 2011 Email from AI) (AII_00000624).)[3]

_See, e.g.,_ Ex. 36 (September 20, 2012 Email from AI) (AII_00000849); Ex. 37 (Photo attached to email dated September 20, 2012) (AII_00002406); Ex. 38 (April 8, 2013 Email from AI)  (AII_00001134)).

1  ███████████████████  (*Id.*)  In other words, Stiles's horizontal competitor, AI,

2  was fixing prices at Walmart's request, based on confidential cost information provided

3  to AI, PWC and Coty in their role as Beauty Category Advisor.  ████████████████



(Ex. 27 (March 2, 2011 Email from AI) (AII_00000018).)

11  On March 14, 2011, AI's Salon Perfect brand manager Reuben Driggers circu-

12  lated a "███████████████████████████████  (Ex. 29 (March

13  14, 2011 Email between AI employees) (AII_00000034); Ex. 30 (AI's Excel spread-

14  sheet attached to email dated March 14, 2011) (AII_00000035).)  On a sheet of the

15  attached spreadsheet████████████████████████," AI ███████████

16  ████████████████████████████████████████████.

17  ██ ███████████████████████████████████████

18  ████████████████████████████████  (Ex. 30 (AI's Excel

19  spreadsheet attached to email dated March 14, 2011) (AII_00000035).)

20  In September 2011, during the line review for the 2012 Beauty modular,

21  Walmart's Esther Gifford enlisted the assistance of Stiles's horizontal competitor ████

1   (Ex. 15 (September 26, 2011 Email from Walmart) (WM-STILES-0001954).)

2          On October 7, 2011, ███ provided Walmart its analysis of Stiles Razor histor-

3   ical and projected sales.  (Ex. 15 (October 7, 2011 Email from ███) (WM-STILES-

4   0001954).)  According to ███ ██████████████████████████████████████████

5   ██████████████████████████████████ (Ex. 16 (███ Excel spread-

6   sheet attached to email dated October 7, 2011) (WM-STILES-0001956).)  However,

7   ███ predicted—for reasons unexplained in the ███ analysis—that ████████████

8   ██████████████████████████████████████████████████████████████

9   ██████████ (*Id.*)

10         On October 11, 2011, Walmart ████████████████████████████████████

11  ████████████████████ (Ex. 31 (October 14, 2011 Email from ███ (WM-

12  STILES- 0001961).)  Stiles's horizontal competitor, P&G, ████████████████

13  ████████████████████████████████████████████████████ (*Id.*; Ex.

14  32 (███ Excel Spreadsheet attached to email dated October 14, 2011) (WM-

15  STILES-0001963).)

16         Walmart's Esther Gifford repeatedly requested that ███ ██████████████

17  ████████████ (Ex. 15 (October 7, 2011 Email from ███) (WM-STILES-0001954-

18  0001955); Ex. 16 (October 6, 2011 Excel spreadsheet ██████████████████████

19  ███) (WM-STILES-0001956); Ex. 17 (October 17, 2011 Excel spreadsheet

20  ████████████████████████████) (WM-STILES-0001960).)  She did so be-

21  cause she would have to convince Theresa Barrera and Carmen Bauza—the two

22  Walmart Supplier Diversity representatives who had spearheaded Stiles's addition to

23  the Beauty category for 2011—that Stiles would be ████████████████████████

24  ████████████████████████ (Ex. 34 (October 12, 2011 Email between

25  Walmart employees) (WM-STILES-0002437).)  ███ analysis, however, repeatedly

26  ██████████████████████████████████████████████████████████████

27  ███████████████████████████████████████████ (*Id.*)

28

- 13 -

1    Walmart, Coty, AI, and PWC ultimately succeeded, and Stiles was ████████

2    ██████████████████████████████ (Ex. 2 (July 28, 2014 Email from AI)

3    (ALI_00001592); Compl. ¶ 48.)

4        **D.    Stiles Is "Blackballed" From the Retail Market**

5        After Walmart refused to carry Stiles's product, no other major retailer would

6    either.  Deterred by the fact that Walmart dropped the product, other retailers simply

7    refused to take the risk of stocking it—particularly given the risk of reprisal from

8    Walmart and the leading competitors in the market with control over Walmart's shelves

9    and prices.  (Compl. ¶¶ 104–105.)  Having weaponized their control of output and

10   prices, Walmart, AI, P&G, Coty, and PWC had succeeded completely—Stiles was out

11   of the market and Walmart was free to sell its own knockoff of the Stiles Razor.

12       In a phone call on August 19, 2014, between AI's Executive Vice President Terri

13   Cooper and Sharidan Stiles, AI suggested that Stiles would be blacklisted by other

14   retailers if she continued to press the issue of her products' deletion.  (*See* Compl. ¶

15   106.)  Unsurprisingly, documents produced in discovery indicate that even months

16   prior to that e-mail—in late 2013—the price-fixing and price-sharing conspiracy was

17   ongoing.[4]

18                            **ARGUMENT**

19       The documents recently produced in this case reveal stunning violations of the

20   Federal Antitrust laws: namely, a conspiracy among direct horizontal competitors to

21   share—and use—price, output and cost information for the purpose of maintaining

22   their control over Walmart's shelves and the retail markets in which they competed.  It

23   was precisely this highly sensitive information, shared among Walmart, AI, Coty, PWC,

24   and P&G, that allowed members of the conspiracy to exclude Plaintiffs from Walmart's

25   shelves and to blackball Stiles' products from retailers throughout the United States.

26   _____

27   [4] Defendants have produced only a fraction of the relevant documents and have im-
     properly redacted much of the information in the documents that likely further lay bare

28   an antitrust violation of stunning proportions.

1   Plaintiffs respectfully request that all of these co-conspirators be joined immediately

2   in the action, with a new complaint against all of the parties to be filed as soon as

3   practicable.  The Court should grant the request for three independent reasons:

4        *First*, Proposed Defendants are necessary parties to the action because "the

5   court cannot accord complete relief among existing parties."  FED. R. CIV. P.

6   19(a)(1)(A).  Indeed, Plaintiffs seek an injunction to bar Defendants and Proposed

7   Defendants from continuing a naked price fixing conspiracy that allows them to ex-

8   clude Plaintiffs from retailers throughout the country.  (Compl. ¶ 7 & p. 39.)  A piece-

9   meal injunction binding only existing parties would not prevent blackballing by absent

10  parties, nor would it prevent the absent parties from continuing to coordinate on price,

11  output and cost.

12       *Second*, even if Proposed Defendants are not necessary to the action, permis-

13  sive joinder is appropriate.  Under Rule 20(a)(2), a defendant may be joined in an

14  action if (i) "any right to relief is asserted against them jointly, severally, or in the alter-

15  native with respect to or arising out of the same transaction occurrence, or series of

16  transaction or occurrences," and (ii) "any question of law or fact common to all defend-

17  ants will arise in the action.  FED. R. CIV. P. 20(a)(2)(A).  Here, there is no question that

18  all of the Proposed Defendants are part of the same conspiracy alleged against

19  Walmart and AI.  *Fifty-Six Hope Rd.* v. *Jammin Java Corp.*, 2016 U.S. Dist. LEXIS

20  189119, at *32 (C.D. Cal. Dec. 8, 2016) (joinder appropriate under Rule 20 when civil

21  conspiracy is alleged).  Indeed, it was discovery of Walmart and AI that revealed Coty,

22  PWC and P&G's role in the conspiracy to share and set prices and to exclude Plaintiffs

23  from retailers.  For the same reason, the question of law and fact in this case are

24  common to Proposed Defendants and Defendants alike—namely, whether they to-

25  gether violated Section 1 of the Sherman Act and are jointly and severally liable for

26  damages.  *See Oracle Am., Inc.* v. *Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1131

27  (N.D. Cal. 2011) (defendants in Section 1 Sherman Act claim are jointly and severally

28  liable for damages under Section 4 of the Clayton Act).

1      *Finally*, discovery of new information in discovery is indisputably good cause to

2  join new parties and to amend an existing Complaint under Fed. R. Civ. P. 15.  Indeed,

3  "[c]ourts routinely allow parties to amend their pleadings after new information comes

4  to light during discovery."  *Macias* v. *City of Clovis*, 2016 U.S. Dist. LEXIS 38964, at

5  *11 (E.D. Cal. Mar. 24, 2016); *see also Fru-Con Constr. Corp.* v. *Sacramento Mun.*

6  *Util. Dist.*, 2006 U.S. Dist. LEXIS 94421, 2006 WL 3733815, *4 (E.D. Cal.) ("Allowing

7  parties to amend based on information obtained through discovery is common and

8  well established.").  In light of the policy in this Circuit of "extreme liberality" towards

9  amendment under Rule 15, *Owens* v. *Kaiser Found. Health Plan, Inc.*, 244 F.3d 708,

10  712 (9th Cir. 2001), the Court should grant Plaintiffs' request to join Proposed Defend-

11  ants and file an amended Complaint against all defendants that encompasses the

12  newly discovered anticompetitive conduct.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CONCLUSION**

2

For the reasons stated above, Plaintiffs' motion should be granted.

3

4

Dated: June 28, 2019

5

6

Respectfully submitted,

7

**Pierce Bainbridge Beck Price & Hecht LLP**

8

9

By:    /s/ Brian J. Dunne
Brian J. Dunne (SBN 275689)
*bdunne@piercebainbridge.com*
Yavar Bathaee (SBN 282388)
*yavar@piercebainbridge.com*
David Hecht (*pro hac vice*)
*dhecht@piercebainbridge.com*
355 South Grand Avenue, 44th Floor
Los Angeles, California 90071
(213) 262-9333

10

11

12

13

14

**Dhillon Law Group Inc.**

15

Harmeet K. Dhillon (SBN 207873)
*harmeet@dhillonlaw.com*
Nitoj Singh (SBN 265005)
*nsingh@dhillonlaw.com*
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

16

17

18

19

20

*Attorneys for Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.*

21

22

23

24

25

26

27

28