BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
CATHERINE S. SIMONSEN (SBN 307325)
catherine.simonsen@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329

[Additional counsel listed on signature page]

Attorneys for Defendant
WALMART INC.

MARK D. KREMER (SBN 100978)
m.kremer@conklelaw.com
ZACHARY PAGE (SBN 293885)
z.page@conklelaw.com
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Telephone:  (310) 998-9100
Facsimile:  (310) 998-9109

Attorneys for Defendant
American International Industries

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIDAN STILES, an individual; STILES 4 U, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART INC.; AMERICAN INTERNATIONAL INDUSTRIES,<br><br>Defendants. | Case No. 2:14-cv-02234-MCE-DMC<br><br>**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR JOINT MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO DISMISS ANTITRUST CLAIMS OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS [ECF NO. 193]**<br><br>Fed. R. Civ. P. 54(b); Local R. 230(j); Fed. R. Civ. P. 12(c)<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:  To be rescheduled<br>Time:  2:00 p.m.<br>Courtroom:  7<br>Judge:  Hon. Morrison C. England, Jr. |

DEFENDANTS' SUPPLEMENTAL MEMORANDUM I/S/O MOTION FOR RECONSIDERATION OF
ORDER DENYING MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS
CASE NO. 2:14-CV-02234-MCE-DMC

AMERICAS 95146061

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

I.   THERE IS NO PRECEDENT FOR ANTITRUST LIABILTY BASED ON AN
     ACT OF PATENT INFRINGEMENT ................................................................. 2

II.  PLAINTIFFS HAVE NOT SATISIFED THE WELL ESTABLISHED
     PLEADING STANDARDS FOR EXCLUSIVE DEALING CLAIMS ............................ 4

III. PLAINTIFFS' ALLEGATIONS DO NOT ESTABLISH A "REFUSAL TO
     DEAL" OR "VERTICAL BOYCOTT"................................................................. 8

CONCLUSION ........................................................................................................ 11

AMERICAS 95146061

DEFENDANTS' SUPPLEMENTAL MEMORANDUM I/S/O MOTION FOR RECONSIDERATION OF
ORDER DENYING MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS
CASE NO. 2:14-CV-02234-MCE-DMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ackerman-Chillingworth, Div. of Marsh & McLennan, Inc. v. Pacific Electrical Contractors Ass'n.*, 579 F.2d 484 (9th Cir. 1978) ................................................2, 9

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991 (9th Cir. 2010) .........................................................................................................1, 4

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) .....................8

*Brooke Grp. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993) ...................4

*Colonial Med. Grp., Inc. v. Catholic Healthcare W.*, No. C-09-2192 MMC, 2010 U.S. Dist. LEXIS 51350 (N.D. Cal. May 25, 2010) .............................................5, 7

*Eastman v. Quest Diagnostics Inc.*, No. 15-cv-00415-WHO, 2015 U.S. Dist. LEXIS 159563 (N.D. Cal. Nov. 25, 2015) .............................................................5, 6

*Eatoni Ergonomics, Inc. v. Research in Motion Corp.*, 826 F. Supp. 2d 705 (S.D.N.Y. 2011) ........................................................................................................2

*Ferguson v. Greater Pocatello Chamber of Commerce*, 848 F.2d 976 (9th Cir. 1988) ....................................................................................................................8

*Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171 (1999) ........................10

*Gen. Dynamics Corp. v. United States*, 139 F.3d 1280 (9th Cir. 1998) .........................10

*Gough v. Rossmoor Corp.*, 585 F.2d 381 (9th Cir. 1978) ................................................8

*Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997) ...................4

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ..........................................10

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207 (1959) ...............................8, 9

*Korea Kumho Petrochemical Co. v. Flexsys America LP*, 370 Fed. Appx. 875 (9th Cir. 2010) ...........................................................................................................9

*MacQuarie Grp. Ltd. v. Pacific Corp. Grp., LLC*, No. 08cv2113-IEG-WMC, 2009 U.S. Dist. LEXIS 16554 (S.D. Cal. Mar. 2, 2009) .............................................10

*Masimo Corp. v. Tyco Health Care Grp., L.P.*, No. CV 02-4770 MRP, 2004 U.S. Dist. LEXIS 32404 (C.D. Cal. May 28, 2004) .................................................2, 3

AMERICAS 95146061

*Nicolosi Distrib. v. FinishMaster, Inc.*, No. 18-cv-03587-BLF, 2018 U.S. Dist.
LEXIS 173788 (N.D. Cal. Oct. 9, 2018)................................................................6

*Nw. Power Prods., Inc. v. Omark Indus., Inc.*, 576 F.2d 83 (5th Cir. 1976) ..................................3

*Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157 (9th Cir. 1997) ......................................4, 5, 8

*Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126 (2d Cir. 1978) ........................................9

*PNY Techs., Inc. v. SanDisk Corp.*, No. 11-cv-04689-WHO, 2014 U.S. Dist.
LEXIS 90649 (N.D. Cal. July 2, 2014)................................................................5, 6

*Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883 (5th Cir. 2016)....................2, 3

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-cv-05847-WHO, 2014
U.S. Dist. LEXIS 16631 (N.D. Cal. Feb. 6, 2014)........................................................6

*Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224 (E.D. Cal. 1985)........................................8

*Sidibe v. Sutter Health*, No. C 12-04854 LB, 2013 U.S. Dist. LEXIS 78521 (N.D.
Cal. June 3, 2013) ................................................................5, 7

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield*, 373 F.3d 57 (1st Cir.
2004) ................................................................5

*Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961) ......................................5

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) ......................................7

*Verizon Commc'ns., Inc. v. Law Offices of Curtis V. Trinko*, LLP, 540 U.S. 398
(2003) ................................................................8

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012)......................................4

## STATUTES AND RULES

Sherman Act § 1 ........................................................... *passim*

Sherman Act § 2 ...........................................................7, 8

## MISCELLANEOUS

Phillip E. Areeda (late) & Herbert Hovenkamp, Antitrust Law: An Analysis of
Antitrust Principles and Their Application (3d & 4th eds. 2018, cum. supp. 2010-
2017)................................................................3

AMERICAS 95146061

1

**INTRODUCTION**

2      Defendants Walmart Inc. ("Walmart") and American International Industries ("AI")

3   submit this supplemental brief to address the three issues raised in the Court's Minute Order of

4   June 10, 2019.  ECF No. 228.[1]  Defendants address each of the Court's requests to show why

5   plaintiffs' Fourth Amended Complaint ("FAC") should be dismissed with prejudice.[2]

6      (1)      **No Antitrust Liability for Patent Infringement.**  Defendants have presented

7   uncontroverted law that the Court should dismiss any claim for antitrust harm arising from an act

8   of patent infringement. S*ee* Motion for Reconsideration, ECF No. 193, at 6 (citing, *e.g.*,

9   *Retractable Techs.*, *Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 893 (5th Cir. 2016) ("patent

10  infringement is not an injury cognizable under the Sherman Act")).  Under this standard, the

11  agreement alleged by plaintiffs—to sell an infringing product—while potentially a basis for a

12  claim of patent infringement, cannot be the basis for a Sherman Act claim.  *See* FAC ¶ 54

13  (defendants allegedly conspired to "copy and manufacture . . . a knock-off" of plaintiffs' product

14  so as to sell it in Walmart stores).  *See infra* Section I (pages 2-4).

15     (2)      **Substantial Foreclosure Must be Pled to Sustain Exclusive Dealing.**  Try as

16  they now might to run from the FAC, plaintiffs themselves describe their claims in the FAC as

17  "exclusive dealing," and the facts alleged (an agreement between AI—a supplier—and

18  Walmart—a retailer—for the supply of a product to replace plaintiffs' product) support that

19  characterization.  Plaintiffs do not meet their burden to plead the conduct alleged "foreclose[s]

20  competition in a substantial share of the line of commerce affected" for their exclusive dealing

21  claims to proceed.  *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp*. LP, 592 F.3d

22  991, 996 (9th Cir. 2010).  *See infra* Section II (pages 4-7).

23     (3)      **Plaintiffs Do Not Plead a Claim for "Refusal to Deal" or "Vertical Boycott."**

24  Plaintiffs fail to plead facts to establish what the Ninth Circuit has recognized as a "classic

25

---

26  [1] Defendants incorporate by reference as though fully set forth herein their motion to dismiss
    (ECF No. 147) and reply in support thereof (ECF No. 162).

27
    [2] Plaintiffs recently filed a motion seeking leave to join additional defendants (ECF No. 232),
28  which seeks to frame an entirely new theory of "price fixing" based on facts known to plaintiffs
    for more than seven years, effectively concedes the antitrust claims as pled do not state a claim.

DEFENDANTS' SUPPLEMENTAL MEMORANDUM I/S/O MOTION FOR RECONSIDERATION OF
ORDER DENYING MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS
CASE NO. 2:14-CV-02234-MCE-DMC

AMERICAS 95146061

1    vertical boycott"—where two or more upstream suppliers (*e.g.*, AI and its competitors in this

2    case) reach an agreement with a distributor (*e.g.*, Walmart) to foreclose a competitor either at the

3    supplier or distributor level.  *Ackerman-Chillingworth*, *Div. of Marsh & McLennan*, *Inc. v.*

4    *Pacific Electrical Contractors Assoc.*, 579 F.2d 484, 498 (9th Cir. 1978).  The alleged AI-

5    Walmart agreement involves only an agreement that Walmart would buy AI's "knockoff" product

6    in lieu of plaintiffs' product.  That is an allegation of exclusive dealing, and should be analyzed

7    (and dismissed) under that standard.  However, even if the Court were to consider plaintiffs'

8    position that there is a claim for a "concerted refusal to deal" based on the facts alleged, the cases

9    relied on by plaintiffs require more—namely that AI "coerced" or "forced" Walmart to terminate

10   plaintiffs, facts which are implausible and nowhere to be found in the FAC.  *See infra* Section III

11   (pages 8-10).

12            As explained below, the Court should end plaintiffs' attempts to transform this ordinary

13   infringement case into an antitrust action and grant defendants' motion for reconsideration, or

14   judgment on the pleadings, and dismiss with prejudice plaintiffs' antitrust claims.

15   **I.      THERE IS NO PRECEDENT FOR ANTITRUST LIABILTY BASED ON AN ACT**

16           **OF PATENT INFRINGEMENT**

17            Plaintiffs' FAC explicitly alleges that defendants agreed to produce an infringing

18   "knockoff" of plaintiffs' product, and to sell the infringing product in Walmart stores (FAC

19   ¶ 108), and the Court included this act of infringement as part of the "agreement" in its Order

20   denying defendants' motion to dismiss (ECF No. 188, at 7).

21            Defendants previously cited authority for the proposition that patent infringement—*i.e.*,

22   deciding to design and sell an infringing product as plaintiffs allege happened here—cannot be

23   the basis for antitrust liability.  *See Retractable Techs.*, 842 F.3d at 893; *Masimo Corp. v. Tyco*

24   *Health Care Grp.*, *L.P.*, No. CV 02-4770 MRP, 2004 U.S. Dist. LEXIS 32404, at *8-9 (C.D. Cal.

25   May 28, 2004) ("no legal authority supports basing a patentee's antitrust case on a finding of

26   patent infringement"); *see also Eatoni Ergonomics*, *Inc. v. Research in Motion Corp.*, 826 F.

27   Supp. 2d 705, 708-09 (S.D.N.Y. 2011) (dismissing plaintiff's antitrust claims premised on alleged

28   patent infringement because "this Court has not found any case in which patent infringement has

1  been considered anticompetitive conduct"); *Nw. Power Prods., Inc. v. Omark Indus., Inc.*, 576

2  F.2d 83, 88-89 (5th Cir. 1976) (citing *Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*, 214 F.2d

3  891, 894 (5th Cir. 1954) (affirming dismissal of plaintiff's antitrust claims because defendant's

4  alleged patent infringement was insufficient to support an antitrust claim for treble damages and

5  acknowledging infringement "increased the flow of such products in commerce")).

6      These authorities are uncontroverted by plaintiffs, who have yet to cite a single case

7  finding an antitrust violation based on an act of patent infringement. *See* ECF Nos. 159 & 205.

8  The reason for these holdings is clear: while an infringer may be liable under the patent laws, that

9  same entity is not liable under the antitrust laws because an act of infringement allows a

10  competing product to enter the market, thereby increasing competition.  Phillip E. Areeda (late) &

11  Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application

12  ¶ 782a3 (3d & 4th eds. 2018, cum. supp. 2010-2017) ("the new market entry caused even by an

13  infringer represents an increase in competition and thus is not 'antitrust injury' even though it is

14  cognizable injury under the Patent Act"); *Retractable Techs.*, 842 F.3d at 893 ("By definition,

15  patent infringement invades the patentee's monopoly rights, causes competing products to enter

16  the market, and thereby increases competition.").

17      Moreover, if plaintiffs succeed on their patent claims, they will be compensated

18  accordingly.  No authority allows a party to bootstrap those claims into antitrust claims and

19  collect treble damages under the Sherman Act.  *See* Areeda ¶ 782a3 (approving *Retractable*

20  *Technologies* on this point: "by turning patent infringement into an antitrust claim the plaintiff

21  could obtain treble rather than actual damages and attorney's fees, but there is no warrant in either

22  the antitrust laws or the Patent Act for such an approach"); *Masimo Corp.*, 2004 U.S. Dist. LEXIS

23  32404, at *8-9 ("Masimo will be compensated for its losses due to patent infringement.  There is

24  no authority to support allowing Masimo to be doubly compensated by allowing the same

25  conduct . . . to serve as the basis of an antitrust claim.").

26      The Court's order on the motion to dismiss (ECF No. 188) characterized these

27  uncontroverted authorities as "out-of-circuit," but the Ninth Circuit too has acknowledged the

28  patent and antitrust laws work at cross-purposes, with the antitrust laws seeking to preserve "a

- 3 -

1   competitive marketplace for the benefit of the public," while the patent laws "reward the inventor

2   with the power to exclude others from the making, using or selling [of a patented] invention."

3   *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1214 (9th Cir. 1997) (citations

4   omitted); *id.* at 1215 (observing "the obvious tension between the patent and antitrust laws: one

5   body of law creates and protects monopoly power while the other seeks to proscribe it").  When

6   an infringing product launches in a competitive marketplace the tension is clear: such sales may

7   harm a patent holder plaintiff by way of lost profits or reduced sales that lead to patent damages,

8   but a plaintiff may not collect ***antitrust*** damages for the act of exclusion (*i.e.*, infringement) that

9   causes an ***increase*** in competition.  *See Brooke Grp. v. Brown & Williamson Tobacco Corp.*, 509

10  U.S. 209, 223 (1993) ("the antitrust laws [do not] protect competitors from the loss of profits due

11  to . . . competition").  Plaintiffs' antitrust claims, which are based on defendants' alleged

12  infringement, should be dismissed.

13  **II.     PLAINTIFFS HAVE NOT SATISIFED THE WELL ESTABLISHED PLEADING**

14          **STANDARDS FOR EXCLUSIVE DEALING CLAIMS**

15          Plaintiffs' FAC describes the alleged agreement between Walmart and AI as exclusive

16  dealing (FAC ¶ 153), which the Ninth Circuit describes as "an agreement between a vendor and a

17  buyer that prevents the buyer from purchasing a given good from any other vendor."  *Allied*

18  *Orthopedic*, 592 F.3d at 996.  Because "exclusive dealing agreements are often entered into for

19  entirely procompetitive reasons, [they] generally pose little threat to competition."  *ZF Meritor*,

20  *LLC v. Eaton Corp*., 696 F.3d 254, 270 (3d Cir. 2012).

21          Because of their pro-competitive nature, the Ninth Circuit has found that "[a]n exclusive

22  dealing arrangement violates Section 1 [of the Sherman Act] only if its effect is to foreclose

23  competition in a substantial share of the line of commerce affected."  *Allied Orthopedic*, 592 F.3d

24  at 996 (citations and internal punctuation omitted); *Omega Envtl.*, *Inc. v. Gilbarco*, *Inc*., 127 F.3d

25  1157, 1163 (9th Cir. 1997) ("Only those arrangements whose 'probable' effect is to 'foreclose

26  competition in a substantial share of the line of commerce affected'" violate the antitrust laws.).

27          In order to plead "substantial foreclosure" of competition, plaintiffs must allege ***the***

28  ***agreement at issue*** itself "foreclose[s] a substantial percentage of the market as a whole from

- 4 -

competition." *Sidibe v. Sutter Health*, No. C 12-04854 LB, 2013 U.S. Dist. LEXIS 78521, at *29

(N.D. Cal. June 3, 2013) (citing *Allied Orthopedic*, 592 F.3d at 996); *see Colonial Med. Grp.*, *Inc.*

*v. Catholic Healthcare W.*, No. C-09-2192 MMC, 2010 U.S. Dist. LEXIS 51350, at *14-15 (N.D.

Cal. May 25, 2010).  Practically, the "crux" of pleading an exclusive dealing claim "is the

allegation that competitors are shut out of the market.  It is not enough to point to supposed

'direct evidence of competitive harm' that cannot be attributed to the claimed exclusion." *PNY*

*Techs.*, *Inc. v. SanDisk Corp.*, No. 11-cv-04689-WHO, 2014 U.S. Dist. LEXIS 90649, at *35

(N.D. Cal. July 2, 2014).  Thus, plaintiffs' assertions that they were foreclosed "from the entire

market" when other retailers unilaterally rejected their product (and not because they were subject

to an exclusive dealing agreement with defendants) do not satisfy the requirement to allege they

were "foreclosed ***by the contract***" at issue.  *Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S.

320, 328-29 (1961) (emphasis added).

Instead, plaintiffs must plead the portion of the market from which they were excluded ***by***

the agreement between Walmart and AI; for example, the market percentage accounted for by

sales in the relevant market in Walmart stores.  *See Omega Envtl.*, 127 F.3d at 1162 (the portion

of the market deemed foreclosed is "the ***covered*** portion of the relevant market during the term of

the agreement") (emphasis added).  Some measure of "the degree of foreclosure 'is important

because, for the contract to adversely affect competition, the opportunities for other traders to

enter into or remain in that market must be significantly limited.'" *Eastman v. Quest Diagnostics*

*Inc.*, No. 15-cv-00415-WHO, 2015 U.S. Dist. LEXIS 159563, at *32-35 (N.D. Cal. Nov. 25,

2015) (quoting *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 175 (4th Cir.

2014)).  In most cases, "foreclosure levels are unlikely to be of concern where they are less than

30 or 40 percent.  But while low numbers make dismissal easy, high numbers do not

automatically condemn, but only encourage closer scrutiny based on factors" such as duration and

ease of terminability.  *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield*, 373 F.3d 57,

68 (1st Cir. 2004) (exclusive dealing lawful with 30% foreclosure); *Colonial Med. Grp.*, 2010

U.S. Dist. LEXIS 51350, at *15 (quoting *Stop & Shop*).

Courts in the Ninth Circuit routinely dismiss complaints for failure to adequately plead

- 5 -

DEFENDANTS' SUPPLEMENTAL MEMORANDUM I/S/O MOTION FOR RECONSIDERATION OF
ORDER DENYING MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS
CASE NO. 2:14-CV-02234-MCE-DMC

AMERICAS 95146061

1  substantial foreclosure.  For example, in *PNY Technologies*, the court dismissed an exclusive

2  dealing claim for failure to plead the "contracts unlawfully foreclose competition," *i.e.*,

3  substantial foreclosure, as plaintiff plausibly alleged defendant had exclusive arrangements with

4  only three out of thirteen retailers and all such arrangements were "both short-term and easily

5  terminable."  2014 U.S. Dist. LEXIS 90649, at *16-30.[3]

6      Similarly, in *Rheumatology Diagnostics Laboratory*, *Inc. v. Aetna*, *Inc.*, No. 12-cv-05847-

7  WHO, 2014 U.S. Dist. LEXIS 16631 (N.D. Cal. Feb. 6, 2014), the plaintiff provider of clinical

8  lab services alleged a defendant competitor entered into a vertical exclusive agreement with Blue

9  Shield of California ("BSC"), an insurance company that paid plaintiff and defendant for the

10  laboratory services of its clients, whereby BSC agreed it would not renew its contracts with the

11  plaintiff.  *Id*. at *22.  The Court dismissed the plaintiff's exclusive dealing claim for failure to

12  plead substantial foreclosure, explaining that while the plaintiffs "identif[ied] . . . some of the

13  participants in the five markets at issue . . . . plaintiffs still do not allege the extent of foreclosure,

14  what size each market is, or how the agreement affected each market or its participants' shares.  .

15  . .  Without showing any changes in shares, the Court cannot determine whether a 'substantial'

16  foreclosure has occurred or, indeed, whether foreclosure occurred at all."  *Id*. at *37-38; *accord*

17  *Nicolosi Distrib. v. FinishMaster*, *Inc.*, No. 18-cv-03587-BLF, 2018 U.S. Dist. LEXIS 173788, at

18  *12-13 (N.D. Cal. Oct. 9, 2018) (dismissing exclusive dealing claims as "[plaintiff's] allegations

19  make clear that independent distributors [not defendant] have captured two-thirds of the market"

20  and "[a]s to the remaining 33%, [plaintiff] does not allege that [defendant] has captured even this

21  percentage of the market," and "manufacturers themselves can sell directly to consumers, further

22  expanding the market size"); *see also*, *e.g.*, *Eastman*, 2015 U.S. Dist. LEXIS 159563, at *2, *22-

23  23 (dismissing plaintiff's exclusive dealing claim for failure to plead substantial foreclosure:

24  "Plaintiffs have not alleged facts from which it can be plausibly inferred that [defendant's]

25
26  [3] Plaintiffs distinguished *PNY* as turning on a "failure to plead lack of alternative channels of distribution" which plaintiffs claim to have done here by alleging retailers other than Walmart declined to carry plaintiffs' products.  Opp. to MFR, ECF No. 205, at 14 n.13.  But the court in
27  *PNY* pointed out exactly the problem with plaintiffs' FAC here: a failure to plausibly plead that the exclusive contract at issue "had the practical effect" of foreclosing competition for other
28  retailers not subject to any exclusive arrangement.  2014 Dist. Lexis 90469, at *22.

1   alleged exclusive dealing arrangements with medical providers have foreclosed a substantial

2   share of the plan/outpatient market.")[4]; *Sidibe*, 2013 U.S. Dist. LEXIS 78521, at *39-41

3   (dismissing exclusive dealing claim as "[t]he 'exclusive dealing' allegations do not show

4   substantial foreclosure or a requirement to purchase services only from service providers with an

5   exclusive contract"); *Colonial Med. Grp.*, 2010 U.S. Dist. LEXIS 51350, at *18-19 (dismissing

6   exclusive dealing claim by plaintiff provider of medical services to prison inmates challenging

7   agreement between hospital and competing provider of medical services because "the [complaint]

8   include[d] no facts . . . from which it reasonably could be inferred that the percentage of the

9   product market [*i.e.*, the opportunities to provide medical services to prison inmates] foreclosed is

10   sufficiently substantial to support a claim under § 1 of the Sherman Act").

11         As explained in defendants' motion to dismiss, plaintiffs have not met these pleading

12   requirements.  ECF No. 147 at 16.  The agreement alleged (between Walmart and AI) is only

13   alleged to have foreclosed them from selling ***at Walmart*** (FAC ¶ 126), but they make no attempt

14   to quantify what percentage of total selling opportunities in the market this represents.[5]  While the

15   FAC alleges certain other retailers refused to carry plaintiffs' products (FAC ¶¶ 97-106), it does

16   not allege how these refusals resulted from any exclusive dealing (with AI or otherwise), and

17   even if it did, it does not allege what portion of potential sales these retailers represent.  In fact,

18   plaintiffs' allegations confirm the opposite: these other retailers took plaintiffs' meetings and

19   phone calls, but declined to sell plaintiffs' razors because of their poor sales record, not because

20

21   [4] Plaintiffs attempted to distinguish *Quest* on the grounds it did not explicitly involve a Section 1
     claim (Opp. to MFR, ECF No. 205, at 14 n.13), but they cite no authority for the relevance of this
22   distinction.  In fact, the law is to the contrary: under both Section 1 and 2, "plaintiff must both
     define the relevant market and prove the degree of foreclosure."  *United States v. Microsoft*
23   *Corp.*, 253 F.3d 34, 69 (D.C. Cir. 2001) ("Though what is 'significant' may vary depending upon
     the antitrust provision under which an exclusive deal is challenged [Clayton Act § 3 and/or
24   Sherman Act § 1 or § 2], it is clear that in all cases the plaintiff must both define the relevant
     market and prove the degree of foreclosure.").  Furthermore, the *Quest* court dismissed not only a
25   Section 2 but also a Cartwright Act exclusive dealing claim—the state-law equivalent of a
     Sherman Act Section 1 claim.

26
     [5] Plaintiffs claim they have alleged foreclosure of "98% of the market" (ECF No. 204 at 14), but
27   they appear to conflate allegations of market share (FAC ¶ 95 (alleging Walmart has 25% and AI
     73% of the Disposable Personal Styling Razor Market)) with foreclosure.  Nowhere do they
28   allege what proportion of sales actually take place in Walmart stores and are thus foreclosed by
     the agreement between Walmart and AI to allegedly sell AI's product and not plaintiffs'.

- 7 -

1    of any exclusive arrangement.  FAC ¶¶ 98, 100-102.  That is, plaintiffs were able to compete, but

2    did not succeed.  The antitrust laws do not provide a remedy for such failures in the marketplace.

3    *Cf. Omega*, 127 F.3d at 1164 ("We agree with the unremarkable proposition that a competitor

4    with a proven product and strong reputation is likely to enjoy success in the marketplace, but

5    reject the notion that this is anticompetitive.  It is the essence of competition.").

6    **III.   PLAINTIFFS' ALLEGATIONS DO NOT ESTABLISH A "REFUSAL TO DEAL"**

7    **OR A "VERTICAL BOYCOTT"**

8            Plaintiffs repeatedly claim defendants entered into a "refusal to deal" or a "vertical

9    boycott" (*see*, *e.g.*, FAC ¶¶ 108, 111, 154), but they have met none of the requirements for stating

10   such a claim.[6]

11          The Ninth Circuit has held that a "concerted refusal to deal" under Section 1 is simply a

12   group boycott under another name.  *See Gough v. Rossmoor Corp.*, 585 F.2d 381, 386-87 (9th

13   Cir. 1978) (using group boycott or concerted refusal to deal to refer to the same conduct, *i.e.*, a

14   "concert of action" whereby companies refuse to deal with or boycott other companies); *Richards*

15   *v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1227 (E.D. Cal. 1985) (explaining plaintiff "alleg[es]

16   that . . . defendants . . . engaged in a concerted refusal to deal, i.e., 'group boycott'").  Under

17   Section 1 of the Sherman Act, courts also sometimes refer to this conduct as a "vertical boycott"

18   to describe the situation wherein a plaintiff distributor alleges it was excluded from a relevant

19   market by an agreement entered into between a rival distributor and, typically, upstream

20   manufacturers/suppliers wherein the manufacturers agree not to sell to the plaintiff distributor.

21   *See*, *e.g.*, *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 208-09, 212-14 (1959)

22
23   [6] Plaintiffs do not bring their claim under the Section 2 "refusal to deal" doctrine, "a narrow
     exception" to the general antitrust rule that "there is no duty to aid competitors."  *Verizon*
24   *Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408-09 (2003) (citing
     *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)).  As *Trinko* made clear, to fit "within
25   the narrow exception," plaintiffs would need to allege circumstances close to those alleged in its
     prior decision in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985),
26   establishing that essential facilities doctrine.  *Id.* at 409.  Although plaintiffs asserted violations of
     Section 2 in prior complaints, they omitted those claims from the FAC.  In any event, plaintiffs
27   have not pled any facts sufficient to state an essential facilities claim.  *See Ferguson v. Greater*
     *Pocatello Chamber of Commerce*, 848 F.2d 976, 983 (9th Cir. 1988) (requiring showing "(1) that
28   the defendant is a monopolist in control of the essential facility, (2) that competitors of the
     monopolist are unable to duplicate the facility, (3) that the monopolist has refused to provide the
     competitors access, and (4) that it is feasible for the monopolist to do so")

1  (reversing summary judgment where plaintiff Klor's, a retail appliance store, alleged Broadway-

2  Hale, a competing department store, used its monopolistic buying power to convince major

3  manufacturers and distributors of appliances not to sell to Klor's, or to sell to it only at

4  discriminatory prices); *Ackerman-Chillingworth*, 579 F.2d at 498 (referring to the *Klor's* decision

5  as an example of "the classic vertical boycott model").

6      In *Korea Kumho Petrochemical Co. v. Flexsys America LP*, the Ninth Circuit affirmed

7  dismissal of allegations claiming such a "vertical boycott" by "potential buyers."  370 F. App'x

8  875, 878 (9th Cir. 2010).  There, plaintiff, a seller of a rubber chemical, alleged that defendant, a

9  competing seller of that chemical, violated Section 1, in part by "coerc[ing] two potential buyers

10  of the chemical into boycotting [plaintiff]."  *Id.* at 876.  In affirming dismissal, the court

11  distinguished *Klor's* on the basis that it involved "a widespread vertical and horizontal

12  combination."  *Id.* at 877.  The Ninth Circuit further noted the plaintiff in *Kumho* specifically

13  failed to "allege the existence of a horizontal agreement among competitors," referring to the two

14  potential buyers.  *Id.*

15      There are no allegations here to support a multi-party vertical boycott of the type

16  described in *Klor's*.  Indeed, plaintiffs here have alleged much less than the Ninth Circuit rejected

17  in *Kumho*.  Plaintiffs have not alleged, for example, that AI used its influence to obtain the

18  agreement of Walmart ***and other retailers***, such as Target, to refuse to purchase plaintiffs' razors.

19  Indeed, they do not allege any agreement or contact at all with other retailers on the part of AI or

20  Walmart.  This is fatal to their claims, moreover, as *Kumho* would require allegations not only of

21  a vertical agreement between AI and multiple retailers, but also that Walmart and at least one

22  competitor-retailer agreed to cooperate in excluding plaintiffs' product.  370 F. App'x at 877.

23      As defendants argued in the motion for reconsideration (ECF No. 193, at 9-10), plaintiffs

24  do not allege a traditional group boycott.  They allege the defendant supplier (AI) entered into an

25  agreement with a retailer (Walmart) by which the retailer agreed to sell the supplier's (AI's)

26  product to the exclusion of plaintiffs' product.  That is an exclusive dealing arrangement, not a

27  vertical boycott.  *See*, *e.g.*, *Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 131-32 (2d Cir. 1978)

28  ("The present case, involving as it does an alleged agreement between a single manufacturer

1   [Whirlpool] and a single dealer [Sears], is, in essence, an exclusive distributorship controversy,

2   and the 'group boycott' doctrine, is, therefore, not applicable.").  Plaintiffs cannot be relieved of

3   their duty to allege substantial foreclosure simply by calling the defendants' alleged exclusive

4   agreement a "vertical boycott."  *Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th

5   Cir. 1998) (the court "need not accept the label" plaintiffs put on their claims).

6         Instead of pleading a group boycott (which they cannot), plaintiffs rely on a series of what

7   they call "vertical boycott" cases to assert a supplier-retailer agreement like the one challenged

8   here is not an exclusive dealing arrangement, and, thus, plaintiffs claim they do not have to plead

9   foreclosure.  *See, e.g.*, Opp. to MTD at 14-15 (ECF No. 159).  But the cases they rely on require

10  more than merely the existence of an agreement—here, they would require a showing the supplier

11  (AI) coerced or forced a retailer (Walmart) to boycott an alternative supplier (plaintiffs).  *See,*

12  *e.g.*, *MacQuarie Grp. Ltd. v. Pac. Corp. Grp., LLC*, No. 08cv2113-IEG-WMC, 2009 U.S. Dist.

13  LEXIS 16554, at *17 (S.D. Cal. Mar. 2, 2009) (finding defendant "pressured" a client not to deal

14  with plaintiffs and that was a "form of refusal to deal"); *Freeman v. San Diego Ass'n of Realtors*,

15  77 Cal. App. 4th 171, 197 (1999) (affirming dismissal of plaintiff's "vertical boycott" claim

16  because she "did not allege . . . that the local associations coerced [defendant] into refusing her

17  request, or any specific acts by local associations that constituted the coercion").  Plaintiffs have

18  alleged no facts that would support any claim AI was able to coerce, threaten, or otherwise

19  wrongly persuade Walmart to engage in a boycott of one of AI's competitors.  Indeed, Plaintiffs

20  have alleged the exact opposite: plaintiffs allege that Walmart (the retailer) *asked AI* (the

21  supplier) to develop the new product at issue.  FAC ¶ 54.

22        Given these standards, the more plausible reading of plaintiffs' allegations (whether

23  labeled exclusive dealing, a refusal to deal, or a vertical boycott) is that Walmart, absent any

24  coercion or agreement with AI, unilaterally decided to terminate plaintiffs and end their business

25  relationship, as it lawfully may with any other supplier.  *See Kendall v. Visa U.S.A., Inc.*, 518

26  F.3d 1042, 1049 (9th Cir. 2008) ("Allegations of facts that could just as easily suggest rational,

27  legal business behavior by the defendants as they could suggest an illegal conspiracy are

28  insufficient to plead a violation of the antitrust laws.").

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should grant defendants' motion for reconsideration of the Court's Order denying defendants' motion to dismiss plaintiffs' first and second claims for relief in the fourth amended complaint (ECF No. 188), vacate the Order, and dismiss plaintiffs' antitrust claims with prejudice.  In the alternative, the Court should grant judgment on the pleadings in favor of defendants as to those claims.


Dated:  July 11, 2019

WHITE & CASE LLP

By:      */s/ Bryan A. Merryman*
        Bryan A. Merryman

BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
CATHERINE S. SIMONSEN (SBN 307325)
catherine.simonsen@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329

BIJAL V. VAKIL (SBN 192878)
bvakil@whitecase.com
JEREMY OSTRANDER (SBN 233489)
jostrander@whitecase.com
HALLIE KIERNAN (SBN 313541)
hallie.kiernan@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA  94306
Telephone:  (650) 213-0300
Facsimile:  (650) 213-8158

STEFAN M. MENTZER (*pro hac vice*)
smentzer@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas, Floor 49
New York, New York 10020
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113

Attorneys for Defendant
WALMART INC.

AMERICAS 95146061

DEFENDANTS' SUPPLEMENTAL MEMORANDUM I/S/O MOTION FOR RECONSIDERATION OF
ORDER DENYING MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS
CASE NO. 2:14-CV-02234-MCE-DMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONKLE, KREMER & ENGEL

By:____/s/ Zachary Page_____
Zachary Page
*(as authorized on April 18, 2019)*

MARK D. KREMER (SBN 100978)
m.kremer@conklelaw.com
ZACHARY PAGE (SBN 293885)
z.page@conklelaw.com
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Telephone:  (310) 998-9100
Facsimile:  (310) 998-9109

Attorneys for Defendant
AMERICAN INTERNATIONAL
INDUSTRIES

- 12 -

AMERICAS 95146061