**Pierce Bainbridge Beck Price & Hecht LLP**
Brian J. Dunne (SBN 275689)
*bdunne@piercebainbridge.com*
Yavar Bathaee (SBN 282388)
*yavar@piercebainbridge.com*
David L. Hecht (*pro hac vice*)
*dhecht@piercebainbridge.com*
355 South Grand Avenue, 44th Floor
Los Angeles, California 90071
(213) 262-9333

**Dhillon Law Group Inc.**
Harmeet K. Dhillon (SBN 207873)
*harmeet@dhillonlaw.com*
Nitoj Singh (SBN 265005)
*nsingh@dhillonlaw.com*
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

*Attorneys for Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIDAN STILES, an individual, STILES 4 U, INC., a California corporation<br><br>                    Plaintiffs,<br><br>          v.<br><br>WALMART INC., and AMERICAN INTERNATIONAL INDUSTRIES,<br><br>                    Defendants. | Case No. 2:14-cv-02234-MCE-CMK<br><br>**Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.'s Supplemental Memorandum of Points and Authorities, As Ordered in Dkt. 228**<br><br><br>**Hon. Morrison C. England, Jr.**<br>**Hearing date: TBD**<br>**Courtroom: 7**<br>**Time: 2:00 P.M.** |

1

**PLAINTIFFS' SUPPLEMENTAL
<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2    Plaintiffs Sharidan Stiles and Stiles 4 U, Inc. ("Plaintiffs" or "Stiles") respectfully

3   submit this Supplemental Memorandum of Points and Authorities in further opposition

4   to Defendants Walmart Inc. ("Walmart") and American International Industries' ("AI")

5   Motion for Reconsideration (Dkt. 193) (the "Motion") as follows:

6    **ARGUMENT**

7    On June 10, 2019, this Court ordered further briefing on Defendants' Motion.  The

8   court requested that the parties address at "at minimum" three issues:   "(1) patent

9   infringement in the context of antitrust claims; (2) substantial foreclosure pleading re-

10  quirements, if any, for exclusive dealing arrangement claims; and (3) pleading require-

11  ments, if any, for antitrust claims arising under 'vertical boycott' and 'refusal to deal'

12  allegations." (Dkt. No. 228.)

13    As set forth below, none of these issues merit reconsideration of the Court's

14  March 29, 2018 order sustaining Plaintiffs' federal and State antitrust claims.  (Dkt.

15  No. 188.)  In fact, the Court's decision was plainly correct—the facts alleged in the

16  Fourth Amended Complaint ("Complaint") plausibly support antitrust claims under

17  Section 1 of the Sherman Act and under the California Cartwright Act.

18    *First*, Defendants' Motion relies on a material mischaracterization of the Com-

19  plaint, and of the nature of Plaintiffs' antitrust claims.  Plaintiffs' Complaint is not limited

20  to (1) the market for the patented product; (2) exclusive dealing claims; or (3) vertical

21  boycott/refusal to deal allegations.  The Motion is a red herring, and attacks a straw

22  man created by the Defendants—not the Complaint itself.

23    *Second*, Plaintiffs adequately pleaded their antitrust claims.  Plaintiffs pleaded a

24  surfeit of coordinated, anticompetitive acts by defendants Walmart and AI that plausi-

25  bly supporting the two antitrust causes of action in the Complaint—Sherman Act § 1

26  and California Cartwright Act.  For example, Plaintiffs pleaded facts supporting, among

27  other things, the following legal theories that are proscribed by both Sherman Act § 1

28

and the Cartwright Act: horizontal price fixing (a *per se* Section 1 violation); group boycott; and exclusive dealing.

Only one of these legal theories—exclusive dealing—even implicates substantial foreclosure under Ninth Circuit law, but Plaintiffs nonetheless expressly alleged substantial foreclosure.  And Plaintiffs' antitrust claims simply don't rely on "vertical boycott" or unilateral "refusal to deal" allegations.  Finally, based on what Plaintiff has learned in discovery, its Sherman Act § 1 and Cartwright Act claims against Walmart and AI do not require even the allegation of a product market (horizontal price fixing is *per se* illegal), and the relevant product market for the group boycott that has been revealed in discovery (in Walmart's Wet Shave and Beauty categories, respectively) is much broader than the scope of Plaintiffs' patents.[1]

## I.    Plaintiffs Are Required Only to Plead Facts, Not Legal Theories—and Have Clearly Done So

The very premise of Defendants' Motion is flawed, as it creates a straw man from the Complaint, then proceeds to attack it.  With respect to the antitrust claims, Defendants' Motion construes the Complaint as limited to only one theory of Section 1 liability, but that is both a misrepresentation of the Complaint's facts and contrary to law.  Moreover, if the concern here is that ***more*** factual detail is needed, the damning evidence of horizontal price fixing (among other antitrust violations) that has been revealed in discovery since the Complaint was filed could readily be added by Plaintiffs by any date set by the Court to file an Amended Complaint.

### A.    The Complaint Alleges Facts that Support a Claim Under Section 1 of the Sherman Act.

Defendants seek to lock the Complaint into a particular legal theory under Section 1 of the Sherman Act: exclusive dealing.  They do this to argue (speciously) that the Complaint cannot proceed without allegations of substantial foreclosure.  But in

---

[1] To the extent the Court wishes Plaintiffs to amend their Complaint to more specifically describe and categorize the facts Plaintiffs have learned through discovery (all of which was served recently, well after the Complaint was filed), Plaintiffs are amenable to filing an Amended Complaint by a date set by the Court.

1   doing so, Defendants ignore the **actual facts** pleaded in the Complaint, and instead

2   offer the Court a caricature (and a false one, at that)—a Complaint that alleges **only**

3   exclusive dealing.

4          The law is contrary to Defendants' Motion.  To survive a motion to dismiss, a

5   plaintiff need only allege facts that give rise to a claim and need not plead every pos-

6   sible legal theory.  Indeed, this is precisely what the United States Supreme Court said

7   in *Johnson* v. *City of Shelby, Mississippi*, 547 U.S. 10 (2014) (per curiam).  There, the

8   Court reversed dismissal of a complaint that failed to invoke § 1983 as part of a claim

9   for violations of the Due Process Clause.  The Supreme Court explained that an "im-

10  perfect statement of the legal theory supporting the claim asserted" did not "counte-

11  nance dismissal" of a complaint that otherwise pleads the facts necessary for a claim.

12  *Id.*  Thus, where a complaint states "simply, concisely, and directly events that, they

13  alleged, entitled them to" relief, that will be enough to state a claim under Rule 12.  *Id.*

14         The facts pleaded in this Complaint go far beyond this standard and are plainly

15  sufficient to give rise to claims under Section 1 of the Sherman Act—however such a

16  claim is characterized at this early stage of the litigation.  For example, the Complaint

17  alleges, *inter alia*, that Walmart agreed with AI to exclude Stiles's product from its

18  shelves, to clone the product and sell it in **direct horizontal competition** with Stiles

19  (Compl. ¶ 54), and then "blacklist" Stiles's product from all other retailers (Compl. ¶

20  105).  Indeed, the Complaint alleges that AI's Executive Vice President Terri Cooper

21  contacted Stiles to threaten her with blacklisting, right when she alleges she was en-

22  tirely excluded from retail shelves throughout the country.  (Compl. ¶  106.)

23         This conduct can be characterized in numerous ways, including as a group boy-

24  cott or simply as a naked horizontal restraint on trade that excluded a competitor from

25  a market in which all involved competed.  (*See* Compl. ¶ 5.)  There is no basis upon

26  which to define the Sherman Act § 1 and Cartwright Act claims in the Complaint as

27  pertaining solely to exclusive dealing, and then to seek dismissal based only on that

28  theory—ignoring all other legal theories arising from the claim stated in the Complaint.

**B.** **Evidence Produced in Discovery Clearly Supports a Claim under Section 1 of the Sherman Act, Including One for Horizontal Price Fixing**

In any event, the facts that have recently come to light in discovery are even more damning and suggest a horizontal price fixing scheme of staggering proportions. As Plaintiffs set forth in their Motion Seeking Leave to Join Additional Defendants ("Joinder Mot.") (Dkt. No. 232), the evidence from discovery shows that Defendant Walmart had implemented a "Category Advisor" program, which appointed one or more of Stiles's horizontal competitors to manage a product category.  Through this appointed role, these horizontal competitors, including AI, Coty Inc. ("Coty"), Pacific World Corporation ("PWC") and Procter & Gamble Co. ("P&G"), all received price, cost, and sales information for every competitor and every product.  (Joinder Mot. at 4-7.)

These horizontal competitors, including Walmart, which competed with Stiles through its own brands, used the price, output and cost information to "delete" Stiles's product from Walmart's shelves and to ensure she would not appear at any other retail store to compete with them.  (*Id.*)  Indeed, after P&G had successfully removed Stiles from the category in which it competed with Stiles's product—the Wet Shave category—Walmart moved Stiles's product to another category, the Beauty category. There, Coty, PWC, and AI—the category advisors for that category of products—used cost information they collected for, and received from Walmart, about Stiles to clone Stile's product at Walmart's direction and underbid her by a penny.  (*Id.* at 7-10.) Walmart, in turn, eliminated a "one sku" supplier from its shelves (*Id.* at 10-11), ensuring that it would maintain its buying power over its large suppliers.

This is a naked restraint on trade—indeed, there is nothing more pernicious under the antitrust laws than the sharing and use of price information to exclude a competitor from the market. *See United States* v. *Topco* Assocs., 405 U.S. 596, 608 (1972) ("naked restraints of trade" have "no purpose except stifling of competition").  In fact, such conduct is viewed as so repugnant to the antitrust laws that no market definition

is even required for such a claim.[2]  To caricature Plaintiffs' claims as merely exclusive dealing is disingenuous at best.

## II.    The Complaint Alleges Foreclosure from Retail Stores Throughout the United States

As explained above, because the facts alleged—and the facts revealed in discovery—plainly support a Section 1 claim, the question of "substantial foreclosure" is not dispositive of the Section 1 claims here.  *Bay Area Surgical Mgmt. LLC* v. *Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 998 (N.D. Cal. 2015) ("Plaintiffs are not required to plead market foreclosure in a non-exclusive dealings antitrust case.").[3]  Nonetheless, even if the Complaint's allegations are mischaracterized as alleging only an exclusive dealing claim,[4] substantial foreclosure has been adequately pleaded.

---

[2] *Fragale & Sons Beverage Co.* v. *Dill*, 760 F.2d 469, 473 (3d Cir. 1985) ("Some types of concerted activity, however, 'because of their pernicious effect on competition and lack of any redeeming virtue,' are treated as per se violations of section 1, **without any inquiry into the harm such activity may have caused in the relevant market**." (emphasis added)).

[3] Defendants argue that there is no support for the proposition that other section 1 violations other than exclusive dealing claims "are not subject to the exclusive dealing" requirement.  (Defs. Reply at 6.)  As *Bay Area Surgical Mgmt. LLC* makes clear, they are plainly wrong.  166 F. Supp. 3d at 998.  Indeed, Courts are clear that the substantial foreclosure requirement imposes "a higher standard of proof" on exclusive dealing cases than others.  *Golden Boy Promotions LLC* v. *Haymon*, 2017 U.S. Dist. LEXIS 29782, at *42 (C.D. Cal. Jan. 26, 2017) (quoting *Ryko Mfg. Co.* v. *Eden Services*, 823 F.2d 1215, 1235 (8th Cir.1987)).  Indeed, other forms of horizontal agreements, such as group boycotts, which involve a concerted decision not to do business with a rival, do not require any market definition at all, so it cannot be that they require a showing of substantial foreclosure.  *See N. Pac. Ry. CO.* v. *UNITED STATES*, 356 U.S. 1, 5 (1958) ("Among the practices which the courts have heretofore deemed to be unlawful in and of themselves are price fixing; division of markets; **group boycotts**; and tying arrangements." (emphasis added and internal citations omitted)).

[4] "An exclusive dealing arrangement is when a seller agrees with a buyer to sell its products or services only to that buyer, or the buyer agrees to buy only from the seller." *Sidibe* v. *Sutter Health*, 2013 U.S. Dist. LEXIS 78521, at *29 (N.D. Cal. June 3, 2013). Substantial foreclosure is required in such cases because it the relevant question is whether "opportunities for other traders to enter into or remain in that market." *Tampa Elec. Co.* v. *Nashville Coal Co.*, 365 U.S. 320, 328 (1961).  Here, the Complaint alleges that Stiles was excluded from the market by agreement among horizontal competitors—not that Walmart will **only** do business with Stiles's competitors.  *Tampa Electric's* substantial foreclosure requirement is not therefore relevant.  *See Twin City Sportservice, Inc.* v. *Charles O. Finley & Co.*, 676 F.2d 1291, 1302 (9th Cir. 1982) ("The purpose of the [substantial foreclosure test] is clearly is to determine **the anti-competitive effects of exclusive-dealing arrangements**.  The tests are therefore applicable whether the specific issue involves exclusivity per se, or whether it involves,

1    To allege substantial foreclosure at the motion to dismiss stage, a plaintiff need

2    only plead more than bare allegations of how foreclosure has occurred to survive a

3    motion to dismiss.   For example, in *Blue Sky the Color of Imagination, LLC* v.

4    *MeadWestvaco Corp.*,  the Court found sufficient allegations that two competitors en-

5    tered into an exclusive dealing contract "with the intent and effect of excluding all rivals

6    from certain office superstores" and that the defendants used "bundling pricing" to sell

7    goods below cost.   2010 U.S. Dist. LEXIS 118946, at *9 (C.D. Cal. Sep. 23, 2010).

8    These allegations were enough on a motion to dismiss, the court explained, because

9    they "are not bare legal conclusions."  *Id.*

10    The allegations here are even stronger than those in *Blue Sky*.   Stiles alleges

11    that her products were "deleted" from Walmart's stores throughout the United States

12    in agreement with her own competitors and that "there was no legitimate business

13    reason" to have removed a well-performing product from Walmart's shelves.  (Compl.

14    ¶ 34.) Walmart ultimately stopped doing business entirely with Stiles while at the same

15    time working with Stiles's horizontal competitor to develop a clone of Stiles's product.

16    When Stiles sought to sell her product on the shelves of other retailers, she was told

17    that she would be blacklisted by AI—the very competitor that worked with Walmart to

18    "delete" her products from shelves.   She also alleges that she was in fact black listed

19    from retailers—meaning 100% foreclosed from the retail market.  (Compl. ¶¶ 105-06.)

20    These are not bare allegations of foreclosure.

21    When evidence from discovery is considered, it is clear that there is a claim here.

22    Discovery shows that P&G, AI, Coty, and PWC—under the auspices of Walmart—

23    used price and cost information to exclude Stiles from the Shelves of Walmart stores

24    throughout the country.  (Joinder Mot. 7-14.)  Moreover, as set forth fully in the Joinder

25    Motion, Walmart asked Stiles's own horizontal competitors to manufacture sales anal-

26    yses to exclude her product from the market.  (*Id.* at 13.)  There is ample evidence

27    _____

28    as in this case, the methods used to procure exclusive contracts and the nature and
extent of the anticompetitive influence of these contracts on a substantial share of the
relevant market." (emphasis added)).

1   from which to infer that the retail shelf space, particularly at Walmart, was entirely out

2   of Stiles's reach and her allegation that she was threatened with "black listing"—and

3   was in fact "black listed" (Compl. ¶¶ 105-06)—from retailers throughout the country

4   must be taken as true on a motion to dismiss.  It is not a close question here.  Stiles

5   has pleaded substantial foreclosure.

6
7   **III.   Defendants Misconstrue the Complaint as Alleg-
        ing that Patent Infringement Is the Sole Anticom-
        petitive Conduct Alleged**

8       Plaintiffs' most egregious strawman is their characterization of the Complaint's

9   allegations of patent infringement as the sole basis for the violation of the antitrust

10  laws.  (Def. Reply at 4.)  From that false premise, they argue, there has been no harm

11  to competition and there can therefore be no antitrust claim.  (*Id.* at 4.)  Defendants

12  are hopelessly circular and completely wrong about the Complaint.

13      To begin with, the Complaint alleges more anticompetitive conduct than patent

14  infringement alone.  The Complaint alleges, among other things, that Defendants

15  "black listed" Stiles after deliberately reducing the number of shelves on which her

16  products appeared.  (Compl. ¶¶ 105-06.)  The Complaint is clear that this was done

17  by Walmart and AI—both of which horizontally competed with Stiles—without any le-

18  gitimate business justification.  (*Id.*)  These facts depend not at all on the infringement

19  of any patent.

20      The patent allegations, nonetheless, are highly relevant evidence of pretext.

21  Stiles was progressively denied shelf space at Walmart stores—particularly those at

22  which her products sold the best—while at the same time Walmart and AI were work-

23  ing to develop a near-exact clone of the Stiles Razor.  (Compl. ¶¶ 36-51.)  If a rule of

24  reason analysis is applied to this case,[5] this conduct would be evidence that the

25  _____

26  [5] Vertical restraints are generally evaluated under the rule of reason—though not all.
    Although Walmart is a direct competitor with Stiles—and is horizontally situated—it is

27  also a vertical purchaser.  The Court need not resolve this characterization question
    at this juncture.  The outcome is the same—Defendants' deliberate cloning of Stiles's

28  product is clear evidence of pretextual exclusion from Walmart's shelves.

1   decision by Walmart and AI to remove Stiles from Walmart's shelves was not driven

2   by poor sales, lack of demand, or bad quality.  It was instead a concerted decision

3   intended to exclude Stiles that lacked any legitimate business justification.[6]  Put

4   simply, Walmart and AI's agreement to clone the Stiles razor and design around her

5   patent is strong evidence as to the real purpose of the decision to remove her products

6   from Walmart's shelves and to "black list" them from the shelves of other retailers—

7   the exclusion of a direct competitor.

8        Defendants' argument that the alleged antitrust conspiracy is solely based on the

9   infringement of a patent borders on frivolous, and the question of whether an agree-

10   ment to infringe a patent suffices under the antitrust laws is a complete red herring.

11
**IV.   Evidence Revealed in Discovery Clearly Demonstrates**
12
**that Amendment of the Complaint Would Not Be Futile**
13
        As set forth fully in Plaintiffs' Joinder Motion, evidence revealed during discovery
14
is clear—AI, Coty, P&G, Pacific World shared price, output and cost information by
15
virtue of a privileged position provided to them by Walmart as Category Advisors.  As
16
Category Advisors, they conspired with each other routinely to add or remove other
17
products and suppliers from Walmart's shelves.  These horizontal competitors—along
18
with Walmart, which directly competes with its own brands with Stiles and some of its
19
suppliers—ultimately used this information and this conspiracy to exclude Stiles from
20
Walmart stores and retail stores throughout the country.  This is a classic horizontal
21
price-fixing conspiracy, which receives *per se* treatment and for which no market def-
22
inition is required.  Joinder of the newly revealed co-conspirators and an amendment
23
of the Complaint to include these facts would most certainly state a claim under Sec-
24
tion 1 of the Sherman Act.

25

26   [6] *See SCFC ILC, Inc.* v. *Visa USA, Inc.*, 36 F.3d 958, 963 (10th Cir. 1994) ("The 'rule of reason' limits the Act's literal words by forbidding only those arrangements the an-

27   ticompetitive consequences of which outweigh their legitimate business justifica-tions."); *see also Las Vegas Sun, Inc.* v. *Summa Corp.*, 610 F.2d 614, 620 (9th Cir.

28   1979) ("Where, as here, the refusal to deal is motivated by a legitimate business jus-tification, it is privileged.").

1    Moreover, Courts are clear that the revelation of new information in discovery is

2    cause to amend a complaint.  Indeed, "[c]ourts routinely allow parties to amend their

3    pleadings after new information comes to light during discovery."  *Macias* v. *City of*

4    *Clovis*, 2016 U.S. Dist. LEXIS 38964, at *11 (E.D. Cal. Mar. 24, 2016); *see also Fru-*

5    *Con Constr. Corp.* v. *Sacramento Mun. Util. Dist.*, 2006 U.S. Dist. LEXIS 94421, 2006

6    WL 3733815, *4 (E.D. Cal.) ("Allowing parties to amend based on information obtained

7    through discovery is common and well established.").  Thus, even if Defendants are

8    right about their strained characterizations of the allegations in the Complaint—and

9    they are not—an amendment of the complaint to include newly discovered facts would

10    be appropriate and the facts alleged therein would indisputably state a claim under

11    Section 1 of the Sherman Act.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the reasons stated above, the Court should deny Defendants' Motion for Reconsideration.  To the extent the Court is inclined to grant reconsideration, the Court should grant leave to Plaintiffs to file an Amended Complaint setting forth the information revealed in discovery further supporting their Sherman Act Section 1 and California Cartwright Act claims.

Dated: July 11, 2019

Respectfully submitted,

**Pierce Bainbridge Beck Price & Hecht LLP**

By:   /s/ Brian J. Dunne
          Brian J. Dunne (SBN 275689)
          *bdunne@piercebainbridge.com*
          Yavar Bathaee (SBN 282388)
          *yavar@piercebainbridge.com*
          David Hecht (*pro hac vice*)
          *dhecht@piercebainbridge.com*
          355 South Grand Avenue, 44th Floor
          Los Angeles, California 90071
          (213) 262-9333

**Dhillon Law Group Inc.**

          Harmeet K. Dhillon (SBN 207873)
          *harmeet@dhillonlaw.com*
          Nitoj Singh (SBN 265005)
          *nsingh@dhillonlaw.com*
          177 Post Street, Suite 700
          San Francisco, CA 94108
          (415) 433-1700

          *Attorneys for Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.*