**Pierce Bainbridge Beck Price & Hecht LLP**
Brian J. Dunne (SBN 275689)
*bdunne@piercebainbridge.com*
Yavar Bathaee (SBN 282388)
*yavar@piercebainbridge.com*
David L. Hecht (*pro hac vice*)
*dhecht@piercebainbridge.com*
355 South Grand Avenue, 44th Floor
Los Angeles, California 90071
(213) 262-9333

**Dhillon Law Group Inc.**
Harmeet K. Dhillon (SBN 207873)
*harmeet@dhillonlaw.com*
Nitoj Singh (SBN 265005)
*nsingh@dhillonlaw.com*
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

*Attorneys for Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIDAN STILES, an individual, STILES 4 U, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART INC., and AMERICAN INTERNATIONAL INDUSTRIES,<br><br>Defendants. | Case No. 2:14-cv-02234-MCE-CMK<br><br>**Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.'s Reply in Support of Their Motion Seeking Leave to Join Additional Defendants**<br><br>**The Honorable Morrison C. England, Jr.**<br>**Hearing date: August 8, 2019**<br>**Courtroom: 7**<br>**Time: 2:00 P.M.** |

**PLAINTIFFS SHARIDAN STILES AND STILES 4 U, INC.'S REPLY IN SUPPORT OF THEIR MOTION SEEKING LEAVE TO JOIN ADDITIONAL DEFENDANTS**

Plaintiffs respectfully submit this reply brief in support of Stiles's Motion Seeking Leave to Join Additional Defendants (the "Motion"). For the reasons set forth below, the Motion should be granted.

## ARGUMENT

### I. THE FACTS REVEALED IN DISCOVERY PROVIDE A SUFFICIENT BASIS FROM WHICH TO PLEAD PLAUSIBLE VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT.

#### A. Defendants Can Plead a Horizontal Violation of the Sherman Act Against Defendants and Proposed Defendants.

Defendants' joint Opposition (or "Opp.") does not materially dispute that the following facts can be pleaded based on the documents recently revealed for the first time in discovery:

- AI, Coty, PWC, and P&G are horizontally-aligned competitors that have agreed with each other and with Walmart to share real-time price information with Walmart as part of Walmart's Category Advisor program. (Opp. at 6.)

- Soon after P&G, at Walmart's request, removed Stiles's product from the Wet Shave Category without any business justification, Coty, with information collected by it and PWC, manufactured a sham analysis—at Walmart's repeated request—designed to exclude Stiles from Walmart shelves entirely. (Mot. at 7-13.)

- All the while, AI was painstakingly working with a Chinese company to clone Stiles's product to allow Walmart to enter the market with its own branded product. (Mot. at 10-11.) The product would be sourced at precisely one penny less than Stiles's costs—based on information that was shared by Walmart with its co-conspirators to effectively set the price of its competing product. (*Id*. at 4.)

Alleging these facts alone would be sufficient to plead a horizontal conspiracy to exclude a competitor, restrict output, and set prices for a competing Walmart product—all of which is **per se** illegal under the antitrust laws. *See, e.g., In re Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203, 1206-07 (N.D. Cal. 2005) (holding that horizontal price fixing and exclusionary group boycotts are **per se** unlawful).

In addition, the agreement to exchange real-time price information is undisputed (Mot. at 6), and Coty, PWC, P&G, and AI's contemporaneous conduct—such as

1  "deletions" without business justifications, the attempt to clone Stiles's product, and
2  the clear misuse of Stiles's cost information to price the new AI/Walmart product—are
3  all sufficient to infer the existence of an agreement among Walmart, Coty, P&G, PWC,
4  and AI.  The law is clear that facts support the "inference of conspiracy" when "simul-
5  taneous action by multiple competitors [is] made for no other discernable reason than
6  to manipulate the market." *Persian Gulf Inc.* v. *BP W. Coast Prods. LLC*, 324 F. Supp.
7  3d 1142, 1155 (S.D. Cal. 2018).  Defendants do not cite a single case to the contrary.
8     Instead, Defendants offer several unavailing arguments.  To begin with, Defend-
9  ants argue that Walmart cannot be part of a horizontal conspiracy because the Court
10 has in the past ruled that Walmart is vertically aligned with its suppliers and that ruling
11 is law of the case.  (Opp. at 4.)  This is not how the law of the case doctrine works.
12 The Court's earlier ruling applied law to a specific set of factual allegations—which
13 have been revealed through discovery to be materially incomplete.  The Court made
14 no ruling as to Walmart's position regarding the antitrust conspiracy recently revealed
15 through discovery—in fact, it could not possibly have done so.  Specifically, limited
16 discovery to date has revealed that Walmart did in fact directly compete with P&G with
17 its own branded razors (*see, e.g.,* Dunne Reply Dec. Exh. 1 (showing Equate-branded
18 razor in 2010 week 18 Wet Shave inventory list)), and that Walmart intended to enter
19 the market with its own branded clone of the Stiles Razor (*see, e.g.,* Dunne Reply
20 Dec. Exh. 2, at 2 (discussing positioning of Salon Perfect as "exclusive and only at
21 Walmart" co-brand, with Ardell a differentiated AI brand)).  A question of fact thus exists
22 as to the appropriate characterization of Walmart, and the law of the case doctrine
23 simply does "not preclude a district court from granting summary judgment based on
24 evidence after" deciding an issue on a "motion to dismiss based only" on allegations
25 in a complaint.  *Maraschiello* v. *City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir.
26 2013).[1]

---

28  [1] In any event, Defendants' law of the case argument has no bearing on whether a horizontal agreement has been adequately pleaded among AI, Coty, PWC, and P&G—all of whom are indisputably horizontal competitors.

Defendants next argue that their exchange and misuse of price, output, and cost information was a common business practice in the industry—category management—and therefore cannot be a violation of the antitrust laws. This argument is frivolous.

As an initial matter, Defendants' contention that the FTC has blessed the practice of category management as "procompetitive" is entirely false. (Opp. at 2, 17.) The ***very same report*** they cite for that proposition is clear that "the use of category captains can raise competitive questions insofar as it involves a supplier making recommendations about how its competitors should be treated." (Dunne Reply Dec. Exhibit 3, FTC WORKSHOP ON SLOTTING ALLOWANCES AND OTHER MARKETING PRACTICES IN THE GROCERY INDUSTRY (2001) ("FTC Report"), at 7-8.) The FTC was clear that safeguards must be in place as part of category management programs to ensure "***that the captain does not improperly receive confidential information about its rivals' plans***" and "that ***the category captain does not bias its advice to the retailer in such a way that it effectively excludes or significantly disadvantages its competitors***." *Id.* (emphasis added).

The FTC Report's admonishment makes clear why Defendants' conduct here is a far cry from ordinary business practice: (a) AI painstakingly cloned Stiles's product to allow Walmart to enter the market with a competing product (Mot. at 10-11), (b) Stiles's own cost information was used against her to cost and price the competing product (*id.* at 11-12), (c) data collected by category captains PWC and Coty were used to manufacture a sham analysis to justify excluding Stiles from Walmart's shelves (*id.* at 12-13), and (d) P&G used its privileged positions as category captain and the price information it collected to ensure that Stiles would not be given "more stores" (*id.* at 8). Defendants cannot simply brush all of this aside by talismanically referring to Category Management as a privileged industry practice—which it is not.[2]

---

[2] It is unsurprising that the only case Defendants cite bearing on category management found a violation of the antitrust laws. *Conwood Co., L.P.* v. *U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002). The Court there affirmed a jury verdict after evidence was presented at trial that the "category

3
**Plaintiffs' Reply in Support of Their Motion Seeking Leave to Join Additional Parties**

### B. Plaintiffs Can Allege a Viable Hub-and-Spoke Conspiracy

The newly revealed facts also can be characterized as a hub-and-spoke conspiracy. "A traditional hub-and-spoke conspiracy has three elements: (1) a hub, such as a dominant purchaser; (2) spokes, such as competing manufacturers or distributors that enter into vertical agreements with the hub; and (3) the rim of the wheel, which consists of horizontal agreements among the spokes." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1192 (9th Cir. 2015).

Here, Walmart acted as a hub through its category management program, and the spokes are AI, PWC, P&G, and Coty, all of whom agreed to provide their sales, cost, and price information to Walmart. (Mot. at 4-7.) There is evidence that P&G and Walmart agreed to delete Stiles from the Wet Shave category for no business purpose at all, and PWC and Coty agreed to delete Stiles from the Beauty category by manufacturing a sham report at Walmart's request. (*Id*. at 7-13.) All of this occurred while Walmart and AI agreed to clone Stiles's product to allow Walmart to enter the market with a directly competing product. (*Id.* at 10-11.)

This conduct is enough to plead that each spoke had (a) an agreement with Walmart to help drive Stiles from the market, and (b) an agreement with each other to abide by Walmart's price-sharing program and decision to exclude Stiles from the market. Thus, in addition to a direct horizontal agreement among competitors, this is also a classic hub-and-spoke conspiracy. *See, e.g., Northshore Sheet Metal, Inc. v. Sheet Metal Workers Int'l Ass'n, Local 66*, 2018 WL 4566049, at *5 (W.D. Wash. Sept. 24, 2018) (hub-and-spoke claim adequately pled where plaintiff's competitors "had knowledge of and jointly participated in [defendant's] efforts" to injure plaintiff's competition).[3]

---

management program was used to place [Defendant's] racks exclusively in retail stores and [to] hire competitor products in its racks." *Id.* at 787. Indeed, the evidence at trial also showed that the defendant "used its position as category manager to exclude competition by suggesting that retailers carry fewer products, particularly competitor's products; by attempting to control the number of price value brands introduced in stores; and by suggesting that stores carry its slower moving products instead of better selling competitor products." *Id.* at 785-86. All of this was sufficient to support the jury's verdict.

[3] *See also Cascades Computer Innovation LLC v. RPX Corp.*, 2013 WL 6247594, at *10 (N.D. Cal.

1    Defendants argue that to state a claim under Section 1 of the Sherman Act, there
2  must be "an exchange of information among horizontal competitors." (Opp. at 12; 14.)
3  Defendants are wrong. As explained above, the agreement among AI, P&G, PWC,
4  and Coty to share price and output information while acting to exclude Stiles from the
5  market and to clone the Stiles razor is enough to plead a horizontal conspiracy among
6  them. (*See* § I.A., *supra*.) Plaintiffs need not plead direct communications among the
7  spokes so long as the spokes "[w]ere aware of the actions of the others, and were
8  engaged in a single, overarching scheme." *Samp v. JPMorgan Chase Bank, N.A.*,
9  2012 WL 12888434, at *6 (C.D. Cal. May 7, 2012). Moreover, courts, including this
10 one, are clear that the agreement among the spokes can be tacit—there need not be
11 any direct communications. *See Stiles v. Wal-Mart Stores, Inc.*, 2017 WL 3783091, at
12 *3 (E.D. Cal. Aug. 31, 2017) (in a hub-and-spoke conspiracy, the rim can by implied
13 by: "an at-least-tacit understanding between the horizontal competitors that each
14 would participate in the boycott.").[4] All that being said, there is evidence that the var-
15 ious parties communicated directly with one another.[5]

16    **C.   Even if Walmart Is Deemed Vertically Aligned, Plaintiffs Can Plead a Violation of Section 1 of the Sherman Act.**

18    Because Plaintiffs can state a viable hub-and-spoke conspiracy to set output and
19 to exclude Stiles from the shelves of Walmart and other retailers, Walmart's conduct
20 is **per se** unlawful even if Walmart is deemed to be vertically aligned with AI, Coty,

---

21 Dec. 3, 2013) ("The allegations also support a reasonable inference that [hub] coordinated responses amongst the [spokes] in the course of acting as their . . . agent.").

23 [4] *See also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 244-45 (S.D.N.Y. 2019) (allegations that "[c]o-conspirators entered into [multi-year exclusionary] agreements with the knowledge and agreement that distributors and other resellers will be required to enter into, or already have entered into, agreements that limit their freedom to do business outside of specified authorized locations" were sufficient to state a claim); *Wallach* v. *Eaton Corp.*, 814 F. Supp. 2d 428, 440–41 (D. Del. 2011) (allegation of plus factors plus parallel conduct sufficient to infer an agreement among the spokes).

26 [5] *See, e.g.,* Dunne Reply Dec. Exh. 4, WM-STILES-0002832 (direct communication among Walmart, Coty, and PWC responsive to communication by AI to Walmart); Dunne Reply Dec. Exh. 5 (direct communication between Coty and AI regarding Matrix placement); Dunne Reply Dec. Exh. 6 (AI discussion implying that AI directly communicated with Coty and PWC category teams). *Cf.* Dunne Reply Dec. Exh. 7 (communication from P&G immediately forwarded to Coty for analysis).

PWC, and P&G.  Indeed, as the Second Circuit recently held in *United States* v. *Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015), "**all participants** in 'hub-and-spoke' conspiracies [are] liable when the objective of the conspiracy was a *per se* unreasonable restraint of trade."  *Id.* at 322 (emphasis added).  Thus, because Walmart can be alleged to have facilitated a conspiracy to exclude Stiles using cost, price and output information shared among direct horizontal competitors at the spokes of the conspiracy, Walmart's conduct is also *per se* unlawful.[6]

Moreover, even if each agreement with Walmart is viewed as a vertical agreement judged under the rule of reason, Plaintiffs can viably plead an antitrust claim against Walmart and the other Defendants.  That is, Plaintiffs can plausibly plead that the agreement among category captains PWC and Coty and Walmart to collect price, cost and output information—and to use that information to create a sham analysis to exclude Stiles from the category (Mot. at 12-13)—lacked any legitimate purpose.  Likewise, Plaintiffs can also plead that P&G's agreement with Walmart to "delete" Stiles from the Beauty market also lacked any legitimate purpose, as Stiles's sales met and exceeded Walmart's stated benchmarks at the time.  (*Id.* at 8.)  All of this occurred while Walmart agreed with AI to clone, and undercut the cost of, Stiles's product.  (*Id.* at 10-11.)  Stiles was then blacklisted from Walmart and U.S. retailers throughout the country.  (Compl. ¶¶ 104-06.)  The allegation of all of this economically irrational conduct is enough to plead a rule of reason violation, with Defendants then bearing the burden to prove a legitimate business purpose for the agreements.  *See California ex rel. Harris* v. *Safeway, Inc.*, 651 F.3d 1118, 1133 n.10 (9th Cir. 2011) (en banc); *In re*

---

[6] The Ninth Circuit's decision in *In re Musical Instruments & Equip. Antitrust Litig.*, does not hold otherwise.  Although the Court suggested *in dictum* that the vertical component of a "rimless" hub-and-spoke conspiracy would be evaluated under the rule of reason, it had no occasion to decide whether the conduct of a hub, in a rimmed hub-and-spoke conspiracy, is evaluated under a rule of reason.  798 F. 3d. 1186, 1192 n.3.  Indeed, the Court held that Plaintiffs failed entirely to plead the existence of any agreement among Defendants and therefore never reached the question on the facts before it.  In any event, the Court need not decide whether the rule of reason or *per se* rule applies at this juncture—that is a question for summary judgment or trial.  *Kamakahi* v. *Am. Soc'y for Reprod. Med.*, 2013 U.S. Dist. LEXIS 61250, at *24-26 (N.D. Cal. Mar. 29, 2013) ("At this stage of the litigation, the Court concludes that resolution of the issue of which method of antitrust analysis to apply is premature."); *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1039-40 (N.D. Cal. 2013) (*per se* or rule of reason should not be decided without the "benefit of discovery").

*K-Dur Antitrust Litig.*, 2016 U.S. Dist. LEXIS 22982, at *39 (D.N.J. Feb. 25, 2016) (describing burden shifting framework). Defendants make no argument to the contrary.

### D. Defendants' Evidentiary Arguments Are Irrelevant and Inappropriate at this Juncture.

Recognizing that there is ample basis from which to plead a violation of the antitrust laws against them and against the Prospective Defendants, Defendants make evidentiary arguments in response to Plaintiffs' Motion. Specifically, Defendants (a) quarrel with the alleged significance of the documents cited in the opening brief, and (b) Walmart even attaches to its opposition the self-serving declaration of their own buyer, Esther Gifford, in which she purports to testify about Walmart's category management program. All of this is both irrelevant and inappropriate at this juncture.

The question before this Court is whether allegations based on the new information that has come to light during discovery can state a claim—if pleaded by Stiles in an amended complaint—under the antitrust laws. The applicable standard is that of a Rule 12 motion, under which all inferences are made in favor of the Plaintiff and all factual allegations are accepted as true. A declaration by one of Walmart's employees could not be considered under such a standard. *See Mitchel* v. *City of Santa Rosa*, 476 F. App'x 661, 664 (9th Cir. 2011). That Walmart may differently read a document or disagree with its significance is entirely irrelevant. Moreover, Stiles's motion was brought swiftly after limited discovery revealed the documents attached to the Motion; discovery is not complete, and Walmart and AI have heavily redacted highly relevant documents while withholding others entirely on relevance or other grounds.

Defendants know this, so they have misleadingly recast their disagreements about the content and significance of the documents cited in the Motion as alleged misrepresentations by Plaintiffs. (*See, e.g.*, Opp. at 7-10.) Nothing has been misrepresented, as set forth in detail in Appendix A.

## II. PLAINTIFFS' CLAIMS ARE TIMELY

Defendants argue that leave to join the Proposed Defendants should be denied because the newly discovered evidence would amount to a time-barred claim if pleaded in an amended complaint. This argument is frivolous for three reasons.

***First***, Defendants lead their argument with a demonstrably false statement—that plaintiffs "knew about the documents they cite with respect to Coty and PWC five years ago." (Opp. at 2.) Defendants' statement is entirely baseless. None of the documents attached to Plaintiffs' Motion that reflect Defendants' anticompetitive scheme—including the communication of price, cost, and other sensitive information among AI, Coty, PWC, P&G and Walmart—were available to Plaintiff until produced recently in discovery. It is unclear how Defendants can possibly make a representation to the Court that internal, putatively business confidential documents were available to Stiles five years ago, and their brief provides no basis for their statement.[7]

Instead, Defendants seem to argue that because Stiles brought suit against PWC and Coty five years ago, and then voluntarily dismissed that action, she was somehow on notice of the detailed, specific illegal conduct set forth in Plaintiffs' Motion: that PWC and Coty had colluded with Walmart to exclude Stiles from Walmart's shelves by concocting sham projections about her likely sales. This argument makes no sense. The most Stiles alleged in the original suit was that her confidential information was shared by Walmart with her competitors, but that could not have provided her with notice of documents that were produced for the first time in discovery in this action, which revealed that the Defendants and Proposed Defendants had engaged in widespread sharing of price, cost, and output data and that the information was used to orchestrate Stiles's ouster from the shelves of Walmart and those of other U.S. retailers. The statute of limitations therefore could not possibly have begun to run five years ago.

---

[7] In fact, the ***only*** documents Defendants identify as being in Stiles' possession five years ago are four pleadings: the initial complaint filed in Stiles' prior ***pro se*** lawsuit against Defendants; the First Amended Complaint in that action; Stiles's Opposition to a motion to dismiss; and the initial complaint commencing that case. None of those documents could have possibly put her on notice of the facts recently revealed for the first time during discovery in this action.

*See Fenerjian* v. *Nongshim Co.*, Ltd, 72 F. Supp. 3d 1058, 1077 (N.D. Cal. 2014) ("The discovery rule tolls the running of the statute of limitations until a plaintiff knows or has reason to know of the injury which is the basis of the action" and "applies broadly to federal litigation, including Sherman Act claims.").

**Second**, Defendants have no standing to argue that claims against Proposed Defendants are time-barred. Proposed Defendants will have the opportunity to raise all applicable defenses, including those based on statutes of limitations, if and when they move to dismiss the complaint against them. Walmart and AI cannot raise the defenses for them, and the Court need not address them on a motion for joinder. The question before the Court is instead whether "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim," and that is clearly not the case.[8] *Von Saher* v. *Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

**Finally**, with respect to Defendants currently in the action, the claims clearly relate back to claims currently asserted in the Complaint. Under 15(c)(1)(B), a claim relates back if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." If the claim "will likely be proved by the same kind of evidence offered in support of the original pleading," *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014), the standard is satisfied. The "relation back doctrine of Rule 15(c) is liberally applied." *Id.*

Here, discovery has revealed that AI and Walmart conspired with each other and Walmart's other suppliers to exclude Stiles from Walmart stores and from retail stores throughout the United States. (*See* Mot. at 4-14.) In short, all of the facts bearing on this conspiracy relate directly to facts underlying Plaintiffs' Section 1 Sherman Act and California Cartwright Act claims in the operative complaint. That the Defendants and Proposed Defendants effected this scheme by sharing price, output, and cost

---

[8] Indeed, there is ample basis from which to plead that Proposed Defendants and Defendants fraudulently concealed Plaintiffs' claims against them. Defendants manufactured false reasons for Stiles's ouster, including sham sales analyses and projections (Mot. 7-13), false explanations for her deletion from categories, and threats of blacklisting if she further pursued the issue (Compl. ¶ 106).

information merely "restates with greater particularity or amplifies the details of the complaint" and thus relates back to the allegations therein. *Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *13-*14 (C.D. Cal. Apr. 17, 2009).

### III. JOINDER IS APPROPRIATE

Defendants have no basis or standing to argue that joinder is inappropriate here. They argue that the Proposed Defendants are not necessary parties because an injunction can issue in the absence of Coty, PWC, and P&G that would prevent blacklisting, as "none of the alleged absent co-conspirators is a retailer that could 'blackball' plaintiffs." (Opp. at 17.) It was AI, however, that through a senior executive is alleged in the complaint to have threatened Stiles with blacklisting from retailers. (Compl. ¶ 106.) Moreover, because the Proposed Defendants are category advisors at Walmart and likely other retailers, it is reasonable to infer that they exert control over whether Stiles's products can appear on retailers' shelves in the future.

As for Rule 20, permissive joinder, Defendants do not dispute that the allegations against the Proposed Defendants meets the requirements of Rule 20 and relate to the same transactions or occurrences in this action. Rather, their ***only*** argument is that the additional facts discovered, if pleaded in the complaint, "will require additional discovery and cause further delay." (Opp. at 17.) That is not a basis for avoiding joinder of additional parties, and indeed, Defendants do not cite any authority stating that it is. Nor do they explain why discovery cannot be completed by the current January 2020 deadline. (Dkt. No. 229.) Defendants' objection to the permissive joinder of the Proposed Defendants is meritless.

## CONCLUSION

For the forgoing reasons, the Court should grant Stiles's Motion.

Dated: August 1, 2019

                Respectfully submitted,

**Pierce Bainbridge Beck Price & Hecht LLP**

By:  /s/ Brian J. Dunne
      Brian J. Dunne (SBN 275689)
      *bdunne@piercebainbridge.com*
      Yavar Bathaee (SBN 282388)
      *yavar@piercebainbridge.com*
      David Hecht (*pro hac vice*)
      *dhecht@piercebainbridge.com*
      355 South Grand Avenue, 44th Floor
      Los Angeles, California 90071
      (213) 262-9333

**Dhillon Law Group Inc.**

Harmeet K. Dhillon (SBN 207873)
*harmeet@dhillonlaw.com*
Nitoj Singh (SBN 265005)
*nsingh@dhillonlaw.com*
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

*Attorneys for Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.*