# APPENDIX 1

| Motion Exhibits | Defendants Allegations of Misrepresentations | Actual Representations and Content of Documents |
|---|---|---|
| 10-11 | Documents do not support argument that "P&G 'collected data.'" Opp. at 8. Defendants' also argue that when Stiles's submissions (Ex. 10-11) were submitted to P&G they were "revised" to remove sensitive information. *Id.* citing Ostrander Dec. at ¶¶ 3-4 & 10. | Exhibits 10-11 are copies of Stiles's confidential price data and future sales, which she submitted to Walmart. Mtn. at 6. Walmart shared this confidential information with P&G as evidenced by emails (Ex. 13-14) to P&G. *Id.* |
| 12 | Defendants argue Stiles misrepresented that "P&G" was on this email. Opp. at 8. | No argument by Stiles that this email was to or from P&G. *See* Mot. at 6. |
| 28 | Defendants argue Stiles cites this exhibit, which ranks items and prices at Walmart and "falsely claim[s]" that AI served as a category manager at Walmart. Opp. at 9. | Stiles does not make that argument. Stiles argues that AI was involved in price fixing among other suppliers and involved in information sharing. *See* Mot. at 6-7. |
| 4a-b, 15, 17, 28, 31, 32, & 33 | Defendants argue Stiles misrepresents these documents (emails from PWC, Coty, and AI to Walmart, and vice versa regarding sales and pricing information) show price sharing among the suppliers. Opp. at 9. | Stiles never makes the representation that these emails are between suppliers. *See* Mot. at 6-7. Rather, Stiles argues these documents are evidence of Walmart coordinating with suppliers (eg. PWC, etc.) to share pricing and sales information as part their conspiracy. *See id.* |
| 26-27, 29-30, & 35-38 | Defendants argue that because these documents are all internal AI documents, they cannot be evidence of price fixing at Walmart's direction. *See* Opp. at 9-10. Thus, according to Defendants, Stiles made "misrepresentations" regarding these documents. *Id.* at 9. | Stiles never misrepresents the content of these documents. *See, e.g.,* Mot. at 10-12. Stiles never "falsely" claims these documents are anything other than internal AI communications. *Id.* Rather, Stiles argues that these emails, coupled with other exhibits (e.g. 28) are evidence of efforts to fix prices and eliminate Stiles entirely. *Id.* at 11-12. The fact that this was done with an AI product of the "same" price is irrelevant because, contrary to Defendants' arguments (Opp. at 9-10), AI was not competing on price, but was copying Stiles's razor and pushing her out entirely. Mot. at 11-12. |
| 6, 7, 8, & 9 | Defendants argue Stiles misrepresented the content of these documents, because the documents themselves, which contain price and output information, are only between P&G and Walmart, and not other category advisors and P&G. *See* Opp. at Appendix 1. | Stiles never argues that the documents are emails between competitors—which is what Defendants appears to suggest Stiles did. *Compare* Mot. at 6 with Opp. at Appendix 1. Rather, Stiles argues that '[f]or example" these emails between P&G and Walmart show how Category Advisors abused their power—not that these were communications among all competitors and Walmart. *See* Mot. at 5. |
| 19 | Defendants argue Stiles cites to Exhibit 19—which is an email from November 2009—to support an argument that in March 2010, P&G agreed to "set quantity and price of Stiles Razors." Opp. at 8-9. | Defendants take Stiles's arguments out of context: Stiles cites to Exhibit 19 as part of a series of communications (including multiple other exhibits) regarding price fixing and pushing Stiles razors out of Walmart stores. *See* Mot. at 8-9 |
| 22, 23, & 24 | Defendants argue that Stiles made false claims about the content of these emails—which show efforts to push Stiles out of Walmart in favor of her competitors—simply because the Motion does not attach an express "agreement" between P&G and Walmart to do so. Opp. at Appendix 1. | Defendants' argument misses the point. Stiles does not misrepresent anything, but rather argues that these emails (Ex. 22-24) coupled with a spreadsheet (Ex.25)—which Defendants ignore—show Walmart working with its largest supplier, P&G, to exclude Stiles "based on [Stiles's']…price and output information." *See* Mot. at 10. |