# EXHIBIT A

BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
CATHERINE S. SIMONSEN (SBN 307325)
catherine.simonsen@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329

BIJAL V. VAKIL (SBN 192878)
bvakil@whitecase.com
JEREMY OSTRANDER (SBN 233489)
jostrander@whitecase.com
HALLIE KIERNAN (SBN 313541)
hallie.kiernan@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
Two Palo Alto Square, Suite 900
Palo Alto, CA  94306
Telephone:  (650) 213-0300
Facsimile:  (650) 213-8158

STEFAN M. MENTZER (admitted *pro hac vice*)
smentzer@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas, Floor 49
New York, NY  10020
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113

Attorneys for Defendant
WALMART INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIDAN STILES, an individual, STILES 4 U, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART INC.; AMERICAN INTERNATIONAL INDUSTRIES,<br><br>Defendants. | Case No. 2:14-cv-02234-MCE-DMC<br><br>**WALMART INC.'S RESPONSE TO PLAINTIFFS SHARIDAN STILES AND STILES 4 U, INC.'S NOTICE OF REQUEST TO SEAL DOCUMENTS AND REDACT MOTION**<br><br>Hon. Morrison C. England, Jr.<br>Hearing date: August 8, 2019<br>Courtroom: 7<br>Time: 2:00 P.M. |

Pursuant to the Court's Stipulated Protective Order (ECF No. 178) and Local Rule 141, Walmart Inc., by and through their undersigned counsel, hereby file their Response to Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.'s Notice of Request to Seal Documents and Redact Motion, ECF No. 234.

Under the Protective Order, the party designating a document as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER bears the burden of demonstrating the basis for sealing the document, the statutory or other authority for sealing, the requested duration, and the identity of persons to be permitted access to the documents. (ECF No. 178 ¶ 14; L.R. 141.) The documents attached to Plaintiffs' Motion produced by Walmart are all designated confidential under the Protective Order as containing "privileged, confidential, or nonpublic information, including, but not limited to, trade secrets, research, design, development, financial, technical, marketing, planning, personal, or commercial information, as such terms are used in the Federal Rules of Civil Procedure and any applicable case law interpreting Rule 26(c)(1)(G) or the former Rule 26(c)(7), contracts; proprietary information; vendor agreements; personnel files; claim/litigation information; or certain policies and procedures." (ECF No. 178 at 2–3.)

The party seeking to seal documents bears the burden of showing there is a "compelling reason" for sealing the requested documents. *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). However, "[t]he public policies that support the right to access of dispositive motions, and related materials, do not apply with equal force to non-dispositive materials." *Id.* at 1179. "[T]he usual presumption of the public's right to access is rebutted," where, as here, the documents are attached to a non-dispositive motion. *Id.* at 1180. A description of each requested document is provided in the Declaration of Jeremy Ostrander filed herewith. Each document falls within one of three categories that justifies maintaining their sealing: (1) financial and proprietary information; (2) information pertaining to confidential business relationships between Walmart and suppliers; and (3) internal strategic business decisions. Walmart also requests that the Court maintain the sealing of any quotations or descriptions of the Exhibits in Plaintiffs' motion itself (ECF No. 232) that are Walmart's confidential information for the same reasons described below.

**Financial and Proprietary Information (Exhibits 7, 8, 9, 10, 11, 16-17, 32-34).** The exhibits in this category consist of emails and spreadsheets containing financial information of Walmart and third parties as well as proprietary information of Walmart's sales of third parties' products. Courts in the Eastern District of California allow redaction of "detailed historical revenue, sales, profits, losses, costs, margins, future estimates or projections, or other figures derived from the information above." *Cox v. Roadrunner Intermodal Servs., LLC*, 2019 U.S. Dist. LEXIS 103697, at *6–7 (E.D. Cal. Jun. 19, 2019) (granting a request to seal documents in connection with a dispositive motion that contain financial information and may cause a competitive harm to litigants in the case). Here, the information provided relates to similar financial information and proprietary information of Walmart, Defendant American International Industries, and non-litigant third parties, not publically available. If such information is made public it could cause a competitive harm to one or more of these entities. Accordingly, Walmart requests the Court allow the Exhibits be filed under seal indefinitely and be viewable "only to the Court, its staff, and counsel of record, and also shall be disclosed on a need-to-know basis only to the parties, counsel's staff personnel, employees of a party to whom disclosure is necessary in connection with the preparation for and trial of this action, and any witnesses in the case (including consulting and testifying experts) as may from time to time reasonably be necessary in prosecution or defense of this action" as permitted under paragraph 9 of the Protective Order. (ECF No. 178 ¶ 9.)

**Information Regarding Confidential Supplier Relationships (Exhibits 6, 12-15, 31, and 34).** Another subset of Plaintiffs' exhibits consist of emails and spreadsheets pertaining to the business relationships between Walmart and suppliers. "Disclosing confidential business dealings with third parties . . . could harm [the movants] competitive standing," as such the documents may be sealed. *TriQuint Semiconductor v. Avago Techs., Ltd.*, 2011 U.S. Dist. LEXIS, at *13 (D. Ariz. Dec. 12, 2011). The listed Exhibits relate and refer to business relationships between Walmart and its suppliers, including those suppliers who also take on the role of product manager for categories of products at issue in this litigation. The Exhibits demonstrate how Walmart terminates a product, factors considered when evaluating products and

suppliers, and the information provided by third parties in connection with the business relationship. If the documents become publically available, competitors may use the information to harm Walmart and the third parties competitive standing, especially as the third parties sell products to other retailers. Accordingly, Walmart requests the Court allow Exhibits 6, 12, 13, 14, 15, 31, and 34 be filed under seal indefinitely and be viewable to those person listed in paragraph 9 of the Protective Order, as described above. (ECF No. 178 at ¶ 9.)

**Walmart's Internal Strategic Business Decisions (Exhibits 18-20, 21-24).** These documents consist of emails relating to internal strategic business decisions made by Walmart. Courts in the Ninth Circuit recognize a right to seal business strategies as public disclosure of the strategy would allow "competitors [to gain] insight into the parties' business model and strategy." *In re Qualcomm Litig.,* No. 3:17-cv-0108-GPC-MDD, 2017 U.S. Dist. LEXIS 185481, at *10 (S.D. Cal. Nov. 8, 2017). The Exhibits attached relate to Walmart's decisions and strategy in removing a product from stores and demonstrates how Walmart fills the products place in the category. Allowing the documents to be made public would allow Walmart's competitors to have a competitive edge when negotiating contracts or choosing products from suppliers who also sell to Walmart, therefore, creating a threat of competitive harm. Accordingly, Walmart requests the Court allow Exhibits 18, 19, 20, 21, 22, 23, and 24 be filed under seal indefinitely and be viewable to those person listed in paragraph 9 of the Protective Order. (ECF No. 178 at ¶ 9.)

Respectfully Submitted,

Dated: July 1, 2019

WHITE & CASE LLP

By:   */s/ Jeremy Ostrander*
      Jeremy Ostrander

Attorneys for Defendant
Walmart Inc.

BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
CATHERINE S. SIMONSEN (SBN 307325)
catherine.simonsen@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329

BIJAL V. VAKIL (SBN 192878)
bvakil@whitecase.com
JEREMY OSTRANDER (SBN 233489)
jostrander@whitecase.com
HALLIE KIERNAN (SBN 313541)
hallie.kiernan@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA  94306
Telephone:  (650) 213-0300
Facsimile:  (650) 213-8158

STEFAN M. MENTZER (admitted *pro hac vice*)
smentzer@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas, Floor 49
New York, NY  10020
Telephone:  (212) 819-8200
Facsimile:   (212) 354-8113

Attorneys for Defendant
WALMART INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIDAN STILES, an individual; STILES 4 U, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART INC.; AMERICAN INTERNATIONAL INDUSTRIES,<br><br>Defendants. | Case No. 2:14-cv-02234-MCE-CMK<br><br>**DECLARATION OF JEREMY OSTRANDER IN RESPONSE TO PLAINTIFFS SHARIDAN STILES AND STILES 4 U, INC.'S NOTICE OF REQUEST TO SEAL DOCUMENTS AND REDACT MOTION**<br><br>Date:  August 8, 2019<br>Time:  2:00 p.m.<br>Courtroom:  7<br>Judge:  The Honorable Morrison C. England, Jr.; U.S. Magistrate Judge |

- 1 -

**DECLARATION OF JEREMY OSTRANDER**

I, Jeremy Ostrander, declare:

1. I am an active member of the State Bar of California and am admitted to practice before the United States District Court for the Eastern District of California. I am Counsel with the law firm of White & Case LLP, attorneys of record for defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("Walmart") in this action. I have personal knowledge of the facts stated in this declaration and if called as a witness, I could and would competently testify about them.

2. On June 28, 2019, Plaintiffs filed their Request to Seal Documents and Redact Motion (ECF No. 231).

3. Exhibit 6 is an email form Cheryl Chapman of Procter & Gamble ("P&G") attaching an analysis of new and deleted items at Walmart sent to Walmart's Heather Ronchetto dated October 8, 2018, Bates Nos. WM-STILES-0004538–0004539. The emails pertains to the confidential business relationship between Walmart and Procter Gamble, which provides confidential business and financial analysis of supplier performance, including year to date sales in units and dollars, and an evaluation of the brow category. Disclosure of this type of confidential commercial information regarding supplier performance at Walmart would cause harm to Walmart and impede competition in the market.

4. Exhibit 7 is an email from P&G's Matthew Williamson to Walmart's Heather Ronchetto with a subject line "Week 37 Inventory Report and New Item Tracker," dated October 13, 2008, Bates Nos. WM-STILES-0004545–0004546. The document contains confidential business information of Walmart and third parties, namely the number of weeks on hand of various supplier's products. This information if publically known could create a competitive advantage to third parties and harm Walmart's suppliers who are not a party to this action.

5. Exhibit 8 is an Inventory Report attached to the email dated October 13, 2008, created by P&G's Sarah Kamm, Bates No. WM-STILES-0004547, and attached to Exhibit 6 described above. The report contains confidential financial information, including POS Sales and average retail sales of competitor products, that if known to competitors would provide any unfair advantage and potentially harm the third parties' business.

- 2 -

6. Exhibit 9 is an Excel spreadsheet attached to the email dated October 13, 2008, created by Sarah Kamm of P&G, Bates No. WM-STILES-0004548, and attached as Exhibit 6 described above. The spreadsheet contains Walmart's proprietary and financial information, such as retail sales (in units and dollars) by item for an entire product category at Walmart. Disclosure of such confidential financial information, if known to Walmart's or the included suppliers' competitors, may provide a competitive advantage.

7. Exhibit 10 is an Excel spreadsheet containing the proposed line review, brand ranking, and modular placement for the Stiles Razor created in 2010, Bates No. WM-STILES 0003319. The spreadsheet contains confidential business and financial information of Plaintiffs and Walmart. In particular, the document contains proprietary information of how Walmart asks suppliers to value their products and make submissions for potential inclusion of products in a product category. Such information if known could cause a competitive harm to Walmart.

8. Exhibit 11 is an Excel spreadsheet containing the line review, brand ranking, and modular placement for the Stiles Razor created in 2010, Bates No. WM-STILES 0003326. The spreadsheet contains confidential business and financial information of Plaintiffs and Walmart. The document also contains proprietary information of how Walmart asks suppliers to value their products and make submissions for potential inclusion of products in a product category. Such information if known could cause a competitive harm to Walmart.

9. Exhibit 12 is an email from Walmart's Heather Ronchetto to Quest Products Inc.'s Don Ryan with a subject line "FW: Quest Products Stiles Razor for Woman and new Mens Version," dated August 20, 2009, Bates Nos. WM-STILES-0003316–0003318. The document contains proprietary information regarding Walmart's business and supplier relationship with Quest Products, working on behalf of Plaintiffs.

10. Exhibit 13 is an email from Walmart's Heather Ronchetto to P&G's Cheryl Chapman with a subject line "Add Delete #3," dated September 18, 2009, Bates No. WM STILES-0003320. The document contains proprietary commercial information regarding submissions made to Walmart from various suppliers in the Wet Shave department who are not parties to this litigation.

11. Exhibit 14 is an email from Walmart's Heather Ronchetto to P&G's Cheryl Chapman with a subject line "Add/Delete," dated September 18, 2009, Bates No. WM STILES-0003327. The document contains proprietary commercial information regarding submissions made to Walmart from various suppliers in the Wet Shave department.

12. Exhibit 15 is an email to Walmart's Esther Gifford with a subject line "Re: stiles," attaching analysis on the Stiles Razor, dated October 7, 2011, Bates Nos. WM STILES-0001954-0001955. The document contains proprietary information regarding Walmart's business and supplier relationship with third party Coty US and proprietary information related to the factors Walmart considers when evaluating suppliers and comparing a products' performance to like items.

13. Exhibit 16 is an Excel spreadsheet titled "Stiles Analysis 10.6.11 Revised," Bates No. WM-STILES-0001956 and attached to Exhibit 15 described above. The spreadsheet contains confidential business and financial information available to Walmart in analyzing supplier performance, including a ranking of similar items to the Stiles Razor, year to date sales in units and dollars, and an evaluation of the brow category. Disclosure of this type of confidential commercial information regarding product performance at Walmart would cause harm to Walmart and impede competition in the market.

14. Exhibit 17 is an Excel spreadsheet, titled "Stiles Analysis WM Request Revised 10.17.11," Bates No. WM-STILES-0001960. The spreadsheet contains confidential business and financial information of Walmart, including the data available to Walmart in analyzing supplier performance. The document contains proprietary information of how Walmart values suppliers' products including comparing those products to similar items and whole category averages. Such information if publicly disclosed could cause a competitive harm to Walmart.

15. Exhibit 18 is a portion of an email chain between Walmart's Heather Ronchetto to P&G's Cheryl Chapman with a subject line "Stiles," dated November 16, 2009, Bates No. WM-STILES 0002185. The document contains discussions of Walmart's internal stocking and supply decisions with its category manager and supplier Proctor & Gamble.

16. Exhibit 19 is a portion of an  email chain between P&G's Cheryl Chapman to

Walmart's Heather Ronchetto with a subject line "Re: Stiles," dated November 16, 2009, Bates No. WM-STILES-0002186. The email chain reflected in Exhibits 18-21 contains discussions of Walmart's internal stocking and supply decisions with its category manager and supplier Proctor & Gamble.

17. Exhibit 20 is a portion of an email chain between P&G's Cheryl Chapman to Walmart's Heather Ronchetto with a subject line "RE: Stiles," dated November 16, 2009, Bates No. WM-STILES-0002189. The email chain reflected in Exhibits 18-21 contains discussions of Walmart's internal stocking and supply decisions with its category manager and supplier Proctor & Gamble.

18. Exhibit 21 is a portion of email chain between Walmart's Heather Ronchetto to P&G's Cheryl Chapman with a subject line "RE: Stiles," dated November 17, 2009, Bates No. WM-STILES-0002197. The email chain reflected in Exhibits 18-21 contains discussions of Walmart's internal stocking and supply decisions with its category manager and supplier Proctor & Gamble.

19. Exhibit 22 is a portion of an email chain between P&G's Cheryl Chapman to Walmart's Heather Ronchetto with a subject line "RE: Stiles Razor," dated March 10, 2010, Bates No. WM-STILES-0002236. The email chain reflected in Exhibits 22-24 contains discussions of Walmart's internal stocking and supply decisions with its category manager and supplier Proctor & Gamble.

20. Exhibit 23 is a portion of an email chain between Walmart's Heather Ronchetto to P&G's Cheryl Chapman and Nicole Sentivany with a subject line "RE: Stiles Razor," dated March 10, 2010, Bates No. WM-STILES-0002237. The email chain reflected in Exhibits 22-24 contains discussions of Walmart's internal stocking and supply decisions with its category manager and supplier Proctor & Gamble.

21. Exhibit 24 is a portion of an email chain between P&G's Cheryl Chapman to Walmart's Heather Ronchetto with a subject line "RE: Stiles Razor," dated March 10, 2010, Bates No. WM-STILES-0002239. The email chain reflected in Exhibits 22-24 contains discussions of Walmart's internal stocking and supply decisions with its category manager and

supplier Proctor & Gamble.

22. Exhibit 25 is an Excel spreadsheet titled "201017 Item Ranking-2," Bates No. WM-STILES-0003375. The document contains confidential business information of Walmart and, namely the category ranking, the average sales per week in units and dollars, and the number of stores that carry the products. This information if publically known could create a competitive advantage to Walmart's competitors and potentially harm Walmart's suppliers who are not a party to this action.

23. Exhibit 31 is a portion of an email chain between Robin Foshee of Coty US and Walmart's Esther Gifford with a subject line "Re: FW: 2008 Data," dated October 14, 2011, Bates Nos. WM-STILES-0001961–0001962. The email chain reflected in Exhibits 31, 33, and 34 contains proprietary information regarding Walmart's business and supplier relationship with Coty US and proprietary information related to the factors Walmart considers when evaluating suppliers and comparing a product's performance to like items.

24. Exhibit 32 is an Excel spreadsheet titled "Stiles Analysis WM Request Revised 10.14.11) provided to Walmart's Esther Gifford on October 14, 2011, Bates No. WM-STILES-0001963, and attached to the email referenced above as Exhibit 31. The spreadsheet contains confidential business and financial information of Walmart. The document also contains proprietary information of how Walmart values suppliers' products including comparing those products to similar items and whole category averages. Such information if known to a competitor could cause a competitive harm to Walmart.

25. Exhibit 33 is a portion of an email chain between Robin Foshee of Coty US and Walmart's Esther Gifford with a subject line "RE: FW" 2008 Data," dated October 17, 2011, Bates Nos. WM-STILES-0001957–0001959. The spreadsheet contains confidential business and financial information of Plaintiffs. The email chain reflected in Exhibits 31, 33, and 34 also contains proprietary information of how Walmart values suppliers' products including comparing those products to similar items and whole category averages. Such information if publicly disclosed could cause a competitive harm to Walmart.

26. Exhibit 34 is an email between Walmart employees with a subject line "FW: 2008

1  Data," dated October 12, 2011, Bates No. WM-STILES-0002437.  The document contains
2  proprietary information regarding Walmart's business and supplier relationships and how
3  Walmart determines whether to terminate a supplier.  Such information if known would provide
4  Walmart's suppliers a competitive advantage when negotiating with Walmart.  Additionally, the
5  information if public would provide Walmart's competitors with a competitive advantage and
6  potentially harm Walmart's business.
7          I declare under penalty of perjury under the laws of the United States of America and the
8  State of California that the above is true and correct.
9          Executed on July 1, 2019, at Palo Alto, California.

             _/s/ Jeremy Ostrander_
                Jeremy Ostrander