# PUBLIC REDACTED VERSION OF DOCUMENT CONDITIONALLY FILED UNDER SEAL

1

**Pierce Bainbridge Beck Price & Hecht LLP**

2
Brian J. Dunne (SBN 275689)
*bdunne@piercebainbridge.com*

3
Yavar Bathaee (SBN 282388)
*yavar@piercebainbridge.com*

4
David L. Hecht (*pro hac vice*)
*dhecht@piercebainbridge.com*

5
355 South Grand Avenue, 44th Floor
Los Angeles, California 90071

6
(213) 262-9333

7
**Dhillon Law Group Inc.**

8
Harmeet K. Dhillon (SBN 207873)
*harmeet@dhillonlaw.com*

9
Nitoj Singh (SBN 265005)
*nsingh@dhillonlaw.com*

10
177 Post Street, Suite 700
San Francisco, CA 94108

11
(415) 433-1700

**White & Case LLP**
Bryan A. Merryman (SBN 134357)
*bmerryman@whitecase.com*
Catherine S. Simonsen (SBN 307325)
*catherine.simonsen@whitecase.com*
555 S. Flower Street, Suite 2700
Los Angeles, CA 90071-2433
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

12                   UNITED STATES DISTRICT COURT

13                   EASTERN DISTRICT OF CALIFORNIA

14

15
SHARIDAN STILES, an individual,
STILES 4 U, INC., a California
corporation

16
                              Plaintiffs,

17
        v.

18
WALMART INC., and AMERICAN
INTERNATIONAL INDUSTRIES,

19

20
                              Defendants.

Case No. 2:14-cv-02234-MCE-CMK

**Joint Statement re Discovery Disagreement**

**Hon. Morrison C. England, Jr.**
**U.S. Magistrate Judge Dennis M. Cota**
**Hearing date: December 11, 2019**
**Courtroom: 304**
**Time: 10:00 A.M.**

21

22

23

24

25

26

27

28

---

**Joint Statement re Discovery Disagreement**

1

**TABLE OF CONTENTS**

2

I.   DETAILS OF THE CONFERENCE ...................................................................1

A.   Discovery Requests at Issue ...............................................................1

1.   Interrogatories...........................................................................1

2.   Requests for Production of Documents ......................................1

3.   Stiles' Change of Counsel .........................................................1

B.   Plaintiffs' Description of Meet and Confer Process ...........................2

1.   First Meet and Confer...............................................................2

2.   Second Meet and Confer ..........................................................3

3.   Third Meet and Confer .............................................................4

4.   Fourth Meet and Confer ...........................................................5

5.   Fifth Meet and Confer ..............................................................6

C.   Defendants' Description of Meet and Confer Process ........................6

1.   Meet and Confer Regarding the Discovery Disputes Identified by Plaintiffs............................................................................6

2.   Plaintiffs' Tactics With Respect to This Motion ......................11

II.   NATURE OF THE ACTION AND FACTUAL DISPUTES ...........................11

A.   Nature of the Action ........................................................................11

1.   Plaintiffs' Description...............................................................11

2.   Defendants' Description of the Operative Claims......................13

B.   Issues to be Determined at the Hearing ...........................................15

III.   THE CONTENTIONS OF EACH PARTY ......................................................15

A.   First Dispute: Walmart's Deficient Document Production .................15

1.   Stiles' Requests for Production and Walmart's Responses........15

2.   Stiles' Contentions..................................................................26

3.   Walmart's Contentions ...........................................................34

B.   Second Dispute: Walmart's Withholding Responsive Documents Based on an Alleged Agreement with Stiles' Prior Counsel. ...................................................47

1.      Stiles' Contentions ................................................................. 47

2.      Walmart's Contentions ........................................................... 49

C.      Third Dispute: Walmart's Redactions in Past Document Productions ................. 49

1.      Stiles' Contentions ................................................................. 49

2.      Walmart's Contentions ........................................................... 52

D.      Fourth Dispute: Walmart's Withholding of Documents Based on Objections
to RFPs ............................................................................................. 54

1.      Stiles' Requests for Production and Walmart's Responses ..................... 54

2.      Stiles' Contentions ................................................................. 81

3.      Walmart's Contentions ........................................................... 83

E.      Fifth Dispute: Walmart's Response to Interrogatory No. 4 ................................... 84

1.      Stiles' Interrogatory and Walmart's Response ........................................ 84

2.      Stiles' Contentions ................................................................. 86

3.      Walmart's Contentions ........................................................... 87

F.      Sixth Dispute: Walmart's Response to Interrogatory No. 5 ................................. 87

1.      Stiles' Interrogatory and Walmart's Response ........................................ 87

2.      Stiles' Contentions ................................................................. 89

3.      Walmart's Contentions ........................................................... 90

G.      Seventh Dispute: Walmart's Response to Interrogatory Nos. 7–11 and 13–15 .... 90

1.      Stiles' Interrogatories and Walmart's Responses ..................................... 90

2.      Stiles' Contentions ................................................................. 96

3.      Walmart's Contentions: ........................................................... 97

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adamov v. Pricewaterhouse Coopers LLP*,
   No. 2:13-cv-01222-TLN-AC, 2017 U.S. Dist. LEXIS 211210 (E.D. Cal. Dec. 21,
   2017) ...........................................................................................................................44

*Am. Home Assurance Co. v. Greater Omaha Packing Co.*,
   No. 8:11CV270, 2013 WL 4875997 (D. Neb. Sept. 11, 2013) ...............................48

*Apple Inc. v. Eastman Kodak Co.*,
   No. CV 10-04145 JW PSG, 2011 WL 334669 (N.D. Cal. Feb. 1, 2011)................33

*Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*,
   276 F. Supp. 2d 1084 (D. Nev. 2003)..............................................................52, 53

*In re ATM Fee Antitrust Litigation*,
   233 F.R.D. 542 (N.D. Cal. 2005) .........................................................................82

*Best Buy Stores, L.P. v. Manteca Lifestyle Ctr., LLC*,
   No. 2:10-CV-0389-WBS-KJN, 2011 WL 2433655 (E.D. Cal. June 14, 2011) .....33

*Bittaker v. Woodford*,
   331 F.3d 715 (9th Cir. 2003) ...............................................................................54

*Bryant v. Ochoa*,
   2009 U.S. Dist. LEXIS 42339, 2009 WL 1390794 (S.D. Cal. May 14, 2009) ......44

*Estate of Bui v. City of Westminster Police Dep't*,
   244 F.R.D. 591 (C.D. Cal. 2007).........................................................................30

*Caccamise v. Credit One Bank, N.A.*,
   Case No. 17-cv-971, 2019 WL 1900908 (S.D. Cal. Apr. 26, 2019) ................49, 50

*Callahan v. A.E.V. Inc.*,
   947 F. Supp. 175 (W.D. Pa. 1996) .......................................................................31

*Causey v. Portfolio Acquisitions, LLC*, No. 2:10-cv-2781-KJM-EFB PS, 2013 U.S.
   Dist. LEXIS 53219 (E.D. Cal. Apr. 12, 2013) ................................................36, 84

*Chiron Corp. v. Genentech, Inc.*,
   179 F. Supp. 2d 1182 (E.D. Cal. 2001) ...........................................................51, 53

*In re Coventry Healthcare, Inc. Sec. Litig.*,
   290 F.R.D. 471 (D. Md. 2013) .............................................................................33

**Joint Statement re Discovery Disagreement**

1   *Estate of Crawley v. Kings Cnty.*,
2       No. 1:13-cv-02042-LJO-SAB, 2015 U.S. Dist. LEXIS 59439 (E.D. Cal. May 6,
        2015)..................................................................................................................34

3   *EEOC v. Dolgencorp, LLC*,
        No. 1:09CV700, 2011 WL 1260241 (M.D.N.C. Mar. 31, 2011) ...........................................48
4
5   *Evon v. Law Offices of Sidney Mickell*,
        No. 09-cv-0760, 2010 WL 455476 (E.D. Cal. Feb. 3, 2010) ...................................49

6   *F.D.I.C. v. Brudnicki*,
7       291 F.R.D. 669 (N.D. Fla. 2013) ......................................................................33, 48

8   *Fendi Adele v. Filene's Basement, Inc.*,
        No. 06 Civ. 244RMBMHD, 2009 WL 855955 (S.D.N.Y. Mar. 24, 2009)...........................47
9
10  *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
        2018 U.S. Dist. LEXIS 594 (M.D. La. Jan. 3, 2018) .............................................44

11  *Flores v. Hagobian*,
12      No. 1:04-CV-6405 AWI DLB, 2008 WL 170873 (E.D. Cal. Jan. 18, 2008).........................50

13  *Francisco v. Emeritus Corp.*,
        Case No. 17-cv-2871, 2017 WL 11036693 (C.D. Cal. Sept. 5, 2017) .............................49, 50
14
15  *Imax Corp. v. Cinema Techs., Inc.*,
        152 F.3d 1161 (9th Cir. 2008) .........................................................................86

16  *J & M Assocs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
17      No. 06-CV-0903-W (JMA), 2008 WL 638137 (S.D. Cal. Mar. 4, 2008) ..............................30

18  *John B. v. Goetz*,
        531 F.3d 448 (6th Cir. 2008) ...........................................................................44
19
20  *Johnson v. Hewlett Packard Co.*,
        No. C-09-03596 CRB, 2011 U.S. Dist. LEXIS 164126 (N.D. Cal. Apr. 21, 2011)...............52

21  *Kansas–Nebraska Natural Gas v. Marathon Oil Co.*,
22      109 F.R.D. 12 (D. Neb. 1983) .........................................................................82

23  *Kleen Prods., LLC v. Packaging Corp. of Am.*,
        No. 10 C 5711, 2012 WL 4498465 139632 (N.D. Ill. Sept. 28, 2012) ............................34, 48
24
25  *Lauris v. Novartis AG*,
        No. 1:16-cv-00393-LJO-SAB, 2016 U.S. Dist. LEXIS 170203 (E.D. Cal. Dec. 7,
26      2016)..................................................................................................................46

27  *Mancia v. Mayflower Textile Servs. Co.*,
        253 F.R.D. 354 (D. Md. 2008) .........................................................................83
28

*Maness v. Meyers*,
    419 U.S. 449 (1975) ........................................................................................50

*Martin v. Hilton Sacramento Arden W.*,
    No. 2:14-CV-00360 GEB AC, 2014 WL 5823101 (E.D. Cal. Nov. 10, 2014)......................28

*Martinelli v. Johnson & Johnson*,
    No. 2:15-cv-1733 MCE DB, 2017 U.S. Dist. LEXIS 20113 (E.D. Cal. Feb. 10,
    2017)................................................................................................................40

*Novelty, Inc. v. Mountain View Mktg., Inc.*,
    265 F.R.D. 370 (S.D. Ind. 2009) ..................................................................48

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ........................................................................................31

*Peat, Marwick, Mitchell & Co. v. West*,
    748 F.2d 540 (10th Cir. 1984, *cert dismissed,* 469 U.S. 1199 (1985)....................82

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*,
    Case No. 16-cv-00300, 2017 WL 3275615 (C.D. Cal. Feb. 14, 2017) ...................83

*Quiksilver, Inc. v. Kymsta Corp.*,
    247 F.R.D. 579 (C.D. Cal. 2007)....................................................................53

*Roberts v. Clark Cty. Sch. Dist.*,
    312 F.R.D. 594 (D. Nev. 2016) ....................................................................46

*Roesberg v. Johns–Manville Corp.*,
    85 F.R.D. 292 (E.D. Pa. 1980) ....................................................................82

*Rogers v. Giurbino*,
    288 F.R.D. 469 (S.D. Cal. 2012) ..................................................................29

*Soto v. City of Concord*,
    162 F.R.D. 603 (N.D. Cal. 1995) ..................................................................28

*Spence v. Kaur*,
    No. 2:16-cv-1828 TLN KJN P, 2019 U.S. Dist. LEXIS 138462 (E.D. Cal. Aug.
    14, 2019)..........................................................................................................44

*Stein v. Tri-City Healthcare Dist.*,
    2014 WL 12695385 (S.D. Cal. Dec. 5, 2014) ........................................54

*Stryker Corp. v. Ridgeway*,
    2015 U.S. Dist. LEXIS 93741 (W.D. Mich. July 20, 2015)..............................44

*Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*,
    No. C15-0543RSL, 2016 WL 2610247, 3 (W.D. Wash. May 6, 2016)................31

*telSPACE, LLC v. Coast to Coast Cellular, Inc.*,
  No. 2:13-CV-01477 RSM, 2014 WL 4364851 (W.D. Wash. Sept. 3, 2014)..........................31

*United States v. O'Malley*,
  786 F.2d 786 (7th Cir. 1986) ....................................................................................................53

*United States v. Peery*,
  No. 2:18-cv-01074 JAM AC, 2018 U.S. Dist. LEXIS 159440 (E.D. Cal. Sept. 17,
  2018)..............................................................................................................................36, 84

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
  250 F.R.D. 251 (D. Md. 2008) .................................................................................................48

*Weldon v. Dyer*,
  Case No. 1:13-CV-00540-LJO, 2015 WL 1012371 (E.D. Cal. Mar. 6, 2015)............28, 29, 31

**Federal Rules**

Fed. R. Civ. P. 7.................................................................................................................................53

Fed. R. Civ. P. 12...............................................................................................................................12

Fed. R. Civ. P. 26....................................................................................................................*passim*

Fed. R. Civ. P. 33.........................................................................................................33, 86, 87, 89

Fed. R. Civ. P. 34.................................................................................................................33, 49, 81

**Local Rules**

E.D. Cal. L.R. 251 .......................................................................................................................1, 9, 11

**Other Authorities**

FTC, *Report on the Federal Trade Commission Workshop on Slotting Allowances
  and Other Marketing Practices in the Grocery Industry*, 7 (2001)........................................29

**Joint Statement re Discovery Disagreement**

<u>**JOINT STATEMENT REGARDING DISCOVERY DISAGREEMENT**</u>

On November 20, 2019, Plaintiffs Sharidan Stiles and Stiles 4U (collectively "Stiles" or "Plaintiffs") filed a Motion to Compel Defendant Walmart, Inc. ("Walmart") to provide further discovery responses (the "Motion"). (ECF No. 279.)  Pursuant to Local Rule 251, Stiles and Walmart submit this Joint Statement of Discovery Disputes regarding the Motion.

## I.    DETAILS OF THE CONFERENCE

### A.    Discovery Requests at Issue

#### 1.    Interrogatories

On January 8, 2019, Stiles' prior counsel, Jamie Miller of the Alioto Law Firm, served Walmart with 15 interrogatories. (*See, e.g.*, Declaration of Andrew Williamson ("Williamson Decl.") and Ex. 1 (Stiles' Interrogatories to Walmart).) Walmart responded on February 7, 2019, and it supplemented its responses on April 15, 2019. (Ex. 2 (Walmart's Responses to Stiles' Interrogatories); Ex. 3 (Walmart's Supplemental Responses to Stiles' Interrogatories).)

#### 2.    Requests for Production of Documents

Stiles' prior counsel served Walmart with Stiles' First Request for Production of Documents on August 17, 2018. (Ex. 4 (Stiles' Requests for Production of Documents).) On August 26, 2018, Stiles served Walmart with its Amended First Request for Production of Documents ("Requests"). (Ex. 5 (Stiles' Amended Requests for Production of Documents).)

After the Court entered a Protective Order (ECF No. 178), Walmart produced its First Amended Responses to Stiles Requests on December 7, 2018. (Ex. 6 (Walmart's Supplemental Responses to Stiles' First Amend Requests).) Walmart later produced eleven volumes of documents over the period of December 2018 to November 15, 2019. (Williamson Decl. ¶ 8.)

#### 3.    Stiles' Change of Counsel

Stiles replaced her counsel with the undersigned counsel on May 21, 2019. (ECF Nos. 215, 216.) Stiles' present counsel began to review the produced discovery and initiated the following conferences to address discovery disputes in this matter.

### B.    Plaintiffs' Description of Meet and Confer Process

#### 1.    First Meet and Confer

On June 17, 2019, Stiles' counsel emailed Walmart's counsel regarding Walmart's withholding certain documents based on a claim that they were "BUSINESS CONFIDENTIAL." (Ex. 7 (June 17–28, 2019 emails re Walmart's redactions).) Through a series of more than eight email exchanges, Stiles' counsel explained that Walmart's withholding these documents was improper and not authorized by the Court's protective order. (*Id.*)

In response, Walmart claimed that the designation was agreed upon with prior counsel. (Ex. 7 (June 17–28, 2019 emails re Walmart's redactions) at 2–3.) Stiles' counsel pressed Walmart for evidence of this alleged agreement. Yet Walmart did not produce any correspondence documenting this agreement; instead it produced emails showing only prior counsel's frustration with Walmart's discovery deficiencies and no agreement as to the withholding or redaction of documents. (*Id.* at 1–2; *see also* Ex. 8 (Feb. 27, 2019 email re Walmart – Excel Files); Ex.9 (Mar. 8, 2019 email re Walmart – Excel Spreadsheets and Redactions).) The parties discussed the matter during a conference call on July 1, 2019. The following excerpt of the Stipulated Order re: Discovery of Electrically Stored Information ("ESI") was specifically at issue:

> The parties may redact (1) information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (2) information subject to non-disclosure obligations imposed by governmental authorities, law or regulation (e.g., protected personal information); (3) sensitive, non-relevant information, including but not limited to personally identifiable information, trade secrets, or information not related to the products alleged in the operative complaint of this action. The parties will produce redacted documents in TIFF format with corresponding searchable OCR text and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure.

(ECF No. 184 at 3:15–3:22). The parties disagreed as to whether this provision permitted Walmart's redactions and/or withholding of documents, including documents labeled "BUSINESS CONFIDENTIAL – WITHHOLD," and others marked "Redacted" with no further explanation.

Stiles' counsel agreed to produce a representative list and description of Walmart's improperly withheld documents and redactions. (Ex. 10 (July 1, 2019 email re Stiles' Document Production).)

1  Stiles' counsel identified the specific categories of documents that were improperly withheld or re-

2  dacted, which included:

3   • *Prima facie* responsive documents from custodians that were entirely withheld as
4     "BUSINESS CONFIDENTIAL – WITHHOLD" with no explanation, such as WM-
      STILES-0004358 – 0004369;

5   • Plainly responsive spreadsheets that were natively redacted without justification; and

6   • Plainly relevant attachments withheld in their entirety without justification, such as

7  ████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████████ Walmart's counsel responded

12 that it would produce redacted copies of withheld documents under the "BUSINESS CONFIDEN-

13 TIAL – WITHHELD" designation in a future. (Ex. 12 (July 5, 2019 email from Walmart); Ex. 13

14 (Aug. 14, 2019 Walmart letter enclosing Vol. 10).)

15     Walmart produced heavily redacted copies of these withheld documents in its Volume 10 doc-

16 ument production. This did not resolve the dispute because Stiles' counsel contends that the redac-

17 tions—in their entirety—are improper, and this led to further conferences.

## 2.     Second Meet and Confer

18     On August 15, 2019, Stiles' counsel emailed Walmart's counsel a letter regarding Walmart's

19

20 privilege log—specifically, the attorney-client privilege redactions in its Volume 4 document produc-

21 tion. ███████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████████

24 ██████████ Stiles' position was that when Walmart employee Esther Gifford filed a declaration in this

25 case describing Walmart's category advisor program and stating that "Walmart does not tolerate price

26 fixing or other anticompetitive or illegal conduct among its suppliers," and the general deficiency of

27 documents produced regarding Walmart's category advisor program, Walmart had waived the

28

1   attorney-client privilege at least as to the subject matter of Gifford's declaration. (Ex. 15 (Aug. 15,

2   2019 Stiles' letter re document production deficiencies); Ex. 16 (Walmart's Privilege Log); ECF No.

3   254-4 at 4:18–19.) Stiles' counsel also asked Walmart's counsel to confirm that it had produced all of

4   Ms. Gifford's documents concerning Walmart's category advisor program. (Ex. 15 (Aug. 15, 2019

5   Stiles' letter re document production deficiencies).)

6        The parties held a meet and confer call on August 26, 2019, and they were unable to reach an

7   agreement on these issues. Walmart subsequently reiterated its position that Ms. Gifford did not waive

8   the attorney-client privilege via her declaration and that the category advisor program is not relevant

9   to the claims in this case. (Ex. 17 (Aug. 26, 2019 Walmart's meet and confer response letter).) As to

10  Stiles' counsel's request to confirm that the "category advisor program" documents have been pro-

11  duced, Walmart responded, "Walmart disagrees that its 'category advisor program' in whole is relevant

12  to the operative claims in this case. Further, no request for production served by Stiles would call for

13  the production of such documents (absent some connection to Stiles' products) and, if one did, it would

14  be clearly overbroad given the allegations in the Fourth Amended Complaint." (*Id.*)

15              **3.    Third Meet and Confer**

16        On September 3, 2019, Stiles' counsel emailed Walmart's counsel a letter addressing concerns

17  about improper redactions, spreadsheets without parent emails, and missing metadata in Walmart's

18  Volume 10 document production. (Ex. 18 (Sep. 3, 2019 Stiles' letter re Volume 10 production defi-

19  ciencies).) In pertinent part, Walmart responded that "[t]he ESI Protocol allows the parties to redact

20  produced documents to remove certain types of irrelevant information," the assertion that family mem-

21  ber documents must have been transmitted from an outside source was "unfounded," and that there

22  would be a significant burden associated with tracking down the metadata but offering to discuss a

23  resolution. (Ex. 19 (Sep. 9, 2019 Walmart's meet and confer response letter).)

24        On September 10, 2019, the parties held a meet and confer call regarding the search terms and

25  custodians used for Walmart's document productions. The parties (again) disagreed over the existence

26  of an agreement with Stiles' prior counsel regarding the search terms and custodians to be used.

27  Walmart maintained that its redactions were proper, and that Walmart had produced responsive

28

1   documents found in its search. Nevertheless, Walmart agreed to produce the search terms and custo-

2   dians that they used to conduct a search. On September 13, 2019, Walmart's counsel emailed the list

3   of the search terms and custodians that it used. (Ex. 20 (Sep. 13, 2019 Walmart's email re Stiles –

4   custodians and search terms).)

5                            **4.       Fourth Meet and Confer**

6          On October 2, 2019, Stiles' counsel sent a letter that:

7      •       contested the existence of an agreement with prior counsel over search terms and cus-
                todians;
8
9      •       raising two deficiencies in Walmart's productions of the Volume 10 spreadsheets (im-
                proper redactions and producing as orphan files); and

10     •       raising deficiencies in Walmart's interrogatory responses.

11  (Ex. 21 (Stiles' letter re document production deficiencies).)

12         On October 8, 2019, the parties held a meet and confer call discussing the issues raised in this

13  letter. Among other things:

14     •       Stiles' counsel agreed to produce a list of additional search terms and custodians who
                Stiles believed should have been included in Walmart's search;
15
16     •       Walmart's counsel agreed to confer with Walmart regarding its willingness to repro-
                duce unredacted versions of some redacted documents from Walmart's Volume 10
17              document production; and

18     •       The parties discussed at length (i) Walmart's production of the orphan Volume 10
                spreadsheets, (ii) why Walmart did not produce emails associated with the spread-
19              sheets, and (iii) whether Walmart's failure to produce any associated emails showed
                that Walmart's search was deficient and needed to be expanded. The parties did not
20              reach any agreement on any of these topics.

21  (Ex. 22 (Stiles' email re recap of meet and confer).) Despite agreeing to certain points on the call,

22  including supplementing interrogatory responses, Walmart's counsel once again backed away from

23  those agreements when responding to Stiles' counsel's email recapping the meet and confer call—

24  further hampering efforts to meet and confer. (*Compare* Ex. 22 (confirming Walmart's agreement to

25  supplement its interrogatory responses) *with* Ex. 23 (Oct. 23, 2019 Walmart's response email re recap

26  of meet and confer) (rejecting the statement that it agreed to do anything to correct its discovery defi-

27  ciencies).)

28

### 5.      Fifth Meet and Confer

On October 15, 2019, Stiles' counsel emailed Walmart's counsel the list of additional search terms and custodians that Walmart should have searched in responding to the requests for production. (Ex. 24 (Oct. 11–15, 2019 email thread re Stiles' proposed search terms and custodians).) The proposed search terms comprised four categories of information: numerical identifiers for the Stiles Razor; numerical identifiers for defendant American International Industries' ("AI") razors; key physical characteristics of Stiles Razor; and Walmart's category advisor program and sharing of information with Stiles' competitors. (*Id.*) Walmart's counsel responded by letter, disputing the relevance of Stiles' proposed search terms and custodians. (Ex. 25 (Oct. 17, 2019 Walmart's letter re proposed search terms and custodians).)

The parties then held a meet and confer call to discuss the search terms. Walmart opposed expanding the search of documents with additional search terms and custodians, maintaining that the search terms and custodians were agreed upon with prior counsel. (Ex. 26 (Oct. 25, 2019 Walmart's email re proposed search terms).) Although Walmart indicated that it was open to searching for certain numerical identifiers relating to the Stiles Razor, it conditioned that search upon Stiles withdrawing her demand for Walmart to search the other terms and custodians. (Ex. 27 (Oct. 29, 2019 Walmart's email re proposed search terms).) Walmart's ultimatum—demanding that Stiles forego substantial relevant discovery in exchange for Walmart searching one narrow category of information requested—was untenable, and the parties reached impasse. Stiles then formally advised Walmart of its forthcoming Motion to Compel, and the parties coordinated on the preparation of this Joint Statement to accompany the Motion. (Ex. 28 (Nov. 5–7, 2019 emails re present Motion).)

### C.      Defendants' Description of Meet and Confer Process

#### 1.      Meet and Confer Regarding the Discovery Disputes Identified by Plaintiffs

##### a.      Plaintiffs' Request to Alter the Parties Agreement on Custodians and Search Terms (Plaintiffs Disputes One and Two).

The parties agreed to a process by which Walmart would produce documents through extensive discussions between counsel from December 2018 through May 2019.  Walmart's initial proposal

1   included 11 custodians and 58 search terms.  *See*, *e.g.*, Williamson Decl., Ex. 45 (Email from S.

2   Mentzer to J. Miller, January 25, 2019); Declaration of Stefan Mentzer ("Mentzer Decl."), Ex. 1 at 8-

3   9 (Email from S. Mentzer to J. Miller, December 12, 2018); Ex. 5 at 4-6 (Email from S. Mentzer to J.

4   Miller, January 25, 2019).  Plaintiffs requested to add four custodians in addition to Walmart's initial

5   proposal: two of these were not Walmart employees, Walmart agreed to add one as a custodian, and

6   the parties reached a compromise on the fourth to search the individual's name as a search term.  *See*

7   Mentzer Decl., ¶¶ 5-9.  Walmart agreed to run three additional search terms at plaintiffs' request, and

8   offered three more search terms to reflect persons who could not be Walmart custodians.  *Compare*

9   Williamson Decl., Ex. 45 *with* Williamson Decl., Ex. 20.  Ultimately, the parties' negotiations resulted

10  in an agreement on 12 Walmart custodians, the time period, and 64 search terms for each.  Williamson

11  Decl., Ex. 20.  Walmart thereafter engaged in a rolling production of ten volumes to date.

12          At the request of plaintiffs' new counsel, Walmart provided plaintiffs with the agreed custodi-

13  ans and search terms on September 13, 2019.  Williamson Decl., Ex. 20 (Email from H. Kiernan to D.

14  Terzian, September 13, 2019).  Plaintiffs responded more than a month later on October 15, 2019, with

15  a demand that Walmart run 84 new search terms on 59 additional custodians.  Williamson Decl., Ex.

16  24 (Email from E. Kuylman to H. Kiernan, October 15, 2019).

17          Walmart informed plaintiffs that their request was overly burdensome and not proportional to

18  the needs of the case, and asked plaintiffs to provide the basis in the operative Fourth Amended Com-

19  plaint and the existing RFPs for plaintiffs' proposed 59 new custodians.  Williamson Decl., Ex. 25

20  (Letter from J. Ostrander to E. Kuylman, October 17, 2019).  The parties conducted a telephonic meet

21  and confer on October 23 to discuss plaintiffs' proposal, during which Walmart again requested that

22  plaintiffs identify any deficient elements of Walmart's production, a request Walmart reiterated in

23  writing.  *See*, *e.g.*, Williamson Decl., Ex. 25 (Letter from J. Ostrander to E. Kuylman, October 17,

24  2019); Williamson Decl., Ex. 26 at 1 (Email from J. Ostrander to A. Williamson, October 25, 2019);

25  Williamson Decl., Ex. 27 at 1-2 (Email from J. Ostrander to A. Williamson, October 28, 2019) ("We

26  ask again that the Plaintiffs reconsider their overbroad and disproportionate request and provide some

27  specific basis for the purported insufficiency of Walmart's document production …..").  Plaintiffs never

28

1   provided the information Walmart requested.  Instead, plaintiffs responded in writing on November 3

2   that they considered the parties at an impasse, but when asked they declined to provide the precise

3   scope of the dispute or the relief plaintiffs planned to seek from the Court.  Williamson Decl., Ex. 28

4   at 7 (Email from J. Ostrander to B. Dunne, November 6, 2019) ("We understand Plaintiffs refuse to

5   tell us what discovery requests are at issue …."), Ex. 28 at 5-6 (Email from B. Dunne to J. Ostrander,

6   November 6, 2019) ("Your 'understanding' is wrong, and we specifically reject it. Andrew's email

7   expressly said—and I'll requote it so you don't need to read down, although it's in this very thread:

8   'We are plainly at an impasse on the discovery issues covered in our August 14th, August 15th, Sep-

9   tember 3rd, October 2nd, and October 15 letters; and our August 26th, September 10th, October 8th,

10  and October 23rd meet and confer phone calls.'")

11      Plaintiffs did not provide to Walmart their proposal regarding new custodians and search terms

12  included in plaintiffs' Appendix A—seeking 12 custodians, and 54 search terms, some of which they

13  altered from their previously presented list to Walmart—until November 24, 2019 in connection with

14  the drafting of this joint statement.  Ostrander Decl., Ex. 1 at 6 (Email from B. Dunne to J. Ostrander,

15  November 24, 2019).  The parties have not met and conferred regarding plaintiffs' revised proposal

16  prior to the filing of this joint statement.

17      Plaintiffs' repeated refusal to provide an explanation for the relevance of its proposed new

18  custodians and search terms created the parties' present impasse.  Due to plaintiffs' tardiness in raising

19  these issues, the substantial burden on Walmart of essentially restarting discovery more than five years

20  after the filing of the initial complaint would not be proportional to the needs of the case.

21                  **b.      Relevance Redactions in Walmart's Productions (Plaintiffs' Third**

22                          **Dispute)**

23      Walmart does not believe a dispute exists on this issue.  On November 7, 2019, Walmart in-

24  formed plaintiffs that it agreed to produce unredacted versions of all such documents.  Williamson

25  Decl., Ex. 28 at 5 (Email from J. Ostrander to B. Dunne, November 7, 2019).  Plaintiffs' counsel

26  informed Walmart that "As soon as you produce unredacted versions of ANY previously-redacted

27  documents, I promise to PERSONALLY look at them ASAP and narrow the scope of our motion as

28

1    appropriate."  Williamson Decl,. Ex. 28 at 4 (Email from B. Dunne to Ostrander, November 7, 2019)

2    (emphasis in original).  Walmart has since produced all such documents in unredacted form, and in-

3    formed Plaintiffs on December 2, 2019 that it does not consider this issue to be in dispute.  Ostrander

4    Decl., Ex 1 at 1.

5              c.      **Privilege Redactions in Walmart's Production (Plaintiffs Third**

6                      **Dispute)**

7              Plaintiffs sent a single meet and confer letter regarding a claimed waiver of the attorney client

8    privilege, to which Walmart responded rejecting any such claim.  Williamson Decl., Exs. 15, 17.  At

9    no point did plaintiffs indicate what communications they believed to be subject to the waiver, and

10   indeed, plaintiffs' notice of motion failed to include any request for relief as to this purported dispute.

11   ECF No. 279.

12             d.      **Walmart's Objections to Certain RFPs (Plaintiffs' Fourth Dis-**

13                     **pute)**

14             Plaintiffs raise for the first time here 33 separate RFPs for which they claim Walmart's re-

15   sponse was deficient.  Plaintiffs completely failed to raise these RFPs, or the objections about which

16   they now complain, in any of the parties' numerous meet and confers, and the Court can deny their

17   motion on that basis alone under Local Rule 251.  L.R. 251(b) (requiring the parties meet and confer

18   in a "good faith effort to resolve the differences that are the subject of the motion").  In particular,

19   plaintiffs have never (1) requested that Walmart amend its responses to confirm whether it was with-

20   holding documents on the basis of its objections to the RFPs or (2) provided the list of RFP responses

21   identified by plaintiffs in their "Fourth Dispute" as insufficient.

22             Despite Walmart's repeated requests, plaintiffs failed to provide a list of the discovery requests

23   to which plaintiffs believe Walmart's responses are deficient in order to allow the parties to negotiate

24   an appropriate response.  *See, e.g.*, Williamson Decl., Ex. 27 at 1-2 (Email from J. Ostrander to A.

25   Williamson, October 25, 2019; email from J. Ostrander to A. Williamson, October 28, 2019), Ex. 28

26   at (Email from J. Ostrander to A. Williamson, November 5, 2019), Ex. 23 at 1 (Email from J. Ostrander

27   to E Kuylman, October 8, 2019).  Each time Walmart requested the list, plaintiffs stated either that

28

9

**Joint Statement re Discovery Disagreement**

1   they would provide Walmart with the numbers and did not or declined to provide a list of the RFPs at

2   issue.  Indeed, as described above, when asked to state what discovery responses would be the subject

3   of this motion, plaintiffs simply pointed back to their correspondence, which at no point raised any of

4   the 33 RFPs about which plaintiffs now complain.  Williamson Decl. Ex. 28 at 5-8; *cf.* Williamson

5   Decl., Exs. 15, 18, 21, 24 (Letters sent from plaintiff to J. Ostrander on August 15, September 3,

6   October 2, and October 15, 2019).

7         **e.    Supplementing Interrogatory Responses (Plaintiffs Fifth, Sixth**

8             **and Seventh Disputes)**

9         Plaintiffs first requested that Walmart update and amend its interrogatory responses by letter

10  dated October 21, 2019.  Williamson Decl., Ex. 21 at 7-9.  In a meet and confer on October 8, 2019,

11  counsel for Walmart stated that Walmart planned to send a deficiency letter to plaintiffs regarding their

12  interrogatory responses, and that after receiving that letter counsel should consider a mutually agree-

13  able date for serving amended interrogatory responses given the approaching close of fact discovery.

14  Williamson Decl. Ex 23 at 1 (Email from J. Ostrander to E. Kuylman, et al., October 8, 2019).  Walmart

15  provided plaintiffs with the deficiency letter regarding plaintiffs' interrogatory responses on October

16  11, 2019.  Ostrander Decl. Ex. 2.  Plaintiffs did not respond to Walmart' offer for an exchange of

17  interrogatory responses.  Instead, plaintiffs stated in November 15 correspondence that they could

18  provide amended interrogatory responses by December 13.  Ostrander Decl., Ex. 3. (Letter from A.

19  Williamson to J. Ostrander, November 22, titled November 19, 2019 Meet and Confer Concerning

20  Plaintiffs' Responses to Requests for Production of Documents and Interrogatories).

21        Walmart is similarly willing to serve verified, amended interrogatory responses on or before

22  December 13 that will address the issues raised in the instant motion with respect to the Fifth, Sixth,

23  and Seventh disputes described in this motion.  On December 2, 2019, Walmart informed plaintiffs of

24  this compromise, and plaintiffs declined to remove this dispute from the Joint Statement.  Ostrander

25  Decl. Ex. 1 at 1.

26

27

28

### 2.     Plaintiffs' Tactics With Respect to This Motion

Pursuant to Local Rule 251, which requires all interested parties "to assist in the preparation of this Joint Statement," the parties agreed to a schedule for the exchange of drafts.  In consideration of the Thanksgiving holiday, the parties agreed that plaintiffs would provide their draft portion of the joint statement to Walmart on November 22, 2019, and Walmart would then provide its portion of the joint statement to Plaintiffs by noon on December 3, 2019.  Ostrander Decl., Ex. 1 at 8-9 (Email from B. Dunne to J. Ostrander on November 13, 2019).

Plaintiffs failed to abide by this agreement and failed to provide a draft of the joint statement, or any of the supporting papers by November 22.  Ostrander Decl., Ex. 1 at 6-7 (Email from J. Ostrander to B. Dunne, November 23, 2019).  Only after Walmart reminded plaintiffs of the agreed upon schedule did they provide a draft joint statement to Walmart, seven hours later at 10:07 p.m. on Saturday, November 23, 2019.  Ostrander Decl., Ex. 1 at 6 (Email from B. Dunne to J. Ostrander, November 23, 2019).  After reviewing the draft joint statement, Walmart noted that plaintiffs' counsel did not include multiple items cited in the draft joint statement: plaintiffs' Appendix A, the referenced declaration of Andrew Williamson, or copies of any of the referenced exhibits.  Plaintiffs' delay forced Walmart to request in a piecemeal fashion all documents relied upon in plaintiffs' portions of this statement.  *See* Ostrander Decl., Ex. 1 at 2-6 (Email chain between B. Dunne to J. Ostrander, from November 24, 2019 to November 26, 2019).  Walmart finally received all necessary documents on November 26, 2019, at 11:43 P.M. Ostrander Decl., Ex. 1 at 2 (Email from D. Terzian to J. Ostrander, November 26, 2019).

## II.     NATURE OF THE ACTION AND FACTUAL DISPUTES

### A.     Nature of the Action

#### 1.     Plaintiffs' Description

This is an antitrust, patent infringement, and unfair competition case. The operative complaint in this matter, the Fourth Amended Complaint in this action was filed July 8, 2018, and pleads, among others claims, Sherman Act section 1 antitrust claims, California Cartwright Act antitrust claims, Lanham Act claims, and federal patent infringement claims against Walmart and its codefendant AI. At

1   some point prior to trial, Plaintiffs will seek to conform the operative pleading to the facts learned

2   through discovery.

3        This action was commenced in late 2014, when plaintiff Sharidan Stiles filed a *pro se* Com-

4   plaint against Walmart and its supplier American International Industries ("AI") in this Court. Walmart

5   responded to the *pro se* Complaint by moving to dismiss it under Rule 12—and by refusing to work

6   with Plaintiff to move forward other aspects of the case, most notably discovery. When Stiles was

7   granted leave to file a First Amended Complaint, Walmart doubled down on its same strategy: it filed

8   another Rule 12(b)(6) motion against the new complaint, and again took the position that discovery

9   should not commence while the motion was pending.

10       The above cycle repeated itself again—and again—at the outset of this case. As a result, by

11  June 2018, Walmart had moved to dismiss four successive Complaints in this action for failure to plead

12  supporting facts, and yet simultaneously had managed to keep a ***single*** party discovery request from

13  having been served in an active federal case that was approaching its fourth anniversary on this Court's

14  docket.

15       Stiles is the inventor and manufacturer of the Stiles Razor, a narrow-width-blade razor used

16  for detailed shaving applications. (Fourth Amended Complaint, ECF No. 142.) The Stiles Razor is

17  protected by several patents. (*Id.* ¶¶ 18–20.) In 2003, Stiles began courting Walmart as a potential

18  buyer of the Stiles Razor. (*Id.* at ¶ 22.) Ultimately, Walmart agreed to a test run of the product. (*Id.*

19  ¶ 24.) That test run was successful, and Walmart placed the Stiles Razor into about 2,000 Walmart

20  stores. (*Id.* ¶ 27.) The Stiles Razor's product performance was outstanding. (*Id.* ¶¶ 27–29.)

21       Walmart employs a category advisor program. These category advisors collected real-time and

22  historical market information for every product stocked at Walmart in their designated category—

23  meaning, the position provided each Category Advisor with a bird's-eye view of prices and sales on a

24  store-by-store basis, as well as each supplier's costs. These suppliers were almost always the Category

25  Advisors' direct competitors. Beauty Category Advisor PWC, for example, routinely compiled histor-

26  ical sales information for itself and each of its competitors, including sales and quantity information

27  by product and competitor. ████████████████████████████████████████

28



1
2
3
4
5     Defendants Walmart and AI and Stiles' competitors, such as Coty Inc., Pacific World Corpo-
6 ration ("PWC"), and Procter & Gamble Co., exercised their market power to eliminate Stiles from the
7 disposable personal styling razor market and to fix prices. (ECF No. 142 ¶ 109.)
8
9
10
11
12
13     This knock-off product infringed the pa-
14 tents on the Stiles Razor. (ECF No. 142 ¶¶ 62–64.)
15     As relevant to the instant motion, the Court has already determined that antitrust claims are
16 plausible—and therefore are a proper subject of discovery. (ECF No. 188 at 7–8 (denying Walmart's
17 motion to dismiss and stating that "Plaintiff has alleged enough facts to state viable antitrust claims).)

18     **2.    Defendants' Description of the Operative Claims**

19     Plaintiffs' antitrust claims continue to change theories each time they amend their complaint
20 and, even now, plaintiffs continue to try to change their theory of the case.  Plaintiffs argue that de-
21 fendants Walmart and AI "refused to move the case forward" by moving to dismiss plaintiffs' deficient
22 complaints, while leaving out that the Court three times dismissed plaintiffs' antitrust claims because
23 they failed to state a claim.  *See* ECF No. 45 (adopting report and recommendation and dismissing
24 first amended complaint with leave to amend), 101 (dismissing all antitrust claims in plaintiffs' second
25 amended complaint without leave to amend); 141 (granting motion to strike dismissed antitrust claims
26 that plaintiffs included in third amended complaint).  The Court did not allow any version of plaintiffs'
27
28

1   antitrust claims to proceed until March 2019 (five months after discovery began, despite plaintiffs'

2   protests that motion practice stopped all discovery).  *See* ECF No. 188.[1]

3        Further, plaintiffs omit any mention of the most relevant Court Order to this discovery motion.

4   Namely, plaintiffs' latest theory, alleged at the end of June 2019—nearly five years since the filing of

5   their original complaint—when plaintiffs again sought leave to amend their complaint.  ECF No. 233.

6   Their motion sought to add an entirely new theory of "price fixing" against three new defendants—

7   Proctor & Gamble ("P&G"), Pacific World Corporation ("PWC"), and Coty, Inc. ("Coty"), the same

8   category advisors that are the focus of the present requests for additional discovery.  ECF No. 233.

9   Plaintiffs declined to include an actual amended complaint with their filing, thus not allowing Walmart

10   or the Court the opportunity to understand the true scope of their proposed new claims.  The Court

11   denied the motion because plaintiffs failed to show good cause to amend or diligence in seeking

12   amendment.  ECF No. 278.

13        The Court ordered discovery to begin in August 2018, and the fact discovery cutoff of January

14   10, 2020.  From the beginning of discovery, the parties proceeded on the basis of the operative Fourth

15   Amended Complaint ("FAC"), a complaint that challenges an alleged agreement between the only two

16   defendants in this case — Walmart and AI.  Indeed, the Court has characterized the agreement in the

17   FAC as a bilateral arrangement:

18

19        Plaintiff's allegations suggest a three-part agreement amongst Defendants: first, De-
          fendants agreed that AI would produce a knockoff Stiles Razor for sale under the Salon
20        Perfect brand; second, Walmart would in turn sell AI's Ardell branded razor; and fi-
          nally, once the Salon Perfect razor was produced, Defendants would split the market
21        with the Salon Perfect razor being sold at Walmart, and the Ardell at other retailers.

22   ECF No. 188.

23        Plaintiffs' tardy request to add a broad range of discovery on "category advisors" at this late

24   stage seeks discovery on the proposed new claims rejected by the Court.  Indeed, this motion cites

25   many such communications.

26

---

27   [1] The Court's Order on Walmart's motion to dismiss the Fourth Amended Complaint remains subject
     to a motion for reconsideration (ECF No. 193) that is fully briefed and submitted to the Court.
28

**B.      Issues to be Determined at the Hearing**

The following discovery issues will need to be determined at the hearing:

1.   Whether Walmart's document search and production was deficient, and whether Walmart should be ordered to produce the following general categories of documents:

     a.   Documents regarding Walmart's category advisor program and

     b.   Document relating to the Stiles Razor or AI's infringing knockoff;

2.   Whether Walmart's withholding responsive documents based on an alleged agreement was deficient, and whether Walmart should be ordered to produce the documents withheld on the basis of that agreement;

3.   Whether Walmart improperly redacted documents on the basis of relevancy and business confidentiality, and whether Walmart would be ordered to produce those documents unredacted;

     a.   Walmart does not believe there is a dispute as to this issue.

4.   Whether Walmart should be ordered to revise its responses to the Requests for Production to state whether it is withholding documents on the basis of any objections;

5.   Whether Walmart's responses to Interrogatory No. 4 is deficient because it does not identify any documents, custodians, production sets, or how to find the requested information;

     a.   Walmart does not believe there is a dispute as to this issue.

6.   Whether Walmart's responses to Interrogatory No. 5 is deficient because it does not identify any documents, custodians, production sets, or how to find the requested information; and

     a.   Walmart does not believe there is a dispute as to this issue.

7.   Whether Walmart's responses to Interrogatory Nos. 7–11 and 13–15 are deficient because they are stale, in violation of Walmart's duty to supplement its responses with current information.

     a.   Walmart does not believe there is a dispute as to this issue.

# III.   THE CONTENTIONS OF EACH PARTY

**A.      First Dispute: Walmart's Deficient Document Production**

    **1.      Stiles' Requests for Production and Walmart's Responses**

<u>Stiles' RFP No. 4</u>

Documents that refer or relate to the Plaintiffs or any of Stiles' products, including the Stiles' Razor, from January 1, 2007, to the date you respond to this request.

1

<u>Walmart's Response to RFP No. 4</u>

2
3
4
5
6
7
8
9
10
11

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "refer or relate to," "Stiles' products," and "Stiles' Razor" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments that refer or relate to the Plaintiffs or any of Stiles' products, including the Stiles' Razor" regardless of relevance to the claims and defenses in this case.  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.

12
13
14

Subject to and without waiving its objections, Walmart responds as follows:  Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present.  Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

15

<u>Stiles' RFP No. 7</u>

16
17

Documents that refer or relate to the Salon Perfect Micro Razor from January 1, 2007 to the date you respond to this request.

18

<u>Walmart's Response to RFP No.7</u>

19
20
21
22
23
24
25
26
27

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "refer or relate to" and "Salon Perfect Micro Razor" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments that refer or relate to the Salon Perfect Micro Razor" regardless of relevance to the claims and defenses in this case.  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons or entities other than Walmart.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other

28

**Joint Statement re Discovery Disagreement**

applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its over-breadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

<u>Stiles' RFP No. 8</u>

Documents referring or related to the conception, research, design, development and commercialization of the Salon Perfect Micro Razor, including development meeting notes or correspondence, status reports, committee meeting minutes, testing reports, simulations, developers' notes and notebooks, project schedules, meeting presentations, algorithms, schematics, screen shots, drawings, prototypes, samples and specifications.

<u>Walmart's Response to RFP No.8</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or related to," "conception," "research," "design," "development," "commercialization," and "Salon Perfect Micro Razor" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring or related to the conception, research, design, development and commercialization of the Salon Perfect Micro Razor" regardless of relevance to the claims and defenses in this case. Walmart objects to this Request to the extent that it seeks the creation of documents or information that does not exist or is not normally kept in the ordinary course of business. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its over-breadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

**Joint Statement re Discovery Disagreement**

Stiles' RFP No. 10

Documents sufficient to show sales of the Salon Perfect Micro Razor, including but not limited to reports of gross sales in units and revenue, product price, profit-and-loss analysis, cost of goods sold, and forecasts and projections, and pricing policies and strategy from January 1, 2007 to the date you respond to this request.

Walmart's Response to RFP No. 10

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "sales," "reports of gross sales in units and revenue," "product prices," profit-and-loss analysis," "cost of goods," "forecasts and projections," "pricing policies," "strategy," and "Salon Perfect Micro Razor" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments sufficient to show sales of the Salon Perfect Micro Razor" regardless of relevance to the claims and defenses in this case. Walmart objects to this Request to the extent that it seeks the creation of documents or information that does not exist or is no normally kept in the ordinary course of business. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for sales information concerning "Salon Perfect Micro Razor," which is specifically identified as the allegedly infringing product in paragraph 62 of the Complaint from six (6) years prior to the filing of the present case to the filing date. Walmart will not produce any document and/or ESI until a protective order is entered in this case.

Walmart's First Supplemental Response to RFP No. 10

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will produce the sales information concerning "Salon Perfect Micro Razor" (UPC 7846247617), which is specifically identified as the allegedly infringing product in paragraph 62 of the Complaint from six (6) years prior to the filing of the present case to the filing date.

Stiles' RFP No. 12

Documents that refer or relate to the Salon Precision Shaper and/or the Ardell Razor from January 1, 2007, to the date you respond to this request.

Walmart's Response to RFP No.12

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "refer or relate to," "Salon Perfect Precision Shaper," and "Ardell Razor" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments that refer or relate to the Salon Perfect Precision Shaper and/or the Ardell Razor" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

Stiles' RFP No. 13

Documents referring or relating to the conception, research, design, development and commercialization of the Salon Perfect Precision Shaper, including development meeting notes or correspondence, status reports, committee meeting minutes, testing reports, simulations, developers' notes and notebooks, project schedules, meeting presentations, algorithms, schematics, screen shots, drawings, prototypes, samples and specifications.

Walmart's Response to RFP No.13

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or relating to," "conception," "research," "design," "development," "commercialization," and "Salon Perfect Precision Shaper" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to

19
**Joint Statement re Discovery Disagreement**

the needs of this case, as it seeks "[d]ocuments referring or related to the conception, research, design, development and commercialization of the Salon Perfect Precision Shaper" regardless of relevance to the claims and defenses in this case.  Walmart objects to this Request to the extent that it seeks the creation of documents or information that does not exist or is not normally kept in the ordinary course of business. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

<u>Stiles' RFP No. 15</u>

Documents sufficient to show sales of the Salon Perfect Precision Shaper, including but not limited to reports of gross sales in units and revenue, product price, profit-and-loss analysis, cost of goods sold, and forecasts and projections, and pricing policies and strategy from January 1, 2007 to the date you respond to this request.

<u>Walmart's Response to RFP No. 15</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "sales," "reports of gross sales in units and revenue," "product prices," profit-and-loss analysis," "cost of goods," "forecasts and projections," "pricing policies," "strategy," and "Salon Perfect Micro Razor" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments sufficient to show sales of the Salon Perfect Precision Shaper" regardless of relevance to the claims and defenses in this case.  Walmart objects to this Request to the extent that it seeks the creation of documents or information that does not exist or is no normally kept in the ordinary course of business. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's

possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for sales information concerning "Salon Perfect Precision Shaper," which is specifically identified as the allegedly infringing product in paragraphs 51 and 63 of the Complaint from six (6) years prior to the filing of the present case to the filing date. Walmart will not produce any document and/or ESI until a protective order is entered in this case.

<u>Walmart's First Supplemental Response to RFP No. 15</u>

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will produce the sales information concerning "Salon Perfect Precision Shaper" (UPC 7846247059), which is specifically identified as the allegedly infringing product in paragraphs 51 and 63 of the Complaint from six (6) years prior to the filing of the present case to the filing date.

<u>Stiles' RFP No. 20</u>

Documents mentioning, referring or relating to the '468 Patent.

<u>Walmart's Response to RFP No. 20</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "mentioning, referring or relating to" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments mentioning, referring or relating to the '468 Patent" regardless of relevance to the claims and defenses in this case.  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it is not limited in temporal scope.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents responsive to this

1   Request.  Walmart will not produce any document and/or ESI until a
    protective order is entered in this case.

2              Walmart's First Supplemental Response to RFP No. 20

3   Subject to and without waiving any of the foregoing general and specific
4   objections, Walmart states that Walmart will conduct a reasonable
    search of business records within its possession, custody, or control for
5   documents responsive to this Request, and will produce responsive,
    non-privileged documents to the extent they exist.

6                             Stiles' RFP No. 21

7   Documents mentioning, referring or relating to the '329 Patent.

8                     Walmart's Response to RFP No. 21

9   Walmart objects to this Request as vague, ambiguous, and not seeking
10  information that is relevant to the claims and defenses in this case, as it
    uses the terms "mentioning, referring or relating to" without defining
11  the terms.  Walmart further objects to this Request as overly broad, un-
    duly burdensome, and not proportional to the needs of this case, as it
12  seeks "[d]ocuments mentioning, referring or relating to the '329 Patent"
    regardless of relevance to the claims and defenses in this case.  Walmart
13  further objects to this Request to the extent that it seeks information
14  and/or documents that contain confidential, trade secret, competitive,
    business, or other proprietary information.  Walmart further objects to
15  this Request to the extent it seeks information not in Walmart's posses-
    sion, custody, or control and/or information in the custody or control of
16  persons and/or entities other than Walmart.  Walmart further objects to
    this Request as overly broad, unduly burdensome, and not proportional
17  to the needs of this case, as it is not limited in temporal scope.  Walmart
18  also objects to this Request to the extent that it seeks documents and
    communications protected from disclosure by the attorney-client privi-
19  lege, work product doctrine, common interest privilege, and any other
    applicable privilege or protection.  Subject to and without waiving its
20  objections, Walmart responds as follows:

21  Walmart will conduct a reasonable search of business records within its
    possession, custody, or control for documents responsive to this Re-
22  quest.  Walmart will not produce any document and/or ESI until a pro-
    tective order is entered in this case.

23             Walmart's First Supplemental Response to RFP No. 21

24  Subject to and without waiving any of the foregoing general and specific
25  objections, Walmart states that Walmart will conduct a reasonable
    search of business records within its possession, custody, or control for
26  documents responsive to this Request, and will produce responsive,
    non-privileged documents to the extent they exist.

27

28

                                    22

1

Stiles' RFP No. 25

2
3
4

Documents, including any correspondence, email or data in electronic form, mentioning, referring, or relating to when Defendant first became aware of the existence of the '468 Patent or its alleged infringement thereof, or any of Plaintiffs' patents.

5

Walmart's Response to RFP No. 25

6
7
8
9
10
11
12
13
14
15
16
17

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "correspondence, email or data in electronic form," "mentioning, referring, or relating to," "became aware of," "existence," and "Plaintiffs' patents" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments, including any correspondence, email or data in electronic form, mentioning, referring, or relating to when Defendant first became aware of the existence of the '468 Patent or its alleged infringement thereof, or any of Plaintiffs' patents" regardless of relevance to the claims and defenses in this case.  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

18
19
20

Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents responsive to this Request.  Walmart will not produce any document and/or ESI until a protective order is entered in this case.

21

Walmart's First Supplemental Response to RFP No. 25

22
23
24

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents responsive to this Request, and will produce responsive, non-privileged documents to the extent they exist.

25

Stiles' RFP No. 26

26
27

Documents sufficient to show when Defendant first became aware of the existence of the '329 Patent or its alleged infringement thereof, or any of the Plaintiffs' patents.

28

23

1

<u>Walmart's Response to RFP No. 26</u>

2

3

4

5

6

7

8

9

10

11

12

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "first became aware of," "existence of," and "Plaintiffs' patents" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments sufficient to show when Defendant first became aware of the existence of the '329 Patent or its alleged infringement thereof, or any of the Plaintiffs' patents" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

13

14

15

Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents responsive to this Request. Walmart will not produce any document and/or ESI until a protective order is entered in this case.

16

<u>Walmart's First Supplemental Response to RFP No. 26</u>

17

18

19

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents responsive to this Request, and will produce responsive, non-privileged documents to the extent they exist.

20

<u>Stiles' RFP No. 30</u>

21

22

Documents referring or relating to any advantages, benefits or features of the Salon Perfect Micro Razor from January 1, 2007 to the date you respond to this request.

23

<u>Walmart's Response to RFP No.30</u>

24

25

26

27

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or relating to," "advantages, benefits or features," and "Salon Perfect Micro Razor" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring or relating to any advantages, benefits or features of

28

the Salon Perfect Micro Razor" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

Stiles' RFP No. 31

Documents referring or relating to any advantages, benefits or features of the Salon Perfect Precision Shaper from January 1, 2007 to the date you respond to this request.

Walmart's Response to RFP No.31

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or relating to," "advantages, benefits or features," and "Salon Perfect Precision Shaper" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring or relating to any advantages, benefits or features of the Salon Perfect Precision Shaper" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

Stiles' RFP No. 44

Documents referring or relating to the search terms "Stiles" and/or "Stiles Razor" on Walmart.com from January 1, 2007, to the date you respond to this request.

Walmart's Response to RFP No. 44

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or relating to" and "search terms" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring or relating to the search terms "Stiles' and/or "Stiles Razor" on Walmart.com" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart objects to this Request to the extent that it seeks information within Stiles' own possession, custody, or control. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

## 2.    Stiles' Contentions

This dispute is about the proper scope of a search for ESI. Walmart agreed to conduct a reasonable search for:

- Documents showing sales information for the Salon Perfect razors (RFP Nos. 10, 15) and

- Documents relating to the '468 and '329 patents, including but not limited to Walmart's potential infringement of those patents (RFP Nos. 20–21, 25–26).

Similarly, Walmart agreed "to confer with Stiles to determine a reasonable scope" for a production of:

- Documents relating to Plaintiffs or their products (RFP No. 4) and

1     •     Documents relating to the Salon Perfect razors, including but not limited to their con-
                  ception, design, development, and features (RFP Nos. 7, 8, 12–13, 30–31, 44).

2 (*Id.*) These requests support three categories of search terms and custodians that Walmart has refused

3 to search: (1) Walmart's category advisor program, (2) the Stiles Razor, and (3) AI's infringing

4 knockoffs of the Stiles Razor.

5
6            **a.**      **Walmart Has Not Conducted a Reasonable Search for Documents Related to the Category Advisor Program.**

7       Walmart has flatly refused to produce all documents relating to its category advisor program,

8 which is its central process for determining which products make it on to Walmart's shelves and de-

9 termining product price points. (*See* Appendix A §§ 1–2 (Stiles' request for Walmart to run additional

10 search terms and custodians); ECF No. 254-4 (describing the central role of category managers.) To

11 date, Walmart has performed only a *single* search for terms and custodian—parameters unilaterally set

12 by Walmart. (*See infra* at 27–29.) Not one search term gets at anything related to category advisors.

13 (Ex. 20 (Sep. 13, 2019 Walmart's email re Stiles – custodians and search terms).) Moreover, the past

14 search did not include custodians who were directly involved in Walmart's stocking and pricing deci-

15 sions, including Walmart custodians who expressed "concerns" about potentially adverse effects on

16 Walmart category advisor and direct competitor's product (AI's razor) and had "reservations" about a

17 category advisor reviewing a product line. (Appendix A § 1.) Walmart must be compelled to produce

18 such information because it is directly relevant to both Stiles' antitrust claims and Walmart's affirma-

19 tive defenses, and it is responsive to Stiles' requests.

20            **i.**      **The Sought Discovery Is Relevant to Stiles' Antitrust Claims in the Operative Complaint.**

21       This discovery is relevant to the antitrust claims in the operative complaint. Stiles alleges that

22 Walmart violated antitrust laws. Among other things, Stiles alleges that:

23        •     "Defendants are using a combination of intentional, unlawful methods, including patent
                  infringement, trade dress infringement, false association, false advertising, and anti-
24                   competitive, exclusionary behavior to suppress Stiles' success in the market, including
                  entering into an agreement to eliminate a competitor from the market, engaging in a
25                   group boycott, and agreeing to divide customers" (ECF No. 142 ¶ 5);

26        •     Defendants exercised their monopoly power to eliminate Stiles from the disposable
27                   personal styling razor market and to fix prices (*id.* ¶ 109); and

28

1      •      Defendants agreed to remove the Stiles Razor from Walmart and replace it with knock-
       off products manufactured by Stiles' competitors (*id.* ¶¶ 108, 118–19).

2      Under this theory, sales, inventory, cost, and price information for all products in each cate-

3  gory—and communications by and among Walmart and AI regarding this information—are plainly

4  and directly relevant and responsive under the ESI order. *See Martin v. Hilton Sacramento Arden W.*,

5  No. 2:14-CV-00360 GEB AC, 2014 WL 5823101, at *4 (E.D. Cal. Nov. 10, 2014) (finding that claims

6  as alleged in complaint were sufficient to entitle them to discovery). It does not matter that the phrase

7  "category advisor" itself does not appear in the operative complaint. "[D]iscovery is not limited to

8  only those specific issues raised in the pleadings." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D.

9  Cal. 1995); *Weldon v. Dyer*, Case No. 1:13-CV-00540-LJO, 2015 WL 1012371, at *5 (E.D. Cal. Mar.

10  6, 2015) ("[Discovery] is not limited to matters which fall within the four corners of Plaintiff's com-

11  plaint."). Rather, a plaintiff is entitled to discovery "unless the information sought has no conceivable

12  bearing on the case." *Soto*, 162 F.R.D. at 610; *Weldon*, 2015 WL 1012371, at *5 (observing that a party

13  has "the right to use the discovery process to investigate into any matters which are reasonably calcu-

14  lated to lead to the discovery of admissible evidence").

15      This is not a fishing expedition. Documents already produced show that Stiles' allegations are

16  facts. For example, documents produced thus far ███████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████ Because Stiles

24  sufficiently pled that Walmart violated antitrust laws, Stiles is entitled to investigate Walmart's anti-

25  competitive conduct.

26

27

28

**Joint Statement re Discovery Disagreement**

### ii.   The Discovery Sought Is Relevant to Walmart's Defenses.

Discovery into these areas is proper because the documents are relevant to Walmart's antitrust defenses. *See Rogers v. Giurbino*, 288 F.R.D. 469, 479 (S.D. Cal. 2012) (finding that defendant's affirmative defenses are sufficient to expand the scope of discovery); *Weldon*, 2015 WL 1012371, at *4 (observing that discovery may be obtained as to any unprivileged matter "relevant to any part's claim or defense"). Walmart's key defenses are that its conduct is actually procompetitive, and any anticompetitive effects are outweighed by the procompetitive effects. (ECF No. 189, Affirmative Defenses ¶¶ 33–36.) In advancing these defenses, Walmart has explained in detail that its category management program proves that its conduct is procompetitive. Among other things, Walmart has stated:

- "By focusing on the category (rather than particular brands or single products), retailers are able to offer the best product assortment, organized in the most effective way on the shelves, and at prices consumers are most willing to pay" (ECF No. 250 at 5);

- ██████████████████████████████████████████████████████

- Category management focuses "on the performance of the category as a whole rather than on the performance of a particular brand or product within the category" (*id.*).

Walmart's entire category management campaign is suspect and within the scope of discovery because (1) it may actually prove that Walmart violated antitrust laws and (2) Stiles is entitled to test Walmart's assertions. First, "the use of category captains can raise competitive questions insofar as it involves a supplier making recommendations about how its competitors should be treated." FTC, Report on the Federal Trade Commission Workshop on Slotting Allowances and Other Marketing Practices in the Grocery Industry 7 (2001). Second, this creates potential "[a]ntitrust [i]ssues" that can result in decreasing competition. *Id.* at 49–50. Those antitrust concerns arise when confidential supplier information is shared with the category captain and when category captains make recommendations about dropping or disadvantaging rivals' products. *Id.* at 8, 50–51.

Walmart's category advisor program raises both these concerns. For example,





1

2

3

4

5

6

7

8

9

10     In other words, Stiles' horizontal com-

11 petitor, AI, fixed prices at Walmart's request, based on confidential cost information provided to AI,

12 PWC, and Coty in their role as Beauty Category Advisors.

13

14

15

16     (*See* ECF No. 250-4 ¶¶ 3–7.) To determine how Walmart makes shelving and pric-

17 ing decisions, Stiles have the right to request information about *all* products within a given category

18 (*e.g.*, the beauty department). *See J & M Assocs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,

19 No. 06-CV-0903-W (JMA), 2008 WL 638137, at *6 (S.D. Cal. Mar. 4, 2008) (finding that plaintiff

20 was entitled to obtain discovery in order to attempt to refute the statements contained in defend-

21 ant's declaration); *Estate of Bui v. City of Westminster Police Dep't*, 244 F.R.D. 591, 597 n.4 (C.D.

22 Cal. 2007) (observing that statements made in an internal affairs report produced in discovery were

23 "in fact discoverable").

24     Walmart has put the category advisor program directly at issue to explain how stocking and

25 pricing determinations are made. That program is, in turn, directly relevant to showing that Walmart's

26 _____

27 [2] *See, e.g.,*

28

**Joint Statement re Discovery Disagreement**

1    defenses are meritless and actually proves Stiles' antitrust claims. Therefore, Stiles is entitled to dis-

2    covery on the category advisor program. *See Weldon*, 2015 WL 1012371, at *4 ("[D]iscovery is not

3    limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify

4    issues. . . . Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may

5    arise during litigation that are not related to the merits.") (quoting *Oppenheimer Fund, Inc. v. Sanders*,

6    437 U.S. 340, 351 (1978)); *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, No. C15-0543RSL, 2016

7    WL 2610247, at *2–3 (W.D. Wash. May 6, 2016) (granting motion to compel where declaration put

8    state of mind squarely at issue). Therefore, Walmart cannot simply claim that information relating to

9    its category advisor program is not subject to discovery.

10                   **iii.**      **The Discovery Sought Is Responsive to RFP No. 4.**

11         Documents relating to Walmart's category advisor program falls within the purview of Stiles'

12   RFP No. 4, which requests "[d]ocuments that refer or relate to the Plaintiffs or any of Stiles' products,

13   including the Stiles' Razor, from January 1, 2007, to the date you respond to this request." (Ex. 5

14   (Stiles' Amended Requests for Production of Documents).) Walmart responded, agreeing "to confer

15   with Stiles to determine a reasonable scope" to this request. (Ex. 6 (Walmart's Supplemental Re-

16   sponses to Stiles' Amended Requests for Production of Documents).) Stiles engaged in multiple meet-

17   and-confers over months in an attempt to confer on a reasonable scope, and they forewent other ave-

18   nues (*i.e.*, serving new requests for production) in reliance on Walmart's agreement to determine a

19   reasonable scope.

20         In light of the antitrust claims at issue, it is reasonable for Walmart to produce documents

21   related to stocking and pricing decisions, to include communications with various category advisors.

22   *See Callahan v. A.E.V. Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996) ("Discovery in an antitrust case is

23   necessarily broad because allegations involve improper business conduct. Such conduct is generally

24   covert and must be gleaned from records, conduct, and business relationships." (citation omitted)).

25   Moreover, the request is sufficiently tailored such that Walmart may respond by producing documents

26   relating to its category advisor program. *See telSPACE, LLC v. Coast to Coast Cellular, Inc.*, No. 2:13-

27   CV-01477 RSM, 2014 WL 4364851, at *3 (W.D. Wash. Sept. 3, 2014) (ordering that documents must

28

1    be produced in response to a request phrased as follows: "All documents and communications related

2    to any agreements with clients acquired by [C2C] or new services provided to existing clients in Sep-

3    tember 2012, October 2012 and November 2012, as well as any communications with those clients

4    within the first thirty (30) days of becoming a new client or the provision of new services by [C2C]").

5         Therefore, Stiles' Motion seeks an order compelling Walmart to: (i) run additional search terms

6    against the existing custodians and (ii) pull additional custodians and run all ordered and prior search

7    terms. Appendix A details the exact scope of the requested order. Section 1 of Appendix A details the

8    additional custodians and shows why they have relevant information. Section 2 of Appendix A details

9    the additional requested search terms.

10        **b.    Walmart Has Not Conducted a Reasonable Search for Documents
               Related to (a) the Stiles Razor and/or (b) AI's Infringing**
11        **Knockoff.**

12        The core of this case is about the Stiles Razor. Among other things, the operative complaint

13   alleges that Walmart, AI, and Stiles' competitors conspired to remove the Stiles Razor from Walmart

14   and replace it with knock-off products manufactured by AI. (ECF No. 142 ¶¶ 108, 118–19.) Stiles

15   further alleges that AI's knock-off infringed the patents on the Stiles Razor. (*Id.* ¶¶ 62–64.) Documents

16   produced by Walmart during discovery support these patent infringement allegations. For example,

17   ███████████████████████████████████████████████████████████

18   ███████████████████████████████████████████████████████████

19   ███████████████████████████████████████████████████████████

20   ███████████████████████████████████████████████████████████

21   Despite these central allegations, and mounting evidence, Walmart has failed to conduct a reasonable

22   search for documents relating to the Stiles Razor and/or AI's infringing knockoff.

23        Stiles sought discovery of all documents relating to the Stiles Razor (RFP Nos. 4 and 44) and

24   all documents relating to AI's infringing knockoff razor (RFP Nos. 7, 8, 10, 12–13, 15, 20–21, 25–26,

25   30–31, and 44). In conferring on the search terms for these requests, Stiles requested that Walmart

26   search for two buckets of information: (1) various numerical identifiers (*e.g.*, universal pricing codes

27   ("UPC") and item numbers) that were assigned to the Stiles Razor and to the infringing AI knockoffs

28

1  and (2) various physical identifiers for the Stiles Razor that were used to describe the key characteris-

2  tics of the razor (e.g., embossed finger, finger groove). (*See* Appendix A § 3.) Walmart refused to run

3  this search.

4    There is no basis for this refusal. These numerical identifiers for the Stiles and AI razors the

5  and physical identifiers for the Stiles Razor are relevant to Stiles' claims in this action. Searching these

6  terms would likely lead to discovery of documents discussing: the exceptional performance of the

7  Stiles Razor (undercutting Walmart's arguments that it dropped her razor because it was not perform-

8  ing); internal discussions at Walmart about Stiles and her razor and whether nefarious motives ani-

9  mated their conduct; Walmart's discussions with AI about creating the infringing knockoff and the

10  ensuing performance of that knockoff; or the sharing of Stiles' confidential product information (*e.g.*,

11  cost data, sales) with her direct competitors. *See Best Buy Stores, L.P. v. Manteca Lifestyle Ctr., LLC*,

12  No. 2:10-CV-0389-WBS-KJN, 2011 WL 2433655, at *10 (E.D. Cal. June 14, 2011) (rejecting rele-

13  vance objection because "[a] party's potentially changing intentions and motivations regarding its per-

14  formance obligations under the Lease could also conceivably bear on the likelihood that any given

15  provision of the Lease was breached"); *Apple Inc. v. Eastman Kodak Co.*, No. CV 10-04145 JW PSG,

16  2011 WL 334669, at *3 (N.D. Cal. Feb. 1, 2011) (observing that a motion to compel should be granted

17  where a plaintiff provides sufficient documentation that a patent infringement defendant has "failed to

18  produce timely discovery as required by Federal Rule of Civil Procedure 33 and 34, and that it at-

19  tempted to obtain the requested discovery without court involvement," so long as the requests are

20  reasonably calculated to lead to the discovery of admissible evidence, the motion to compel should be

21  granted).

22    To date, Walmart has not seriously claimed any undue burden in running these search terms.

23  It has not attempted to quantify any supposed undue burden. Instead, it has pointed to the fact that it

24  already conducted one search. But running one round of search terms does not satisfy Walmart's bur-

25  den here. *F.D.I.C. v. Brudnicki*, 291 F.R.D. 669, 677 n.13 (N.D. Fla. 2013) (rejecting "an arbitrary

26  limit" of a proposed ESI protocol's "limit[ing] the search term process to no more than 3 iterations of

27  custodian and search terms and hit reports"); *In re Coventry Healthcare, Inc. Sec. Litig.*, 290 F.R.D.

28

1    471, 475 (D. Md. 2013) ("The party seeking to lessen the burden of responding to electronic discovery

2    bears the burden of particularly demonstrating that burden and of providing suggested alternatives that

3    reasonably accommodate the requesting party's legitimate discovery needs.") (quotation omitted);

4    *Kleen Prods., LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465 139632, at *15 (N.D.

5    Ill. Sept. 28, 2012) ("a party must articulate and provide evidence of its burden").

6         Accordingly, the Court should order Walmart to conduct a search for the terms and custodians

7    set forth in Section 3 of Appendix A.

8         **3.**     **Walmart's Contentions**

9            **a.**     **Plaintiffs Failed to Diligently Pursue, or Effectively Meet and Con-**

10                  **fer on, Their Requested Document Discovery**

11                 **i.**     **Plaintiffs Failed to Provide Their Entire Joint Statement As**

12                      **Agreed, Prejudicing Walmart's Response**

13         As discussed above, plaintiffs failed to provide their portion of this joint statement or all of the

14    supporting documents in a timely fashion based on the parties' agreement.  Plaintiffs' obstinance in

15    providing Walmart with the full submission, immediately prior to the Thanksgiving holiday, imposed

16    an improper burden and inconvenience on counsel while prejudicing their ability to adequately re-

17    spond to plaintiffs' seven separate claimed disputes.  This conduct alone is sufficient to deny plaintiffs'

18    motion.  *Estate of Crawley v. Kings Cnty.*, No. 1:13-cv-02042-LJO-SAB, 2015 U.S. Dist. LEXIS

19    59439, at *14 (E.D. Cal. May 6, 2015) ("The intent of the Local Rule is for the parties to meet and

20    confer and collaborate on drafting a document which sets forth … which facts and legal issues are

21    disputed"; granting motion compel against party that failed to adequately confer on joint statement

22    and issuing monetary sanction).

23                 **ii.**     **Plaintiffs Failed to Meet and Confer With Walmart About**

24                      **the Request Presented to the Court in Exhibit A**

25         Plaintiffs' first and second disputes relate to what they believe to be the insufficiency of

26    Walmart's document search and production, and their unhappiness with the agreements made by plain-

27    tiffs' prior counsel.  Walmart's document search and review process—as agreed to with prior

28

1    counsel—was entirely reasonable and based on a typical back and forth negotiation between parties;

2    a negotiation history that plaintiffs quote and then mischaracterize as Walmart "unilaterally" driving

3    the process.  Nor has Walmart taken the position that it can "run one set of search terms and call it

4    done" (see Section I(C)(1)(a), above); indeed, Walmart ran multiple additional search terms requested

5    by plaintiffs' prior counsel.  However, as Walmart made clear in response to plaintiffs' proposal of 59

6    additional custodians and 84 search terms on October 15, 2019, Walmart would not agree to new

7    requests and search terms that would effectively require Walmart to redo its entire document produc-

8    tion two months prior to the fact discovery cutoff, particularly where plaintiffs declined to provide any

9    justification for the new searches.

10        Plaintiffs' eleventh-hour request for a do-over on document discovery should be denied.  As

11    document discovery has been largely complete since May 2019, plaintiffs' counsel has long been able

12    to determine the custodians and search terms now requested and in many instances rely on plaintiffs'

13    own documents to understand the relevance of certain proposed custodians.  Plaintiffs' October 15

14    proposal contained only a single line for each of the 59 custodian to justify their relevance, limited

15    justification for 16 of the proposed new search terms, and no justification for the remaining 68 pro-

16    posed new search terms, some of which comprised simply strings of numbers.  Williamson Decl., Ex.

17    24 at 1 (Email and attachment from E. Kuylman, October 15, 2019).  In response to plaintiffs' pro-

18    posal, Walmart asked that plaintiffs identify the RFP responses plaintiffs believed to be deficient.

19    Williamson Decl., Ex. 27 1-2 (Email from J. Ostrander to A. Williamson, October 25, 2019), Ex. 28

20    at 8 (Email from J. Ostrander to A. Williamson, November 5, 2019).  Walmart also asked that plaintiffs

21    provide a connection between the operative complaint, or existing discovery, that showed the potential

22    relevance of each proposed new custodian and search term.  Williamson Decl., Ex. 25 (Letter from J.

23    Ostrander to E. Kuylman, October 17, 2019).  Plaintiffs declined to provide either.

24        Indeed, the present motion is the first time plaintiffs have identified any specific RFPs—four-

25    teen in total—for which they believe Walmart's production is deficient.  On multiple occasions,

26    Walmart requested plaintiffs provide RFP responses it deemed deficient so that the parties could meet

27    and confer, and plaintiffs failed to do so.  Even leading up to the filing of this motion, Walmart again

28

**Joint Statement re Discovery Disagreement**

1  asked for clarity as to the RFPs plaintiffs planned to make the subject of this motion. Williamson

2  Decl., Ex. 28 at 6 (email from J. Ostrander to B. Dunne November 6, 2019 ("We understand Plaintiffs

3  refuse to tell us what discovery requests are at issue …."), Ex. 28 at 5-6 (Email from B. Dunne to J.

4  Ostrander ("Your 'understanding' is wrong, and we specifically reject it. Andrew's email expressly

5  said—and I'll requote it so you don't need to read down, although it's in this very thread: 'We are

6  plainly at an impasse on the discovery issues covered in our August 14th, August 15th, September 3rd,

7  October 2nd, and October 15th letters.'")).  Plaintiffs flatly declined to provide Walmart with the pro-

8  posed grounds for their motion and instead pointed Walmart to prior correspondence. *Id.* at 5-6.  No-

9  where did plaintiffs identify the RFPs on which they now seek additional discovery: 4, 7-8, 10, 12-13,

10 15, 20-21, 25-26, 30-31, or 44.  This conduct clearly shows that plaintiffs failed to meet and confer on

11 the specific requests at issue, and on that ground the motion should be denied.  *See United States v.*

12 *Peery*, No. 2:18-cv-01074 JAM AC, 2018 U.S. Dist. LEXIS 159440, at *3 (E.D. Cal. Sept. 17, 2018)

13 (denying motion to compel because the parties had failed to file a joint statement and "there [was] no

14 indication that the parties have met and conferred regarding the instant disputes"); *Causey v. Portfolio*

15 *Acquisitions, LLC*, No. 2:10-cv-2781-KJM-EFB PS, 2013 U.S. Dist. LEXIS 53219, at *7 (E.D. Cal.

16 Apr. 12, 2013) (denying the motion to compel because the parties did not file a joint statement or

17 "seriously discuss many of the specific discovery requests at issue").

18       Moreover, after Walmart requested plaintiffs provide some explanation of the relevance of

19 each of the items on their expansive list of 59 proposed new custodians and 84 search terms, the parties

20 had only a single call to discuss the substance of their request.  On that call, Walmart asked plaintiffs

21 to explain the relevance of the proposed new custodians and search terms.  Williamson Decl., Ex. 27

22 at 1-2 (email from J. Ostrander to A. Williamson, October 25, 2019).  The parties only discussed the

23 relevance of one of plaintiffs' proposed custodians—an electronic custodian name that was an alias

24 for an existing Walmart custodian, Heather Ronchetto.  As for the 84 proposed new search terms, the

25 parties only discussed the 34 proposed terms related to identifying codes for the Stiles Razor and AI

26 products, 26 of which are reflected in Section 3 Groups A-E of plaintiffs' Appendix A.  As a partial

27 compromise, Walmart agreed to run the search terms using the existing custodians and produce

28

**Joint Statement re Discovery Disagreement**

1   relevant, non-privileged documents responsive to plaintiffs' RFPs, pending a resolution of the remain-

2   der of the potential discovery disputes plaintiffs had raised.  *Id.*

3         Plaintiffs did not respond to that offer or provide any additional information regarding their

4   proposed new custodians and search terms.  Instead, two days after the telephonic meet and confer,

5   plaintiffs declared the parties at an impasse on the issue of new custodians and search terms.  William-

6   son Decl., Ex. 28 at 8 (Email from A. Williamson to J. Ostrander, November 4, 2019).  However, in

7   acknowledgement of the unreasonableness of their proposal, plaintiffs both substantially narrowed

8   their custodian and search term demands in pursuing this motion and, for the first time, attempted to

9   justify the proposal on relevance grounds.  Compare Williamson Decl., Ex. 24 at 6-10 with Appendix

10   A.  This is not a good faith attempt to meet and confer, where Walmart repeatedly requested such

11   information in advance of the motion in order to pursue a compromise.  Williamson Decl., Ex. 25 at

12   1 (Letter from J. Ostrander to E. Kuylman, October 17, 2019 ("We ask that Plaintiffs provide a basis

13   for the relevance of each of these individuals to a production based on Plaintiffs' RFPs and the alle-

14   gations in the Fourth Amended Complaint"); Ex. 27 at 1 (Email from J. Ostrander to A. Williamson,

15   October 28, 2019 ("We ask again that the Plaintiffs reconsider their overbroad and disproportionate

16   request and provide some specific basis for the purported insufficiency of Walmart's document pro-

17   duction ….")).  Further, plaintiffs provided this the new proposal the weekend before Thanksgiving,

18   when it would be difficult for counsel to consider this new position with Walmart or the relevant third

19   party vendors.

20         Plaintiffs attempt an end run around this Court's meet and confer requirements, and they now

21   ask that Walmart be ordered to conduct any new search term and custodian plaintiffs request, without

22   any need to demonstrate both relevance and proportionality, or to meet and confer meaningfully.

23   Plaintiffs' failure to explain the relevance of the proposed new custodians and search terms in making

24   their original request, and their decision to present a new proposal to the Court without even first

25   mentioning it to Walmart, dooms their request for an additional document production and their motion

26   on these terms should be denied.

27

28

1           **b.**      **Plaintiffs' Requested Category Advisor Discovery Exceeds the**

2                     **Scope of Discovery and Is Not the Subject of Any RFP Served on**

3                     **Walmart**

4         Even had plaintiffs adequately met and conferred, their claim to additional discovery of

5   Walmart's "category advisor" program is entirely misplaced.  To begin with, plaintiffs' present motion

6   is a transparent attempt to achieve here what plaintiffs could not in their recently denied attempt to

7   amend their complaint for the fifth time.  ECF No. 278.  Plaintiffs' Motion for Leave to Join Additional

8   Parties asserted the same overbroad and nonsensical claims of "price fixing" among Walmart and its

9   suppliers/category advisors, Proctor & Gamble, Coty, Inc., and Pacific World Corp.  ECF No. 232.

10  The motion sought to join Coty, Pacific World Corporation, and Proctor Gamble as defendants and

11  add allegations regarding Walmart's category advisory program.  *Id.*  Because the Court correctly

12  determined the motion was a disguised motion to amend the complaint, it denied the motion because

13  plaintiffs failed to show good cause to amend or diligence in seeking amendment.  ECF No. 278.

14        Despite plaintiffs' failed attempt to amend (as they must to add these claims), plaintiffs now

15  seek discovery to support these rejected claims that are not part of the case.  To do so, they attempt to

16  tie the agreement alleged in the complaint—an agreement between Walmart and AI—to Walmart's

17  category advisor program by claiming (1) that AI was a category advisor to Walmart and (2) that

18  ████████████████████████████████████████████████████████

19  ██████████████████████████████ Neither claim is true. ██████████████

20  ██████████████████████████████████████████████████████ECF

21  No. 250-4, ¶ 6.  Second, the documents cited by plaintiffs demonstrate clearly that AI was trying to

22  offer a similar product at the same or a better price as plaintiffs—this is competition, not "price fixing."

23  There is simply no indication that AI determined its strategy or pricing "under the category advisor

24  program," as plaintiffs claim above.

25        Further, despite plaintiffs' attempts to mischaracterize the issue, these requested materials are

26  not relevant to any defense asserted by Walmart.  The "defenses" plaintiffs point to are quotations

27  from a declaration made in support of Walmart's opposition to plaintiffs' motion for leave to join

28

1  additional parties.  ECF No. 250-4.  Walmart does not assert any defense to the FAC that its category

2  management program is pro-competitive, because the FAC makes no claim that category management

3  is anti-competitive.

4        Plaintiffs' attempt to tie this new discovery request to RFP No. 4 is equally misplaced.  First,

5  as explained above, plaintiffs did not identify RFP No. 4 (or any other RFP) that would call for such

6  discovery during the meet and confer process.  Plaintiffs' claim (without citation) that they engaged

7  in a meet and confer over the scope of this request for months is false and nothing more than a trans-

8  parent attempt to excuse plaintiffs' own delay in pursuing discovery.  Second, RFP No. 4 seeks only

9  production of "[d]ocuments that refer or relate to the Plaintiffs or any of Stiles' products, including

10  the Stiles' Razor, from January 1, 2007, to the date you respond to this request."  Plaintiffs do not

11  explain how this request—which only seeks information about plaintiffs and their products—would

12  call for "all documents related to [Walmart's] category advisory program" as plaintiffs now purport

13  to interpret it.  As explained below, Walmart ran the broad search terms "Stiles" and various product

14  UPCs and variations of product names to find documents responsive to this RFP.  Williamson Decl.

15  Ex. 20.  Walmart even offered to run twenty-nine additional search terms proposed by plaintiffs on

16  October 15—described by plaintiffs as product codes—in order to locate any additional documents

17  related to plaintiffs' products or the other products described in the FAC.  Williamson Decl., Ex. 27

18  at 1 (Email from J. Ostrander to A. Williamson, October 28, 2019).

19        Notwithstanding these arguments, Walmart has not "flatly refused to produce all documents

20  related to its category advisory program," including in response to this RFP.  Indeed, Walmart has

21  produced hundreds of documents involving Walmart and its category advisors, where those documents

22  relate to or mention Stiles, AI or the relevant products identified in the FAC, as demonstrated by emails

23  that plaintiffs have cited throughout this joint statement.  Many of Walmart's search terms would have

24  returned any email discussing plaintiffs, their products, or the Walmart and AI products mentioned in

25  the FAC, including any emails with category advisors.  Williamson Decl., Ex. 20 at 2-3 (including

26  search term "stiles" and variations of the names "Melanie Jones," "Robin Foshee," and "Sheri Davis").

27

28

**Joint Statement re Discovery Disagreement**

1           **c.**       **Walmart's Search of the Agreed Custodians With Agreed Search**

2                       **Terms Was Reasonable and Proportional to the Needs of this Case**

3        In a further attempt to justify their belated request for additional custodians and search terms,

4    plaintiffs characterize Walmart's document productions as unreasonable and insufficient.  Plaintiffs

5    selectively cite to communications with counsel to claim that Walmart "unilaterally" determined the

6    custodians and search terms used for Walmart's productions based on only a single ESI search to date,

7    just as they did in the meet and confer process.  Williamson Decl., Ex. 27 at 2 (Email from J. Ostrander

8    to A. Williamson, October 25, 2019 ("we disagree with the incorrect position taken by Plaintiffs in

9    their letter of October 2 that Walmart 'unilaterally set custodians and search terms' or that Walmart

10   'refused to modify' its proposed custodians and search terms.)).

11        In fact, the negotiations between the parties reflect a typical back and forth between parties

12   resulting in an agreement on an electronic discovery process.  This agreement should not be discarded

13   now because plaintiffs received what they bargained for and now their new counsel purports to be

14   unhappy.  *Martinelli v. Johnson & Johnson*, No. 2:15-cv-1733 MCE DB, 2017 U.S. Dist. LEXIS

15   20113, at *4-5 (E.D. Cal. Feb. 10, 2017) (where party ran agreed search terms, and agreed to additional

16   terms and custodians in course of negotiations, moving party's claim based on "dearth of defendant's

17   production" denied).  After the Court ordered the parties to begin discovery in August 2018, with the

18   pleadings still unsettled, the parties agreed to a process whereby Walmart would propose custodians

19   and search terms and they would then agree on a reasonable scope based on the proposals and negoti-

20   ations. Mentzer Decl. ¶ 3.  In December 2018, Walmart proposed 11 custodians with beginning and

21   ending dates for each custodian based on the dates alleged in the FAC and Walmart's internal inves-

22   tigation.  Mentzer Decl. ¶ 4, Ex. 1 at 8-9.  Plaintiffs responded to Walmart and expressed that the

23   beginning pull date for one custodian was incorrect.  Mentzer Decl. ¶ 5, Ex. 2 at 1.  Plaintiffs' counsel

24   additionally claimed approximately a month later in January 2019 that a custodian was missing from

25   the list.  Mentzer Decl. ¶ 6, Ex. 1 at 3.  In both instances, Walmart investigated the proposed change

26   and agreed to add a new custodian and broaden the time frame for another.  Ultimately, Walmart's

27

28

**Joint Statement re Discovery Disagreement**

1  document pulls amounted to a collection of over a million documents.  *See* Declaration of Scott Guth-

2  rie ("Guthrie Decl.") ¶ 4.

3      In all, Plaintiffs requested the addition of four custodians, two of whom were not Walmart

4  employees, and therefore, could not be custodians.  Mentzer Decl. ¶ 6-7.  However, even for those

5  non-Walmart individuals, Walmart agreed to run the individual's names as search terms in an effort

6  to compromise in good faith.  Mentzer Decl. ¶ 8, Ex. 5 at 5.  As mentioned above, Walmart added one

7  custodian based on counsel's request.  Mentzer Decl. ¶ 6, Ex. 4 at 7.  Walmart no longer had any

8  documents for the fourth individual requested by plaintiffs but agreed to run the custodian's name as

9  a search term as a compromise.  Mentzer Decl. ¶ 9, Ex. 4 at 7.  The twelve custodians to which the

10  parties ultimately agreed are core to plaintiffs' claims against Walmart:

11

12 

| Walmart Custo-dian | Relevance to plaintiffs' Claims | Length of Time Frame |
|---|---|---|
| Esther Gifford | Beauty Department buyer when plaintiffs joined the department and continued as the beauty buyer until late 2011/early 2012.  Transitioned plaintiffs into the Beauty Department.  Set goals and monitored the success of plaintiffs Razor in the department. | 62 mos. |
| Caroline Day | Beauty Department Buyer following Esther Gifford.  Monitored plaintiffs' sales in 2012.  Worked with Carmen Bauza when terminating plaintiffs' supplier contract. | 17 mos. |
| Carmen Bauza | Vice President over both the Wet Shave and Personal Care Departments. Communicated with plaintiffs over the plaintiffs Razors' performance in the Wet Shave and Beauty Departments. Transitioned plaintiffs Razor into the Beauty Department. Worked with Caroline Day when supplier relationship with plaintiffs was terminated. | 32 mos. |
| Andrea Tubbs | Beauty Department Buyer.  Oversaw department leading up to the filing of the complaint and the sale of other similar razor products. | 14 mos. |
| Melanie Deschaine (formerly Melanie Patrick)[3] | Senior planner/buyer in the Beauty Department.  Worked with AI on continued sales of AI razors and monitoring performance of the Salon Perfect products. | 21 mos. |
| Sandy Chard | Beauty Department Buyer.  Oversaw sales and performance of department including sales of Salon Perfect products. | 35 mos. |

26

27  [3] Plaintiffs Appendix A seeks to add "Melanie Patrick" as a custodian – as noted here, Mrs. Patrick (now Deschaine) is  already a Walmart custodian for which they have received document productions.

28

**Joint Statement re Discovery Disagreement**

| | | |
|---|---|---|
| Heather Ronchetto | Wet Shave Department Buyer beginning in 2008. Monitored and reviewed the plaintiffs Razor from 2008 to 2010. Made the determination to remove the plaintiffs product from the Wet Shave Department. | 37 mos. |
| Shannon Petree | Wet Shave Department Buyer in 2007. Worked with plaintiffs during her time as buyer. | 40 mos |
| Michael Grimm | Wet Shave Department Buyer. Communicated with plaintiffs about her razor and the possibility of selling at Walmart. | 83 mos. |
| Norm Nelson | Wet Shave Department Buyer. Set up test run of plaintiffs Razor in Wet Shave Department in 2006. | 104 mos. |
| Teresa Barrera | Vice President of Diversity. Interacted with plaintiffs as a member of the Walmart diversity program and communicated with plaintiffs about progress in different departments. | 48 mos |
| Therese Tolan | Walmart.com buyer. Helped set up the plaintiffs Razor on Walmart.com and oversaw plaintiffs Razor's performance and display pages on Walmart.com. | 35 mos. |

Similarly, the parties negotiated the search terms used on the twelve custodians. Walmart proposed 58 search terms to plaintiffs on January 25, 2019. Williamson Decl., Ex. 45. As the exhibits to plaintiffs' supporting declaration make clear, plaintiffs' prior counsel contacted Walmart on six separate occasions to request the addition of custodians or search terms. Walmart agreed to run three additional search terms at plaintiffs' request, and offered three more search terms to reflect persons who could not be Walmart custodians, leading to a total of 64 search terms. Compare Williamson Decl., Ex. 45 with Williamson Decl., Ex. 20.[4] Walmart worked in good faith to accommodate the requests of prior counsel and added search terms and custodians at her request. Walmart ultimately hired a contract review team to review approximately 17,000 documents. *See* Guthrie Decl. ¶ 6. Thus, based on a plain reading of the record, plaintiffs' statement that Walmart unilaterally implemented custodians and search terms is plainly false.

As for the RFPs specifically identified by plaintiffs for the first time in this joint statement, Walmart ran search terms related to each:

| Plaintiffs' Claimed Deficiency | Relevant Walmart Search Terms As Run |
|---|---|

---

[4] The summary of search terms sent by counsel on September 13, 2019, did not contain the search terms as run. The correct list can be found in the email sent by S. Mentzer on January 25, 2019, to J. Miller, which was attached to counsel's summary email with the addition of the six later added terms. The difference resulted from shortening the form of certain search terms ending in brows and eyebrows. For example, SP w/4 brows and SP w/4 eyebrows became a single term of SP w/4 *brow*. The * is a symbol used to designate that letters may be before or after the phrase "brow." These terms are substantially the same and merely simplified the search.

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | Documents showing sales information for the Salon Perfect razors (RFP Nos. 10, 15) | SP BROW MICRO RAZORS, SP BROW PREC TRM SHP, SP BROW SHAPING CMBO, ARDELL BROW PRECISIO, "American International Industries" AND (brow OR brows OR eyebrow* OR razor* OR shaper*), Stiles |
| 7<br>8<br>9 | Documents relating to the '468 and '329 patents, including but not limited to Walmart's potential infringement of those patents (RFP Nos. 20–21, 25–26). | 9108329 w/2 patent*, D542,468 w/2 patent*, Stiles |
| 10<br>11 | Documents relating to Plaintiffs or their products (RFP No. 4). | Stiles, *stilesrazor.com, Sharidan, sharidan* w/2 stiles*, sharidan's |
| 12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27 | Documents relating to the Salon Perfect razors, including but not limited to their conception, design, development, and features (RFP Nos. 7, 8, 12–13, 30–31, 44). | SP BROW MICRO RAZORS, SP BROW PREC TRM SHP, SP BROW SHAPING CMBO, SP w/2 brow, SP w/2 brows, SP w/2 eyebrow*, SP w/2 razor*, SP w/2 shaper*, SP w/2 trim*, Salon Perfect Micro Razor*, Salon Perfect Precision Shaper*, micro razor*, microrazor*, AI w/3 brow, AI w/3 brows, AI w/3 razor*, AI w/3 shaper*, ARDELL BROW PRECISIO, Ardell Brow Precision Shaper*, ardell w/2 brow, ardell w/4 brows, "American International Industries" AND (brow OR brows OR eyebrow* OR razor* OR shaper*), "american internat'l industries", "salon perfect" w/4 brow, "salon perfect" w/4 brows, "salon perfect" w/4 eyebrow*, "salon perfect" w/4 razor*, |

28

| | |
|---|---|
| | "salon perfect" w/4 shaper*, "salon perfect* w/4 trim* |

3    Plaintiffs have not shown the terms and custodians agreed to by the parties do not sufficiently

4    address the actual claims in the FAC, rather than the alternative claims they sought unsuccessfully to

5    add through their Motion for Leave to Join Additional Parties, which the Court denied.  They cannot

6    simply claim Walmart did not produce documents without actually showing that occurred (which it

7    did not). *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 2018 U.S. Dist. LEXIS 594 (M.D. La. Jan. 3, 2018)

8    (requesting party failed to "explain[] why the [21] custodians and [56] search terms used were unrea-

9    sonable"); *Stryker Corp. v. Ridgeway*, 2015 U.S. Dist. LEXIS 93741 (W.D. Mich. July 20, 2015)

10    ("[M]ere skepticism that an opposing party has not produced all relevant information is not sufficient

11    to warrant drastic electronic discovery measures.") (quoting *John B. v. Goetz*, 531 F.3d 448, 460 (6th

12    Cir. 2008)).

13          **d.       The Proposed Additional Discovery Would be Unduly Burden-**

14                   **some at This Stage of The Case**

15    Given the parties' prior agreements and the extensive document pull thereafter undertaken by

16    Walmart in reliance on those agreements, the requested additional discovery should be denied.  Plain-

17    tiffs' requests, if allowed by the Court, would place an undue burden on Walmart at this stage in the

18    litigation.  In particular, plaintiffs need to show that the costs of this additional discovery, at the close

19    of fact discovery, are proportional to the needs of the case given the efforts already undertaken by the

20    parties in document discovery.   "[R]elevance alone will not justify discovery; discovery must also be

21    proportional to the needs of the case." *Adamov v. Pricewaterhouse Coopers LLP*, No. 2:13-cv-01222-

22    TLN-AC, 2017 U.S. Dist. LEXIS 211210, at *5 (E.D. Cal. Dec. 21, 2017).  "The party seeking to

23    compel discovery has the burden of establishing that its request satisfie [sic] the relevancy require-

24    ments of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the

25    discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."

26    *Spence v. Kaur*, No. 2:16-cv-1828 TLN KJN P, 2019 U.S. Dist. LEXIS 138462, at *3 (E.D. Cal. Aug.

27    14, 2019) (quoting *Bryant v. Ochoa*, 2009 U.S. Dist. LEXIS 42339, 2009 WL 1390794 at *1 (S.D.

28

1    Cal. May 14, 2009)).  As discussed above, plaintiffs have failed to show the need for additional cus-

2    todians and search terms, but Walmart proceeds below to establish the substantial burden plaintiffs'

3    discovery would impose at this late stage.

4        Plaintiffs' initial request made on October 15—which was the only request Walmart received

5    before receiving plaintiffs' draft joint statement—would have resulted in a substantial burden to

6    Walmart, and thus, Walmart could not agree to it.  Walmart determined that only 38 of the 59 proposed

7    new custodians were Walmart employees that were not already custodians.  However, even with this

8    reduction to 38, plaintiffs' request would have quadrupled the amount of custodians.  Moreover, plain-

9    tiffs' proposal did not even attempt to limit the custodians as to time period, or explain their signifi-

10   cance to the action.

11       Using Walmart's prior document review in this case as a baseline, plaintiffs' October 15 de-

12   mand would have imposed substantial costs on Walmart.  These costs would be only magnified due

13   to the rush over the holidays and as discovery closed.  *See* Guthrie Decl. ¶ 19.  With respect to the

14   October 15 proposal, Walmart estimates the additional 84 proposed new search terms would have

15   resulted in 187,780 hits on the 12 existing custodians.  Based on this estimate, Walmart estimated that

16   the entire review across 50 custodians (the original 12 plus 38 additional proposed custodians) would

17   have resulted in the review of approximately 782,380 documents at a cost of approximately $1,506,000

18   to Walmart for a typical two-tier review process.  *See* Guthrie Decl. ¶ 12.  Because of the obvious

19   burden of plaintiffs' October 15 proposal, Walmart did not agree and asked the plaintiffs to refine their

20   proposal.

21       Plaintiffs have apparently now conceded that their October 15 request was not reasonably lim-

22   ited or proportional to the needs of the case by submitting to the Court their proposal in Appendix A.

23   Appendix A contains 14 requested additional custodians (down from 59), but again only 8 custodians

24   are Walmart employees (down from 39).[5]

25

26

27   [5] The eight Walmart employees on plaintiffs' list are Joe Grady, Karen Kourany, Cindy Lee, Choia
     Mattix, Melanie Patrick, Chris Rasche, Michael Smith, and Kelsyn Wells.

28

1        Plaintiffs' Appendix A proposes to have Walmart run 54 new search terms, rather than the 84

2    previously requested.  Plaintiffs' proposal is that these additional terms be run across all the existing

3    custodians as well as the 7 new custodians (with Melanie Deschaine, formerly Patrick, already being

4    a custodian).  Obviously, having received plaintiffs' latest proposal on custodians at the same time as

5    the joint statement, Walmart has not collected any data from their new proposed custodians.  Never-

6    theless, Walmart estimates that the 54 proposed new search terms would result in the review of 35,000

7    documents from the existing 12 custodians, and approximately 20,400 documents from the other 7

8    custodians.  Guthrie Decl. ¶¶ 16-17.  Walmart reasonably expects to expend approximately $107,000

9    with a contract review vendor to review documents related to these new requests.  Guthrie Decl. ¶ 17.

10   These costs may be raised by as much as 50% if Walmart is forced to use contract reviewers to review

11   additional documents over the holiday season.  Guthrie Decl.  ¶ 19.

12       Given this burden, plaintiffs' proposed new discovery is not proportional given the lack of

13   relevance to the claims alleged in the FAC and the close of fact discovery.  "A court can limit discovery

14   where the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some

15   other source that is more convenient, less burdensome, or less expensive." *Lauris v. Novartis AG*, No.

16   1:16-cv-00393-LJO-SAB, 2016 U.S. Dist. LEXIS 170203, at *11 (E.D. Cal. Dec. 7, 2016) (quoting

17   Fed. R. Civ. P. 26(b)(2)(C)) (quotations omitted).  As discussed above, plaintiffs' request lacks any

18   explanation why the additional discovery is likely to lead to production of non-duplicative documents.

19       Further, plaintiffs have not made a showing that their request is proportional given the close

20   of fact discovery on January 10, 2020.  Given the high cost to Walmart of the proposed additional

21   discovery and the lack of showing as to the relevance of the custodians and search terms requested to

22   the claims in the FAC, the court should deny plaintiffs request as disproportionate to the needs of the

23   case.  *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 602 (D. Nev. 2016) ("[T]he court should

24   consider the totality of the circumstances, weighing the value of the material sought against the burden

25   of providing it, and taking into account society's interest in furthering the truth-seeking function in the

26   particular case before the court.") (citation omitted).

27

28

**B.      Second Dispute: Walmart's Withholding Responsive Documents Based on an Alleged Agreement with Stiles' Prior Counsel.**

      **1.      Stiles' Contentions**

Walmart's counsel has repeatedly claimed that it had an "agreement" on the scope of discovery with Stiles' prior counsel to limit the scope of discovery and authorize the withholding of responsive documents. (Ex. 7 (June 17-28, 2019 emails re Walmart's redactions).) That is demonstrably false; no such agreement exists.

Through numerous emails, Stiles requested that Walmart provide evidence of the alleged agreement. (Ex. 21 (Oct. 2, 2019 Walmart's response letter).) In response, Walmart referenced past emails stating only <u>Walmart's position</u> on limiting the scope of discovery. (Ex. 7 (June 17-28, 2019 emails re Walmart's redactions); Ex. 8 (Feb. 27, 2019 email re Walmart – Excel Files); Ex. 9 (Mar. 8, 2019 email re Walmart – Excel Spreadsheets and Redactions).) Nowhere does Stiles' prior counsel actually agree to these limitations.

In fact, Stiles' prior counsel repeatedly rejected Walmart's position. As counsel wrote in one email: "I am open to reviewing those [variation of search terms]. <u>Plaintiffs also reserve the right to request additional search terms</u> in the future as may be needed." (Ex. 45 (Jan. 25, 2019 Stiles email re ESI search terms) (emphasis added).) And in another email: "When we discussed search terms, no documents had been produced by AI or Walmart. Obviously, during the course of conducting a review of documents now produced, we learn information that further informs our position on which search terms are relevant. That has happened here." (Ex. 8 (Feb. 27, 2019 email re Walmart – Excel Files).) Despite all this—which was pointed out in correspondence—Walmart has repeatedly claimed that this non-existent "agreement" is grounds for not producing responsive documents—including both withholding documents that hit on key search terms and redacting information. (Ex. 7 (June 17-28, 2019 emails re Walmart's redactions); Ex. 24 (Oct. 11–15, 2019 email thread re Stiles' proposed search terms and custodians).)

Walmart's position flies in the face of the Federal Rules of Civil Procedure. Walmart's obligations are not satisfied by running one set of terms and calling it done. Instead, Walmart's search must be "reasonable"—that is, a search performed "competently, diligently and ethically." *See Fendi Adele*

1   *v. Filene's Basement, Inc.*, No. 06 Civ. 244RMBMHD, 2009 WL 855955, at *8 (S.D.N.Y. Mar. 24,

2   2009) (litigants have obligation to "make reasonable efforts to locate responsive documents"); *see also*

3   *Am. Home Assurance Co. v. Greater Omaha Packing Co.*, No. 8:11CV270, 2013 WL 4875997, at *6

4   (D. Neb. Sept. 11, 2013) (discussing that a party must provide the requesting party "adequate oppor-

5   tunity to contest" the adequacy of discovery and ordering the producing party to "disclose the sources

6   it has searched or intends to search and, for each source, the search terms used"); *Victor Stanley, Inc.*

7   *v. Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D. Md. 2008) (party "failed to demonstrate" that keyword

8   search was "reasonable" where party "neither identified the keywords selected nor the qualifications

9   of the persons who selected them to design a proper search; they failed to demonstrate that there was

10   quality-assurance testing; and when their pro-duction was challenged" they "failed to carry their bur-

11   den of explaining what they had done and why it was sufficient"). Determining the reasonableness of

12   a search requires "more than a mathematical count" of locations searched or documents retrieved.

13   *Kleen Prods., LLC*, No. 10 C 5711, 2012 WL 4498465 139632, at *15 ("The selection of custodians

14   must be designed to <u>respond fully to document requests</u> and to produce responsive, nonduplicative

15   documents during the relevant period." (emphasis added)).

16      Allowing Walmart to both unilaterally set the search terms and screen out (and not produce)

17   documents that Walmart determines to be irrelevant guarantees inefficiencies and unfairness. *See*

18   *EEOC v. Dolgencorp, LLC*, No. 1:09CV700, 2011 WL 1260241, at *15 (M.D.N.C. Mar. 31, 2011)

19   (rejecting party's unilateral relevance determinations); *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265

20   F.R.D. 370, 376 (S.D. Ind. 2009) ("Unilaterally deciding to conduct a cursory initial search to be fol-

21   lowed by 'rolling' productions from subsequent, more thorough, searches is not an acceptable op-

22   tion."). After all, Walmart and Stiles have diametrically opposing views of the relevance of the cate-

23   gory advisor program. So, Walmart's secretly removing documents that it unilaterally deems irrelevant

24   is unfair, uncooperative, and violates its obligations to produce relevant documents.

25      Satisfying a party's discovery obligations requires cooperation and multiple searches. At least

26   one court has expressly recognized that finding responsive ESI requires several iterations of searches,

27   and it is wrong to stop at just one. *See Brudnicki*, 291 F.R.D. at 677 n.13 (rejecting "an arbitrary limit

28

1  of a proposed ESI protocol's "limit[ing] the search term process to no more than 3 iterations of custo-

2  dian and search terms and hit reports"). Separately, the ESI order recognizes "the parties' respective

3  rolling production obligations, the parties' respective supplementation obligations," as well as their

4  obligations to "cooperate in good faith . . . ." (ECF No. 184 at 1:6–1:7, 7:4–7:5.)

5      Therefore, Walmart should be ordered to produce all documents withheld on the basis of a non-

6  existent agreement between parties.

7          **2.      Walmart's Contentions**

8      Walmart's response to plaintiffs' purported Second Dispute is combined with, and is reflected

9  in, Walmart's response to plaintiffs First Dispute, above.

10     **C.      Third Dispute: Walmart's Redactions in Past Document Productions**

11         **1.      Stiles' Contentions**

12             **a.      Walmart*'s* Relevancy Redactions Are Improper and It Must Pro-
                         duce the Documents in Unredacted Form.**

13     Walmart produced numerous redacted documents that were redacted solely on the basis of

14  relevancy.[6] This is improper because litigants are "not permitted to redact responsive documents for

15  relevancy purposes." *Caccamise v. Credit One Bank, N.A.*, Case No. 17-cv-971, 2019 WL 1900908,

16  at *5 (S.D. Cal. Apr. 26, 2019). *See Evon v. Law Offices of Sidney Mickell*, No. 09-cv-0760, 2010 WL

17  455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010) (finding that a party should not "unilaterally what context

18  is necessary for the non-redacted part disclosed, and what might be useless to the case"). Unilaterally

19  redacting information "breed[s] suspicions, and they may deprive the reader of context." *Francisco v.*

20  *Emeritus Corp.*, Case No. 17-cv-2871, 2017 WL 11036693, at *6 (C.D. Cal. Sept. 5, 2017) (holding

21  that the redacted document must be produced fully unredacted); *see Evon*, No. 09-cv-0760, 2010 WL

22  455476, at *2 n.1 (finding that a party should not "unilaterally what context is necessary for the non-

23  redacted part disclosed, and what might be useless to the case."). So "if one part of a document is

24  relevant then the entire document is relevant for the purposes of Fed. R. Civ. P. 34," and it must be

---

25

26  [6] These documents include, but are not limited to, those produced Walmart's Volume 3 document
    production. █████████████████████

27  ████████████████████████████████████████████████████████████████

28  ████████████████████

1  produced unredacted. *Francisco*, Case No. 17-cv-2871, 2017 WL 11036693 at *5; *see Caccamise v.*

2  *Credit One Bank, N.A.*, Case No. 18-cv-971, 2019 WL 1900908 at *5 (S.D. Cal. Apr. 26, 2019).

3        These redactions are particularly egregious because they directly contradict what Walmart ex-

4  plicitly told the Court at the November 14, 2018 hearing on the scope of the protective order. At that

5  hearing, Walmart advocated for the entry of a protective order with an attorneys' eyes-only provision.

6  In support, Walmart represented that it would *not* abuse that provision by hiding all data from Plain-

7  tiffs, and Walmart's counsel told the Court as follows:

8
9          I think a presumption inherent in plaintiff's part of the joint statement is that there is some sale information that she's requested, and defendants are going to designate all of it attorneys eyes only. That's not what's
10         going on here.

11 (Ex. 47 (Excerpt from Nov. 14, 2018 Hearing Transcript).)

12       Now, one year later, Walmart has engaged in far more nefarious conduct than simply abusing

13 the protective order by overusing the attorneys' eyes-only provision. *See Maness v. Meyers*, 419 U.S.

14 449, 458 (1975) ("[A]ll orders and judgments of courts must be complied with promptly[.]"); *Flores*

15 *v. Hagobian*, No. 1:04-CV-6405 AWI DLB, 2008 WL 170873, at *5 (E.D. Cal. Jan. 18, 2008)

16 ("[O]nce the court has ruled, counsel and others involved in the action must abide by the ruling and

17 comply with the court's orders.") (citation omitted). Rather than just deny Stiles' right to see the doc-

18 uments, Walmart denied Stiles that right by redacting everything—as it was denied the attorneys'

19 eyes-only provision that it advocated for.

20       Walmart will claim that these redactions are justified by the ESI Order in this case. That order

21 allows for the redaction of "sensitive, non-relevant information, including but not limited to personally

22 identifiable information, trade secrets, or information not related to the produced alleged in the oper-

23 ative complaint of this action." (ECF No. 184 at 3.) However, here, the information Stiles seeks is

24 relevant. The redacted information includes purchase information for products related to the Stiles

25 Razor, yet all of the content is redacted except for the information specific to the Stiles Razor. Stiles

26 is entitled to view the currently redacted information to understand the context and compare the sales

27 information within a given category as well as track any trends relevant to Stiles' claims (*e.g.*, pur-

28 chases of competing razors' numbers going up after Walmart's documented animus against Plaintiffs).

1    Moreover, the ESI Order itself recognizes that it does "limit[] or expand[] a Requesting Party's right

2    to obtain relevant discovery. (*Id.* at 1.)

3         Because Walmart's redactions are improper, these documents should be ordered produced un-

4    redacted. Alternatively, the Court should modify the Protective Order to prohibit unilateral redactions

5    because such practice is contrary to the substantial body of case law recognizing that documents should

6    not be redacted for relevance. (ECF No. 178 at 9 (allowing modification of the order for good cause).)

7                   **b.    Walmart*'s* Attorney-Client Privilege Redactions Are Improper.**

8         Initially, Walmart redacted portions of its Volume Four document production on the basis of

9    attorney-client privilege. ███████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████████

11   ███████████    Subsequently, Walmart filed Ms. Gifford's declaration in support of Walmart's July 25,

12   2019 Opposition to Plaintiffs' Motion Seeking Leave to Join Additional Defendants. (ECF No. 250-

13   4.) Therein, Ms. Gifford, as Walmart's designated person most knowledgeable ("PMK"), asserts that

14   Walmart's category advisor program complies with the antitrust laws and with the laws generally. (*Id.*

15   at 4:18-19 ("Walmart does not tolerate price fixing or other anticompetitive or <u>illegal conduct</u> among

16   its suppliers." (emphasis added)).)

17        Ms. Gifford is offered as a Walmart employee familiar with various categories at Walmart and

18   familiar with the category management process. (ECF No. 250-4 at 2:3–8.) She is not identified as an

19   attorney, nor is she identified as an attorney in Walmart's privilege log. To make a statement regarding

20   Walmart's category advisor program being legally compliant, she apparently relied on the advice of

21   counsel. Thus, Ms. Gifford has placed advice she received from Walmart's in-house counsel squarely

22   at issue and waived her claim to the attorney-client privilege.

23        When Stiles raised this issue of waiver, Walmart refused to produce documents previously

24   withheld or redacted concerning legal advice between Ms. Gifford and counsel. This refusal is im-

25   proper. Walmart's PMK is relying on advice of counsel to support one of its central defenses to Stiles'

26   claims, namely that Walmart's category advisor program was within legal bounds—that makes these

27   documents discoverable. *See Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1185–90 (E.D.

28

1    Cal. 2001) (holding that reliance on advice of counsel defense caused a broad waiver of several priv-

2    ileges); *see also Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 276 F. Supp. 2d 1084, 1092–96 (D. Nev.

3    2003) (finding that patent infringement defendant waived attorney-client privilege and work-product

4    doctrine by its reliance on opinion of counsel as defense to allegation of willful infringement).

5        Therefore, the Motion seeks an order compelling Walmart to produce all documents withheld

6    or redacted as privileged that involve any purported legal advice or work product concerning Ms.

7    Gifford.

8        **2.    Walmart's Contentions**

9            **a.    Relevance Redactions Are No Longer in Dispute**

10        Plaintiffs bury the lead as to the issue of redactions for relevance: the ESI Order in this case,

11    to which the parties stipulated, allows for the redaction of "information not related to the products

12    alleged in the operative complaint of this action."  ECF No. 184, at 4.  Under the plain reading of this

13    Court's Order, despite plaintiffs' citation to an unrelated discussion with the Court regarding an attor-

14    neys' eyes only protective order, the ESI Order allowed Walmart to make any and all relevance redac-

15    tions of product information unrelated to the Stiles' products or AI products included in the FAC.

16    *Johnson v. Hewlett Packard Co*., No. C-09-03596 CRB, 2011 U.S. Dist. LEXIS 164126, at *7 (N.D.

17    Cal. Apr. 21, 2011) (redactions for relevance appropriate when allowed by Court Order).

18        Regardless, there remains no dispute on this issue.  As described above, Walmart has since

19    produced all the documents at issue in unredacted form, and informed plaintiffs that it does not con-

20    sider this issue to be in dispute.  Ostrander Decl., Ex. 1 at 1 (Email from J. Ostrander to B. Dunne,

21    December 2, 2019)

22            **b.    There Has Been No Waiver of Attorney-Client Privilege As to the**

23                **Documents Plaintiff Seek**

24                **i.    Plaintiffs Did Not Include Their Requested Relief in the**

25                    **Notice of Motion**

26        Plaintiffs did not include in their notice of motion a request for relief seeking the immediate

27    production of materials redacted on the basis of the attorney-client privilege, based on a theory of

28

1   purported waiver.  ECF No. 279.  As such, plaintiffs waived any tardy request for such relief.  Federal

2   Rules of Civil Procedure, Rule 7(b)(1)(C) (A "motion must…(C) state the relief sought").

3           ii.      **There Has Been No Waiver of the Privilege With Respect to**

4                   **Mrs. Gifford**

5           Plaintiffs' claimed waiver of the attorney-client privilege with respect to "all documents with-

6   held or redacted as privileged that involve any purported legal advice or work product concerning"

7   Esther Gifford, an employee of Walmart, lacks any basis in law or fact.

8           Plaintiffs cite only two cases in support of their position, each of which involves an express

9   invocation of advice of counsel as a substantive defense to a patent infringement claim.  *See Chiron*

10  *Corp. v. Genentech, Inc.,* 179 F. Supp. 2d 1182, 1183 (E.D. Cal. 2001) ("One of the defenses raised in

11  the instant litigation (hereafter the '561 patent) is advice of counsel."); *Aspex Eyewear, Inc. v. E'Lite*

12  *Optik, Inc*., 276 F. Supp. 2d 1084, 1091 (D. Nev. 2003) ("when an accused infringer relies on the

13  advice of counsel defense the accused infringer waives the attorney-client privilege and work-product

14  immunity on the subject matter of the defense.").  Walmart plainly did not invoke advice of counsel

15  as a defense in its answer to the FAC.  ECF No. 189.

16          Nor does Mrs. Gifford's declaration invoke such a defense, either explicitly or by implication.

17  Indeed, the declaration does nothing more than state a Walmart policy—i.e., that Walmart "does not

18  tolerate price fixing or other anticompetitive or illegal conduct among its suppliers."  ECF No. 250-4

19  ¶ 13.  While plaintiffs characterize this statement as claiming "Walmart's category advisor program

20  being legally compliant," the statement makes no mention of category advisors, Walmart's use of cat-

21  egory advisors, or indeed any determination of the legality of any parties' conduct.  While plaintiffs

22  claim this policy statement places "advice from Walmart's in-house counsel squarely at issue," it dis-

23  closes neither the existence of advice from counsel (in-house or otherwise) nor the content of any such

24  advice.  The law is clear that "[i]n order to waive the privilege, the client must disclose the communi-

25  cation with the attorney itself."  *United States v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986); *Quiksil-*

26  *ver, Inc. v. Kymsta Corp*., 247 F.R.D. 579, 584 (C.D. Cal. 2007) (holding a client's deposition response

27  did not waive the attorney-client privilege where the client noted the broad subject matter of the legal

28

**Joint Statement re Discovery Disagreement**

1   advice without revealing the substance of any attorney-client communications); *Stein v. Tri-City*

2   *Healthcare Dist.*, 2014 WL 12695385, at *4-5 (S.D. Cal. Dec. 5, 2014) ("The attorney-client privilege

3   attaches to the content of the communications between the client and attorney, not the fact or general

4   topic of the confidential communication."). There has plainly been no disclosure of any actual com-

5   munication, or even the existence of a communication, to establish waiver here and the Court should

6   deny plaintiffs' motion.

7          Moreover, even if the Court finds some limited waiver of privilege as to Mrs. Gifford's com-

8   munications regarding category management, plaintiffs' requested relief is not clear. In this joint state-

9   ment, plaintiffs identify only two communications on Walmart's privilege log for which they poten-

10  tially seek production. *See* Section III(C)(1)(b), *supra,* citing Ex. 14a & 14b. Both of these commu-

11  nications are clearly described in Walmart's privilege log ████████████████████

12  ████████████████████████████ *See* Williamson Decl., Ex. 16 at entries

13  6 and 14. On the other hand, plaintiffs also broadly seek disclosure of "any purported legal advice"

14  (on any topic) "concerning Mrs. Gifford." This request is plainly overbroad as a "court must impose

15  a waiver no broader than needed to ensure the fairness of the proceedings." *Bittaker v. Woodford*, 331

16  F.3d 715, 720 (9th Cir. 2003). There is no basis for such relief, even if a limited waiver is found, and

17  plaintiffs' request should be denied on that basis.

18      **D.    Fourth Dispute: Walmart's Withholding of Documents Based on Objections to RFPs**

19

20          **1.    Stiles' Requests for Production and Walmart's Responses**

21

                           Stiles' RFP No. 1

22

    Documents evidencing, referring or relating to supplier agreements be-
    tween Walmart and American International Industries from January 1,

23  2007, to the date you respond to this request.

24                         Walmart's Response to RFP No. 1

25  Walmart objects to this Request as vague, ambiguous, and not seeking
    information that is relevant to the claims and defenses in this case, as it

26  uses the terms "evidencing, referring or relating to" without defining the
    terms. Walmart further objects to this Request as overly broad, unduly

27  burdensome, and not proportional to the needs of this case, as it seeks

28

"[d]ocuments evidencing referring or relating to supplier agreements between Walmart and American international Industries" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for supplier agreements between Walmart and American International Industries concerning "Salon Perfect Micro Razor," "Salon Perfect Precision Shaper," and "Ardell Brow Precision Shaper," which are specifically identified as the allegedly infringing products in paragraphs 50, 51, 62, 63, 64, and 66 of the Complaint. Walmart will not produce any document and/or ESI until a protective order is entered in this case.

<u>Walmart's First Supplemental Response to RFP No. 1</u>

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that it will conduct a reasonable search of business records within its possession, custody, or control for supplier agreements between Walmart and American International Industries concerning "Salon Perfect Micro Razor"(UPC 7846247617),"Salon Perfect Precision Shaper"(UPC 7846247059),and "Ardell Brow Precision Shaper"(UPC 7476425546), which are specifically identified as the allegedly infringing products in paragraphs 50, 51, 62, 63, 64, and 66 of the Complaint, and will produce responsive, non-privileged documents to the extent they exist.

<u>Stiles' RFP No. 2</u>

To the extent not already produced under Request No. 1, documents evidencing, referring or relating to any agreement between Walmart and American International Industries from January 1, 2007, to the date you respond to this request.

<u>Walmart's Response to RFP No. 2</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "evidencing, referring or relating to" without defining the

terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments evidencing referring or relating to supplier agreements between Walmart and American international Industries" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for supplier agreements between Walmart and American International Industries concerning "Salon Perfect Micro Razor," "Salon Perfect Precision Shaper," and "Ardell Brow Precision Shaper," which are specifically identified as the allegedly infringing products in paragraphs 50, 51, 62, 63, 64, and 66 of the Complaint. Walmart will not produce any document and/or ESI until a protective order is entered in this case.

### Walmart's First Supplemental Response to RFP No. 2

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will produce the supplier agreements between Walmart and American International Industries concerning "Salon Perfect Micro Razor" (UPC 7846247617), "Salon Perfect Precision Shaper" (UPC 7846247059), and "Ardell Brow Precision Shaper"(UPC 7476425546),which are specifically identified as the allegedly infringing products in paragraphs 50, 51, 62, 63, 64, and 66 of the Complaint.

### Stiles' RFP No. 3

Documents identified in your response to Plaintiffs' First Set of Interrogatories to Defendant Walmart.

### Walmart's First Response to RFP No. 3

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "identified," "in your response to," and "Plaintiffs' First Set of Interrogatories to Defendant Walmart" without defining the terms. Walmart further objects to this Request as overly broad, unduly

burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments evidencing referring or relating to supplier agreements between Walmart and American international Industries" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Walmart is not aware of any "Plaintiffs' First Set of Interrogatories to Defendant Walmart," thus is unable to respond beyond its objections at present.

<u>Stiles' RFP No. 4</u>

Documents that refer or relate to the Plaintiffs or any of Stiles' products, including the Stiles' Razor, from January 1, 2007, to the date you respond to this request.

<u>Walmart's Response to RFP No. 4</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "refer or relate to," "Stiles' products," and "Stiles' Razor" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments that refer or relate to the Plaintiffs or any of Stiles' products, including the Stiles' Razor" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.

Subject to and without waiving its objections, Walmart responds as follows: Due to this Request's lack of clarity and relevance as well as its

overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

Plaintiff's RFP No. 5

Documents sufficient to show sales of the Stiles Razor, including but not limited to reports of gross sales in units and revenue, product price, profit-and-loss analysis, cost of goods sold, and forecasts and projections, and pricing policies and strategy from January 1, 2006 to December 31, 2013.

<u>Walmart's Response to RFP No. 5</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "sales," "reports of gross sales projections," "pricing policies" and "strategy" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments sufficient to show sales of the Stiles Razor" regardless of relevance to the claims and defenses in this case. Walmart objects to this Request to the extent that it seeks the creation of documents or information that does not exist or is not normally kept in the ordinary course of business. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart objects to this Request to the extent that it seeks information within Stiles' own possession, custody, or control. Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

<u>Stiles' RFP No. 6</u>

Documents sufficient to show the prices charged to consumers by Walmart and the amounts paid by Walmart to Stiles for the Stiles Razor from January 1, 2006 to December 31, 2013.

<u>Walmart's Response to RFP No. 6</u>

Walmart objects to this Request as vague, ambiguous, and not seeking

information that is relevant to the claims and defenses in this case, as it uses the terms "prices charged to consumers," "amounts paid," and "Stiles Razor" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments sufficient to show the prices charged to consumers by Walmart and amounts paid by Walmart to Stiles for the Stiles Razor" regardless of relevance to the claims and defenses in this case. Walmart objects to this Request to the extent that it seeks the creation of documents or information that does not exist or is not normally kept in the ordinary course of business. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart objects to this Request to the extent that it seeks information within Stiles' own possession, custody, or control. Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

<u>Stiles' RFP No. 7</u>

Documents that refer or relate to the Salon Perfect Micro Razor from January 1, 2007 to the date you respond to this request.

<u>Walmart's Response to RFP No.7</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "refer or relate to" and "Salon Perfect Micro Razor" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments that refer or relate to the Salon Perfect Micro Razor" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other

applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its over-breadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

<u>Stiles' RFP No. 8</u>

Documents referring or related to the conception, research, design, development and commercialization of the Salon Perfect Micro Razor, including development meeting notes or correspondence, status reports, committee meeting minutes, testing reports, simulations, developers' notes and notebooks, project schedules, meeting presentations, algorithms, schematics, screen shots, drawings, prototypes, samples and specifications.

<u>Walmart's Response to RFP No.8</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or related to," "conception," "research," "design," "development," "commercialization," and "Salon Perfect Micro Razor" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring or related to the conception, research, design, development and commercialization of the Salon Perfect Micro Razor" regardless of relevance to the claims and defenses in this case.  Walmart objects to this Request to the extent that it seeks the creation of documents or information that does not exist or is not normally kept in the ordinary course of business.  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its over-breadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

**Joint Statement re Discovery Disagreement**

<u>Stiles' RFP No. 9</u>

Documents sufficient to show all representative specimens of each label, container, trade dress, wrapper, packaging, sign, catalog, or other document used to advertise, promote, sell, or otherwise commercialize the Salon Perfect Micro Razor.

<u>Walmart's Response to RFP No. 9</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "all representative specimens," "label, container, trade dress, wrapper, packaging, sign, catalog," "advertise, promote, sell, or otherwise commercialize," and "Salon Perfect Micro Razor" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments sufficient to show all representative specimens of each label, container, trade dress, wrapper, packaging, sign, catalog, or other documents used to advertise, promote, sell, or otherwise commercialize the Salon Perfect Micro Razor" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it is not limited in temporal scope. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents sufficient to show specimens of the "Salon Perfect Micro Razor" which is specifically identified as the allegedly infringing product in paragraph 69 of the Complaint from four (4) years prior to the filing of the present case to the filing date. Walmart will not produce any document and/or ESI until a protective order is entered in this case.

<u>Walmart's Supplemental Response to RFP No. 9</u>

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will conduct a reasonable search of business records within its possession, custody, or control for

**Joint Statement re Discovery Disagreement**

1    documents sufficient to show specimens of the "Salon Perfect Micro
     Razor"(UPC 7846247617),which is specifically identified as the alleg-
2    edly infringing product in paragraph 69 of the Complaint from six(6)
     years prior to the filing of the present case to the filing date, and will
3    produce responsive, non-privileged documents to the extent they exist.

4                          Stiles' RFP No. 10

5    Documents sufficient to show sales of the Salon Perfect Micro Razor,
6    including but not limited to reports of gross sales in units and revenue,
     product price, profit-and-loss analysis, cost of goods sold, and forecasts
7    and projections, and pricing policies and strategy from January 1, 2007
     to the date you respond to this request.
8    Walmart's Response to RFP No. 10

9    Walmart objects to this Request as vague, ambiguous, and not seeking
10   information that is relevant to the claims and defenses in this case, as it
     uses the terms "sales," "reports of gross sales in units and revenue,"
11   "product prices," profit-and-loss analysis," "cost of goods," "forecasts
12   and projections," "pricing policies," "strategy," and "Salon Perfect Mi-
     cro Razor" without defining the terms.  Walmart further objects to this
13   Request as overly broad, unduly burdensome, and not proportional to
     the needs of this case, as it seeks "[d]ocuments sufficient to show sales
14   of the Salon Perfect Micro Razor" regardless of relevance to the claims
     and defenses in this case.  Walmart objects to this Request to the extent
15   that it seeks the creation of documents or information that does not exist
     or is no normally kept in the ordinary course of business.  Walmart fur-
16   ther objects to this Request to the extent that it seeks information and/or
17   documents that contain confidential, trade secret, competitive, business,
     or other proprietary information.  Walmart further objects to this Re-
18   quest to the extent it seeks information not in Walmart's possession, cus-
     tody, or control and/or information in the custody or control of persons
19   and/or entities other than Walmart.  Subject to and without waiving its
     objections, Walmart responds as follows:
20
21   Walmart will conduct a reasonable search of business records within its
     possession, custody, or control for sales information concerning "Salon
22   Perfect Micro Razor," which is specifically identified as the allegedly
     infringing product in paragraph 62 of the Complaint from six (6) years
23   prior to the filing of the present case to the filing date.  Walmart will not
24   produce any document and/or ESI until a protective order is entered in
     this case.
25
                 Walmart's First Supplemental Response to RFP No. 10
26
27        Subject to and without waiving any of the foregoing general and
     specific objections, Walmart states that Walmart will produce the sales
28   information   concerning   "Salon   Perfect   Micro   Razor"   (UPC

7846247617), which is specifically identified as the allegedly infringing product in paragraph 62 of the Complaint from six (6) years prior to the filing of the present case to the filing date.

Stiles' RFP No. 11

Documents sufficient to show the prices charged to consumers and the amounts paid for by Walmart to American International Industries for the Salon Perfect Micro Razor from January 1, 2007 to the date you respond to this request.

Walmart's Response to RFP No. 11

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "prices charged to consumers," "amounts paid," and "Salon Perfect Micro Razor" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments sufficient to show the prices charged to consumers by Walmart and amounts paid by Walmart to American International Industries for the Salon Perfect Micro Razor" regardless of relevance to the claims and defenses in this case. Walmart objects to this Request to the extent that it seeks the creation of documents or information that does not exist or is not normally kept in the ordinary course of business.

Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for sales information concerning "Salon Perfect Micro Razor," which is specifically identified as the allegedly infringing product in paragraph 62 of the Complaint from six (6) years prior to the filing of the present case to the filing date. Walmart will not produce any document and/or ESI until a protective order is entered in this case.

Walmart's First Supplemental Response to RFP No. 11

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will produce sales information concerning "Salon Perfect Micro Razor"(UPC 7846247617),which is

specifically identified as the allegedly infringing product in paragraph 62 of the Complaint from six (6) years prior to the filing of the present case to the filing date.

<u>Stiles' RFP No. 12</u>

Documents that refer or relate to the Salon Precision Shaper and/or the Ardell Razor from January 1, 2007, to the date you respond to this request.

<u>Walmart's Response to RFP No.12</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "refer or relate to," "Salon Perfect Precision Shaper," and "Ardell Razor" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments that refer or relate to the Salon Perfect Precision Shaper and/or the Ardell Razor" regardless of relevance to the claims and defenses in this case.  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

<u>Stiles' RFP No. 13</u>

Documents referring or relating to the conception, research, design, development and commercialization of the Salon Perfect Precision Shaper, including development meeting notes or correspondence, status reports, committee meeting minutes, testing reports, simulations, developers' notes and notebooks, project schedules, meeting presentations, algorithms, schematics, screen shots, drawings, prototypes, samples and specifications.

1

<u>Walmart's Response to RFP No.13</u>

2

3

4

5

6

7

8

9

10

11

12

13

14

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or relating to," "conception," "research," "design," "development," "commercialization," and "Salon Perfect Precision Shaper" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring or related to the conception, research, design, development and commercialization of the Salon Perfect Precision Shaper" regardless of relevance to the claims and defenses in this case.  Walmart objects to this Request to the extent that it seeks the creation of documents or information that does not exist or is not normally kept in the ordinary course of business. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

15

16

17

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

18

19

<u>Stiles' RFP No. 14</u>

20

21

22

Documents sufficient to show all representative specimens of each label, container, trade dress, wrapper, packaging, sign, catalog, advertisements, promotions, sales, or other efforts to commercialize the Salon Perfect Precision Shaper.

23

<u>Walmart's Response to RFP No. 14</u>

24

25

26

27

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "all representative specimens," "label, container, trade dress, wrapper, packaging, sign, catalog, advertisements, promotions, sales," "efforts," "commercialize," and "Salon Perfect Precision Shaper" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the

28

needs of this case, as it seeks "[d]ocuments sufficient to show all representative specimens of each label, container, trade dress, wrapper, packaging, sign, catalog, advertisements, promotions, sales, or other efforts to commercialize the Salon Perfect Precision Shaper" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it is not limited in temporal scope. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents sufficient to show trade dress concerning "Salon Perfect Precision Shaper," which is specifically identified as the allegedly infringing product in paragraph 70 of the Complaint from four (4) years prior to the filing of the present case to the filing date. Walmart will not produce any document and/or ESI until a protective order is entered in this case.

### Walmart's First Supplemental Response to RFP No. 14

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents sufficient to show trade dress concerning "Salon Perfect Precision Shaper"(UPC 7846247059),which is specifically identified as the allegedly infringing product in paragraph 70 of the Complaint from six(6) years prior to the filing of the present case to the filing date, and will produce responsive, non-privileged documents to the extent they exist.

### Stiles' RFP No. 15

Documents sufficient to show sales of the Salon Perfect Precision Shaper, including but not limited to reports of gross sales in units and revenue, product price, profit-and-loss analysis, cost of goods sold, and forecasts and projections, and pricing policies and strategy from January 1, 2007 to the date you respond to this request.
Walmart's Response to RFP No. 15

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "sales," "reports of gross sales in units and revenue," "product prices," profit-and-loss analysis," "cost of goods," "forecasts and projections," "pricing policies," "strategy," and "Salon Perfect Micro Razor" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments sufficient to show sales of the Salon Perfect Precision Shaper" regardless of relevance to the claims and defenses in this case.  Walmart objects to this Request to the extent that it seeks the creation of documents or information that does not exist or is no normally kept in the ordinary course of business.  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for sales information concerning "Salon Perfect Precision Shaper," which is specifically identified as the allegedly infringing product in paragraphs 51 and 63 of the Complaint from six (6) years prior to the filing of the present case to the filing date. Walmart will not produce any document and/or ESI until a protective order is entered in this case.

<u>Walmart's First Supplemental Response to RFP No. 15</u>

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will produce the sales information concerning "Salon Perfect Precision Shaper"__(UPC 7846247059), which is specifically identified as the allegedly infringing product in paragraphs 51 and 63 of the Complaint from six (6) years prior to the filing of the present case to the filing date.

<u>Stiles' RFP No. 16</u>

Documents sufficient to show the prices charged to consumers by Walmart and amounts paid by Walmart to American International Industries for the Salon Perfect Precision Shaper from January 1, 2007 to the date you respond to this request.

<u>Walmart's Response to RFP No. 16</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it

uses the terms "prices charged to consumers," "amounts paid," and "Salon Perfect Precision Shaper" without defining the terms .  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments sufficient to show the prices charged to consumers by Walmart and amounts paid by Walmart to American International Industries for the Salon Perfect Precision Shaper" regardless of relevance to the claims and defenses in this case .  Walmart objects to this Request to the extent that it seeks the creation of documents or information that does not exist or is not normally kept in the ordinary course of business .  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information .  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart .  Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for sales information concerning "Salon Perfect Precision Shaper," which is specifically identified as the allegedly infringing product in paragraphs 51 and 63 of the Complaint from six (6) years prior to the filing of the present case to the filing date .  Walmart will not produce any document and/or ESI until a protective order is entered in this case .

Walmart's First Supplemental Response to RFP No. 16

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will produce sales information concerning "Salon Perfect Precision Shaper"(UPC 7846247059),which is specifically identified as the allegedly infringing product in paragraphs 51 and 63 of the Complaint from six (6) years prior to the filing of the present case to the filing date.

Stiles' RFP No. 20

Documents mentioning, referring or relating to the '468 Patent.

Walmart's Response to RFP No. 20

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "mentioning, referring or relating to" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments mentioning, referring or relating to the '468 Patent" regardless of relevance to the claims and defenses in this case.  Walmart

further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it is not limited in temporal scope.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents responsive to this Request.  Walmart will not produce any document and/or ESI until a protective order is entered in this case.

<u>Walmart's First Supplemental Response to RFP No. 20</u>

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents responsive to this Request, and will produce responsive, non-privileged documents to the extent they exist.

<u>Stiles' RFP No. 21</u>

Documents mentioning, referring or relating to the '329 Patent.

<u>Walmart's Response to RFP No. 21</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "mentioning, referring or relating to" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments mentioning, referring or relating to the '329 Patent" regardless of relevance to the claims and defenses in this case.  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it is not limited in temporal scope.  Walmart

1   also objects to this Request to the extent that it seeks documents and
    communications protected from disclosure by the attorney-client privi-
2   lege, work product doctrine, common interest privilege, and any other
    applicable privilege or protection.  Subject to and without waiving its
3   objections, Walmart responds as follows:

4   Walmart will conduct a reasonable search of business records within its
    possession, custody, or control for documents responsive to this Re-
5   quest.  Walmart will not produce any document and/or ESI until a pro-
6   tective order is entered in this case.

7               Walmart's First Supplemental Response to RFP No. 21

8   Subject to and without waiving any of the foregoing general and specific
    objections, Walmart states that Walmart will conduct a reasonable
9   search of business records within its possession, custody, or control for
    documents responsive to this Request, and will produce responsive,
10  non-privileged documents to the extent they exist.

11                          Stiles' RFP No. 25

12  Documents, including any correspondence, email or data in electronic
13  form, mentioning, referring, or relating to when Defendant first became
    aware of the existence of the '468 Patent or its alleged infringement
14  thereof, or any of Plaintiffs' patents.

15              Walmart's Response to RFP No. 25

16  Walmart objects to this Request as vague, ambiguous, and not seeking
17  information that is relevant to the claims and defenses in this case, as it
    uses the terms "correspondence, email or data in electronic form,"
18  "mentioning, referring, or relating to," "became aware of," "existence,"
    and "Plaintiffs' patents" without defining the terms.  Walmart further
19  objects to this Request as overly broad, unduly burdensome, and not
20  proportional to the needs of this case, as it seeks "[d]ocuments, includ-
    ing any correspondence, email or data in electronic form, mentioning,
21  referring, or relating to when Defendant first became aware of the ex-
    istence of the '468 Patent or its alleged infringement thereof, or any of
22  Plaintiffs' patents" regardless of relevance to the claims and defenses in
23  this case.  Walmart further objects to this Request to the extent that it
    seeks information and/or documents that contain confidential, trade se-
24  cret, competitive, business, or other proprietary information.  Walmart
    further objects to this Request to the extent it seeks information not in
25  Walmart's possession, custody, or control and/or information in the cus-
    tody or control of persons and/or entities other than Walmart.  Walmart
26  also objects to this Request to the extent that it seeks documents and
27  communications protected from disclosure by the attorney-client privi-
    lege, work product doctrine, common interest privilege, and any other
28

applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents responsive to this Request.  Walmart will not produce any document and/or ESI until a protective order is entered in this case.

<u>Walmart's First Supplemental Response to RFP No. 25</u>

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents responsive to this Request, and will produce responsive, non-privileged documents to the extent they exist.

<u>Stiles' RFP No. 26</u>

Documents sufficient to show when Defendant first became aware of the existence of the '329 Patent or its alleged infringement thereof, or any of the Plaintiffs' patents.

<u>Walmart's Response to RFP No. 26</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "first became aware of," "existence of," and "Plaintiffs' patents" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments sufficient to show when Defendant first became aware of the existence of the '329 Patent or its alleged infringement thereof, or any of the Plaintiffs' patents" regardless of relevance to the claims and defenses in this case.  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents responsive to this Request.  Walmart will not produce any document and/or ESI until a protective order is entered in this case.

<u>Walmart's First Supplemental Response to RFP No. 26</u>

Subject to and without waiving any of the foregoing general and specific objections, Walmart states that Walmart will conduct a reasonable search of business records within its possession, custody, or control for documents responsive to this Request, and will produce responsive, non-privileged documents to the extent they exist.

<u>Stiles' RFP No. 27</u>

Documents which comprise, refer or relate to samples of all promotional items, marketing material or advertisements referring or relating to the Salon Perfect Micro Razor from January 1, 2007 to the date you respond to this request.

<u>Walmart's Response to RFP No. 27</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "comprise, refer or relate to," "samples," "promotional items," "marketing material," "advertisements," "referring or relating to," and "Salon Perfect Micro Razor" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments which comprise, refer or relate to samples of all promotional items, marketing material or advertisements referring or relating to the Salon Perfect Micro Razor" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

**Joint Statement re Discovery Disagreement**

Stiles RFP No. 28

Documents referring or relating to samples of all promotional items, marketing material or advertisements for the Salon Perfect Precision Shaper from January 1, 2007 to the date you respond to this request.

Walmart's Response to RFP No. 28

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or relating to," "samples," "promotional items," "marketing material," "advertisements," and "Salon Perfect Precision Shaper" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring or relating to samples of all promotional items, marketing material or advertisements for the Salon Perfect Precision Shaper" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

Stiles' RFP No. 29

Documents referring or relating to samples of all promotional items, marketing material or advertisements for the Stiles Razor from January 1, 2006 to the date you respond to this request.

Walmart's Response to RFP No. 29

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or relating to," "samples," "promotional items," "marketing material," "advertisements," and "Stiles Razor" without defining the terms. Walmart further objects to this Request as

73

1
2
3
4
5
6
7
8
9

overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring or relating to samples of all promotional items, marketing material or advertisements for the Stiles Razor" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

10
11

Due to this Request's lack of clarity and relevance as well as its over-breadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

12

<u>Stiles' RFP No. 30</u>

13
14

Documents referring or relating to any advantages, benefits or features of the Salon Perfect Micro Razor from January 1, 2007 to the date you respond to this request.

15

<u>Walmart's Response to RFP No. 30</u>

16
17
18
19
20
21
22
23
24
25
26
27

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or relating to," "advantages, benefits or features," and "Salon Perfect Micro Razor" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring or relating to any advantages, benefits or features of the Salon Perfect Micro Razor" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Due to this Request's lack of clarity and relevance as well as its over-breadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

<u>Stiles' RFP No. 31</u>

Documents referring or relating to any advantages, benefits or features of the Salon Perfect Precision Shaper from January 1, 2007 to the date you respond to this request.

<u>Walmart's Response to RFP No.31</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or relating to," "advantages, benefits or features," and "Salon Perfect Precision Shaper" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring or relating to any advantages, benefits or features of the Salon Perfect Precision Shaper" regardless of relevance to the claims and defenses in this case.  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its over-breadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

<u>Stiles' RFP No. 39</u>

Documents sufficient to show Walmart's policies and practices regarding the designation of items listed on Walmart's website, Walmart.com, as "out of stock" and/or "no longer available" from January 1, 2006, to the date you respond to this request.

**Joint Statement re Discovery Disagreement**

1

<u>Walmart's Response to RFP No. 39</u>

2

Walmart objects to this Request as vague, ambiguous, and not seeking
information that is relevant to the claims and defenses in this case, as it

3

uses the terms "policies and practices," "regarding," and "designation"
without defining the terms.  Walmart further objects to this Request to

4

the extent that it seeks information and/or documents that contain con-
fidential, trade secret, competitive, business, or other proprietary infor-

5

mation.  Walmart also objects to this Request to the extent that it seeks

6

documents and communications protected from disclosure by the attor-
ney-client privilege, work product doctrine, common interest privilege,

7

and any other applicable privilege or protection.  Subject to and without
waiving its objections, Walmart responds as follows:

8

9

Due to this Request's lack of clarity and relevance as well as its over-
breadth, Walmart is unable to respond beyond its objections at present.

10

Walmart is willing to confer with Stiles to determine a reasonable scope
for this Request.

11

12

<u>Stiles' RFP No. 40</u>

13

Documents sufficient to show Walmart's policies and practices regard-
ing the continued listing of any product on Walmart's website,

14

Walmart.com, after a supplier agreement is terminated and not renewed
from January 1, 2006, to the date you respond to this request.

15

16

<u>Walmart's Response to RFP No. 40</u>

17

Walmart objects to this Request as vague, ambiguous, and not seeking
information that is relevant to the claims and defenses in this case, as it

18

uses the terms "policies and practices," "regarding," "continued listing,"
and "terminated and not renewed" without defining the terms.  Walmart

19

further objects to this Request to the extent that it seeks information
and/or documents that contain confidential, trade secret, competitive,

20

business, or other proprietary information.  Walmart also objects to this

21

Request to the extent that it seeks documents and communications pro-
tected from disclosure by the attorney-client privilege, work product

22

doctrine, common interest privilege, and any other applicable privilege
or protection.  Subject to and without waiving its objections, Walmart

23

responds as follows:

24

Due to this Request's lack of clarity and relevance as well as its over-

25

breadth, Walmart is unable to respond beyond its objections at present.
Walmart is willing to confer with Stiles to determine a reasonable scope

26

for this Request.

27

28

**Joint Statement re Discovery Disagreement**

1

<u>Stiles' RFP No. 41</u>

2

Documents referring or relating to the advertising of the Stiles Razor on
Walmart's website, from January 1, 2006, to the date you respond to
3    this request.

4

<u>Walmart's Response to RFP No. 41</u>

5

Walmart objects to this Request as vague, ambiguous, and not seeking
6    information that is relevant to the claims and defenses in this case, as it
uses the terms "referring or relating to," "advertising," and "Stiles Ra-
7    zor" without defining the terms.  Walmart further objects to this Request
as overly broad, unduly burdensome, and not proportional to the needs
8    of this case, as it seeks "[d]ocuments referring or relating to the adver-
tising of the Stiles Razor on Walmart's website" regardless of relevance
9    to the claims and defenses in this case.  Walmart further objects to this
Request to the extent that it seeks information and/or documents that
10   contain confidential, trade secret, competitive, business, or other propri-
etary information.  Walmart further objects to this Request to the extent
11   it seeks information not in Walmart's possession, custody, or control
and/or information in the custody or control of persons and/or entities
12   other than Walmart.  Walmart objects to this Request to the extent that
it seeks information within Stiles' own possession, custody, or control.
13   Walmart also objects to this Request to the extent that it seeks docu-
ments and communications protected from disclosure by the attorney-
14   client privilege, work product doctrine, common interest privilege, and
any other applicable privilege or protection.   Subject to and without
15   waiving its objections, Walmart responds as follows:
16

17   Due to this Request's lack of clarity and relevance as well as its over-
breadth, Walmart is unable to respond beyond its objections at present.
18   Walmart is willing to confer with Stiles to determine a reasonable scope
for this Request.
19

20

<u>Stiles' RFP No. 42</u>

21

Documents referring or relating to the listing of the Stiles Razor on
22   Walmart's website, including any changes thereto, from January 1,
2006, to the date you respond to this request.
23

<u>Walmart's Response to RFP No. 42</u>
24

25   Walmart objects to this Request as vague, ambiguous, and not seeking
information that is relevant to the claims and defenses in this case, as it
26   uses the terms "referring or relating to," "listing," "Stiles Razor," and
"changes" without defining the terms.  Walmart further objects to this
27   Request as overly broad, unduly burdensome, and not proportional to

28

**Joint Statement re Discovery Disagreement**

1
2
3
4
5
6
7
8
9

the needs of this case, as it seeks "[d]ocuments referring or relating to the listing of the Stiles Razor on Walmart's website" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart objects to this Request to the extent that it seeks information within Stiles' own possession, custody, or control. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

10
11
12

Due to this Request's lack of clarity and relevance as well as its overbreadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

13

<u>Stiles' RFP No. 43</u>

14
15

Documents referring to or relating to any pay-per-click advertising campaign by Walmart that included the terms "Stiles" or "Stiles Razor" from January 1, 2006, to the date you respond to this request.

16

<u>Walmart's Response to RFP No. 43</u>

17
18
19
20
21
22
23
24
25
26
27

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or relating to" and "pay-per-click advertising campaign" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring to or relating to any pay-per-click advertising campaign by Walmart" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart. Walmart objects to this Request to the extent that it seeks information within Stiles' own possession, custody, or control. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege,

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and any other applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its over-breadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

Stiles' RFP No. 44

Documents referring or relating to the search terms "Stiles" and/or "Stiles Razor" on Walmart.com from January 1, 2007, to the date you respond to this request.

Walmart's Response to RFP No. 44

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "referring or relating to" and "search terms" without de-fining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments referring or relating to the search terms "Stiles" and/or "Stiles Razor" on Walmart.com" regardless of relevance to the claims and defenses in this case.  Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other propri-etary information.  Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the custody or control of persons and/or entities other than Walmart.  Walmart objects to this Request to the extent that it seeks information within Stiles' own possession, custody, or control. Walmart also objects to this Request to the extent that it seeks docu-ments and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its over-breadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

Stiles' RFP No. 49

Documents that refer or relate to Walmart's preservation, retention, or destruction of documents which refer or relate to the subject matter of this litigation.

79

**Joint Statement re Discovery Disagreement**

Walmart's Response to RFP No. 49

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "refer or relate to," "preservation, retention, or destruction," "refer or relate to," and "subject matter" without defining the terms.  Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments that refer or relate to Walmart's preservation, retention, or destruction of documents" regardless of relevance to the claims and defenses in this case.  Walmart objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its over-breadth, Walmart is unable to respond beyond its objections at present.  Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

Stiles' RFP No. 55

Documents that Walmart intends to proffer as evidence or otherwise use at trial in this litigation.

Walmart's Response to RFP No. 55

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "intends to" and "otherwise use" without defining the terms.  Walmart further objects to this Request on the grounds it is not relevant to claims that have been adequately pled under the Federal Rules of Civil Procedure or defenses to any such claims.  Currently pending before the Court is Walmart's motion to dismiss plaintiff's antitrust claims, which fail as a matter of law.  Walmart objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade secret, competitive, business, or other proprietary information.  Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Walmart further objects to this Request as premature.  Walmart further objects to the extent this Request calls for legal argument or conclusion.  Subject to and without waiving its objections, Walmart responds as follows:

Walmart is willing to confer with Stiles to determine a reasonable scope and timing for this Request.

<u>Stiles' RFP No. 56</u>

Documents sufficient to identify persons who Walmart believes have knowledge or information relevant to this litigation.

<u>Walmart's Response to RFP No. 56</u>

Walmart objects to this Request as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case, as it uses the terms "identify," "believes," "knowledge or information," and "relevant to" without defining the terms. Walmart further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as it seeks "[d]ocuments sufficient to identify persons who Walmart believes have knowledge or information relevant to this litigation" regardless of relevance to the claims and defenses in this case. Walmart further objects to this Request to the extent that it seeks information and/or documents that contain confidential, trade se-cret, competitive, business, or other proprietary information. Walmart further objects to this Request to the extent it seeks information not in Walmart's possession, custody, or control and/or information in the cus-tody or control of persons and/or entities other than Walmart. Walmart also objects to this Request to the extent that it seeks documents and communications protected from disclosure by the attorney- client priv-ilege, work product doctrine, common interest privilege, and any other applicable privilege or protection. Subject to and without waiving its objections, Walmart responds as follows:

Due to this Request's lack of clarity and relevance as well as its over-breadth, Walmart is unable to respond beyond its objections at present. Walmart is willing to confer with Stiles to determine a reasonable scope for this Request.

**2.     Stiles' Contentions**

      **a.     Walmart Wholly Failed to State Whether It Withheld Documents Responsive to RFPs Based on Its Objections.**

The federal rules require that each response to a request for production "state whether any responsive material are being withheld on the basis of [its] objection[s]." FED. R. CIV. P. 34(b)(2)(C). Walmart makes objections to all 59 of Stiles requests; however, it fails to state in each response whether documents are being withheld on the basis of its objections. Notably, 12 responses contain numerous objections followed by a generic statement that Walmart will produce responsive

1   documents. (RFP Nos.1–2, 9–11, 14–16, 20–21, 25–26.) Another 21 responses contain a litany of ob-

2   jections and then a generic statement that Walmart will produce documents pending an agreement on

3   "scope." (RFP Nos. 4–8, 12–13, 27-31, 39–44, 49, 55–56.) However, none of these responses indicate

4   whether Walmart is withholding documents based on its objections. Therefore, it is impossible for

5   Stiles to tell whether Walmart is withholding documents on the basis of Walmart's objections.

6         Walmart should be ordered to amend its responses to state whether—after this Motion is de-

7   cided—it is still withholding documents on the basis of its objections.

8                    **b.      Walmart's Objections to Stiles' RFPs Are Meritless.**

9         Walmart's objections based on "proportionality" and/or "overbreadth" fall well short of the

10  standard established in courts across the country. (Ex. 6 (Walmart's Response to RFPs, No. 9, 22–24).)

11  For burdensome objections to be valid, Walmart "must show specifically how, despite the broad and

12  liberal construction afforded the federal discovery rules, each [request] is not relevant or how each

13  [request] is overly broad, burdensome or oppressive by submitting affidavits or offering evidence re-

14  vealing the nature of the burden." *See Roesberg v. Johns–Manville Corp.*, 85 F.R.D. 292, 296 (E.D.

15  Pa. 1980) (citations omitted); *see also In re ATM Fee Antitrust Litigation,* 233 F.R.D. 542, 545 (N.D.

16  Cal. 2005) (granting motion to compel and holding unsubstantiated overbreadth objections were mer-

17  itless) citing *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540 (10th Cir. 1984, *cert dismissed,* 469

18  U.S. 1199 (1985). Indeed, a "…litany of [the words] overly burdensome, oppressive, and irrelevant

19  does not alone constitute a successful objection to a discovery requests." *See In re ATM Antitrust*

20  *Litigation,* 233 F.R.D. at 545.

21        For a burdensomeness argument to be sufficiently specific to prevail, the affidavits or other

22  evidence must show the exact nature of the burden. *See Kansas–Nebraska Natural Gas v. Marathon*

23  *Oil Co.,* 109 F.R.D. 12, 24 (D. Neb. 1983) (party objecting to production requests must specify why

24  the requests are objectionable); *Roesberg*, 85 F.R.D. at 296–97 (holding that defendant's general

25  "overbroad" objections were insufficient and rejected). To the extent a party relies on boiler plate

26  objections—such as the ones Walmart has asserted here—without making a specified showing as to

27  its burden, courts have held that serves as a waiver of any legitimate objections a litigant may have

28

**Joint Statement re Discovery Disagreement**

1  had. *See, e.g.*, *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 364 (D. Md. 2008) (observing

2  that failure to "particularize" objections would be proper grounds for ordering defendants to provide

3  requested discovery). Here, Walmart has offered no evidence—by affidavit or otherwise—in support

4  of its objections, nor has it specific the exact nature of the supposed burden.

5      Additionally, Walmart asserts boilerplate "proportionality" objections as an excuse to not

6  search for (or perhaps withhold) responsive documents. These objections permeate Walmart's re-

7  sponses—sometimes even twice in one request. (Ex. 6 (Walmart's Response to RFP, Set 1) (objecting

8  on proportionality grounds twice in response to Request No. 9).) These objections are also meritless.

9  A party cannot "refuse discovery simply by making a boilerplate objection that it is not proportional."

10 *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, Case No. 16-cv-00300, 2017 WL 3275615, at *6

11 (C.D. Cal. Feb. 14, 2017). Instead, proportionality requires a real and searching analysis of "the im-

12 portance of the issues at stake in the action, the amount in controversy, the parties' relative access to

13 relevant information, the parties' resources, the importance of the discovery in resolving the issues,

14 and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R.

15 CIV. P. 26(b)(1).

16      Stiles' requests are not overbroad because they seek documents pertaining to specific patents

17 held by Stiles; the requests are directly tied to the patents at issue. (Ex. 6 (Walmart's Response to

18 RFPs, No. 22–24).) Separately, there is no support for Walmart's "proportionality" objection. This is

19 a patent infringement and antitrust action against the largest retailer—and the largest company—in the

20 United States. This case involves a conspiracy between Walmart, AI, and other international corpora-

21 tions to exclude a competitor (Stiles), restrict outputs, and set prices for competing products. The

22 issues decided in this case will affect countless companies like Stiles across the country.

23      The Court should order Walmart to withdraw its baseless objections and provide fulsome dis-

24 covery responses, to include all relevant documents requested.

25          **3.      Walmart's Contentions**

26      As described above in Section I(C)(1)(d) describing the parties meet and confer process, plain-

27 tiffs raise for the first time here 33 separate RFPs for which they claim Walmart's response was

28

1   deficient.  In particular, during the recent meet and confers, plaintiffs have never (1) requested that

2   Walmart amend its responses to confirm whether it was withholding documents on the basis of its

3   objections to the RFPs or (2) identified the list of RFP responses identified by plaintiffs in their Fourth

4   Dispute as insufficient.  Their motion on this issue should thus be denied for failure to adequately meet

5   and confer.  *See United States v. Peery*, No. 2:18-cv-01074 JAM AC, 2018 U.S. Dist. LEXIS 159440,

6   at *3 (E.D. Cal. Sept. 17, 2018) (denying motion to compel because the parties had failed to file a joint

7   statement and "there was no indication that the parties have met and conferred regarding the instant

8   disputes"); *Causey v. Portfolio Acquisitions, LLC*, No. 2:10-cv-2781-KJM-EFB PS, 2013 U.S. Dist.

9   LEXIS 53219, at *7 (E.D. Cal. Apr. 12, 2013) (denying the motion to compel because the parties did

10   not file a joint statement or "seriously discuss many of the specific discovery requests at issue").

11         **E.**    **Fifth Dispute: Walmart's Response to Interrogatory No. 4**

12              **1.**    **Stiles' Interrogatory and Walmart's Response**

13                        Stiles' Interrogatory No. 4

14           For the Salon Perfect Micro Razor and the Salon Perfect Precision
15           Shaper, state:

16           a.  The applications or end uses for each product; and
              b.  The identity of all substitutes for each product, and for each substi-
17           tute, describe any differences in the substitutes' pricing, applications or
              end uses, and technical characteristics, including blade measurements.
18           c.  A description of your process of and the factors you consider when
              setting or negotiating prices for each product, including pricing strate-
19           gies, practices, and policies, as well as specific costs, customer types or
              attributes, and specific competitors and products;
20           d.  The identity of all documents relating to the technical characteristics,
              applications or end uses, substitutes, and factors relating to setting or
21           negotiating prices for each product; and
              e.  The identity of all persons responsible for creating or monitoring
22           pricing strategy and setting and negotiating prices for each product.

23                    Walmart's Response to Interrogatory No. 4

24           Walmart objects to this Interrogatory as vague, ambiguous, and not
25           seeking information that is relevant to the claims and defenses in this
              case.  Walmart further objects to this Interrogatory as overly broad, un-
26           duly burdensome, and not proportional to the needs of this case.
              Walmart further objects to this Interrogatory to the extent it seeks infor-
27           mation not in Walmart's possession, custody, or control and information
              in the custody or control of persons or entities other than Walmart.
28

Walmart also objects to this Interrogatory to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Walmart further objects to this Interrogatory on the grounds it is not relevant to claims that have been adequately pled under the Federal Rules of Civil Procedure or defenses to any such claims.  Currently pending before the Court is Walmart's motion to dismiss plaintiff's antitrust claims, *see* Dkt. No. 147, which fail as a matter of law.  Walmart objects to answering this interrogatory on the grounds it is a contention interrogatory and discovery is still in the early stages.

Walmart objects on numerosity grounds to the request in Interrogatory 4(b) for a description of "any differences in the substitutes' pricing, applications, or end uses, and technical characteristics, including blade measurements," as answering this request would require providing information on dozens if not hundreds of substitutes.  Each substitute would amount to its own discrete subpart and the total would result in the current set of interrogatories exceeding the twenty-five allowed under Federal Rule of Civil Procedure 33(a).  In addition, Walmart objects to the request in Interrogatory 4(b) for a description of "any differences in the substitutes' pricing, applications, or end uses, and technical characteristics, including blade measurements," on the grounds that the burden of ascertaining the answer is substantially the same for plaintiffs as it is for Walmart.  Walmart further objects to this request on the grounds that it calls for publicly available documents or documents not in Walmart's possession, custody, or control.

Subject to and without waiving its objections, Walmart responds as follows:

(a)  The application or end use for the Salon Perfect Micro Razor and the Salon Perfect Precision Shaper is shaving.

(b)  All other razors for shaving are substitutes (for purposes of the antitrust laws) for the Salon Perfect Micro Razor and the Salon Perfect Precision Shaper.

(c)  In setting or negotiating prices, Walmart considers, *inter alia*, consumer demand for the product; customer and supplier feedback; the corresponding profitability; past prices and sales volumes; the prices of other products; inventory levels; and purchase volumes.  Walmart sets and negotiates prices to ensure everyday low prices to its customers.

(d)  Walmart refers plaintiffs to Walmart's forthcoming documents productions.  The burden of deriving or ascertaining the answer to this subpart from the documents produced by Walmart in this action is substantially the same for plaintiffs as it is for Walmart.

(e)  The persons responsible for creating and monitoring pricing strategy as to the Salon Perfect Precision Shaper and Salon Perfect Micro Razor at Walmart were the relevant product buyers and includes, but is not limited to, Esther Gifford, Norman Nelson, Andrea Tubbs, and Carmen Bauza.

2.      **Stiles' Contentions**

a.      **Walmart's Response Fails to Identify the Referenced Documents, Custodians, or Production Set.**

Walmart has failed to comply with Rule 33, which requires that Walmart identify "the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . ." FED. R. CIV. P. 33(d). Walmart has not identified which documents it is relying on, and it has not identified which custodians are in possession of such documents.

First, as to subpart (d), Walmart "refers" Plaintiffs to Walmart's "forthcoming" document productions to "ascertaining the answer" to the interrogatory. Yet, despite an 11-part rolling production, Walmart's response does not state what production volume supports its response, nor does it identify any specific documents. Instead, Walmart claims that the "burden of deriving or ascertaining" the answer is "the same for plaintiffs as it is for Walmart." Walmart knows what custodians are in possession of the documents it is reference. Walmart knows which document production(s) it is relying on. Plaintiffs do not. Stiles has no ability access Walmart's database(s) where Walmart's documents and communications are held. Indeed, the fact that this Motion has been filed underscores what should be self-evident: Walmart, through its category advisor program, determined the price points for razors sold on its store shelves—a program that Stiles currently has no visibility on.

Second, the subpart (e) response is equally insufficient. Walmart includes only a partial list of "[t]he persons responsible for creating or monitoring pricing strategy and setting and negotiating prices . . . ." Walmart must do more. The request demands that Walmart identify "all persons," not an illustrative sample. S*ee Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 2008) (rejecting the interrogatory response's "use of the catchall phrase 'including'"). In sum, the responses to both subparts are deficient. To date, Walmart has refused to do so despite multiple letters demanding that it do so and meet and confers on this issue. (Ex. 21 (Oct. 2, 2019 Walmart's response letter).)

Accordingly, the Court should order to supplement this interrogatory response.

### 3.   Walmart's Contentions

Walmart served its responses to Plaintiffs' First Set of Interrogatories, including all of the interrogatories at issue in the present motion, on February 7, 2019, prior to any party, including Walmart, completing its document productions, or any other affirmative discovery.  Thus, plaintiffs' complaints that the responses do not properly identify documents or the production volume such documents might be contained in lack merit.  Quite simply, Walmart based its response to Interrogatory No. 5 on the information available to Walmart at the time, three months after discovery commenced.  Williamson Decl., Ex. 2.

Rule 33 explicitly calls for, and allows for, amendment of interrogatory response as fact discovery progresses.  As described above in Section I(C)(1)(e), Walmart's proposal in the meet and confer process was that the parties agree on a mutually agreeable day for supplementation of interrogatory responses.  Plaintiffs have indicated that they plan to serve amended interrogatory responses by December 13.  Ostrander Decl., Ex. 3 (Letter from A. Williamson to J. Ostrander November 22, 2019, titled November 19, 2019 Meet and Confer Concerning Plaintiffs' Responses to Requests for Production of Documents and Interrogatories).

Walmart is similarly willing to serve verified, amended interrogatory responses on or before December 13 that will address the issues raised in this motion as to the Fifth, Sixth, and Seventh disputes described in this motion.  On December 2, 2019, Walmart informed plaintiffs of this compromise.  Ostrander Decl., Ex. 3 at 1.

### F.   Sixth Dispute: Walmart's Response to Interrogatory No. 5

#### 1.   Stiles' Interrogatory and Walmart's Response

Stiles' Interrogatory No. 5

Describe in detail all facts and circumstances relating to Walmart's agreement with American International Industries to manufacture and sell the Salon Perfect Micro Razor, including the alleged admission in the Fourth Amended Complaint by AI's Terri Cooper that Walmart handed AI a copy of the Stiles' Razor and asked AI to make a copy, and the person(s) most knowledgeable about your response to this interrogatory.

1

<u>Walmart's Response to Interrogatory No. 5</u>

2

Walmart objects to this Interrogatory as vague, ambiguous, compound, and not seeking information that is relevant to the claims and defenses in this case.  Walmart objects to the terms "all facts and circumstances relating to," "Walmart's agreement with American International Industries," and "manufacture and sell" as overly broad, unduly burdensome, vague, ambiguous, and seeking information that is not relevant to any claim or defense of any party in this action, or not proportional to the needs of the case.  Walmart further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case.  Walmart further objects to this Interrogatory to the extent it seeks information not in Walmart's possession, custody, or control and information in the custody or control of persons or entities other than Walmart.  Walmart also objects to this Interrogatory to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.

3

4

5

6

7

8

9

10

11

Subject to and without waiving its objections, Walmart responds as follows:  Walmart entered in lawful agreements with AI to manufacture and sell the Salon Perfect Precision Shaper, the Salon Perfect Micro Razor, and other products at Walmart.  Walmart is not aware of any communication with Terri Cooper in which a razor was handed to Terri Cooper by a Walmart employee.  Walmart denies that a Walmart employee handed Terri Cooper a razor and denies that a Walmart employee asked Terri Cooper and AI to copy a razor.  The person most knowledgeable of this alleged discussion would be Terri Cooper of AI (again, Walmart denies that this discussion occurred).

12

13

14

15

16

17

As to agreements between AI and Walmart, Walmart refers plaintiffs to documents Walmart previously produced to plaintiffs:  WM-STILES-0000001;   WM-STILES-0000013;   WM-STILES-0000026;   WM-STILES-0000037; WM-STILES-0000049; WM-STILES-0000107; and WM-STILES-0000118.   Discovery is ongoing, Walmart will supplement its response to this Interrogatory if it becomes necessary.

18

19

20

21

Subject to and without waiving its objections, Walmart further responds as follows:  AI presented the Micro Razor 3pk in a line review occurring in or around July 2012.  Caroline Day, the then buyer for the beauty department, attended the line review.  Walmart does not know who else attended the line review, precisely when the line review occurred, or how any decision was made.  Walmart was provided documents regarding the items for the 2012 line review in advance of the line review.  Such documents have been or will be produced.   Other information about the circumstances surrounding the line review may be determined by examining Walmart's and AI's document productions, and the burden of deriving or ascertaining the information from the documents is substantially the same for Walmart as it is for plaintiff.

22

23

24

25

26

27

28

<u>Walmart's Supplemental Response to Interrogatory No. 5</u>

Subject to and without waiving its objections, Walmart further responds as follows: AI presented the Micro Razor 3pk in a line review occurring in or around July 2012. Caroline Day, the then buyer for the beauty department, attended the line review. Walmart does not know who else attended the line review, precisely when the line review occurred, or how any decision was made. Walmart was provided documents regarding the items for the 2012 line review in advance of the line review. Such documents have been or will be produced. Other information about the circumstances surrounding the line review may be determined by examining Walmart's and AI's document productions, and the burden of deriving or ascertaining the information from the documents is substantially the same for Walmart as it is for plaintiff.

Walmart understands that Walmart initially declined to add the Micro Razor 3pk during or following the 2012 line review. Walmart understands that Walmart subsequently decided to add the Micro Razor to the 2013 module. Other information about the circumstances surrounding Walmart's decisions vis-à-vis the Micro Razor may be determined by examining Walmart's and AI's document productions, and the burden of deriving or ascertaining the information from the documents is substantially the same for Walmart as it is for plaintiff.

**2.    Stiles' Contentions**

**a.    Walmart's Response Is Incomplete Because It Fails to Fully Answer the Interrogatory.**

Interrogatory No. 5 asks Walmart to identify the facts and circumstances relating to its agreement with AI to manufacture and sell the Salon Perfect Micro Razor. Walmart does not fully answer the interrogatory. Rather, Walmart claims it need not do so, asserting (again) that "the burden of deriving or ascertaining the information from the documents is substantially the same for Walmart as it is for plaintiff."

Walmart must do more. It must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . ." FED. R. CIV. P. 33(d). Walmart has failed to comply with the rule because it has not identified any custodians, any sets of documents, or even any document productions. If Walmart intended to refer to the documents identified in the original (now superseded) response to Interrogatory No. 5, it must say so. To date Walmart has refused to further Supplement its response to correct these deficiencies.

Therefore, the Court should order to supplement this interrogatory response in full.

### 3.    Walmart's Contentions

Walmart's response to plaintiffs' purported dispute as to Interrogatory No. 5 is as described above in response to the claimed dispute as to Interrogatory No. 4.

### G.    Seventh Dispute: Walmart's Response to Interrogatory Nos. 7–11 and 13–15

### 1.    Stiles' Interrogatories and Walmart's Responses

#### Stiles' Interrogatory No. 7

For the Salon Perfect Micro Razor and the Salon Perfect Precision Shaper, separately identify on a quarterly basis, the number of units made, used, sold, licensed, and/or offered for sale, the revenues realized, the cost of goods sold, the profit realized, from January 1, 2006, to the present, and the person(s) most knowledgeable about your response to this interrogatory.

#### Walmart's Response to Interrogatory No. 7

Walmart objects to this Interrogatory as vague, ambiguous, compound, and not seeking information that is relevant to the claims and defenses in this case. Walmart objects to the terms "quarterly basis," "number of units," "revenues realized," and "profit realized" as overly broad, unduly burdensome, vague, ambiguous, assuming facts, and seeking information that is not relevant to any claim or defense of any party in this action and not proportional to the needs of the case. Walmart further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case. Walmart further objects to this Interrogatory to the extent it seeks information not in Walmart's possession, custody, or control and information in the custody or control of persons or entities other than Walmart. Walmart also objects to this Interrogatory to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.

Subject to and without waiving its objections, Walmart refers Plaintiffs to documents Walmart previously produced as responsive to this Interrogatory; WM-STILES-0000105 and WM-STILES-0000106. The person most knowledgeable on this topic is Esther Gifford. To the extent other documents becoming [sic] available during the course of discovery, Walmart will supplement its response to this Interrogatory.

#### Stiles' Interrogatory No. 8

Describe in detail all facts and circumstances under which Walmart first became aware of the '468 Patent, the '389 Patent, or any of Plaintiffs' patents, including but not limited to the date(s) when this occurred, the source of the information, the identity of the person(s) who received the

information on behalf of Walmart, when and how Walmart first obtained a copy of that patent, and any actions taken by Walmart as a result, identify all documents related to your response to this interrogatory, and identify the person(s) most knowledgeable about your responses to this interrogatory.

<u>Walmart's Response to Interrogatory No. 8</u>

Walmart objects to this Interrogatory as vague, ambiguous, compound, and not seeking information that is relevant to the claims and defenses in this case.  Walmart objects to the terms "source of the information," "obtained a copy of that patent," and "actions taken" as overly broad, unduly burdensome, vague, ambiguous, assuming facts, and seeking information that is not relevant to any claim or defense of any party in this action, or not proportional to the needs of the case.  Walmart further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case.  Walmart further objects to this Interrogatory to the extent it seeks information not in Walmart's possession, custody, or control or information in the custody or control of persons or entities other than Walmart.  Walmart also objects to this Interrogatory to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Walmart objects to answering this Interrogatory on the grounds it is a contention interrogatory and discovery is still in the early stages.  Subject to and without waiving its objections, Walmart responds as follows:

Walmart will conduct a reasonable search of documents within its possession, custody, and control for information relating to when Walmart first became aware of the '468 Patent and the '389 Patent.  Discovery is ongoing, and Walmart will supplement its response to this Interrogatory as discovery progresses.

<u>Stiles' Interrogatory No. 9</u>

Describe in detail the bases for Walmart's Sixth Affirmative Defense, and Counts 1, 3, and 5 of its Answer and Counterclaims that Walmart "Walmart has not infringed and is not infringing the purported trade dress or any claim of U.S. Patent Nos. 9,108,329 or D542,468 (the "patents-in-suit"), either literally and/or under the doctrine of equivalents," including, but not limited to an identification of each limitation that Walmart contends is not found or present in the Salon Perfect Micro Razor and/or the Salon Perfect Precision Shaper, including specifically identifying all facts supporting such bases, each document reflecting, referring or otherwise relating to any such facts, and the person(s) most knowledgeable about your response to this interrogatory.

**Joint Statement re Discovery Disagreement**

1

<u>Walmart's Response to Interrogatory No. 9</u>

2
3
4
5
6
7
8
9
10
11

Walmart objects to this Interrogatory as vague, ambiguous, compound, and not seeking information that is relevant to the claims and defenses in this case.  Walmart objects to the terms "identification of each limitation," as overly broad, unduly burdensome, vague, ambiguous, assuming facts, and seeking information that is not relevant to any claim or defense of any party in this action, or not proportional to the needs of the case.  Walmart further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case.  Walmart further objects to this Interrogatory to the extent it seeks information not in Walmart's possession, custody, or control or information in the custody or control of persons or entities other than Walmart.  Walmart also objects to this Interrogatory to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Walmart objects to answering this Interrogatory on the grounds it is a contention interrogatory and discovery is still in the early stages.

12
13
14
15

Subject to and without waiving its objections, Walmart responds as follows: Walmart will conduct a reasonable search of documents within its possession, custody, and control for information relating to Walmart's Sixth Affirmative Defenses and Counts 1, 3, and 5 of Walmart's Counterclaim.  Discovery is ongoing, and Walmart will supplement its response to this Interrogatory as discovery progresses.

16

<u>Stiles' Interrogatory No. 10</u>

17
18
19
20
21

Describe in detail all factual and legal bases for Walmart's Seventh Affirmative Defense, and Counts 2, 4, and 6 of its Answer and Counterclaims that Stiles' "trade dress" and "the patents-in-suit are invalid, void, and/or unenforceable," including, but not limited to, an identification of each limitation that Walmart contends is invalid, void, and/or unenforceable, and specifically identifying all facts supporting such bases, each document reflecting, referring or otherwise relating to any such facts, and the person(s) most knowledgeable about your response to this interrogatory.

22

<u>Walmart's Response to Interrogatory No. 10</u>

23
24
25
26
27
28

Walmart objects to this Interrogatory as vague, ambiguous, compound, and not seeking information that is relevant to the claims and defenses in this case.  Walmart objects to the terms "identification of each limitation," as overly broad, unduly burdensome, vague, ambiguous, assuming facts, and seeking information that is not relevant to any claim or defense of any party in this action, or not proportional to the needs of the case.  Walmart further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case.  Walmart further objects to this Interrogatory to the extent it seeks

92

information not in Walmart's possession, custody, or control or information in the custody or control of persons or entities other than Walmart.  Walmart also objects to this Interrogatory to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Walmart objects to answering this Interrogatory on the grounds it is a contention interrogatory and discovery is still in the early stages.

Subject to and without waiving its objections, Walmart responds as follows: Walmart will conduct a reasonable search of documents within its possession, custody, and control for information relating to Walmart's Seventh Affirmative Defenses [sic] and Counts 2, 3, and 6 of Walmart's Counterclaim.  Discovery is ongoing, and Walmart will supplement its responses to this Interrogatory as discovery progresses.

<u>Stiles' Interrogatory No. 11</u>

Describe in detail all factual and legal bases for Walmart's Eighth Affirmative Defense in its Answer and Counterclaims that "Plaintiffs are estopped from construing any valid claim of the patents-in-suit" because of "admissions and statements to the United States Patent and Trademark Office in the specification of those patents and during prosecution of the applications leading to the issuance of those patents," specifically identifying all facts supporting such bases, each document reflecting, referring or otherwise relating to any such facts, and the person(s) most knowledgeable about your response to this interrogatory.

<u>Walmart's Response to Interrogatory No. 11</u>

Walmart objects to this Interrogatory as vague, ambiguous, compound, and not seeking information that is relevant to the claims and defenses in this case.  Walmart objects to the terms "all factual and legal bases," "reflecting," and "referring," as overly broad, unduly burdensome, vague, ambiguous, assuming facts, and seeking information that is not relevant to any claim or defense of any party in this action, or not proportional to the needs of the case.  Walmart further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case.  Walmart further objects to this Interrogatory to the extent it seeks information not in Walmart's possession, custody, or control or information in the custody or control of persons or entities other than Walmart.  Walmart also objects to this Interrogatory to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Walmart objects to answering this Interrogatory on the grounds it is a contention interrogatory and discovery is still in the early stages.

Subject to and without waiving its objections, Walmart responds as follows: Walmart will conduct a reasonable search of documents within its

1
2

possession, custody, and control for information relating to Walmart's Eighth Affirmative Defenses.  Discovery is ongoing, and Walmart will supplement its response to this Interrogatory as discovery progresses.

3

<u>Stiles' Interrogatory No. 13</u>

4
5
6
7
8

Describe in detail all factual bases for Walmart's denial of willful infringement in its Answer and Counterclaims (Dkt. No. 148, ¶¶ 172 – 175) of the '468 and the '389 Patents, including, but not limited to, whether Walmart will rely on any opinion of counsel, whether written or oral, to rebut Walmart's willful infringement contention, and the identity of each such opinion (including, but not limited to, by the date, author(s), addressee(s), recipient(s), and type), and the person(s) most knowledgeable about your response to this interrogatory.

9

<u>Walmart's Response to Interrogatory No. 13</u>

10
11
12
13
14
15
16

Walmart objects to this Interrogatory as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case.  Walmart further objects to this Interrogatory to the extent it seeks information not in Walmart's possession, custody, or control or information in the custody or control of persons or entities other than Walmart.  Walmart also objects to this Interrogatory to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Walmart objects to this Interrogatory to the extent it seeks information on expert opinions not yet established in this matter.

17
18
19
20
21

Subject to and without waiving its objections, Walmart responds as follows: Walmart will not rebut its own willfulness contention.  Walmart had no reasons to believe the Salon Perfect Micro Razor or the Salon Perfect Precision Shaper infringed either the '468 or the '389 patent.  To the extent this Interrogatory requires further responses, Walmart will conduct a reasonable search of documents within its possession, custody, and control for information relating to Walmart's denial of willful infringement.  Discovery is ongoing and Walmart will supplement its response to this Interrogatory as discovery progresses.

22

<u>Stiles' Interrogatory No. 14</u>

23
24
25
26
27
28

Describe in detail all prior art that Walmart contends, taken alone or in combination, renders that claim anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103, identify in detail where each such limitation is found in each item of prior art (such as by patent column and line number or article page and paragraph), and identify all factual and legal bases for any contention that one of ordinary skill in the art would have been motivated to combine any of the prior art to obtain the claimed invention, and the person(s) most knowledgeable about your response to this interrogatory.

**Joint Statement re Discovery Disagreement**

<u>Walmart's Response to Interrogatory No. 14</u>

Walmart objects to this Interrogatory as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case.  Walmart objects to the term "taken alone or in combination," "renders," "factual and legal bases," and "motivated" as overly broad, unduly burdensome, vague, ambiguous, and seeking information that is not relevant to any claim or defense of any party in this action, or not proportional to the needs of the case.  Walmart further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case.  Walmart further objects to this Interrogatory to the extent it seeks information not in Walmart's possession, custody, or control or information in the custody or control of persons or entities other than Walmart.  Walmart also objects to this Interrogatory to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Walmart objects to this Interrogatory to the extent it seeks information on expert opinions not yet established in this matter.

Subject to and without waiving its objections, Walmart responds as follows: Walmart will conduct a reasonable search of documents within its possession, custody, and control for information relating to prior art that taken together or in part renders a claim in the patents invalid or anticipated. Discovery is ongoing, and Walmart will supplement its response to this Interrogatory as discovery progresses.

<u>Stiles' Interrogatory No. 15</u>

Identify each of Walmart's past and present customers, distributors, manufacturers, or any other entity purchasing, selling, or making the Salon Perfect Micro Razor and the Salon Perfect Precision Shaper, and for each entity, identify the total number of units shipped or delivered and total sales in dollar value to or by each such entity for each calendar quarter of sales, from January 1, 2006, to the present, and the person(s) most knowledgeable about your response to this interrogatory.

<u>Walmart's Response to Interrogatory No. 15</u>

Walmart objects to this Interrogatory as vague, ambiguous, and not seeking information that is relevant to the claims and defenses in this case.  Walmart objects to the term "past and present," "other entity," "making," and "number of units" as overly broad, unduly burdensome, vague, ambiguous, and seeking information that is not relevant to any claim or defense of any party in this action, or not proportional to the needs of the case.  Walmart further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case.  Walmart further objects to this Interrogatory to the extent it seeks information not in Walmart's possession, custody, or control or information in the custody or control of persons or entities other than

Walmart.  Walmart also objects to this Interrogatory to the extent that it seeks documents and communications protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and any other applicable privilege or protection.  Walmart objects to answering this Interrogatory on the grounds it is a contention interrogatory and discovery is still in the early stages.  Walmart objects to the request for information regarding each "customer" as unduly burdensome and not proportional to the needs of the case.  Walmart further objects to this Interrogatory because it calls for information on the identity of customers who purchased the Salon Perfect Micro Razor and Salon Perfect Precision Shaper which is highly confidential and information not kept by Walmart during the ordinary course of business.

Subject to and without waiving its objections, Walmart responds as follows: To Walmart's knowledge American Industries International is the sole distributor of the Salon Perfect Precision Shaper and the Salon Perfect Micro Razor.   Information the manufacturing of the razor is properly within the knowledge of American Industries International.  With regards to the sale of the Salon Perfect Precision Shaper and the Salon Perfect Micro Razor, Walmart refers Plaintiffs to documents Walmart previously produced as responsive to this Interrogatory; WM-STILES-0000105; and WM-STILES-0000106.  To the extent this Interrogatory requires further response, Walmart will conduct a reasonable search of documents within its possession custody, and control, and Walmart will supplement its response to this Interrogatory as discovery progresses.

## 2.    Stiles' Contentions

### a.    Walmart Failed to Supplement Its Responses to Interrogatory Nos. 8–11 and 13–14.

Walmart provided no substantive response to Interrogatory Nos. 8–11 and 13–14. Instead, it stated (back in February 2018) that "discovery is in the early stages," and Walmart "will supplement its response to this Interrogatory as discovery progresses." Discovery is no longer in "early stages." 18 months have passed since Walmart served its responses. (Ex. 3 (Walmart's Supplemental Responses to Stiles' Interrogatories).) Stiles requested that Walmart do so in multiple meet and confer letters and during multiple meet and confer phone calls. (Ex. 21 (Oct. 2, 2019 Walmart's response letter).) But Walmart has not done so.

Walmart is required to supplement its responses when they are incomplete. FED. R. CIV. P. 26(e). Accordingly, the Court should order Walmart to do so now.

1

                **b.**      **Walmart Failed to Supplement Its Responses to Interrogatory Nos. 7 and 15.**

2            Walmart's responses to Interrogatories Nos. 7 and 15 contain numerous meritless objections,

3  and then identify just two documents as responsive. Further, Walmart states that it will "supplement

4  its response" when it learns of new information. At the time of filing this Motion, the discovery cut-

5  off is just over one month away.  Further, Walmart has produced additional documents since serving

6  its initial responses on February 7, 2018 (these responses were not since supplemented).  Stiles has

7  requested that Walmart supplement these responses (Ex. 21 (Oct. 2, 2019 Walmart's response letter)),

8  but Walmart has failed to do so.

9            Walmart is required to supplement its responses when they are incomplete. *See* FED. R. CIV. P.

10  26(e). Walmart has still not supplemented these responses. The Court should Order Walmart to sup-

11  plement its responses to these two interrogatories to either identify further documents or confirm that

12  it does not have any further documents.

13          **3.**      **Walmart's Contentions:**

14

15            Walmart's response to plaintiffs' purported dispute as to Interrogatories 7-11 and 13-15 is as

16  described above in response to the claimed dispute as to Interrogatory No. 4.

17

18

19

20

21

22

23

24

25

26

27

28

**Joint Statement re Discovery Disagreement**

1

2

3   Dated: December 4, 2019

4

**Pierce Bainbridge Beck Price & Hecht LLP**

5   By:   /s/ Brian J. Dunne
          Brian J. Dunne (SBN 275689)
6          *bdunne@piercebainbridge.com*
          Yavar Bathaee (SBN 282388)
7          *yavar@piercebainbridge.com*
          David Hecht (*pro hac vice*)
8          *dhecht@piercebainbridge.com*
          355 South Grand Avenue, 44th Floor
9          Los Angeles, California 90071
          (213) 262-9333

10  **Dhillon Law Group Inc.**

11         Harmeet K. Dhillon (SBN 207873)
          *harmeet@dhillonlaw.com*
12         Nitoj Singh (SBN 265005)
          *nsingh@dhillonlaw.com*
13         177 Post Street, Suite 700
          San Francisco, CA 94108
14         (415) 433-1700

15         *Attorneys for Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.*

16

17

18  Dated: December 4, 2019   **White & Case LLP**

19  By:   /s/ Catherine S. Simonsen
          Bryan A. Merryman (SBN 134357)
20         *bmerryman@whitecase.com*
          Catherine S. Simonsen (SBN 307325)
21         *catherine.simonsen@whitecase.com*
          555 S. Flower Street, Suite 2700
22         Los Angeles, CA 90071-2433
          Telephone: (213) 620-7700
23         Facsimile: (213) 452-2329

24         Bijal V. Vakil (SBN 192878)
          *bvakil@whitecase.com*
25         Jeremy Ostrander (SBN 233489)
          *jostrander@whitecase.com*
26         3000 El Camino Real
          Two Palo Alto Square, Suite 900
27         Palo Alto, CA  94306

28

**Joint Statement re Discovery Disagreement**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: (650) 213-0300
Facsimile:  (650) 213-8158

Stefan M. Mentzer (admitted pro hac vice)
smentzer@whitecase.com
1221 Avenue of the Americas, Floor 49
New York, NY  10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113

*Attorneys for Defendant Walmart Inc.*

---