UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sharidan Stiles, et al., | No. 2:14-cv-2234-KJM-DMC |
| Plaintiffs, | ORDER |
| v. | |
| Wal-Mart Stores, Inc., et al., | |
| Defendants. | |

Walmart Inc. and American International Industries have both moved for partial summary judgment. Both also ask to file several documents related to those motions under seal. *See* Am. Req. Seal, ECF No. 474; Walmart Req. Seal, ECF No. 501; Walmart Resp., ECF No. 532; Am. Resp., ECF No. 533; Am. Req. Seal, ECF No. 537. As the court advised the parties during a hearing on March 30, 2021, and as fully explained in this order, these requests are **denied**.

I.   **LEGAL STANDARD**

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) (footnote omitted). Although that right is not absolute, "'a strong presumption in favor of access' is the starting point." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). This presumption "is 'based on the need for federal courts, although

1

independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

When, as here, documents are filed with motions "more than tangentially related to the merits of a case," *id.* at 1101, such as a motion for summary judgment, *Kamakana*, 447 F.3d at 1179, a party who asks to keep them secret "must meet the high threshold of showing that 'compelling reasons'" support that request, *id.* at 1180 (quoting *Foltz*, 331 F.3d at 1136). This standard applies even if the documents have previously been filed under seal or are covered by a generalized protective order, including a discovery-phase protective order. *See Foltz*, 331 F.3d at 1136. To decide whether the party requesting a seal has carried its burden, the court balances the requesting party's reasons for secrecy with the public's interests in disclosure. *See Kamakana*, 447 F.3d at 1179. The interest in secrecy generally outweighs the public's interest only if a document will "become a vehicle for improper purposes," such as the gratification of "private spite," the promotion of "public scandal," the reiteration of "libelous statements," or the revelation of "information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598 (citations and quotation marks omitted). If a court decides to grant a request to seal, it must explain its reasons and may not rely on "hypothesis or conjecture." *Kamakana*, 447 F.3d at 1179 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

This court, as others, has found that "corporate parties in complex litigation generally prefer to litigate in secret." *Takeda Pharm. U.S.A., Inc. v. Mylan Pharm., Inc.*, No. 19-2216, 2019 WL 6910264, at *1 (D. Del. Dec. 19, 2019). Requests to seal are "frequently overbroad," especially in patent litigation; district courts must resolve "burdensome motions to seal on a regular basis." *Uniloc 2017 LLC v. Apple Inc.*, No. 18-00360, 2019 WL 2009318, at *2 n.2 (N.D. Cal. May 7, 2019), *aff'd in relevant part*, 964 F.3d 1351 (Fed. Cir. 2020); *see also, e.g.*, *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, No. 96-1718, 2007 WL 141923, at *2 (S.D. Ind. Jan. 16, 2007) ("[A]ll too frequently this Court finds itself reviewing overbroad and unsupported requests

/////

to file documents under seal."). Resolving requests to seal is all the more difficult when, as is usually the case, no one opposes those requests. *See Takeda*, 2019 WL 6910264, at *1.

In light of the strong presumption in favor of access to court records, and given the frequency and overbreadth of many motions to seal, federal courts deny motions to seal that merely cite "a general category of privilege." *See Kamakana*, 447 F.3d at 1184. A party who wishes to keep its documents secret must point out a "specific linkage" between its interests in secrecy and those documents. *See id.* "[C]onclusory offerings do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents." *Id.* at 1182. If a party does not "articulate with any specificity how disclosure" would cause it harm, its request to seal must be denied. *Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-04312, 2020 WL 1245352, at *3 (N.D. Cal. Mar. 16, 2020).

## II.    DISCUSSION

Here, American and Walmart have each asked to keep several documents secret. Neither party carries its burden.

### A.    American

American asks to seal five documents attached to its motion for summary judgment, eighteen documents attached to Stiles's opposition to its motion, and two documents attached to its reply. *See* Am. Notice, ECF No. 474 (citing exhibits 33, 63, 64, and 65 to its motion and excerpts of Stiles's deposition transcripts); Am. Resp. at 2, ECF No. 533 (citing exhibits 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 19 to the declaration of Joseph Alioto in support of Stiles's opposition to American's motion for summary judgment and exhibits 6, 7, 8, 9, 10, 11, and 12 to Josephine Alioto's declaration in support of Stiles's opposition to Walmart's motion for summary judgment); Am. Notice, ECF No. 537 (citing the declaration of Zachary Page and exhibit 67 to its reply).

The court previously denied American's request to seal the documents attached to its motion without prejudice to a renewed request that better explained the interests motivating its filing. *See* Order (June 15, 2020), ECF No. 478. American has not renewed its request. The

/////

3

court concludes that it has waived its request to seal exhibits attached to its motion for summary judgment, as American's counsel in fact effectively confirmed at hearing.

As for the eighteen documents attached to Stiles's opposition briefs, American offers one short paragraph, referring to itself as "AI":

> These Exhibits consist of internal documents, emails and attachments thereto between then-employees at AI regarding AI's strategy for the marketing and sale of its products at Walmart, including details regarding plans and strategy for the introduction of new products, product development plans and confidential pricing, cost and product financial performance information not generally available to the public.

Resp. at 2, ECF No. 533. It contends this information is "trade secret or other confidential research, development, or commercial information" described in Rule 26(c)(1)(G) because it is "detailed financial information" with "competitive value" and would reveal "marketing strategies," "unused prototypes," and other similar information. *See id.* at 2–3 (quoting *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-2087, 2011 WL 3759632, at *1 (S.D. Cal. Aug. 25, 2011), and *Bauer Bros. LLC v. Nike, Inc.*, No. 09-0500, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012)).

Rule 26(c)(1) does not provide the rule of decision here. That rule offers an avenue to litigants who need protection from "annoyance, embarrassment, oppression, undue burden or expense" caused by an opponent's discovery requests. Fed. R. Civ. P. 26(c)(1). It provides the "good cause" standard. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). As this court explained when it denied American's previous request to file under seal, discovery protective orders are judged against a different standard than requests to withhold evidence attached to a dispositive motion. *See* Order (June 15, 2020) at 2, ECF No. 748 (citing *Foltz*, 331 F.3d at 1135, 1136). American must prove more than just "good cause"—it must show a compelling interest in secrecy.

This is not to say that American has no interest in protecting its sensitive commercial information. Detailed data about profits, costs, and margins, for example, might give an opponent an advantage in contract negotiations. *See Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013). A sophisticated competitor might also find a way to use the disclosure of

1   previously secret contract terms to its advantage.  *See In re Elec. Arts*, 298 F. App'x 568, 569

2   (2008) (unpublished).  A competitor could even divert business to itself if it learns from a court

3   filing what prices to charge or what terms to demand.  *See Obesity Rsch. Inst., LLC v. Fiber Rsch.*

4   *Int'l, LLC*, No. 15-595, 2018 WL 3642177, at *5 (S.D. Cal. Aug. 1, 2018).

5     But "generalized assertions of potential competitive harm" are not enough to carry the

6   "compelling reasons" burden.  *Uniloc*, 2019 WL 2009318, at *1.  Here, American has not carried

7   that burden.  It does not explain how the exhibits reveal its "plans and strategy."  Nor does it

8   specify which prices are "confidential."  It also does not explain what it means by "product

9   financial performance information," let alone why the public disclosure of that information would

10  be damaging.  *See* Resp. at 2, ECF No. 533.  The court will not comb these files and attempt a

11  guess at what American's concerns might be.  Not only would that exercise relieve American of

12  its burden; it would amount to improper "conjecture."  *Kamakana*, 447 F.3d at 1179 (quoting

13  *Hagestad*, 49 F.3d at 1434).  American's request to seal documents attached to Stiles's opposition

14  is denied.

15    American also asks to seal two documents cited in its reply.  The first is a declaration that

16  summarizes materials Stiles marked as "confidential" during discovery.  *See* Not. at 2, ECF

17  No. 537 (citing the declaration of Zachary Page).  It is a summary table of inventory numbers,

18  shipment dates, quantities, revenues, and similar information for shipments completed about

19  fifteen years ago.  Neither American nor Stiles explains why the disclosure of this information

20  would harm their commercial interests.  The second document is a fifteen-year-old email chain

21  about a razor prototype.  American contends the email reveals its "plans and strategy for the

22  introduction of new products and product development plans" that are "not generally available to

23  the public."  Req. Seal at 2, ECF No. 537.  It does not explain why emails about a product in

24  development fifteen years ago could harm its commercial interests today.  The court cannot agree

25  American's interest in secrecy is compelling.  The request to file the reply declaration and email

26  chain under seal is denied.

27  /////

**B.     Walmart**

Walmart asks to seal more than a hundred documents filed with its motion for summary judgment. *See generally* Walmart Req., ECF No. 501. Its request lists two different sets of documents. *Compare* Walmart Req. Seal at 5, ECF No. 501 (listing exhibits 2, 6, 7, 9, 14, 15, 17, 21–26, 28–30, 32, 72, 89, 100–13, 115–17, 119, 121–85, 187–96, 235–36, and 246 to the Merryman Declaration) *with id.* at 6 (listing exhibits 21–26, 28–30, 32, 72, 89, 100–13, 115–17, 119, 121–96, 202–03, 235–36, and 246). The court assumes Walmart intends to request that documents listed in either or both sets be filed under seal. Walmart also asks to seal sixteen documents filed with Stiles's opposition, although several of these documents are identical to those attached to Walmart's own filing. *See* Walmart Resp. at 4–6, ECF No. 532. Finally, Walmart proposes to file redacted versions of thirty-three of the documents on its lists. *See* Req. at 7, ECF No. 501 (identifying "redacted versions of Exhibits 28, 32, 110, 112, 115, 121, 128-132, 134, 138, 139, 143, 144, 147, 150, 161, 163, 166, 167, 169, 172, 174, 183, 184, 185, 188, 190, 194, 196, and 202").

Seven of the documents on Walmart's lists were produced or created by others. The court considers these first, starting with three documents produced by its co-defendant, American. *See* Walmart Req. Seal at 5, ECF No. 501 (citing Merryman Decl. Exs. 2, 6, and 7). Walmart cross-references American's request to seal these documents to explain its own request; it offers no independent analysis of its own. *See id.* Because American's request to seal these documents is denied, Walmart's request to seal them is also denied. The four remaining documents were produced by CVS Pharmacy, Inc., KISS Products Inc., and Onyx brands, LLC. *See id.* at 5–6 (citing Merryman Decl. Exs. 9, 14, 15, and 17). These companies claim the documents contain nonpublic sales data and assert that their disclosure might give unnamed competitors unspecified competitive advantages. *See generally* Bowe Decl., ECF No. 457-10; Makous Decl., ECF No. 466-1; Findlay Decl., ECF No. 467-1. Most of this sales data is many years old. *See, e.g.*, Merryman Decl. Ex. 9 (sales data from 2013). Neither Walmart nor these third parties have explained why each of these documents would cause harm if they were revealed. The supporting declarations offer only generalized assertions of potential harm, which do not suffice. *See*

6

1  *Kamakana*, 447 F.3d at 1184 ("Simply mentioning a general category of privilege, without any
2  further elaboration or any specific linkage with the documents, does not satisfy the burden.").
3  The request to seal these documents is denied.

4  Walmart's own documents make up the bulk of its request. It does not argue that
5  disclosing these documents publicly would serve to gratify some private spite, create a scandal, or
6  republish libel. *See Nixon*, 435 U.S. at 598. Its reasons for maintaining secrecy fall into three
7  categories that could arguably be described as "trade secrets." *See Clark v. Bunker*, 453 F.2d
8  1006, 1009 (9th Cir. 1972). First, it argues disclosure would reveal its strategies for negotiations
9  with suppliers. *See* Walmart Req. Seal at 6, ECF No. 501 (citing *Bell Northern Research, LLC v.
10 Coolpad Technologies, Inc.*, No. 18-1783, 2020 WL 353630 (S.D. Cal. Jan. 21, 2020)). Second,
11 Walmart argues the documents include "detailed financial information," Walmart Req. Seal at 6–
12 7, relying primarily on *In re Hydroxycut Marketing & Sales Practices Litigation*, No. 2087, 2011
13 U.S. Dist. LEXIS 25977, at *31 (S.D. Cal. Mar. 11, 2011). Third, Walmart argues the documents
14 reveal its "marketing strategies" and "the information [it] uses to make appropriate marketing
15 decisions," Walmart Req. Seal at 7, relying primarily on *Bauer Brothers Limited Liability Co. v.
16 Nike, Inc.*, No. 09-0500, 2012 U.S. Dist. LEXIS 72862 (S.D. Cal. May 24, 2012). In short,
17 Walmart argues third parties could use information in its documents to gain an unfair advantage
18 in negotiations or to replicate its business strategy.

19 These reasons might prove compelling if tied to particular information in particular
20 documents, as discussed above. *See Apple*, 727 F.3d at 1225; *In re Electronic Arts*, 298 F. App'x
21 at 569; *Obesity Rsch. Inst.*, 2018 WL 3642177 at *5. But Walmart does not provide the specific,
22 factual explanations that would be necessary to understand its requests. It instead asserts in
23 general terms that disclosure would endanger its interests. *See generally* Vakil Decl., ECF
24 No. 501-1. Walmart's explanations are so generic that it has used the same language for almost
25 every document it asks to seal. For example, the first document Walmart asks to seal is an email
26 exchange with attachments. *See id.* ¶ 2. It claims the email and attachments reveal "detailed
27 information regarding Walmart's relationships with suppliers and such suppliers' sales and
28 product information." *Id.* But it does not explain what "detailed information" is potentially

harmful, why, and who would use that information. The email and its attachment are also several pages long, so divining the omitted explanation from the context is no simple task, if it is possible at all. Walmart then makes an identical claim of harm—the same claim, word for word—about dozens of other documents: contracts, emails, letters, spreadsheets, worksheets, the report of an expert witness, and more. *See id.* ¶¶ 3–12, 14, 16–43, 45–48, 50–102, 103–11.

This repeated phrase is only one example of the generic explanations Walmart offers for many documents. *See, e.g., id.* ¶¶ 2–72, 74–85, 87–111 ("The information and data contained in this Exhibit inform and reveal Walmart's negotiation strategy with suppliers, product placement, and product addition and deletion decisions."); *id.* ¶¶ 2, 11, 13, 20, 26, 30, 34, 36–38, 44, 45, 47, 57, 58, 65, 67– 69, 76, 79, 81–83, 86, 87, 89– 93, 95, 96, 99, 101–03, 106–10 ("Were this Exhibit to be filed publicly, business competitors and other suppliers could use this private financial information to gain a competitive or bargaining advantage over Walmart."). Walmart's request to seal documents attached to Stiles's opposition uses the same generic explanations. *See, e.g.*, Vakil Decl. ¶¶ 2–12, ECF No. 532-2 ("Were this Exhibit to be filed publicly, business competitors and suppliers could use" "the information," "the information regarding Walmart's contracts with third-party suppliers," or "this private financial information" "to gain a competitive or bargaining advantage over Walmart."). Its request is denied.

### III.  CONCLUSION

This is not the first time the court has considered Walmart's and American's requests to seal these documents. The court denied American's original request to seal, but permitted American to renew its motion with more developed explanations for the need for secrecy. *See* Order (June 15, 2020), ECF No. 478. The court also declined to rule on a previous request to seal by Walmart, *see* ECF No. 463, advising that any renewed request would be denied if not "made with the particularity required by case law and the applicable rules," Minute Order, ECF No. 487. Despite that guidance, Walmart and American have not supported their requests to seal with the detail that would be necessary to understand and assess their needs for secrecy. They have offered more pages, but not "compelling reasons supported by specific factual findings." *Kamakana*, 447 F.3d at 1178 (quoting *Foltz*, 331 F.3d at 1135).

1      The requests to file under seal, ECF Nos. 501, 520, 526, 530, and 537 are **denied.** Given that the parties indicated their acceptance of the court's order at hearing, the parties are now directed to publicly file unredacted copies of all exhibits and briefs attached to or associated with the pending motions for summary judgment, oppositions, and replies **within seven days**.

     IT IS SO ORDERED.

DATED: March 31, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE