UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIDAN STILES, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>WALMART, INC., et al.,<br><br>        Defendants. | No. 2:14-cv-02234-DAD-DMC<br><br>ORDER GRANTING IN PART DEFENDANT AMERICAN INTERNATIONAL INDUSTRIES, INC.'S MOTION FOR AN AWARD OF ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285<br><br>(Doc. No. 617) |

This matter came before the court on July 18, 2023 for a hearing on the motion for an award of attorneys' fees pursuant to 35 U.S.C. § 285 filed on behalf of defendant American International Industries, Inc. ("American") on May 15, 2023. (Doc. No. 617.) Attorneys Eric S. Engel and Roy Anderson appeared by video on behalf of defendant American. Attorney Jeremy Ostrander appeared by video on behalf of defendant Walmart, Inc. ("Walmart"). Attorneys Joseph M. Alioto and Josephine Alioto appeared by video on behalf of plaintiffs Sharidan Stiles

/////
/////
/////
/////
/////

1

and Stiles 4 U, Inc., and plaintiff Sharidan Stiles appeared by video on her own behalf as well.[1]

For the reasons explained below, defendant American's motion will be granted, in part.

## BACKGROUND

The court will not summarize the entire background of this case in this order and instead incorporates by reference the background section of the court's November 8, 2022 order granting partial summary judgment in favor of defendants. (Doc. No. 588 at 2–7.) The following factual and procedural background is relevant to the pending motion.

Plaintiff Stiles filed the complaint initiating this patent infringement and antitrust action against defendant Walmart and defendant American on September 25, 2014. (Doc. No. 1.) Plaintiffs Stiles and Stiles 4 U, Inc.[2] filed the operative fourth amended complaint on July 10, 2018, bringing seven claims, including two patent infringement claims against defendant American alleging that: (1) American's Precision Shaper and Micro Razor infringe on plaintiff's utility patent for the Stiles Razor, a patented disposable razor with a narrow blade for precise shaving; and (2) American's Micro Razor[3] infringes on plaintiff's design patent for the Stiles Razor which claimed the "ornamental design for a personal styling razor." (Doc. Nos. 142 at 33–35; 142-1 at 2.)

---

[1] As described in detail in the court's order dated January 30, 2023, plaintiffs have been represented in this case by numerous counsel at different times. (*See* Doc. No. 598 at 4 n.3.) Most recently, plaintiff had been represented by Joseph Alioto of the Alioto Law firm and Josephine Leticia Alioto of the Veen Law Firm, PC, since they noticed their appearances in October and November 2020, respectively. (*Id.*) However, on June 9, 2023, after defendant's pending motion for attorneys' fees was filed, plaintiffs' counsel filed a motion to withdraw as counsel of record for plaintiffs in this case. (Doc. No. 625.) Plaintiffs' counsel also filed motions to withdraw as counsel of record for plaintiff Stiles on the dockets in the four related cases in which they had appeared on plaintiff's behalf. On August 2, 2023, the court granted the motions to withdraw as counsel of record for plaintiffs filed in this action and the related actions. (Doc. No. 630.) Since that date, plaintiff Stiles has represented herself *pro se* in this action.

[2] Plaintiff Stiles 4 U, Inc. was added as a named plaintiff in the second amended complaint. (Doc. No. 56.) For clarity's sake, because plaintiff Sharidan Stiles is the patentee of the design and utility patents at issue in this case, the court will use "plaintiff," in the singular, to refer to plaintiff Stiles in this order.

[3] Plaintiff had also alleged that American's Precision Shaper infringed on plaintiff's design patent, but she subsequently withdrew that claim. (*See* Doc. No. 588 at 19, 38) (dismissing design patent infringement claim as to the Precision Shaper because that claim was withdrawn).

On November 8, 2022, the court granted defendants' motions for partial summary judgment and ordered that, *inter alia*, summary judgment be granted in favor of defendants on plaintiff's patent infringement claims. (Doc. No. 588 at 37.) Of particular relevance to the pending motion, the court emphasized in that order that plaintiff had failed to submit evidence, or cite to any evidence before the court on summary judgment, to support those claims. (*Id.* at 25–26) (concluding that "no reasonable jury could conclude that [the American razor] literally infringes the utility patent" and emphasizing that "[plaintiff] cites no evidence before the court on summary judgment that could show American's razor satisfies [the] limitations" included in her utility patent)[4]; (*id.* at 29) ("[Plaintiff] also has presented no evidence raising a doubt about the accuracy or authenticity of [defendant's expert] Hines's photographs and measurements" of the dimensions of the America razor); *id.* at 28) ("Stiles has presented no such evidence here" to support her theory of infringement based on the doctrine of equivalents.); (*id.* at 31) (explaining that "[t]he person claiming damages under § 154(d) has the burden of presenting evidence satisfying these requirements," and plaintiff "has not cited evidence before the court on summary judgment that a jury could rely on to find that she satisfied the requirements of that section;" notably, "Stiles has not come forward with any evidence that a jury could rely on to find American had actual notice of her application"). In addition, the legal arguments plaintiff had advanced lacked merit and citation to supporting legal authority. (*See id.* at 23) ("Stiles's arguments about a conspiracy with 'the Chinese' do not prove [design] infringement" as such a conspiracy does "not show that an ordinary observer might mistake one of those razors for the other, and that is the relevant test"); (*id.* at 22) (concluding that the Micro Razor and the Stiles

---

[4] Relevant here, the Stiles Razor utility patent included two limitations: (1) "that the razor's 'straight cutting edge portion' must extend 'beyond all other parts of said head portion along said straight cutting edge portion by about 0.02 inch"; and (2) that "the razor's shaving head must be no wider than 0.25 inches." (Doc. No. 588 at 25–26.) Yet plaintiff presented no evidence to show that the American razor satisfied these limitations. Notably, the evidence before the court on summary judgment established that "the shaving head of the American razor is about one half inch wide" and "[t]he blade itself is 0.4 inches wide"—meaning the shaving head was wider than the 0.25 inches limitation in the Stiles patent. (*Id.* at 24–25.) In addition, the evidence before the court on summary judgment established that "the cutting head of American's razor includes a safety guard that extends beyond the blade edge." (*Id.*)

1  Razor differed in the design of two ornamental features—the grip and the handle—and the court
2  noted that these differences "are subject to no factual disputes," and plaintiff's argument "that
3  differences are harder to see when the razors are still in their packaging" lacked merit because
4  "[t]he correct comparison is between the accused and claimed *designs*"). Moreover, plaintiff
5  relied on opinions from her retained expert, Matthew Marzynski, but even he agreed that "the
6  razors' handles have different designs." (*Id.* at 23.)

7  On December 29, 2022, plaintiff filed a motion for reconsideration of the court's
8  November 8, 2022 order, arguing *inter alia*, that "the court overlooked and/or misapprehended
9  the evidence of patent infringement, offered by the Plaintiffs' patent expert with impeccable
10 credentials, who concluded that the Defendants' 'accused razors both substantially and entirely
11 infringe on the Plaintiff's patents.'" (Doc. No. 590 at 5.) First, such legal conclusions are not
12 evidence. Second, as the court explained in its order denying plaintiff's motion for
13 reconsideration, "that evidence is not new; that evidence was already considered by the court in
14 ruling on the motions for partial summary judgment." (Doc. No. 598 at 11.) Indeed, as the court
15 had explained in its November 8, 2022 order, plaintiff's reliance on her expert's report, which
16 discussed "similarities between the Stiles Razor and a prototype razor developed by American,"
17 was unavailing because: "[American's] prototype was developed in 2006. Stiles filed her utility
18 patent application in 2007. A prototype developed in 2006 cannot prove actual knowledge of an
19 application not filed by Stiles until 2007." (Doc. No. 588 at 31.)

20 On March 30, 2023, judgment was entered in favor of defendants and against plaintiffs on
21 all of plaintiffs' claims, consistent with the court's November 8, 2022 order, and the court
22 clarified that the only claims remaining in this action are defendants' counterclaims brought
23 against plaintiff. (Doc. Nos. 608, 610.) On May 23, 2023, the court held a status conference in
24 this case, and defendants Walmart and American both expressed their intention to voluntarily
25 dismiss their counterclaims without prejudice. (Doc. Nos. 620, 624.) The court did not dismiss
26 defendants' counterclaims during the May 23, 2023 status conference, despite defendants'
27 willingness to proceed by oral request for dismissal of those claims, because plaintiff's then-
28 /////

4

counsel indicated that plaintiff would oppose such a request. (*See* Doc. Nos. 620, 624.) Plaintiff's counsel did not, however, clearly articulate the basis for such an opposition.[5]

On May 15, 2023, defendant American filed the pending motion for an award of attorneys' fees pursuant to 35 U.S.C. § 285. (Doc. No. 617.) At the July 18, 2023 hearing on the pending motion, the court addressed some inconsistencies and apparent typographical errors in defendant American's pending motion and supporting declarations and directed defendant American to file a supplemental brief and supporting declarations to clarify and correct any mistakes in its original motion. (*See* Doc. No. 628.) Defendant American filed a supplemental brief and supporting declarations on July 27, 2023.[6] (Doc. No. 629.) Also at the July 18, 2023 hearing, the court indicated that plaintiff would be granted an extension of time in which to file an opposition to the pending motion. (*Id.*)

On August 10, 2023, plaintiff, proceeding *pro se*, timely filed a two-page document that is captioned as her opposition to the pending motion, but in substance, plaintiff's filing lacks any coherent argument related to the attorneys' fees sought by defendant American. (Doc. No. 632.) Rather, plaintiff's only reference to attorneys' fees in her opposition is her belief that awarding attorneys' fees to defendants is premature because there has not been a jury trial in this case, and her belief that defendants should pay her fees instead. (*Id.* at 2–3.)

On August 17, 2023, defendant American filed a reply in support of the pending motion. (Doc. No. 633.)

/////

/////

---

[5] Consistent with defendants' intentions as stated at the May 23, 2023 status conference, the court will direct defendants to file their request for dismissal of their counterclaims by no later than seven (7) days from the date of entry of this order.

[6] Defendant American initially requested an award of costs in its motion as well. (Doc. No. 617 at 10) (seeking an award of "$21,600.17 in reasonable costs incurred"). But a few days after that motion was filed, the Clerk of the Court processed the bill of costs that defendant American had submitted (Doc. No. 613), and taxed costs in the amount of $21,600.17 as requested. (Doc. No. 619.) As a result, in its supplemental brief, defendant American clarifies that it is now only seeking an award of attorneys' fees. (Doc. No. 629 at 2, n.1.)

# LEGAL STANDARD

In patent infringement actions, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.[7] "A case is not exceptional solely because one party did not prevail." *FireBlok IP Holdings, LLC v. Hilti, Inc.*, 855 F. App'x 735, 739 (Fed. Cir. 2021).[8] The legislative purpose of the fee-shifting provision in § 285 of the Patent Act is to prevent "gross injustice," not punish a party for losing or penalize a party for failing to win a patent infringement lawsuit. *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020) (citations omitted).

As the Supreme Court has explained:

> An "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The Supreme Court noted that in making this determination, district courts may consider several non-exclusive factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (1994)). "[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to

---

[7] In addition to attorneys' fees, courts may include the prevailing party's litigation expenses in the award. *See Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) ("conclud[ing] that the award of expenses was properly within the scope of § 285"); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1341 (C.D. Cal. 2015), *aff'd*, 669 F. App'x 575 (Fed. Cir. 2016) (noting that "district courts have continued to recognize that non-expert, non-taxable costs are compensable under section 285").

[8] "Federal Circuit precedent controls the calculation of attorney's fees in patent cases." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1165 (N.D. Cal. 2015) (citing *Bywaters v. United States*, 670 F.3d 1221, 1228 (Fed. Cir. 2012) ("[W]e have consistently applied our law to claims for attorneys' fees under section 285 of the Patent Act because section 285 relates to an area of substantive law within our exclusive jurisdiction.")). Also, citation to this unpublished Federal Circuit opinion is appropriate pursuant to Federal Circuit Rule 32.1.

justify an award of fees." *Id.* at 555. "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.*

"An objectively baseless or frivolous patent case is one 'that no reasonable litigant could reasonably expect success on the merits.'" *Vedanti Licensing Ltd., LLC v. Google LLC*, No. 5:21-cv-01643-EJD, 2022 WL 799080, at *3 (N.D. Cal. Mar. 16, 2022) (quoting *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013)). For example, "courts have found such objective baselessness when . . . a plaintiff fails to conduct a proper prefiling investigation of its infringement claims or refuses to dismiss [those claims] after receiving conclusive evidence of noninfringement in code or schematics." *Vedanti Licensing Ltd., LLC*, 2022 WL 799080, at *3. "[A]n adequate pre-filing investigation into infringement requires a party to 'interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement.'" *Yufa v. TSI Inc.*, No. 09-cv-01315-KAW, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014) (quoting *Q–Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300 (Fed. Cir. 2004)). Courts have found that a plaintiff's failure to adequately investigate their patent infringement claims "weighs in favor of finding that [the] case is exceptional." *Yufa*, 2014 WL 4071902, at *3 (awarding attorneys' fees where the plaintiff failed to purchase or test any of the accused products to support its infringement claim); *see, e.g.*, *IPVX Pat. Holdings, Inc. v. Voxernet LLC*, No. 5:13-cv-01708-HRL, 2014 WL 5795545, at *6 (N.D. Cal. Nov. 6, 2014) (awarding attorneys' fees after concluding that the plaintiff's "litigation conduct supports a finding that the case 'stands out' from others" because plaintiff "has never attempted to demonstrate that it performed a presuit investigation" of the accused device); *Kilopass Tech. Inc. v. Sidense Corp.*, No. 10-cv-02066-SI, 2014 WL 3956703, at *14 (N.D. Cal. Aug. 12, 2014) (concluding that "[t]his is a case that stands out from others with respect to the substantive strength of plaintiff's litigating position and the unreasonable manner in which the case was litigated," and finding that plaintiff's pre-filing investigation was inadequate because it "essentially consisted of getting an opinion from one counsel that there was no literal

/////

infringement and getting an incomplete opinion from a different counsel as to infringement under the doctrine of equivalents").

In addition, courts have found a party's litigating position to be weak where the party "persists with a clearly untenable claim, or adduces no evidence in support of its position." *Location Based Servs., LLC v. Niantic, Inc.*, No. 17-cv-04413-NC, 2018 WL 7569160, at *1 (N.D. Cal. Feb. 16, 2018) (collecting cases); *see, e.g.*, *Pop Top Corp. v. Rakuten Kobo Inc.*, No. 20-cv-04482-DMR, 2022 WL 267407, at *4 (N.D. Cal. Jan. 28, 2022) (concluding that the plaintiff's case was objectively unreasonable and substantively weak, noting that "the record establishes that [the plaintiff] never advanced factual support for its position that the Kobo App infringed claim 1 of the '623 patent," and "[a]t the end of the day, [the plaintiff] never offered evidence supporting its claim").

If a court determines that a case is exceptional and awarding attorneys' fees to the prevailing party is appropriate, the court must then determine what amount of such fees is reasonable to award. *See Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988) ("Section 285's requirement that the fees awarded be 'reasonable' is a safeguard against excessive reimbursement."). In calculating reasonable fee awards under § 285, courts "appl[y] the lodestar method, which provides a presumptively reasonable fee amount, by multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case." *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016). The court "should exclude from this initial fee calculation hours that were not 'reasonably expended'" because they were "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "In addition to setting the number of hours, the court must also determine a reasonable hourly rate, 'considering the experience, skill, and reputation of the attorney requesting fees.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.")). "Generally, when

/////

determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979.

In mixed cases that involve frivolous patent claims (compensable) and non-patent/non-frivolous claims (not compensable), the court applies a "but for" standard to avoid "furnish[ing] windfalls to some defendants, making them better off because they were subject to a suit including frivolous claims." *Fox v. Vice*, 563 U.S. 826, 837 (2011); *id.* at 829 (holding that in cases involving "both frivolous and non-frivolous claims," a court may grant reasonable fees to the defendant . . ., but only for costs that the defendant would not have incurred but for the frivolous claims"); *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 293 F. Supp. 3d 1038, 1049 (N.D. Cal. 2018), *aff'd*, 756 F. App'x 997 (Fed. Cir. 2019) (finding that the *Fox* "but for" standard applies to fee awards under § 285); *In re Personalweb Techs., LLC Pat. Litig.*, No. 18-md-02834-BLF, 2021 WL 796356, at *4 (N.D. Cal. Mar. 2, 2021) (noting that "numerous courts have [] applied the [*Fox* 'but for'] standard to § 285 assessments" and that "[c]ourts in this Circuit have also applied the 'but for' test in the § 285 context"). The Supreme Court has emphasized, however, that courts undertaking this task:

> need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox*, 563 U.S. at 838.

**DISCUSSION**

In the pending motion, defendant American argues that the court should award it the reasonable attorneys' fees and costs that it incurred in defending against plaintiff's patent infringement claims because those claims were objectively baseless, and plaintiff litigated those claims in an unreasonable manner. (Doc. No. 617.) In particular, defendant contends that this case is "exceptional" under § 285 because: (i) plaintiffs' litigating position was substantively weak; (ii) plaintiffs brought these patent infringement claims without conducting a pre-filing investigation, which would "have revealed the lack of merit"; (iii) "plaintiffs failed to adduce any evidence in support of their claims through discovery"; (iv) plaintiffs "failed to dismiss these

9

claims despite being warned of their lack of merit"; and (v) plaintiffs "failed to present any substantive evidence in opposition" to defendant American's motion for summary judgment as to the patent infringement claims. (*Id.* at 2.)

Because plaintiff's action included other claims that are not compensable under § 285, defendant American "seeks only an award of the fees that it would not have incurred but for the exceptional utility and design patent claims pursued by Stiles." (*Id.* at 10.) In addition, defendant American "limits its fee request to the relevant time period, August 10, 2019, the date [American] began preparing its answer to Stiles' Fourth Amended Complaint, to November 8, 2022, the date the court's order granting partial summary judgment was issued." (*Id.* at 27.) Defendant American also requests that the fees it incurred in preparing the pending motion be included in the fee award. (*Id.* at 32.) In total, defendant American requests that the court award it $404,212.25 in reasonable attorneys' fees.[9] (*Id.* at 10; Doc. No. 629 at 2.)

The court will first address whether this case is "exceptional" under § 285 and an award of fees to defendant American is appropriate.

**A.     Whether an Award of Fees is Appropriate Under § 285**

As thoroughly outlined in defendant American's pending motion, plaintiff's weak litigating position was readily apparent and repeatedly brought to plaintiff's attention via meet and confer sessions with her counsel, and yet plaintiff continued to pursue "exceptionally meritless claims" in this action. (*See* Doc. No. 617 at 12–24.) For example, defendant American points out that "Stiles failed to conduct any adequate or meaningful pre-filing investigation, which would have alerted any reasonable attorney that Stiles's claims were entirely baseless," and the deviations in the dimensions the razors at issue—deviations that precluded plaintiff's infringement claims—"were evident from a visual inspection, and undeniable when confronted with accurate measurements." (*Id.* at 18.) Indeed, as summarized above, in the order granting summary judgment, the court emphasized that plaintiff had failed to submit evidence, or cite to

---

[9] The pending motion sought an award of $404,312.25, but in its supplemental brief, defendant American clarifies that it had identified a $100 typographical error and applied this correction in arriving at their requested amount:  $404,212.25. (Doc. No. 629 at 3, n.4.)

1 any evidence before the court on summary judgment, to support her claims, and the legal
2 arguments plaintiff had advanced lacked merit and failed to include citation to any supporting
3 legal authority. (*See* Doc. No. 588.) Plaintiff's pursuit of the baseless claims asserted in this
4 action, and the manner in which she litigated them, was objectively unreasonable. *See Octane*
5 *Fitness, LLC*, 572 U.S. at 554; *see also Kilopass Tech. Inc. v. Sidense Corp.*, No. 10-cv-02066-SI,
6 2014 WL 3956703, at *13 (N.D. Cal. Aug. 12, 2014) (concluding that the plaintiff's theory of
7 infringement was "objectively baseless because it did not take into account the size difference
8 between the accused technology and the patents-in-suit"). In light of these circumstances, the
9 court readily concludes both that this case is "exceptional" under § 285 and that an award of fees
10 to defendant American is appropriate.

11        Accordingly, below the court addresses the reasonableness of the amount of attorneys'
12 fees sought be defendant American.

13 **B.    Reasonableness of Amount of Attorneys' Fees Incurred**

14        Because plaintiff's action included other claims that are not compensable under § 285, in
15 support of the pending motion, defense counsel isolated and categorized their time entries that
16 pertained only to plaintiff's utility infringement claim, only to the design infringement claim, or
17 to both. (Doc. No. 617 at 27.) For the overlapping entries pertaining to two or more claims,
18 defense counsel has proposed applying a percentage reduction based on an approximation of the
19 percent of time that was spent on each patent claim. To that end, defense counsel counted the
20 total number of words in defendant American's memorandum of points and authorities in support
21 of its motion for partial summary judgment and determined that 58% of those words were
22 dedicated to the utility infringement claim, and 17% of those words were dedicated to the design
23 infringement claim. (*Id.* at 27–28.) Using these percentages, defense counsel calculated 58% of
24 the time billed in overlapping entries and attributed those hours to the utility infringement claim,
25 and counsel similarly calculated 17% of the time billed in overlapping entries and attributed those
26 hours to the design infringement claim. (*Id.*) The court finds that this method of distinguishing
27 among compensable time entries (patent claims) and non-compensable entries (other claims) to
28 be appropriate. The court also finds defendant American's percentage reduction approach in

distinguishing among the overlapping patent claims to be appropriate, *see Cave Consulting Grp.*, 293 F. Supp. 3d at 1049, though ultimately unnecessary because both of plaintiff's patent claims brought in this action were frivolous. Accordingly, the court will apply the lodestar method to calculate a reasonable attorneys' fees award in connection with defendant American's defense against plaintiff's utility patent and design patent infringement claims.

In defendant American's pending motion and as clarified in its supplemental brief, it seeks a total award of $404,212.25 in attorneys' fees incurred by its counsel in defending against plaintiff's patent claims in this action and in bringing the pending motion for an award of attorneys' fees. (Doc. Nos. 617 at 10; 629 at 2.) Specifically, defendant American has been represented in this action by attorney Roy Anderson of the law firm Wagner, Anderson & Bright, PC and several attorneys from the law firm Conkle, Kremer & Engel PLC ("CKE"). (Doc. Nos. 617 at 27–28; 629 at 2.)

According to attorney Anderson's declaration, which defendant American filed in support of the pending motion, he has been a registered patent attorney for the last 40 years, with extensive patent and trademark litigation experience, and he charged defendant American his hourly billing rate of $400 per hour. (Doc. No. 617-1 at 12–13.) The court finds that the hourly rate of $400 for attorney Anderson to be very reasonable and indeed well below the hourly rates that this court has previously found to be reasonable for senior partners with his level of experience. *See Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-cv-00350-DAD-AC, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023) (citing cases in which the court had approved hourly rates of $650–$750 for senior partners with over thirty years of experience). In his declaration, attorney Anderson describes the work he performed on activities related to defending against plaintiff's patent claims and specifies the amount of time he spent performing each task, totaling 140 hours for a total of $56,000.00 in attorneys' fees. (*Id.* at 12–15.) Having reviewed those descriptions, the court also finds that attorney Anderson spent a reasonable amount of time on each task. Thus, the court concludes that $56,000.00 is a reasonable amount of attorneys' fees for the time spent by attorney Anderson in defending against plaintiff's utility patent and design patent infringement claims and this amount will be included in the attorneys' fee award.

12

Next, the court assesses the reasonableness of the hourly rates and time spent by the CKE attorneys and non-attorney staff who billed defendant American for time spent performing tasks associated with defending against plaintiff's patent claims. Defendant American seeks an award of $305,348.75 in fees for the time spent by the following three CKE attorneys, each of whom provided declarations in support of the pending motion, as well as the non-attorney timekeeper staff who assisted these attorneys:

- Eric S. Engel, a senior partner with over 40 years of experience in complex commercial litigation, including intellectual property disputes. His hourly rate was $525 from 2019–2021, $550 in 2022, and $575 in 2023.
- Zachary Page, an attorney with 10 years of complex business litigation experience, including patent disputes. His hourly rate was $400 from 2019–2020, $475 in 2021, $495 in 2022, and $525 in 2023.
- Sherron Wiggins, an attorney admitted to practice law in 2018 whose practice since then has focused on intellectual property litigation. Her hourly rate was $300 from 2019–2020 and $350 from 2021–2022.

(Doc. No. 629 at 5–7.) The court concludes that these hourly rates are reasonable and consistent with the hourly rates that this court has previously found to be reasonable for attorneys. *See Mostajo*, 2023 WL 2918657, at *11 (citing cases in which the court approved hourly rates of $650–$750 for senior partners with over thirty years of experience; $545–$695 for partners and senior counsel; $475–$575 for senior associates; $330–$400 for junior associates). In addition, the court finds that these three attorneys reasonably spent 721.4 in total performing tasks to defend against plaintiff's patent claims over the course of this litigation, specifically from August 10, 2018 through November 8, 2022. (*See* Doc. No. 617 at 29.) As defendant American argues in its motion, "the hours billed on this patent matter were reasonable in that the claimed hours span 4 years of litigation, including analysis of infringement and invalidity, protracted discovery, changes of [plaintiff's] counsel, settlement negotiations, the [motion for partial summary judgment], extensive litigation related to [that motion]," which as the court is well aware, included opposing plaintiff's "separate motions for leave to conduct discovery" and motion for

13

reconsideration. (*Id.*) Accordingly, the court will include the $273,325.63 reasonably billed by these three CKE attorneys in the fee award.

The non-attorney timekeepers who assisted these CKE attorneys included four paralegals ($150 hourly rate for 2019–2022, and $175 for 2023), one law clerk ($200 hourly rate), two litigation assistants ($95–$125 hourly rates), and one litigation support analyst ($150 hourly rate for 2019–2022, and $175 for 2023). (Doc. No. 629 at 7–8.) As for the paralegals, the court finds that the hourly rates of $150 and $175 to be reasonable and consistent with the hourly rates previously approved by this court. *See Mostajo*, 2023 WL 2918657, at *11 (citing cases in which the court approved hourly rates of $200 for paralegals). In addition, the approximately 123 hours spent in total by the paralegals is a reasonable amount of hours given that this litigation spanned four years and involved extensive discovery and motion practice. (*See* Doc. No. 629 at 11). Accordingly, the court will include the $18,491.25 billed by the paralegals for the in the fee award. (*See id.*)

As for the other non-attorney timekeepers, however, defendant American has not presented any argument or basis for including their time in the fee award. Moreover, judges in this district have typically not included the time spent on secretarial and administrative work in fee awards because those tasks are "typically subsumed within the overhead expenses of a law firm." *Joe Hand Promotions, Inc. v. Albright*, No. 2:11-cv-2260-WBS, 2013 WL 4094403, at *3 (E.D. Cal. Aug. 13, 2013); *Campbell v. Astrue*, No. 1:09-cv-00719-SMS, 2011 WL 2493749, at *2 (E.D. Cal. June 21, 2011) ("Clerical work may not be billed since it is part of a law firm's overhead."). Thus, regardless of whether their hourly rates are reasonable, the court will not include the $13,531.88 in fees for the time spent by the law clerk, litigation assistants, and litigation support analyst in the fee award.[10]

/////

---

[10] According to the summary table attached to defendant American's supplemental brief, of the $32,023.13 in fees sought for time spent by non-attorney timekeepers, $660.00 was billed for law clerk Olivia Green, $213.75 was billed for litigation assistant Neil Protacio, $3,540.63 was billed for litigation assistant Elana Ryznar, and $9,117.50 was billed for litigation support analyst Monty Zuniga. (Doc. No. 629 at 8, 11.)

Lastly, the court turns to the reasonableness of the amount defendant American requests for the time spent by its counsel in bringing the pending motion for attorneys' fees, which are recoverable under § 285. *See Scott Paper Co. v. Moore Bus. Forms, Inc.*, 604 F. Supp. 835, 838 (D. Del. 1984) (concluding that "the fee for the reasonable time expended in preparing the elaborate fee application and briefs filed herein" are included in the attorneys' fees awarded under § 285); *Mathis v. Spears*, 857 F.2d 749, 756 (Fed. Cir. 1988) (affirming the district court's awarding of "fees for preparation of [prevailing party's] motion for attorney fees" as part of the § 285 fee award); *Action Star Enter. Co. v. KaiJet Tech. Int'l, Ltd.*, No. 12-cv-08074-BRO-MRW, 2015 WL 12752877, at *4 (C.D. Cal. June 24, 2015) ("Fees incurred in preparing and litigating the motion for attorneys' fees are [] recoverable.").

In the pending motion, defendant American requests that it be awarded the $42,863.50 in fees it incurred to bring the pending motion for attorneys' fees. (Doc. No. 617 at 32.) According to a summary chart that was attached as an exhibit to CKE managing attorney Mark Kremer's declaration, which defendant American filed in support of the pending motion, the following CKE timekeepers spent a total of 123.7 hours between April 12, 2023 and May 14, 2023 in preparing the pending motion for attorneys' fees:

- Mark Kremer, a managing attorney with over 42 years of litigation experience, including with intellectual property litigation. His hourly rate is $575.
- Nico Brancolini, an attorney admitted to practice law in 2016. His hourly rate is $375.
- Alec Pressly, an attorney admitted to practice law in 2022. His hourly rate is $325.
- Bill Ye, a paralegal whose hourly rate is $175.
- Neil Protacio, a litigation assistant whose hourly rate is $105.

(Doc. No. 617-1 at 193–99.)[11] As noted above, the court finds these hourly rates to be reasonable. *See Mostajo*, 2023 WL 2918657, at *11.

---

[11] The summary chart also included one entry by Keila Carrasco, an unspecified timekeeper with an hourly rate of $175, who billed 0.2 hours to email correspondence. (Doc. No. 617-1 at 193.) The court will exclude this entry given that defense counsel has offered no explanation as to this timekeeper's role, which may have been administrative/secretarial in nature, and thus not recoverable as noted above.

15

As for the reasonableness of the time spent on preparing the pending motion, the court first notes that the majority of the time entries provided in the summary chart reflect work performed by junior attorneys with lower billing rates. (*See* Doc. No. 617-1 at 193–99.) For example, there are only two entries for attorney Kremer, totaling 2.8 hours and $2,300.00 in fees incurred. (*Id.* at 193–94.) This would suggest that the allocation of work among CKE attorneys in preparing the pending motion was relatively cost-effective. *See Howes v. Med. Components, Inc.*, 761 F. Supp. 1193, 1201 (E.D. Pa. 1990) (awarding fees for "time spent preparing the fee petition," which "was reasonable and *not* excessive," particularly where "the fee petition was very well prepared" and "the majority of the work on the fee petition was performed by associates and paralegals"). However, the court also notes that the paralegal and litigation assistant (whose time entries describe paralegal-type tasks) were not well utilized, as they have few time entries—just one paralegal entry of 0.2 hours for $35.00 in fees, and three entries for the litigation assistant totaling 3.2 hours for $336.00 in fees. (*Id.* at 194–95.) Indeed, many of the entries for the junior attorneys Pressly and Brancolini describe completion of paralegal tasks, e.g., preparing and finalizing exhibits, cite checking, and preparing spreadsheets of costs—tasks that could have been performed by a paralegal at a fifty percent lower billing rate. (*Id.* at 193–99.) In addition, attorney Brancolini has a time entry of 1.6 hours for $600.00 in fees for drafting a proposed order ruling on the pending motion, however, the docket does not reflect that any such proposed order was ever filed in this case. (*Id.* at 198.) Finally, as discussed at the hearing on July 18, 2023 and noted above, there were numerous errors and inconsistencies in the attorney declarations and summary charts that were submitted in support of the pending motion—charts that the court did not find particularly useful in any event as they did not include a column listing the hourly billing rates for each timekeepers—all of which led the court to direct defendant American to file a supplemental brief to provide corrections and clarifications. (*See* Doc. No. 628.)

For these reasons, the court finds that the number of hours spent by defendant American's counsel in preparing the pending motion for attorneys' fees was not entirely reasonable. Thus, the court deems it appropriate to reduce the number of hours billed by attorneys Brancolini and Pressly by one third to reflect the inefficiencies with work allocation amongst timekeepers.

Attorney Brancolini's 61.1 hours will be reduced to 40.7 hours ($15,262.50 in fees) and attorney Pressly's 56.2 hours will be reduced to 37.5 hours ($12,187.50 in fees). Accordingly, the court concludes that $30,121.00 is a reasonable amount of attorneys' fees attributable to the preparation of the pending motion and will include that amount in the fee award.[12]

In sum, the court will grant defendant American's motion for attorneys' fees, in part, and award attorneys' fees in the total amount of $377,937.88.[13]

## CONCLUSION

For the reasons explained above:

1. Defendant American International Industries, Inc.'s motion for an award of attorneys' fees (Doc. No. 617) is granted, in part;

    a. The court awards defendant American International Industries, Inc. $377,937.88 in attorney's fees pursuant to 35 U.S.C. § 285;

2. Plaintiff is directed to pay defendant American International Industries, Inc., through its counsel, the amount awarded above; and

3. Consistent with the intentions of defendant American International Industries, Inc. and defendant Walmart, Inc. as stated at the May 23, 2023 status conference, the court hereby directs defendants to file either their request for dismissal of their counterclaims or a joint status report regarding their counterclaims no later than seven (7) days from the date of entry of this order.

IT IS SO ORDERED.

Dated:  **October 23, 2023**

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[12] The court calculated this figure by adding the following amounts per timekeeper: $2,300.00 (attorney Kremer) + $15,262.50 (attorney Brancolini) + $12,187.50 (attorney Pressly) + $35.00 (paralegal Ye) + $336.00 (assistant Protacio) = $30,121.00.

[13] The court calculated this figure by adding the following subtotals: $56,000.00 (attorney Anderson) + $273,325.63 (CKE attorneys) + $18,491.25 (CKE paralegals) + $30,121.00 (fees incurred in preparing the motion for attorneys' fees) = $377,937.88.